# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S CERTIFICATE AND APPEALS COVER SHEET

## ABBREVIATED ELECTRONIC RECORD

Case Caption:             Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

District Court Number:    21cv11269-FDS

Fee:    Paid?  Yes __X__ No _____   Government filer _____   *In Forma Pauperis* Yes _____ No _____

Motions Pending       Yes _____ No __X__          Sealed documents      Yes _____ No __X__
*If yes, document #*  _____          *If yes, document #*   _____

*Ex parte* documents  Yes _____ No __X__          Transcripts           Yes __X__ No _____
*If yes, document #*  _____          *If yes, document #*   __172_____

Notice of Appeal filed by: Plaintiff/Petitioner __X__   Defendant/Respondent _____   Other: _____

Appeal from:

## #163 Memorandum and Order, #174 Order of Dismissal
Other information:

I, Robert M. Farrell, Clerk of the United States District Court for the District of Massachusetts, do hereby certify that the annexed electronic documents:

## #163, #174, and #175
with the electronic docket sheet, constitute the abbreviated record on appeal in the above entitled case for the Notice of Appeal # __175_____ filed on __October 26, 2022_____.

In testimony whereof, I hereunto set my hand and affix the seal of this Court on __October 26, 2022__.

**ROBERT M. FARRELL**
Clerk of Court

/s/Matthew A. Paine
Deputy Clerk

**PLEASE RETURN TO THE USDC CLERK'S OFFICE**

APPEAL

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:21-cv-11269-FDS

| | |
|---|---|
| Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al | Date Filed: 08/04/2021 |
| Assigned to: Chief Judge F. Dennis Saylor, IV | Date Terminated: 10/01/2022 |
| Cause: 28:1332 Diversity-Personal Injury | Jury Demand: None |
| | Nature of Suit: 360 P.I.: Other |
| | Jurisdiction: Diversity |

**Plaintiff**

| | | |
|---|---|---|
| **Estados Unidos Mexicanos** | represented by | **Jonathan Lowy** |
| | | 840 First Street, N.E., #400 |
| | | Washington, DC 20005 |
| | | (202) 415-0691 |
| | | Email: jlowy@bradyunited.org |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Nicholas Shadowen** |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Steve D. Shadowen** |
| | | Shadowen PLLC |
| | | 1135 W. 6th St. |
| | | Suite 125 |
| | | Austin, TX 78703 |
| | | 717-903-1177 |
| | | Fax: 512-233-2824 |
| | | Email: sshadowen@shadowenpllc.com |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Richard M. Brunell** |
| | | Shadowen PLLC |
| | | 1135 W. 6th Street |
| | | Suite 125 |
| | | Austin, TX 78703 |
| | | (202) 600-9640 |
| | | Email: rbrunell@shadowenpllc.com |
| | | *ATTORNEY TO BE NOTICED* |

**Tina J. Miranda**
Hilliard Shadowen LLC
1135 W. 6th St.
Ste. 1215
Austin, TX 78703
512-585-3260
Email:
tmiranda@hilliardshadowenlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Smith & Wesson Brands, Inc.**    represented by    **Andrew E. Lelling**
Jones Day (Bos)
100 High Street, 21st Flr.
Boston, MA 02110
(617) 449-6856
Email: alelling@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony Dick**
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-7679
Email: ajdick@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Noel J. Francisco**
Jones Day
51 Louisiana Aveenue, NW
Washington, DC 20001-2113
202-879-5485
Email: njfrancisco@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Barrett Firearms Manufacturing, Inc.**    represented by    **James M. Campbell**
Campbell Conroy & O'Neil, P.C.
20 City Square
Suite 300
Boston, MA 02129
617-241-3000
Fax: 617-241-5115

Email: jmcampbell@campbell-trial-
lawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James W. Porter , II**
Porter, Porter & Hassinger
880 Monclair Road, Ste 175
Birmingham, AL 35213
(205) 322-1744
Email: jwporterii@pphlaw.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard W. Kinney , III**
Porter, Porter & Hassinger
880 Monclair Road, Ste 175
Birmingham, AL 35213
(205) 322-1744
Email: wkinney@pphlaw.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Trevor J. Keenan**
Campbell Conroy & O'Neil, P.C.
20 City Square
Suite 300
Boston, MA 02129
617-241-3000
Email: tkeenan@campbell-trial-
lawyers.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Beretta USA Corp.**                    represented by    **Michael A. Savino**
Braverman Greenspun
110 E 42nd St
17th Floor
New York
New York, NY 10017
212-682-2900
Email: msavino@braverlaw.net
*TERMINATED: 02/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Kennedy Venoit**
Cozen O'Connor

101 Arch Street, 8th Floor
Boston, MA 02109
617-849-5002
Email: wvenoit@cozen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Kennedy McDonald**
Cozen O'Connor
1650 Market Street
Suite 2800
Philadelphia, PA 19103
215-864-8046
Fax: 215-701-2225
Email: jmcdonald@cozen.com
*ATTORNEY TO BE NOTICED*

**Michael B. DE Leeuw**
Cozen O'Connor
45 Broadway
Suite 1600
New York, NY 10006-3792
212-908-1331
Fax: 212-509-9492
Email: mdeleeuw@cozen.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Baretta Holdings SPA**
*TERMINATED: 01/03/2022*

**Defendant**

**Glock, Inc.**                    represented by  **Christopher Renzulli**
Renzulli Law Firm, LLP
81 Main St #508,
White Plains, NY 10601
(914) 285-0700
Email: crenzulli@renzullilaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M Malsch**
Renzulli Law Firm
One North Broadway
Ste 1005
White Plains, NY 10601
914-285-0700
Fax: 914-285-1213
Email: jmalsch@renzullilaw.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John F. Renzulli**
Renzulli and Rutherford, LLP
300 East 42nd Street
New York, NY 10005
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter M. Durney**
Cornell & Gollub
88 Broad Street, 6th Flr.
Boston, MA 02110
617-482-8100
Fax: 617-482-3917
Email: pdurney@cornellgollub.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia A. Hartnett**
Cornell & Gollub
88 Broad Street, 6th Flr.
Boston, MA 02110
617-482-8100
Fax: 617-482-3917
Email: PHartnett@cornellgollub.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Glock Ges.m.b.H.**
*TERMINATED: 01/03/2022*

**Defendant**

**Sturm Ruger & Co., Inc.**              represented by    **James B. Vogts**
Swanson, Martin & Bell, LLP Chicago
330 N. Wabash
Ste 3300
Chicago, IL 60611
312-321-9100
Email: jvogts@smbtrials.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan I. Handler**
Day Pitney LLP
One Federal Street
Suite 2900

Boston, MA 02110
617-345-4734
Fax: 617-345-4745
Email: jihandler@daypitney.com
*ATTORNEY TO BE NOTICED*

**Keith H. Bensten**
Day Pitney LLP
One Federal Street
Suite 2900
Boston, MA 02110
617-345-4740
Email: kbensten@daypitney.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Witmer Public Safety Group, Inc.**                represented by    **Nora R. Adukonis**
*doing business as*                                                  Litchfield Cavo LLP
Interstate Arms                                                      Suite 200
                                                                    6 Kimball Lane
                                                                    Lynnfield, MA 01904
                                                                    781-309-1521
                                                                    Email: adukonis@litchfieldcavo.com
                                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Century International Arms, Inc.**                represented by    **Anthony Pisciotti**
                                                                    Pisciotti Lallis Erdreich
                                                                    30 Columbia Turnpike, Suite 205
                                                                    Florham Park, NJ 07932
                                                                    (973) 245-8100
                                                                    Email: apisciotti@pisciotti.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Danny Lallis**
                                                                    Pisciotti Lallis Erdreich
                                                                    30 Columbia Turnpike, Suite 205
                                                                    Florham Park, NJ 07932
                                                                    (973) 245-8100
                                                                    Email: dlallis@pisciotti.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Ryan Erdreich**
                                                                    Pisciotti Lallis Erdreich
                                                                    30 Columbia Turnpike, Suite 205
                                                                    Florham Park, NJ 07932

(973) 245-8100
Email: rerdreich@pisciotti.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph G. Yannetti**
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
617-439-7585
Email: jyannetti@morrisonmahoney.com
*ATTORNEY TO BE NOTICED*

## Defendant

**Colt's Manufacturing Co. LLC**  represented by **Christine M. Netski**
Sugarman, Rogers, Barshak & Cohen
9th Floor
101 Merrimac Street
Boston, MA 02114
617-227-3030
Fax: 617-523-4001
Email: netski@sugarmanrogers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John G. O'Neill**
Sugarman, Rogers, Barshak & Cohen
101 Merrimac Street
9th Floor
Boston, MA 02114
6i7-227-3030
Fax: 617-523-4001
Email: oneill@sugarmanrogers.com
*ATTORNEY TO BE NOTICED*

**Michael L. Rice**
Harrison Law LLC
141 West Jackson Boulevard
Suite 2055
Chicago, IL 60604
312-638-8781
Fax: 312-638-8793
Email: mikerice@hlawllc.com
*ATTORNEY TO BE NOTICED*

## Amicus

**International Law Professors**  represented by **Ellen Valentik Leonida**
BRAUNHAGEY & BORDEN LLP
351 California Street

10th Floor
San Francisco, CA 10036
415-684-7285
Email: leonida@braunhagey.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew B. Borden**
BraunHagey & Borden LLP
351 California Street, 10th Floor
Ste 10th Floor
San Fransico, CA 94104
415-599-0210
Email: borden@braunhagey.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Salomon**
BraunHagey & Borden LLP
351 California Street
10th Floor
94104
San Francisco, CA 94104
415-599-0210
Email: salomon@braunhagey.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas M. Sobol**
Hagens Berman Sobol Shapiro
One Faneuil Hall Sq/
5th Floor
Boston, MA 02109
617-482-3700
Fax: 617-482-3300
Email: Tom@hbsslaw.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Non-Party Proposed Amici**          represented by     **David Duncan**
Zalkind Duncan & Bernstein LLP
65A Atlantic Avenue
Boston, MA 02110
617-742-6020
Fax: 617-742-3269
Email: dduncan@zalkindlaw.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Ellen Valentik Leonida**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew B. Borden**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Salomon**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John A. Freedman**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5316
Fax: 202-942-5999
Email: John.Freedman@aporter.com
*ATTORNEY TO BE NOTICED*

**Max Bernstein**
BraunHagey & Borden LLP
118 W 22nd Street
12th Floor
New York, NY 10011
646-828-9470
Email: bernstein@braunhagey.com
*ATTORNEY TO BE NOTICED*

**Thomas M. Sobol**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Professors Of Transnational Litigation** represented by **Edward V. Colbert , III**
Casner & Edwards LLP
303 Congress Street
Boston, MA 02210
617-426-5900
Fax: 617-426-8810
Email: colbert@casneredwards.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Commonwealth of Massachusetts**        represented by    **Elizabeth N. Dewar**
                                                            Office of the State Solicitor
                                                            Attorney General's Office
                                                            One Ashburton Place
                                                            Boston, MA 02133
                                                            617-963-2204
                                                            Email: bessie.dewar@mass.gov
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**California, State of**                  represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Connecticut, State of**                 represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Delaware, State of**                    represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**District of Columbia**                  represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Hawaii, State of**                      represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Illinois, State of**                    represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Maryland, State of**                    represented by    **Elizabeth N. Dewar**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Michigan, State of** | represented by | **Elizabeth N. Dewar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Minnesota, State of** | represented by | **Elizabeth N. Dewar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **New Jersey, State of** | represented by | **Elizabeth N. Dewar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **New Mexico, State of** | represented by | **Elizabeth N. Dewar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **New York, State of** | represented by | **Elizabeth N. Dewar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Oregon, State of** | represented by | **Elizabeth N. Dewar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Antigua & Barbuda** | represented by | **Crystal Lohmann Parker**<br>Paul Weiss Rivkind Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>212-373-3069<br>Email: cparker@paulweiss.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Julia Tarver-Mason Wood**<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>212-373-3000<br>Email: jwood@paulweiss.com *(Inactive)*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Roberto Gonzalez**
Paul Weiss Rifkind Wharton & Garrison
LLP
2001 K Street, NW
Washington, DC 20006
202-223-7316
Email: rgonzalez@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Haier**
Paul Weiss Rivkind Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: ahaier@paulweiss.com
*ATTORNEY TO BE NOTICED*

**James Mandilk**
Paul Weiss Rivkind Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: jmandilk@paulweiss.com
*ATTORNEY TO BE NOTICED*

**William Taylor**
Paul Weiss Rivkind Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: wtaylor@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Belize**                          represented by   **Crystal Lohmann Parker**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Julia Tarver-Mason Wood**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Roberto Gonzalez**
                                                     (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Haier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Mandilk**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Association for Public Policies**              represented by   **Crystal Lohmann Parker**
*d/b/a/ the Latin American and Caribbean*                           (See above for address)
*Network for Human Security ("SEHLAC")*                             *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Julia Tarver-Mason Wood**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Roberto Gonzalez**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Aaron Haier**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **James Mandilk**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **William Taylor**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**Everytown for Gun Safety**              represented by   **James Pollack**
                                                          Marten Law LLP
                                                          77 Sleeper Street
                                                          Boston, MA 02210
                                                          650-773-4359
                                                          Email: jpollack@martenlaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Gun Violence Prevention Groups**          represented by     **Lawson E. Fite**
Marten Law LLP
1050 SW 6th Ave
Ste 2150
Portland, OR 97204
503-243-2200
Email: lfite@martenlaw.com
*ATTORNEY TO BE NOTICED*

[ Email All Attorneys ]
[ Email All Attorneys and Additional Recipients ]

| Date Filed | # | Docket Text |
|---|---|---|
| 08/04/2021 | 1 | COMPLAINT against All Defendants Filing fee: $ 402, receipt number 0101-8887732 (Fee Status: Filing Fee paid), filed by Estados Unidos Mexicanos. (Attachments: # 1 Civil Cover Sheet, # 2 Civil Cover Sheet Category Form 4-4-11) (Brunell, Richard) (Entered: 08/04/2021) |
| 08/04/2021 | 2 | ELECTRONIC NOTICE of Case Assignment. Chief Judge F. Dennis Saylor, IV assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Jennifer C. Boal. (Danieli, Chris) (Entered: 08/04/2021) |
| 08/04/2021 | 3 | Summons Issued as to All Defendants. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Burgos, Sandra) (Entered: 08/04/2021) |
| 08/04/2021 | 4 | NOTICE of Appearance by Richard M. Brunell on behalf of Estados Unidos Mexicanos (Brunell, Richard) (Entered: 08/04/2021) |
| 08/04/2021 | 5 | MOTION for Leave to Appear Pro Hac Vice for admission of Steve D. Shadowen Filing fee: $ 100, receipt number 0101-8888085 by Estados Unidos Mexicanos.(Brunell, Richard) (Entered: 08/04/2021) |

| 08/04/2021 | 6 | MOTION for Leave to Appear Pro Hac Vice for admission of Jonathan W. Lowy Filing fee: $ 100, receipt number 0101-8888100 by Estados Unidos Mexicanos.(Brunell, Richard) (Entered: 08/04/2021) |
|---|---|---|
| 08/04/2021 | 7 | MOTION for Leave to Appear Pro Hac Vice for admission of Nicholas Shadowen Filing fee: $ 100, receipt number 0101-8888107 by Estados Unidos Mexicanos.(Brunell, Richard) (Entered: 08/04/2021) |
| 08/05/2021 | 8 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 5 Motion for Leave to Appear Pro Hac Vice Added Nicholas W. Shadowen. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** ; granting 6 Motion for Leave to Appear Pro Hac Vice Added Jonathan E. Lowy. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** ; granting 7 Motion for Leave to Appear Pro Hac Vice Added Steve D. Shadowen. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Halley, Taylor) (Entered: 08/05/2021) |
| 08/13/2021 | 9 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Beretta USA Corp. served on 8/12/2021, answer due 9/2/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/13/2021) |
| 08/13/2021 | 10 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Colt's Manufacturing Co., Inc. served on 8/12/2021, answer due 9/2/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/13/2021) |

| 08/13/2021 | 11 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Glock, Inc. served on 8/11/2021, answer due 9/1/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/13/2021) |
| --- | --- | --- |
| 08/13/2021 | 12 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Smith & Wesson Brands, Inc. served on 8/12/2021, answer due 9/2/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/13/2021) |
| 08/13/2021 | 13 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Sturm Ruger & Co., Inc. served on 8/12/2021, answer due 9/2/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/13/2021) |
| 08/13/2021 | 14 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Witmer Public Safety Group, Inc. served on 8/12/2021, answer due 9/2/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/13/2021) |
| 08/20/2021 | 15 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Barrett Firearms Manufacturing, Inc. served on 8/12/2021, answer due 9/2/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 08/20/2021) |
| 08/27/2021 | 16 | AFFIDAVIT OF SERVICE Executed by Estados Unidos Mexicanos. Century International Arms, Inc. served on 8/26/2021, answer due 9/16/2021. Acknowledgement filed by Estados Unidos Mexicanos. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Brunell, Richard) (Entered: 08/27/2021) |
| 08/31/2021 | 17 | NOTICE of Appearance by Peter M. Durney on behalf of Glock, Inc. (Durney, Peter) (Entered: 08/31/2021) |
| 08/31/2021 | 18 | STIPULATION *to Extend Time to Respond to Complaint* by Glock, Inc.. (Durney, Peter) Modified on 9/2/2021 (McKillop, Matthew). (Entered: 08/31/2021) |
| 08/31/2021 | 19 | Assented to MOTION Regarding Briefing Schedule and Page Limits for Anticipated Motions to Dismiss by Defendants by Glock, Inc..(Durney, Peter) (Entered: 08/31/2021) |

| 09/02/2021 | 20 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 18 Motion for Extension of Time to File Response/Reply Responses due by 11/22/2021 (McKillop, Matthew) (Entered: 09/02/2021) |
|---|---|---|
| 09/02/2021 | 21 | NOTICE of Appearance by Jonathan I. Handler on behalf of Sturm Ruger & Co., Inc. (Handler, Jonathan) (Entered: 09/02/2021) |
| 09/02/2021 | 22 | NOTICE of Appearance by Keith H. Bensten on behalf of Sturm Ruger & Co., Inc. (Bensten, Keith) (Entered: 09/02/2021) |
| 09/02/2021 | 23 | NOTICE of Appearance by Christine M. Netski on behalf of Colt's Manufacturing Co., Inc. (Netski, Christine) (Entered: 09/02/2021) |
| 09/02/2021 | 24 | NOTICE of Appearance by John G. O'Neill on behalf of Colt's Manufacturing Co., Inc. (O'Neill, John) (Entered: 09/02/2021) |
| 09/07/2021 | 25 | NOTICE of Appearance by Patricia A. Hartnett on behalf of Glock, Inc. (Hartnett, Patricia) (Entered: 09/07/2021) |
| 09/08/2021 | 26 | NOTICE of Appearance by Joseph G. Yannetti on behalf of Century International Arms, Inc. (Yannetti, Joseph) (Entered: 09/08/2021) |
| 09/08/2021 | 27 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Anthony Pisciotti, Danny Lallis and Ryan Erdreich Filing fee: $ 300, receipt number 0101-8936023 by Century International Arms, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Yannetti, Joseph) (Entered: 09/08/2021) |
| 09/08/2021 | 28 | NOTICE of Appearance by Trevor J. Keenan on behalf of Barrett Firearms Manufacturing, Inc. (Keenan, Trevor) (Entered: 09/08/2021) |
| 09/08/2021 | 29 | NOTICE of Appearance by James M. Campbell on behalf of Barrett Firearms Manufacturing, Inc. (Campbell, James) (Entered: 09/08/2021) |
| 09/08/2021 | 30 | CORPORATE DISCLOSURE STATEMENT by Barrett Firearms Manufacturing, Inc.. (Campbell, James) (Entered: 09/08/2021) |
| 09/08/2021 | 31 | NOTICE of Appearance by Andrew E. Lelling on behalf of Smith & Wesson Brands, Inc. (Lelling, Andrew) (Entered: 09/08/2021) |

| 09/09/2021 | 32 | MOTION for Leave to Appear Pro Hac Vice for admission of Noel J. Francisco Filing fee: $ 100, receipt number 0101-8937678 by Smith & Wesson Brands, Inc.. (Attachments: # 1 Affidavit Noel Francisco Affidavit)(Lelling, Andrew) (Entered: 09/09/2021) |
| 09/09/2021 | 33 | MOTION for Leave to Appear Pro Hac Vice for admission of Anthony J. Dick Filing fee: $ 100, receipt number 0101-8937947 by Smith & Wesson Brands, Inc.. (Attachments: # 1 Affidavit Anthony Dick Affidavit)(Lelling, Andrew) (Entered: 09/09/2021) |
| 09/09/2021 | 34 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of John F. Renzulli Filing fee: $ 100, receipt number 0101-8938050 by Glock, Inc.. (Attachments: # 1 Exhibit 1 - Certification of J. Renzulli)(Durney, Peter) (Entered: 09/09/2021) |
| 09/09/2021 | 35 | MOTION for Leave to Appear Pro Hac Vice for admission of James W. Porter, II Filing fee: $ 100, receipt number 0101-8938317 by Barrett Firearms Manufacturing, Inc.. (Attachments: # 1 Exhibit A - Certification)(Keenan, Trevor) (Entered: 09/09/2021) |
| 09/09/2021 | 36 | MOTION for Leave to Appear Pro Hac Vice for admission of Richard Warren Kinney Filing fee: $ 100, receipt number 0101-8938344 by Barrett Firearms Manufacturing, Inc.. (Attachments: # 1 Exhibit A - Certification)(Keenan, Trevor) (Entered: 09/09/2021) |
| 09/10/2021 | 37 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 27 Motion for Leave to Appear Pro Hac Vice Added Anthony Pisciotti, Danny Lallis, and Ryan Erdreich. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Halley, Taylor) (Entered: 09/10/2021) |
| 09/10/2021 | 38 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 35 Motion for Leave to Appear Pro Hac Vice ; granting 36 Motion for Leave to Appear Pro Hac Vice ; granting 32 Motion for Leave to Appear Pro Hac Vice ; granting 33 Motion for Leave to Appear Pro Hac Vice ; |

|  |  |  |
|---|---|---|
|  |  | granting 34 Motion for Leave to Appear Pro Hac Vice Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form. (Halley, Taylor) Modified on 9/10/2021 (Halley, Taylor). (Entered: 09/10/2021) |
| 09/17/2021 | 39 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. granting 19 Assented to MOTION Regarding Briefing Schedule and Page Limits for Anticipated Motions to Dismiss (McKillop, Matthew) (Entered: 09/17/2021) |
| 09/21/2021 | 40 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Christopher Renzulli Filing fee: $ 100, receipt number AMADC-8965685 by Glock, Inc.. (Attachments: # 1 Exhibit Certification of C. Renzulli)(Hartnett, Patricia) (Entered: 09/21/2021) |
| 09/21/2021 | 41 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Jeffrey M. Malsch Filing fee: $ 100, receipt number AMADC-8965773 by Glock, Inc.. (Attachments: # 1 Exhibit Certification of J. M. Malsch)(Hartnett, Patricia) (Entered: 09/21/2021) |
| 09/22/2021 | 42 | CORPORATE DISCLOSURE STATEMENT by Smith & Wesson Brands, Inc. identifying Other Affiliate Smith & Wesson, Inc., Other Affiliate Smith & Wesson Sales Company for Smith & Wesson Brands, Inc... (Lelling, Andrew) (Entered: 09/22/2021) |
| 09/30/2021 | 43 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Michael L. Rice Filing fee: $ 100, receipt number AMADC-8985669 by Colt's Manufacturing Co., Inc.. (Attachments: # 1 Exhibit Exhibit A)(O'Neill, John) (Entered: 09/30/2021) |
| 10/01/2021 | 44 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 40 Motion for Leave to Appear Pro Hac Vice Added Christopher Renzulli. **Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account |

| | | |
|---|---|---|
| | | can be found at https://www.mad.uscourts.gov /caseinfo/nextgen-current-pacer-accounts.htm#link-account. <br><br> (McManus, Caetlin) (Entered: 10/01/2021) |
| 10/01/2021 | 45 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 41 Motion for Leave to Appear Pro Hac Vice Added Jeffrey M. Malsch. <br><br> **Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov /caseinfo/nextgen-current-pacer-accounts.htm#link-account. <br><br> (McManus, Caetlin) (Entered: 10/01/2021) |
| 10/01/2021 | 46 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 43 Motion for Leave to Appear Pro Hac Vice Added Michael L. Rice. <br><br> **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.** <br><br> Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br> A Notice of Appearance must be entered on the docket by the newly admitted attorney. <br><br> (McManus, Caetlin) (Entered: 10/01/2021) |
| 10/01/2021 | 47 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of James B. Vogts Filing fee: $ 100, receipt number AMADC-8987276 by Sturm Ruger & Co., Inc.. (Attachments: # 1 Declaration) (Handler, Jonathan) (Entered: 10/01/2021) |

| 10/01/2021 | 48 | CORPORATE DISCLOSURE STATEMENT by Sturm Ruger & Co., Inc. identifying Corporate Parent Sturm, Ruger & Co., Inc. for Sturm Ruger & Co., Inc... (Handler, Jonathan) (Entered: 10/01/2021) |
|---|---|---|
| 10/01/2021 | 49 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 47 Motion for Leave to Appear Pro Hac Vice Added James B. Vogts. **Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov /caseinfo/nextgen-current-pacer-accounts.htm#link-account. (Currie, Haley) (Entered: 10/01/2021) |
| 10/01/2021 | 50 | CORPORATE DISCLOSURE STATEMENT by Glock, Inc.. (Durney, Peter) (Entered: 10/01/2021) |
| 10/15/2021 | 51 | NOTICE of Appearance by Nora R. Adukonis on behalf of Witmer Public Safety Group, Inc. (Adukonis, Nora) (Entered: 10/15/2021) |
| 10/15/2021 | 52 | MOTION for Leave to Appear Pro Hac Vice for admission of S. Jan Hueber Filing fee: $ 100, receipt number AMADC-9015275 by Witmer Public Safety Group, Inc.. (Attachments: # 1 Affidavit)(Adukonis, Nora) Modified on 10/19/2021 to include payment information (McManus, Caetlin). (Entered: 10/15/2021) |
| 10/19/2021 | 53 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 52 Motion for Leave to Appear Pro Hac Vice Added S. Jan Hueber. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. |

| | | |
|---|---|---|
| | | A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(McManus, Caetlin) (Entered: 10/19/2021) |
| 10/27/2021 | 54 | NOTICE of Appearance by Michael L. Rice on behalf of Colt's Manufacturing Co. LLC (Rice, Michael) (Entered: 10/27/2021) |
| 11/22/2021 | 55 | NOTICE of Appearance by Michael A. Savino on behalf of Beretta USA Corp. (Savino, Michael) (Entered: 11/22/2021) |
| 11/22/2021 | 56 | MOTION to Dismiss *Defendant Sturm, Ruger's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2)* by Sturm Ruger & Co., Inc..(Handler, Jonathan) (Entered: 11/22/2021) |
| 11/22/2021 | 57 | MEMORANDUM in Support re 56 MOTION to Dismiss *Defendant Sturm, Ruger's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2)* filed by Sturm Ruger & Co., Inc.. (Handler, Jonathan) (Entered: 11/22/2021) |
| 11/22/2021 | 58 | MOTION to Dismiss for Lack of Jurisdiction by Barrett Firearms Manufacturing, Inc..(Porter, James) (Entered: 11/22/2021) |
| 11/22/2021 | 59 | MEMORANDUM in Support re 58 MOTION to Dismiss for Lack of Jurisdiction filed by Barrett Firearms Manufacturing, Inc.. (Porter, James) (Entered: 11/22/2021) |
| 11/22/2021 | 60 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* by Witmer Public Safety Group, Inc..(Adukonis, Nora) (Entered: 11/22/2021) |
| 11/22/2021 | 61 | MEMORANDUM in Support re 60 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by Witmer Public Safety Group, Inc.. (Adukonis, Nora) (Entered: 11/22/2021) |
| 11/22/2021 | 62 | MOTION to Dismiss for Lack of Jurisdiction , *for Lack of Article III Standing, and for failure to state a claim* by Glock, Inc..(Malsch, Jeffrey) (Entered: 11/22/2021) |
| 11/22/2021 | 63 | MEMORANDUM in Support re 62 MOTION to Dismiss for Lack of Jurisdiction , *for Lack of Article III Standing, and for failure to state a claim* filed by Glock, Inc.. (Malsch, Jeffrey) (Entered: 11/22/2021) |

| 11/22/2021 | 64 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Colt's Manufacturing Co. LLC.(O'Neill, John) (Entered: 11/22/2021) |
| 11/22/2021 | 65 | MEMORANDUM in Support re 64 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Colt's Manufacturing Co. LLC. (O'Neill, John) (Entered: 11/22/2021) |
| 11/22/2021 | 66 | Joint MOTION to Dismiss by Barrett Firearms Manufacturing, Inc., Beretta USA Corp., Century International Arms, Inc., Colt's Manufacturing Co. LLC, Glock, Inc., Smith & Wesson Brands, Inc., Sturm Ruger & Co., Inc., Witmer Public Safety Group, Inc..(Lelling, Andrew) (Entered: 11/22/2021) |
| 11/22/2021 | 67 | Joint MEMORANDUM in Support re 66 Joint MOTION to Dismiss filed by Barrett Firearms Manufacturing, Inc., Beretta USA Corp., Century International Arms, Inc., Colt's Manufacturing Co. LLC, Glock, Inc., Smith & Wesson Brands, Inc., Sturm Ruger & Co., Inc., Witmer Public Safety Group, Inc.. (Lelling, Andrew) (Entered: 11/22/2021) |
| 11/22/2021 | 68 | MOTION for Leave to Appear Pro Hac Vice for admission of John K. McDonald and Michael B. de Leeuw Filing fee: $ 200, receipt number AMADC-9067335 by Beretta USA Corp..(Savino, Michael) (Entered: 11/22/2021) |
| 11/22/2021 | 69 | MOTION to Dismiss by Smith & Wesson Brands, Inc..(Lelling, Andrew) (Entered: 11/22/2021) |
| 11/22/2021 | 70 | MOTION to Dismiss , MOTION to Dismiss for Lack of Jurisdiction ( Responses due by 12/6/2021) by Century International Arms, Inc..(Yannetti, Joseph) (Entered: 11/22/2021) |
| 11/22/2021 | 71 | MEMORANDUM in Support re 70 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction filed by Century International Arms, Inc.. (Yannetti, Joseph) (Entered: 11/22/2021) |
| 11/22/2021 | 72 | MEMORANDUM in Support re 69 MOTION to Dismiss filed by Smith & Wesson Brands, Inc.. (Lelling, Andrew) (Entered: 11/22/2021) |
| 11/22/2021 | 73 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Rule 7.1 Statement and Memorandum of Law* by Beretta USA Corp.. (Attachments: # 1 rule 7.1 Statement, # 2 Memorandum of Law)(Savino, Michael) (Entered: |

| | | 11/22/2021) |
|---|---|---|
| 11/22/2021 | 74 | MOTION to Modify Memorandum of Law by Beretta USA Corp..(Savino, Michael) (Entered: 11/22/2021) |
| 11/23/2021 | 75 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 68 Motion for Leave to Appear Pro Hac Vice Added John K. McDonald and Michael B. de Leeuw.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(McManus, Caetlin) (Entered: 11/23/2021) |
| 11/24/2021 | 76 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. Plaintiff Estados Unidos Mexicanos shall file any opposition to defendants' motions to dismiss (Docket Nos. 56 , 58 , 60 , 62 , 64 , 66 , 69 , 70 , 73 ) by December 23, 2021. Defendants shall file any reply memoranda by January 10, 2022. A hearing on the motions to dismiss is hereby set for Thursday, January 27, 2022 at 2:00 p.m. Counsel to notify the clerk by January 20th whether they intend to appear in person or by video. (McKillop, Matthew) (Entered: 11/24/2021) |
| 11/24/2021 | 77 | **ELECTRONIC NOTICE Setting Hearing on Motions to Dismiss:** Motion Hearing set for 1/27/2022 02:00 PM in Courtroom 10 (In person with remote access provided) before Chief Judge F. Dennis Saylor IV.<br><br>(McKillop, Matthew) (Entered: 11/24/2021) |
| 11/30/2021 | 78 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. The Electronic Order entered on 11/24/21 D. 76 is vacated. Counsel to continue to follow the schedule granted by the Court on 9/17/21 D. 39 . Motion hearing set for 1/27/22 at 2:00 PM is cancelled. (McKillop, Matthew) (Entered: |

| | | 11/30/2021) |
|---|---|---|
| 12/22/2021 | 79 | MOTION for Leave to Appear Pro Hac Vice for admission of Daniel G. Litchfield Filing fee: $ 100, receipt number AMADC-9111600 by Witmer Public Safety Group, Inc.. (Attachments: # 1 Exhibit Affidavit of Daniel G. Litchfield) (Adukonis, Nora) (Entered: 12/22/2021) |
| 12/23/2021 | 80 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 79 Motion for Leave to Appear Pro Hac Vice Added Daniel G. Litchfield. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (McDonagh, Christina) (Entered: 12/23/2021) |
| 12/31/2021 | 81 | NOTICE by Estados Unidos Mexicanos *of Voluntary Dismissal of Defendants Beretta Holding S.p.A. and Glock Ges.m.b.H* (Brunell, Richard) (Entered: 12/31/2021) |
| 01/28/2022 | 82 | NOTICE of Appearance by Thomas M. Sobol on behalf of International Law Professors (Sobol, Thomas) (Entered: 01/28/2022) |
| 01/28/2022 | 83 | MOTION for Leave to Appear Pro Hac Vice for admission of Ellen V. Leonida Filing fee: $ 100, receipt number AMADC-9159314 by Non-Party Proposed Amici. (Attachments: # 1 Exhibit A)(Sobol, Thomas) (Entered: 01/28/2022) |
| 01/28/2022 | 84 | MOTION for Leave to Appear Pro Hac Vice for admission of Max B. Bernstein Filing fee: $ 100, receipt number AMADC-9159327 by Non-Party Proposed Amici. (Attachments: # 1 Exhibit A)(Sobol, Thomas) (Entered: 01/28/2022) |

| | | |
|---|---|---|
| 01/28/2022 | 85 | MOTION for Leave to Appear Pro Hac Vice for admission of Matthew Borden Filing fee: $ 100, receipt number AMADC-9159335 by Non-Party Proposed Amici. (Attachments: # 1 Exhibit A)(Sobol, Thomas) (Entered: 01/28/2022) |
| 01/28/2022 | 86 | MOTION for Leave to Appear Pro Hac Vice for admission of Sarah Salomon Filing fee: $ 100, receipt number AMADC-9159346 by Non-Party Proposed Amici. (Attachments: # 1 Exhibit A)(Sobol, Thomas) (Entered: 01/28/2022) |
| 01/28/2022 | 87 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 83 Motion for Leave to Appear Pro Hac Vice Added Ellen V. Leonida. <br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account. <br><br>(McDonagh, Christina) (Entered: 01/28/2022) |
| 01/28/2022 | 88 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 84 Motion for Leave to Appear Pro Hac Vice Added Max Bernstein. <br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.** <br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney. <br><br>(McDonagh, Christina) (Entered: 01/28/2022) |
| 01/28/2022 | 89 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 85 Motion for Leave to Appear Pro Hac Vice Added Matthew Borden. |

| | | |
|---|---|---|
| | | **Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account. <br><br> (McDonagh, Christina) (Entered: 01/28/2022) |
| 01/28/2022 | 90 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 86 Motion for Leave to Appear Pro Hac Vice Added Sarah Salomon. <br><br> **Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account. <br><br> (McDonagh, Christina) (Entered: 01/28/2022) |
| 01/28/2022 | 91 | NOTICE of Appearance by Ellen Valentik Leonida on behalf of Non-Party Proposed Amici (Leonida, Ellen) (Entered: 01/28/2022) |
| 01/28/2022 | 92 | NOTICE of Appearance by Matthew B. Borden on behalf of Non-Party Proposed Amici (Borden, Matthew) (Entered: 01/28/2022) |
| 01/28/2022 | 93 | NOTICE of Appearance by Sarah Salomon on behalf of Non-Party Proposed Amici (Salomon, Sarah) (Entered: 01/28/2022) |
| 01/31/2022 | 94 | NOTICE of Appearance by Max Bernstein on behalf of Non-Party Proposed Amici (Bernstein, Max) (Entered: 01/31/2022) |
| 01/31/2022 | 95 | NOTICE of Appearance by David Duncan on behalf of Non-Party Proposed Amici (Duncan, David) (Entered: 01/31/2022) |
| 01/31/2022 | 96 | MOTION for Leave to File *Amicus Brief in Support of Plaintiff's Opposition to Motion to Dismiss* by Non-Party Proposed Amici. (Attachments: # 1 Exhibit Proposed Amicus Brief in Support of |

| | | |
|---|---|---|
| | | Plaintiff's Opposition to Motion to Dismiss) (Duncan, David) (Entered: 01/31/2022) |
| 01/31/2022 | 97 | Opposition re 69 MOTION to Dismiss *filed by Smith & Wesson* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 98 | Opposition re 58 MOTION to Dismiss for Lack of Jurisdiction *filed by Barrett* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 99 | Opposition re 73 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Rule 7.1 Statement and Memorandum of Law filed by Beretta* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 100 | Opposition re 70 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction *filed by Century* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 101 | Opposition re 64 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *filed by Colt* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 102 | Opposition re 62 MOTION to Dismiss for Lack of Jurisdiction *, for Lack of Article III Standing, and for failure to state a claim filed by Glock* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 103 | Opposition re 56 MOTION to Dismiss *Defendant Sturm, Ruger's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Ruger* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 104 | Opposition re 60 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Witmer d/b/a Interstate Arms* filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | 105 | MOTION for Leave to File *Amici Curiae in Support of Plaintiff's Oppositions to Defendants' Motions to Dismiss* by Non-Party Proposed Amici. (Leonida, Ellen) (Entered: 01/31/2022) |
| 01/31/2022 | 106 | NOTICE of Appearance by Edward V. Colbert, III on behalf of Professors Of Transnational Litigation (Colbert, Edward) (Entered: 01/31/2022) |

| 01/31/2022 | [107](#) | NOTICE of Appearance by Edward V. Colbert, III on behalf of Professors Of Transnational Litigation (Colbert, Edward) (Entered: 01/31/2022) |
| --- | --- | --- |
| 01/31/2022 | [108](#) | DECLARATION *of Nicholas W. Shadowen in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss* by Estados Unidos Mexicanos. (Attachments: # [1](#) Exhibit, # [2](#) Exhibit, # [3](#) Exhibit, # [4](#) Exhibit, # [5](#) Exhibit, # [6](#) Exhibit, # [7](#) Exhibit, # [8](#) Exhibit, # [9](#) Exhibit, # [10](#) Exhibit, # [11](#) Exhibit, # [12](#) Exhibit, # [13](#) Exhibit, # [14](#) Exhibit, # [15](#) Exhibit, # [16](#) Exhibit, # [17](#) Exhibit, # [18](#) Exhibit, # [19](#) Exhibit, # [20](#) Exhibit, # [21](#) Exhibit, # [22](#) Exhibit, # [23](#) Exhibit, # [24](#) Exhibit, # [25](#) Exhibit, # [26](#) Exhibit, # [27](#) Exhibit, # [28](#) Exhibit, # [29](#) Exhibit, # [30](#) Exhibit, # [31](#) Exhibit, # [32](#) Exhibit, # [33](#) Exhibit, # [34](#) Exhibit, # [35](#) Exhibit, # [36](#) Exhibit, # [37](#) Exhibit, # [38](#) Exhibit, # [39](#) Exhibit, # [40](#) Exhibit, # [41](#) Exhibit, # [42](#) Exhibit, # [43](#) Exhibit, # [44](#) Exhibit, # [45](#) Exhibit, # [46](#) Exhibit, # [47](#) Exhibit, # [48](#) Exhibit, # [49](#) Exhibit, # [50](#) Exhibit, # [51](#) Exhibit, # [52](#) Exhibit, # [53](#) Exhibit, # [54](#) Exhibit, # [55](#) Exhibit, # [56](#) Exhibit, # [57](#) Exhibit, # [58](#) Exhibit, # [59](#) Exhibit) (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | [109](#) | MOTION for Leave to File *As Amici Curiae* by Professors Of Transnational Litigation. (Attachments: # [1](#) Appendix Proposed Amicus Brief)(Colbert, Edward) (Entered: 01/31/2022) |
| 01/31/2022 | [110](#) | MOTION for Leave to File *Amicus Brief* by Commonwealth of Massachusetts, California, State of, Connecticut, State of, Delaware, State of, District of Columbia, Hawaii, State of, Illinois, State of, Maryland, State of, Michigan, State of, Minnesota, State of, New Jersey, State of, New Mexico, State of, New York, State of, Oregon, State of. (Attachments: # [1](#) Proposed Amicus Brief) (Dewar, Elizabeth) (Entered: 01/31/2022) |
| 01/31/2022 | [111](#) | Opposition re [66](#) Joint MOTION to Dismiss filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 01/31/2022) |
| 01/31/2022 | [112](#) | MOTION for Leave to File *Amici Curiae Brief of Scholars of International Law in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss* by Non-Party Proposed Amici. (Attachments: # [1](#) Proposed Amici Curiae Brief) (Sobol, Thomas) (Entered: 01/31/2022) |
| 01/31/2022 | [113](#) | MOTION for Leave to File *Amicus Brief* by Antigua & Barbuda, Belize, The Association for |

| | | |
|---|---|---|
| | | Public Policies. (Attachments: # 1 Amicus Brief) (Parker, Crystal) (Entered: 01/31/2022) |
| 01/31/2022 | 114 | MOTION of Gun Violence Prevention Groups for Leave to File Brief as Amicus Curiae re. 66 Defendant's Joint Motion to Dismiss entered by James Pollack on behalf of Everytown for Gun Safety. (Attachments: # 1 Exhibit Amicus Curiae, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B)(Pollack, James) Modified on 2/1/2022 to correct filing event used by attorney and docket text(McManus, Caetlin). (Entered: 01/31/2022) |
| 01/31/2022 | 115 | Amicus Curiae APPEARANCE entered by John A. Freedman on behalf of Non-Party Proposed Amici. (Freedman, John) (Entered: 01/31/2022) |
| 01/31/2022 | 116 | MOTION for Leave to Appear Pro Hac Vice for admission of Lawson E. Fite Filing fee: $ 100, receipt number AMADC-9162247 by Everytown for Gun Safety.(Pollack, James) (Entered: 01/31/2022) |
| 02/01/2022 | 117 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 116 Motion for Leave to Appear Pro Hac Vice Added Lawson E. Fite.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(McManus, Caetlin) (Entered: 02/01/2022) |

| 02/02/2022 | 118 | MOTION for Leave to Appear Pro Hac Vice for admission of Roberto Gonzalez, Julia Tarver Mason Wood, James Mandilk, Aaron Haier, and William Taylor Filing fee: $ 500, receipt number AMADC-9166248 by Antigua & Barbuda, Belize, The Association for Public Policies. (Attachments: # 1 Certification of Roberto Gonzalez, # 2 Certification of Julia Tarver Mason Wood, # 3 Certification of James Mandilk, # 4 Certification of Aaron Haier, # 5 Certification of William Taylor)(Parker, Crystal) (Entered: 02/02/2022) |
|---|---|---|
| 02/03/2022 | 119 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 118 Motion for Leave to Appear Pro Hac Vice Added Roberto Gonzalez, Julia Tarver Mason Wood, James Mandilk, Aaron Haier, and William Taylor.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(McManus, Caetlin) (Entered: 02/03/2022) |
| 02/03/2022 | 120 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting D. 96 , 105 , 109 , 110 , 112 and 113 MOTIONS for Leave to File Amicus Briefs ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (McKillop, Matthew) (Entered: 02/03/2022) |
| 02/03/2022 | 121 | AMICUS BRIEF filed by California, State of, Connecticut, State of, Delaware, State of, District of Columbia, Hawaii, State of, Illinois, State of, Maryland, State of, Commonwealth of Massachusetts, Michigan, State of, Minnesota, State of, New Jersey, State of, New Mexico, State of, New York, State of, Oregon, State of . (Dewar, |

| | | Elizabeth) (Entered: 02/03/2022) |
|---|---|---|
| 02/03/2022 | 122 | AMICUS BRIEF filed by Non-Party Proposed Amici *Mexican Activists, Scholars & Victims, Leave to File Granted 2/3/22.* (Duncan, David) (Entered: 02/03/2022) |
| 02/03/2022 | 123 | AMICUS BRIEF filed by Non-Party Proposed Amici *Prosecutors in Cities Across the United States, Leave to File Granted 2/3/22.* (Leonida, Ellen) (Entered: 02/03/2022) |
| 02/03/2022 | 124 | AMICUS BRIEF filed by Non-Party Proposed Amici *Amici Curiae Brief of Scholars of International Law in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss.* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Sobol, Thomas) (Entered: 02/03/2022) |
| 02/03/2022 | 125 | AMICUS BRIEF filed by Gun Violence Prevention Groups *Leave to File Granted 2/03/2022.* (Attachments: # 1 Exhibit A - Licensed Gun Dealers in the United States and Mexico, # 2 Exhibit B - Images of Guns)(Pollack, James) (Entered: 02/03/2022) |
| 02/03/2022 | 126 | AMICUS BRIEF filed by Antigua & Barbuda, Belize, The Association for Public Policies . (Parker, Crystal) (Entered: 02/03/2022) |
| 02/03/2022 | 127 | Amicus Curiae APPEARANCE entered by Julia Tarver-Mason Wood on behalf of Antigua & Barbuda, Belize, The Association for Public Policies. (Wood, Julia) (Entered: 02/03/2022) |
| 02/04/2022 | 128 | NOTICE of Appearance by Wendy Kennedy Venoit on behalf of Beretta USA Corp. (Venoit, Wendy) (Entered: 02/04/2022) |
| 02/04/2022 | 129 | NOTICE of Withdrawal of Appearance by Wendy Kennedy Venoit *(w/d of Michael Savino)* (Venoit, Wendy) (Entered: 02/04/2022) |
| 02/07/2022 | 130 | NOTICE of Appearance by Lawson E. Fite on behalf of Gun Violence Prevention Groups (Fite, Lawson) (Entered: 02/07/2022) |
| 02/08/2022 | 131 | Amicus Curiae APPEARANCE entered by Roberto Gonzalez on behalf of Antigua & Barbuda, Belize, The Association for Public Policies. (Gonzalez, Roberto) (Entered: 02/08/2022) |

| 02/08/2022 | 132 | Amicus Curiae APPEARANCE entered by James Mandilk on behalf of Antigua & Barbuda, Belize, The Association for Public Policies. (Mandilk, James) (Entered: 02/08/2022) |
| 02/08/2022 | 133 | Amicus Curiae APPEARANCE entered by Aaron Haier on behalf of Antigua & Barbuda, Belize, The Association for Public Policies. (Haier, Aaron) (Entered: 02/08/2022) |
| 02/08/2022 | 134 | Amicus Curiae APPEARANCE entered by William Taylor on behalf of Antigua & Barbuda, Belize, The Association for Public Policies. (Taylor, William) (Entered: 02/08/2022) |
| 02/11/2022 | 135 | Assented to MOTION for Extension of Time to 3/14/2022 to File Response/Reply as to 60 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)*, 56 MOTION to Dismiss *Defendant Sturm, Ruger's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2)*, 66 Joint MOTION to Dismiss , 70 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction , 58 MOTION to Dismiss for Lack of Jurisdiction , 62 MOTION to Dismiss for Lack of Jurisdiction *, for Lack of Article III Standing, and for failure to state a claim*, 64 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 69 MOTION to Dismiss , 73 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Rule 7.1 Statement and Memorandum of Law and a limit of 35 pages for Defendants' Reply in Support of their Joint Motion* by Glock, Inc..(Malsch, Jeffrey) (Entered: 02/11/2022) |
| 02/15/2022 | 136 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 135 Assented to MOTION for Extension of Time to 3/14/2022 to File Joint and Individual Replies. (McKillop, Matthew) (Entered: 02/15/2022) |
| 03/14/2022 | 137 | REPLY to Response to 56 MOTION to Dismiss *Defendant Sturm, Ruger's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) with Certificate of Service* filed by Sturm Ruger & Co., Inc.. (Handler, Jonathan) (Entered: 03/14/2022) |
| 03/14/2022 | 138 | REPLY to Response to 64 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Colt's Manufacturing Co. LLC. (O'Neill, John) (Entered: 03/14/2022) |

| 03/14/2022 | [139](#) | REPLY to Response to [69](#) MOTION to Dismiss filed by Smith & Wesson Brands, Inc.. (Lelling, Andrew) (Entered: 03/14/2022) |
|---|---|---|
| 03/14/2022 | [140](#) | Joint REPLY to Response to [66](#) Joint MOTION to Dismiss filed by Barrett Firearms Manufacturing, Inc., Beretta USA Corp., Century International Arms, Inc., Colt's Manufacturing Co. LLC, Glock, Inc., Smith & Wesson Brands, Inc., Sturm Ruger & Co., Inc., Witmer Public Safety Group, Inc.. (Lelling, Andrew) (Entered: 03/14/2022) |
| 03/14/2022 | [141](#) | REPLY to Response to [70](#) MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction filed by Century International Arms, Inc.. (Yannetti, Joseph) (Entered: 03/14/2022) |
| 03/14/2022 | [142](#) | REPLY to Response to [60](#) MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by Witmer Public Safety Group, Inc.. (Adukonis, Nora) (Entered: 03/14/2022) |
| 03/14/2022 | [143](#) | REPLY to Response to [58](#) MOTION to Dismiss for Lack of Jurisdiction filed by Barrett Firearms Manufacturing, Inc.. (Porter, James) (Entered: 03/14/2022) |
| 03/14/2022 | [144](#) | NOTICE of Appearance by Michael B. DE Leeuw on behalf of Beretta USA Corp. (DE Leeuw, Michael) (Entered: 03/14/2022) |
| 03/14/2022 | [145](#) | REPLY to Response to [73](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Rule 7.1 Statement and Memorandum of Law* filed by Beretta USA Corp.. (DE Leeuw, Michael) (Entered: 03/14/2022) |
| 03/14/2022 | [146](#) | REPLY to Response to [62](#) MOTION to Dismiss for Lack of Jurisdiction *, for Lack of Article III Standing, and for failure to state a claim* filed by Glock, Inc.. (Malsch, Jeffrey) (Entered: 03/14/2022) |
| 03/15/2022 | 147 | **ELECTRONIC NOTICE Setting Hearing:** Motion Hearing set for 4/12/2022 10:00 AM in Remote Proceeding : Boston before Chief Judge F. Dennis Saylor IV.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. |

| | | |
|---|---|---|
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(McKillop, Matthew) (Entered: 03/15/2022) |
| 03/21/2022 | 148 | MOTION for Leave to Appear Pro Hac Vice for admission of Tina J. Miranda Filing fee: $ 100, receipt number AMADC-9235906 by Estados Unidos Mexicanos.(Brunell, Richard) (Entered: 03/21/2022) |
| 03/21/2022 | 149 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 148 Motion for Leave to Appear Pro Hac Vice Added Tina J. Miranda.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(McDonagh, Christina) (Entered: 03/21/2022) |
| 03/23/2022 | 150 | MOTION for Leave to File *Sur-reply in Opposition to Defendants' Motions to Dismiss* by Estados Unidos Mexicanos. (Attachments: # 1 Exhibit Proposed Plaintiff's Sur-reply Memorandum of Law in Opposition to Defendants' Motions to Dismiss) (Brunell, Richard) (Entered: 03/23/2022) |
| 03/24/2022 | 151 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 150 MOTION for Leave to File Sur-reply in Opposition to Defendants' Motions to Dismiss ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file |

|  |  | granted on (date of order)- in the caption of the document. (McKillop, Matthew) (Entered: 03/24/2022) |
|---|---|---|
| 03/24/2022 | 152 | SUR-REPLY to Motion re 62 MOTION to Dismiss for Lack of Jurisdiction *, for Lack of Article III Standing, and for failure to state a claim*, 60 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(6)*, 64 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 56 MOTION to Dismiss *Defendant Sturm, Ruger's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2)*, 66 Joint MOTION to Dismiss , 69 MOTION to Dismiss , 73 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Rule 7.1 Statement and Memorandum of Law*, 70 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction , 58 MOTION to Dismiss for Lack of Jurisdiction filed by Estados Unidos Mexicanos. (Brunell, Richard) (Entered: 03/24/2022) |
| 04/01/2022 | 153 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 114 MOTION of Gun Violence Prevention Groups for Leave to File Brief as Amicus Curiae. (McKillop, Matthew) (Entered: 04/01/2022) |
| 04/01/2022 | 154 | Letter/request (non-motion) from Defendants proposing order of arguments on pending Motions to Dismiss *with Consent of Plaintiff*. (Malsch, Jeffrey) (Entered: 04/01/2022) |
| 04/11/2022 | 155 | NOTICE of Appearance by Tina J. Miranda on behalf of Estados Unidos Mexicanos (Miranda, Tina) (Entered: 04/11/2022) |
| 04/12/2022 | 156 | NOTICE of Appearance by John Kennedy McDonald on behalf of Beretta USA Corp. (McDonald, John) (Entered: 04/12/2022) |
| 04/12/2022 | 157 | Electronic Clerk's Notes for proceedings held before Chief Judge F. Dennis Saylor, IV: Motion Hearing held by video on 4/12/2022. Case called; Arguments heard re Pending Motions to Dismiss. Court takes matter under advisement. (Court Reporter: Kathleen Silva at kathysilva@verizon.net.)(Attorneys present: Steve D. Shadowen, Jonathan Lowy, Richard M. Brunell and Tina J. Miranda for the plaintiff. Andrew E. Lelling, Anthony Dick, Michael B. DE Leeuw, John F. Renzulli, Michael L. Rice and John G. O'Neill) (McKillop, Matthew) (Entered: 04/12/2022) |

| | | |
|---|---|---|
| 06/06/2022 | 158 | Notice of Supplemental Authorities re 150 MOTION for Leave to File *Sur-reply in Opposition to Defendants' Motions to Dismiss* (Brunell, Richard) (Entered: 06/06/2022) |
| 06/09/2022 | 159 | *Joint* Response by Smith & Wesson Brands, Inc. *to Plaintiff's Notice of Supplemental Authorities.* (Lelling, Andrew) (Entered: 06/09/2022) |
| 08/26/2022 | 160 | Notice of Supplemental Authorities re 150 MOTION for Leave to File *Sur-reply in Opposition to Defendants' Motions to Dismiss* (Brunell, Richard) (Entered: 08/26/2022) |
| 09/02/2022 | 161 | Joint Notice of Supplemental Authorities re 66 Joint MOTION to Dismiss *in Response to Plaintiff's Notice (ECF Doc. 160)* filed by Glock, Inc.. (Attachments: # 1 Exhibit A - Order)(Malsch, Jeffrey) (Entered: 09/02/2022) |
| 09/30/2022 | 162 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.<br><br>The motion of defendant Beretta USA Corp. to modify its memorandum of law (Docket No. 74 ) is GRANTED to the extent that defendant seeks to substitute a corrected version of its memorandum in support of its motion to dismiss (Docket No. 73 ). (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 163 | Chief Judge F. Dennis Saylor, IV: MEMORANDUM AND ORDER.<br><br>For the foregoing reasons:<br><br>The motion of all defendants to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 66 ) is DENIED as to Rule 12(b)(1) and GRANTED as to Rule 12(b)(6);<br><br>The motion of defendant Sturm, Ruger & Company to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 56 ) is DENIED without prejudice as moot;<br><br>The motion of defendant Barrett Firearms Manufacturing, Inc., to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss |

for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 58 ) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot;

The motion of defendant Witmer Public Safety Group, Inc., d/b/a Interstate Arms to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 60 ) is GRANTED;

The motion of defendant Glock Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 62 ) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot;

The motion of defendant Colt's Manufacturing Company LLC to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 64 ) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot;

The motion of defendant Smith & Wesson Brands, Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 69 ) is DENIED as to Rule 12(b)(1) and GRANTED as to Rule 12(b)(6);

The motion of defendant Century International Arms, Inc. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 70 ) is DENIED without prejudice as moot; and

The motion of defendant Beretta U.S.A. Corp. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 73 ) is DENIED without prejudice as moot.

| | | |
|---|---|---|
| | | **So Ordered.** (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 164 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. <br><br> The motion of defendant Sturm, Ruger & Company to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 56 ) is DENIED without prejudice as moot. (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 165 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. <br><br> The motion of defendant Barrett Firearms Manufacturing, Inc., to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 58 ) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot. (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 166 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. <br><br> The motion of defendant Witmer Public Safety Group, Inc., d/b/a Interstate Arms to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 60 ) is GRANTED. (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 167 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. <br><br> The motion of defendant Glock Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 62 ) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot. (de Oliveira, Flaviana) (Entered: 09/30/2022) |

| 09/30/2022 | 168 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.

The motion of defendant Colt's Manufacturing Company LLC to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 64 ) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot. (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| --- | --- | --- |
| 09/30/2022 | 169 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.

The motion of defendant Smith & Wesson Brands, Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 69 ) is DENIED as to Rule 12(b)(1) and GRANTED as to Rule 12(b)(6). (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 170 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.

The motion of defendant Century International Arms, Inc. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 70 ) is DENIED without prejudice as moot. (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 171 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.

The motion of defendant Beretta U.S.A. Corp. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 73 ) is DENIED without prejudice as moot. (de Oliveira, Flaviana) (Entered: 09/30/2022) |
| 09/30/2022 | 172 | Transcript of Motion Hearing held on April 12, 2022, before Chief Judge F. Dennis Saylor IV. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Kathleen Silva at kathysilva@verizon.net. Redaction Request due 10/21/2022. Redacted Transcript Deadline set for |

| | | |
|---|---|---|
| | | 10/31/2022. Release of Transcript Restriction set for 12/29/2022. (Coppola, Katelyn) (Entered: 10/11/2022) |
| 09/30/2022 | 173 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 10/11/2022) |
| 10/01/2022 | 174 | Chief Judge F. Dennis Saylor, IV: ORDER entered. ORDER DISMISSING CASE. (de Oliveira, Flaviana) (Entered: 10/17/2022) |
| 10/26/2022 | 175 | NOTICE OF APPEAL as to 174 Order Dismissing Case by Estados Unidos Mexicanos Filing fee: $ 505, receipt number AMADC-9559901 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 11/15/2022. (Brunell, Richard) (Entered: 10/26/2022)** |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SMITH & WESSON BRANDS, INC.; | ) |
| BARRETT FIREARMS MANUFACTURING, | ) |
| INC.; BERETTA USA CORP.; CENTURY | ) |
| INTERNATIONAL ARMS, INC.; COLT'S | ) |
| MANUFACTURING COMPANY, LLC; | ) |
| GLOCK, INC.; STURM, RUGER & CO., INC.; | ) |
| and WITMER PUBLIC SAFETY GROUP, | ) |
| INC. d/b/a INTERSTATE ARMS, | ) |
| | ) |
| Defendants. | ) |

Civil Action No.
21-11269-FDS

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, C.J.**

This lawsuit involves claims against seven gun manufacturers and one wholesaler alleging the illegal trafficking of guns into Mexico. The plaintiff is the government of Mexico. The principal issue is whether the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-7903 *et seq.*—a statute passed with the express purpose of protecting the firearm industry from civil liability for the criminal misuse of its products—requires dismissal of the complaint.

Mexico's domestic gun laws are strict. There is only one gun store in the entire nation, and it issues fewer than 50 permits per year. Nonetheless, Mexico is suffering from an epidemic of gun-related violence. In 2003, it had fewer than 2,500 gun-related homicides per year. By 2019, that number had risen to 23,000. In 2019 alone, there were more than 3.9 million crimes

committed in Mexico with U.S.-manufactured guns.

The direct causes of that increase are, of course, the decisions of individual actors in Mexico to commit violent crimes. The indirect causes are no doubt many, but surely a substantial portion of the blame rests with American citizens. The rise of Mexican criminal organizations has been fueled by the unrelenting demand of Americans for illegal drugs, and those same organizations now play an ever-increasing role in the smuggling of illegal migrants across the border. The complaint here focuses on an additional indirect cause of that violence: the marketing and sales practices of American gun manufacturers and distributors.

According to the complaint, the increase in gun-related violence in Mexico is directly linked to the expiration of the U.S. ban on assault rifles in 2004. It alleges that when that ban expired, the production and manufacturing of firearms in the United States increased dramatically. In particular, gun manufacturers increased the production of military-style assault weapons, which are the type favored by criminal organizations. The complaint alleges that the manufacturers are aware of this and are "deliberate and willing participants, reaping profits from the criminal market they knowingly supply." (Compl. ¶ 16).

The complaint alleges that 70 to 90 percent of guns recovered at crime scenes in Mexico were trafficked from the United States, with defendants producing more than 68 percent of those guns. It further alleges that defendants are "fully on notice of the massive trafficking of their guns into Mexico" because it has been extensively documented in government reports and throughout the media. (*Id*. ¶ 6). According to the complaint, defendants have been nonetheless unwilling to implement any public-safety monitoring of their distribution systems to limit that illegal trafficking.

The complaint asserts claims against eight defendants. Seven are gun manufacturers—

Smith & Wesson, Beretta, Century Arms, Colt, Glock, Ruger, and Barrett.  The eighth defendant is Interstate Arms, a gun wholesaler and distributor.  All claims arise under state law, and include, among other things, claims for negligence, public nuisance, defective design, unjust enrichment, and violation of Connecticut and Massachusetts state consumer-protection statutes.

Defendants have moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  In addition, defendants have moved to dismiss based on lack of Article III standing pursuant to Fed. R. Civ. P. 12(b)(1).  Certain defendants have also moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Unfortunately for the government of Mexico, all of its claims are either barred by federal law or fail for other reasons.  The PLCAA unequivocally bars lawsuits seeking to hold gun manufacturers responsible for the acts of individuals using guns for their intended purpose.  And while the statute contains several narrow exceptions, none are applicable here.

This Court does not have the authority to ignore an act of Congress.  Nor is its proper role to devise stratagems to avoid statutory commands, even where the allegations of the complaint may evoke a sympathetic response.  And while the Court has considerable sympathy for the people of Mexico, and none whatsoever for those who traffic guns to Mexican criminal organizations, it is duty-bound to follow the law.

Accordingly, and for the reasons set forth below, the motions to dismiss will be granted.

I.    **Background**

A.    **Factual Background**

1.    **Parties**

Estados Unidos Mexicanos ("Mexico") is a foreign nation.  (Compl. ¶ 30).

Smith & Wesson Brands, Inc.; Barrett Firearms Manufacturing, Inc.; Beretta U.S.A.

Corp.; Century International Arms, Inc.; Colt's Manufacturing Company, LLC; Glock, Inc.; and

Sturm, Ruger & Co., Inc. are manufacturers and sellers of firearms. (*Id.* ¶¶ 31-39).

Witmer Public Safety Group, Inc., currently doing business as "Interstate Arms," is a

Boston-area wholesaler of firearms. (*Id.* ¶ 40). All defendant manufacturers, except Barrett, use

Interstate Arms to sell their guns for resale to gun dealers throughout the United States. (*Id.* ¶¶ 1,

31-40). Barrett's authorized dealer in Massachusetts is the Natick Outdoor Store. (*Id.* ¶ 32).

### 2. Defendants' Alleged Knowledge of Unlawful Trafficking of Guns to Mexico

According to the complaint, defendants are aware of the harmful effects their actions

have in Mexico. (*Id.* ¶¶ 115-226). Specifically, the complaint alleges that gun dealers utilize a

variety of practices that enable them to traffic guns to Mexico and that defendants are aware of

those practices. (*Id.* ¶ 118).

For example, the complaint alleges that defendants know that the gun dealers they sell to

engage in conduct such as "straw sales, multiple sales, repeat sales, and other business practices

that supply traffickers who arm the drug cartels." (*Id.*). It also alleges that both the public news

and government sources put defendants on notice of those practices and of the specific dealers

that routinely cross guns into Mexico utilizing those tactics. (*Id.* ¶¶ 119-22). That information

has been allegedly "spoon fed" to defendants because of its public nature. (*Id.* ¶ 121).

According to the complaint, news sources have published more than 3,000 articles since 2011 in

the United States alone that explain how defendants' products contribute to violence in Mexico.

(*Id.* ¶¶ 135, 139). Allegedly, those sources have also provided the names of particular dealers

whose guns are most commonly found in the hands of Mexican cartels. (*Id.* ¶¶ 119-20). The

complaint also details congressional, other governmental, and NGO data that is publicly

available. (*Id.* ¶¶ 137-40).

According to the complaint, defendants willfully refuse to utilize the resources available to them that would make the distribution and sale of firearms safer. (*Id*. ¶¶ 121-23). For example, it alleges that defendants could use ATF trace data to obtain more detailed information as to which dealers contribute to the illegal Mexican gun market, but choose not to. (*Id*. ¶¶ 123, 125). Instead, defendants allegedly capitalize on ATF's inability to monitor the entire industry and sell to dealers whose licenses should be revoked. (*Id*. ¶¶ 126-30). According to the complaint, defendants have resisted governmental efforts to address the public safety issues caused by the sale of their firearms. (*Id*. ¶¶ 141-44).

The complaint alleges that defendants intentionally allow the continued unlawful trafficking of guns into Mexico. (*Id*. ¶¶ 209; 377-95). Specifically, it alleges that the flow of guns into the illegal market is a "feature" and not a "bug." (*Id*. ¶ 384). According to the complaint, defendants have received at least $170 million annually from such sales. (*Id*. ¶ 389). It further alleges that research from the University of San Diego suggests that almost half of all licensed gun dealers would be forced to close shop if not for gun trafficking into Mexico. (*Id*. ¶ 395).

### 3.   Defendants' Alleged Conduct

The complaint alleges that defendants engage in multiple practices that are contrary to their obligations as manufacturers or sellers of dangerous goods. (*Id*. ¶¶ 227-376).

#### a.   General Distribution Practices

Defendants use three-tier distribution systems. (*Id*. ¶ 378). Defendants, as manufacturers, sell to distributors, who sell to retailers, who then sell to civilian end-users. (*Id*.). According to the complaint, defendants' distribution practices enable the unlawful trafficking of guns to Mexico for multiple reasons. (*Id*. ¶¶ 227-376).

First, the complaint alleges that defendants sell to "any and all" distributors with federal

licenses, ignoring potential "irresponsible" actors and the possible effects on public safety. (*Id.* ¶¶ 228-30). Second, it alleges that defendants' distribution and sales practices enable straw purchases, multiple and repeat sales, "kitchen-table sales," and unlawful sales at gun shows. (*Id.* ¶¶ 237-77).

A straw purchaser is someone who purchases a gun on behalf of the final intended recipients, who often are not lawfully permitted to purchase a gun themselves. (*Id.* ¶ 69). According to the complaint, straw purchasers are involved in the movement of the majority of the guns that end up illegally in Mexico. (*Id.* ¶ 237). Allegedly, straw purchases often occur in situations where defendants should have known they were dealing with such a purchaser and where additional training and diligence could have prevented the gun from being passed to criminals or other downstream users. (*Id.* ¶¶ 238-39). According to the complaint, defendants have taken no action to implement such training and diligence. (*Id.*).

Multiple sales occur when someone clusters gun purchases to buy multiple guns at the same time from the same dealer, which is further exacerbated by repeat sales to those customers. (*Id.* ¶ 251). According to the complaint, the multiple-sale buyer "transfers the guns to [persons] who do not want to submit to a background check." (*Id.*). The guns are then diverted to the criminal market and then trafficked illegally into Mexico. (*Id.* ¶ 252). The complaint further alleges that multiple sales often occur under circumstances that "indicate[] or should have indicated" that the guns "were destined for the unlawful market." (*Id.*). Defendants allegedly know the likely consequences of their actions, but still choose to "regularly allow their guns to be sold . . . as part of multiple purchases." (*Id.*). Congress and ATF have also acknowledged the "high-risk practice" of multiple sales because it is a common way that traffickers purchase guns to sell in the illegal market. (*Id.* ¶ 253). Various sources within the gun manufacturing

6

community have also allegedly acknowledged the role such sales play in fueling the illegal

market. (*Id.* ¶¶ 253-55).

The term "kitchen-table sales" refers to gun sales that occur outside of stores, such as at a

dealer's home or a parking lot. (*Id.* ¶ 258). According to the complaint, defendants allegedly

sell to dealers who make such sales, and who use the Internet to manage customer orders. (*Id.* ¶¶

258-59). This allows the dealer to act as a conduit between a manufacturer or distributor and the

ultimate purchasers without the legal restrictions placed on sellers at brick-and-mortar stores.

(*Id.* ¶¶ 259-60). Those types of sales result in almost a quarter of all ATF licensed-dealer

trafficking investigations, because many of those dealers allegedly capitalize on their relative

freedom to circumvent federal gun sale and reporting laws. (*Id.* ¶ 261). Despite awareness in the

industry about the effects of selling to dealers engaged in this practice, defendants allegedly

ignore the danger and continue their practice of selling to them without proper scrutiny. (*Id.* ¶¶

262-64).

Gun show sales occur when dealers purchase guns from other dealers and then sell them

at gun shows for cash without adhering to legal requirements. (*Id.* ¶ 276). Defendants are also

allegedly aware of and nonetheless ignore the industry "loophole" that gun shows represent. (*Id.*

¶ 273). This "virtually unregulated" process leads to a considerable number of guns being

illegally trafficked. (*Id.* ¶ 275).

### b.   **Gun Design**

The complaint highlights a variety of ways in which defendants allegedly design their

guns against the interest of public safety. (*Id.* ¶¶ 283-318).

### (1)   **Semi-Automatic Weapons**

Semi-automatic weapons that are available for civilian purchase were originally designed

to mirror the efficient and lightweight military weapons of the 1950s. (*Id.* ¶¶ 282-84). Those

guns utilize the same design as military weapons and permit rapid-fire emptying of magazines only slightly slower than fully automated weapons. (*Id.* ¶¶ 285, 288, 289).[1]  The complaint alleges that defendants know, or otherwise remain willfully blind to the fact, that their civilian semi-automatic weapons are easily converted into automatic weapons. (*Id.* ¶¶ 290-91). Allegedly, they choose designs that facilitate such illegal modification. (*Id.* ¶ 291).

### (2)    Military-Style Weapons

The complaint alleges that Barrett's .50 caliber sniper rifle "is a weapon of war." (*Id.* ¶ 292).  The gun was designed and marketed as "armor-penetrating" and employs ammunition five to ten times larger than that found in semi-automatic guns. (*Id.* ¶¶ 292, 296).  That ammunition, and the power the gun must possess to fire it, allows the rifle to hit a variety of non-civilian targets, such as aircraft, which it can do from up to 2,000 meters away. (*Id.* ¶¶ 296-97).[2]  For that reason, according to the complaint, the weapon is favored among a variety of criminal organizations, including Mexican drug cartels. (*Id.* ¶ 298).

The complaint further alleges that the Century Arms WASR-10 assault rifle is a military weapon because it is a "variant" of an AK-47 assault weapon. (*Id.* ¶ 300).  Allegedly, a Romanian company ships weapons to Century Arms in the United States, where the company modifies them with military-type features. (*Id.* ¶¶ 301-02).

### (3)    Machine Guns

Defendants Colt, Smith & Wesson, Ruger, and Century Arms allegedly sell AR-15 and AK-47 guns as semi-automatic weapons that can be easily modified to allow for automatic firing. (*Id.* ¶¶ 307-10).  The complaint alleges that this design feature is intentional and attractive

---

[1]According to the complaint, it takes two seconds to empty a large-capacity ammunition magazine in an automatic weapon and only five seconds to empty the same size magazine in a semi-automatic weapon. (*Id.* ¶ 289).

[2] The complaint includes a photograph of a helicopter allegedly shot down in Mexico by a criminal cartel member using the Barrett .50 caliber sniper rifle. (*Id.* ¶ 299).

8

to criminal organizations.  (*Id.* ¶ 312).  The complaint alleges that defendants "indiscriminately supply the civilian market" with semi-automatic guns that they know will be used by criminals in Mexico.  (*Id.* ¶ 318).

### (4)    Alterable Serial Numbers

Criminals often destroy or otherwise remove the serial numbers on guns to make them more difficult to track and detect.  (*Id.* ¶¶ 363-64).  Guns whose serial numbers are easily altered or removed are favored by Mexican criminal organizations because without a serial number, investigators often hit a dead end in retracing a gun's movements.  (*Id.* ¶ 364).  It is possible to create serial numbers that are impossible to remove or alter or to include an additional serial number hidden elsewhere on the gun.  (*Id.* ¶ 365).  According to the complaint, this was a stipulated portion of an agreement in 2000 between Smith & Wesson and the government.  (*Id.*).[3] The complaint alleges that because defendants benefit from the unlawful trafficking of guns, they do not implement strategies to avoid the destruction of serial numbers.  (*Id.* ¶ 366).

### (5)    Potential Safety Improvements

The complaint alleges that defendants exacerbate existing public-safety issues by failing to incorporate reasonable safety measures in their design, marketing, and distribution practices. (*Id.* ¶ 353).  It also alleges that there are practical steps defendants can take to improve the design of guns that would prevent them from being used improperly.  (*Id.* ¶¶ 356-59).  Moreover, according to the complaint, there would be no downside to defendants incorporating such features into their designs, as they would not prohibit lawful users from using the guns, and such features are technologically feasible.  (*Id.* ¶¶ 354, 357).  For example, according to the

---

[3] According to the complaint, on March 17, 2000, the federal government and various cities entered into a settlement agreement with Smith & Wesson in which the company accepted an obligation to sell to only "authorized distributors and authorized dealers" who abided by a code of conduct, including the requirement that the distributors and dealers store all trace requests and report them to the company.  (Compl. ¶ 94).

complaint, the Smith & Wesson 2000 Agreement included a provision under which the company agreed to develop guns that only a particular, intended user could fire.  (*Id.* ¶ 359).  Defendants have allegedly refused to take such measures and therefore, according to the complaint, sell guns that are "defective and unreasonably dangerous."  (*Id.* ¶¶ 355-56).

**c.   Marketing Practices**

According to the complaint, defendants have marketed and advertised their guns in an unsafe manner.  (*Id.* ¶¶ 319-22).

The complaint alleges that defendants "routinely" market their guns with military and law-enforcement images and language.  (*Id.* ¶ 322).  This has been referred to as the "halo effect" and allegedly allows defendants to "leverage" affiliations with military or police to increase civilian interest.  (*Id.* ¶ 323).  The complaint also alleges that the use of explicit military and law enforcement references, as well as references to a weapon's ability to function in "combat-like scenarios," attracts dangerous users or criminals.  (*Id.* ¶¶ 321-30).

There are several examples of these types of marketing practices in the complaint.  Smith & Wesson advertisements display "combat-like scenarios" and include statements such as "authentic Military & Police . . . design."  (*Id.* ¶ 324).  Colt advertisements market its "Trooper" assault rifle, discuss missions, and liken a civilian gun to its "combat-proven brother."  (*Id.* ¶ 325).  Barrett advertises its .50 caliber rifle as "battle proven" and capable of hitting targets 1800 meters away.  (*Id.* ¶ 326).  It also advertises its MRAD sniper rifle as "transform[ing] the military platform to fit civilian precision shooters."  (*Id.* ¶¶ 326-27).  Century Arms "emphasizes that its WASR-10 gun is based on a design used by 'Romanian ranger teams,' " includes "Paratrooper" in a civilian gun name, and highlights their gun's ability to "eat more ammo."  (*Id.* ¶ 328).[4]

---

[4] According to the complaint, "eat more ammo" indicates the gun's capacity for rapid-pace, high-output shooting that, allegedly, would be neither necessary nor desired for the average civilian buyer.  (*Id.* ¶ 328).

Glock uses military uniforms, associates with police, and discusses "tactical" uses to advertise its guns. (*Id.* ¶ 329). Interstate Arms refers to itself as a seller of "military-style" guns. (*Id.* ¶ 330).

In addition, according to the complaint, Colt specifically markets its guns in ways that specifically entice Mexican criminal cartels. (*Id.* ¶¶ 215-21). Colt sells three guns that it intends for Mexican buyers: the "El Jefe" pistol, the "El Grito" pistol, and the "Emiliano Zapata 1911" pistol. (*Id.* ¶ 215). Allegedly, these "models are status symbols and coveted by the drug cartels." (*Id.*).

According to the complaint, defendants utilize these marketing tactics while knowing that they are "disproportionately" attractive to criminal organizations. (*Id.* ¶ 331).

### 4.    Alleged Injuries to the Mexican Government

The complaint alleges "massive" injury to the Mexican government as a result of defendants' conduct. (*Id.* ¶ 446).

#### a.    General Harm

The complaint alleges that an estimated 342,000-597,000 guns sold by defendants are smuggled illegally into Mexico from the United States each year. (*Id.* ¶¶ 437-38). It also states that Mexico now ranks third in the world for number of gun-related deaths. (*Id.* ¶ 453).

The complaint alleges a direct link between the increasing violence in Mexico and defendants' conduct. (*Id.* ¶¶ 434-45). It specifically shows a correlation between the increase in gun manufacturing in the United States, after the ban on assault-weapons expired in 2004, and (1) the number of illegal guns within Mexico, (2) the Mexican homicide rate, and (3) the increased use of guns for homicide. (*Id.* ¶¶ 440-44).

#### b.    Specific Claimed Injuries

According to the complaint, the Mexican government "has had to spend vast funds on a wide range of services to fight the effects of Defendants' unlawful conduct," including

11

"substantial and unusual costs for providing, for example, extraordinary health care, law enforcement and military services, criminal justice administration, public assistance, and other social services and public programs." (*Id.* ¶ 447).

Specifically, the complaint alleges that the Mexican government has suffered the following injuries:

a. Losses caused by the decrease in funding available for other public services because the funds were diverted to services designed to address the effects of Defendants' conduct;

b. Costs of providing healthcare and medical care;

c. Costs of additional and specialized training for military and police;

d. Costs associated with the deaths of and substantial injuries to police and military personnel;

e. Costs of mental-health services, treatment, counseling, rehabilitation services, and social services to victims and their families;

f. Costs of law enforcement and public safety . . . ;

g. Costs of the increased burden on the Government's judicial system, including increased security, increased staff, and the increased cost of adjudicating criminal matters due to the escalating levels of crime caused by Defendants' conduct;

h. Costs of providing care for children whose parents were victims of Defendants' conduct;

i. Losses from the decreased efficiency and size of the working population in Mexico;

j. Losses from the diminished property values in the communities affected by Defendants' conduct;

k. Losses from decreased business investment and economic activity;

l. Losses incurred by the Government acting in its commercial capacity, including from armed attacks on employees of state-owned enterprises and compensation paid to such victims.

(*Id.* ¶ 448).

### B.   Procedural Background

The complaint asserts nine counts, seven of which are against all defendants. Count 1 asserts a claim for negligence based on gun design, marketing, and distribution. (*Id.* ¶¶ 506-10). Count 2 asserts a claim for public nuisance based on the increase in violence tied to defendants' alleged behavior. (*Id.* ¶¶ 511-19). Count 3 asserts a claim for defective design based on the allegedly unreasonably dangerous design of defendants' guns. (*Id.* ¶¶ 520-22). Count 4 asserts a claim for negligence *per se* involving defendants' gun-distribution systems. (*Id.* ¶¶ 523-26). Count 5 asserts a claim for gross negligence. (*Id.* ¶¶ 527-32). Count 6 asserts a claim for unjust enrichment and restitution, based on defendants' profits and gains from the sale of illegally trafficked guns. (*Id.* ¶¶ 533-41). Count 7 asserts a claim against defendant Colt for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*. (*Id.* ¶¶ 542-48). Count 8 asserts a claim against defendant Smith & Wesson for violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. (*Id.* ¶¶ 549-56). Count 9 asserts a claim for punitive damages against all defendants. (*Id.* ¶¶ 557-60).

Defendants have filed multiple motions to dismiss. All defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of Article III standing and failure to state a claim upon which relief can be granted. Interstate Arms and Smith & Wesson have separately moved to dismiss for failure to state a claim. Ruger, Century Arms, Glock, and Beretta have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Barrett and Colt have moved to dismiss for both lack of personal jurisdiction and failure to state a claim.[5]

For the reasons set forth below, although plaintiff has made a sufficient showing of

---

[5] On December 31, 2021, plaintiff voluntarily dismissed its claims against two foreign corporations named as defendants (Beretta Holding S.p.A and Glock Ges.m.b.H).

standing for the complaint to survive a motion to dismiss, all counts will be dismissed for failure

to state a claim upon which relief can be granted. The court need not reach the motions to

dismiss for lack of personal jurisdiction. *See Johnson v. Andrews*, 1994 WL 455013, at *4 (D.

Mass. Aug. 17, 1994); *In re Vitamins Antitrust Litig.*, 2001 WL 849928, at *11 (D.D.C. Apr. 11,

2001); *see also* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &

PROCEDURE § 1067.6 (4th ed.) (stating that a court can "resolv[e] the suit on the merits when they

clearly must be decided in favor of the party challenging [personal] jurisdiction, thereby

obviating any need to decide the [jurisdictional] question").

## II.    Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the

jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United*

*States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st

Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for

jurisdiction," the motion to dismiss must be granted. *Id.* When ruling on a motion to dismiss

under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and

draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50,

54 (1st Cir. 2010).

### B.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a

claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief

above the speculative level . . . ." *Id.* at 555 (cleaned up). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.    **Analysis**

### A.    **Article III Standing**

Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992). To satisfy the case-or-controversy requirement of Article III of the Constitution, plaintiffs bear the burden of establishing that they (1) have suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent;" (2) that the injury is " 'fairly traceable' to the actions of the defendant;" and (3) that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). Those elements must be proved "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Defendants only contest the second requirement: they contend that the harms alleged are not "fairly traceable" to their actions.

The "fairly traceable" component of constitutional standing examines the causal connection between the assertedly unlawful conduct and the alleged injury. *See California v. Texas*, 141 S. Ct. 2104, 2113-14 (2021) (explaining that plaintiff failed to show how defendant's "action or conduct has caused or will cause the injury" for which they seek redress). One critical question is whether the "causal relation between [the] injury and challenged action depends upon the decision of an independent third party." *California v. Texas*, 141 S. Ct. at 2117; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (explaining that the Court has been "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment"). However, even if the causal relation depends on the actions of independent third parties, "standing is not precluded," but rather is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (cleaned up). To satisfy the element of causation, the plaintiff must at least show "that third parties will likely react in predictable ways," even where such actions are unlawful. *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019).

Here, plaintiff contends that the Mexican government and its citizens "have been victimized by a deadly flood" of firearms from the United States "into criminal hands in Mexico" as a consequence of defendants' "deliberate actions and business practices." (Compl. ¶ 2). According to the complaint, defendants "design, market, distribute, and sell guns in ways they know routinely arm the drug cartels in Mexico." (*Id.* ¶ 3). Specifically, the complaint alleges that the trafficking of firearms into Mexico, and the resulting violence, are the direct product of the intentional sales practices of defendants. (*Id.* ¶ 3).

The causal relation between the harm alleged and defendants' conduct depends upon the decisions of multiple independent parties—that is, the decisions of distributors to sell to retailers; the decisions of those retailers to sell to straw purchasers or similar persons; the decisions of

16

those purchasers to transfer weapons to cartel members or other criminal actors; and the

independent choices of those individuals to engage in criminal behavior.  And the chain of

causality does not stop there.  The plaintiff is not an individual victim of gun violence; it is the

Mexican government, which alleges a series of consequential harms arising out of that violence,

such as increased costs for health care and law enforcement.

Nonetheless, the complaint sufficiently alleges—at least for standing purposes—that

those third parties "will likely react in predictable ways," even if unlawfully.  *Department of

Commerce*, 139 S. Ct. at 2556.  The complaint alleges that 70 to 90 percent of guns that are

recovered at crime scenes in Mexico were trafficked from the United States, and that defendants

produce more than 68 percent of those trafficked guns.  (Compl. ¶¶ 1,5).  It further alleges that

defendants' policy is "to sell to any distributor or dealer that has a U.S. license to buy and sell

the product, regardless of the buyer's record of flouting the law and despite blazing red flags

indicating that a gun dealer is conspiring with straw purchasers or others to traffic Defendants'

guns into Mexico."  (*Id.* ¶ 7).

Furthermore, the complaint alleges throughout that violence in Mexico is a predictable, or

"foreseeable," result of defendants' actions.  (*See, e.g.*, *id.* ¶¶ 2, 50, 80, 87, 356).  For example,

section five of the complaint—titled "DEFENDANTS ARE FULLY ON NOTICE THAT

THEIR CONDUCT CAUSES UNLAWFUL TRAFFICKING TO MEXICO"—provides

examples of reports and articles that publicly revealed which gun dealers were the biggest

contributors to the illegal gun market in Mexico.  (*Id.* ¶ 120).  (*See also id.* ¶ 122 ("Defendants

regularly receive even more direct information about problem dealers.  Trace requests from ATF

and other agencies alert Defendants that guns they sell to specific distributors and dealers are

being recovered at crime scenes in Mexico.")).

The causation requirement of Article III standing "requires no more than *de facto* causality." *Department of Commerce*, 139 S.Ct. at 2566 (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)); *Bennett v. Spear*, 520 U.S. at 167-68. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Bennett v. Spear*, 520 U.S. at 168 (cleaned up). Under the circumstances, the requirement of *de facto* causation is satisfied here.

Accordingly, the complaint plausibly alleges that Mexico's injuries are "fairly traceable" to defendants' conduct for purposes of Article III standing.

## B.     The Protection of Lawful Commerce in Arms Act

The PLCAA was enacted in 2005. (Pub. L. No. 109-92, 119 Stat. 2095). The statute contains a lengthy preamble setting forth various congressional findings and statutory purposes. 15 U.S.C. § 7901. Among those findings is the following:

> (5) Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not and should not be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

> (6) The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

> (7) The liability actions commenced or contemplated by the Federal Government . . . and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States.

*Id*. § 7901(a)(5)-(7).

Among the stated purposes of the statute is to "prohibit causes of action against manufacturers [and] distributors . . . of firearms . . . for the harm solely caused by the criminal or unlawful misuse of firearm products . . . by others when the product functioned as designed and intended." *Id*. § 7901(b)(1).

As relevant here, the statute provides that a "qualified civil liability action may not be brought in any Federal or State court." *Id*. § 7902(a). The term "qualified civil liability action" is defined to mean "a civil action or proceeding . . . brought by any person against a manufacturer or seller" of a firearm "for damages, punitive damages, injunctive or declaratory relief," or other relief, "resulting from the criminal or unlawful misuse" of a firearm by the person or a third party," subject to certain exceptions. *Id*. § 7903(5)(A).

For the following reasons, the Court finds that the PLCAA applies to this case and therefore, at a minimum, Counts 1-6 and Count 9 must be dismissed.

### 1.    Choice-of-Law Analysis

Plaintiff first contends that under choice-of-law principles, tort claims are generally governed by the law of the place where the injury occurred, and therefore Mexican law, not the PLCAA, should apply to this dispute. That argument may be disposed of summarily: because the PLCAA is a jurisdiction-stripping statute, no choice-of-law analysis is necessary.

Statutes that "completely prohibit" certain types of actions or that "address[] 'a court's competence to adjudicate a particular category of cases' " are "best read as jurisdiction-stripping statute[s]." *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (quoting *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 316 (2006)). To determine whether a statute is jurisdictional, the court must look to the language used and whether the statute "imposes jurisdictional consequences."

19

*Patchak*, 138 S. Ct. at 905. A statute can be jurisdictional even if it does not use the word "jurisdiction." *See id.* ("Although § 2(b) does not use the word 'jurisdiction,' this Court does not require jurisdictional statutes to 'incant magic words.' " (citation omitted)). Examples of jurisdictional language include: "an action shall not be filed or maintained in a Federal court;" "an appeal may not be taken;" "no person shall file or prosecute;" and "no action shall be brought under." *See Patchak*, 138 S. Ct. at 905-06 (collecting cases). An example of "jurisdictional consequences" includes a directive by Congress, in the statute, that pending actions concerning the statute's scope "shall be promptly dismissed." *Id.* at 905.

By its plain terms, the PLCAA limits the types of lawsuits that can be brought against gun manufacturers and distributors in federal and state court. Specifically, the PLCAA states that a "qualified civil liability *action may not be brought in any* Federal or State court." 15 U.S.C. § 7902(a) (emphasis added). The PLCAA also provides that any such pending action, as of the date of enactment, must be "immediately dismissed by the court." 15 U.S.C. § 7902(b).[6] The PLCAA, therefore, is a jurisdictional statute. And because it bars exactly this type of action from being brought in federal and state courts, no choice-of-law analysis is necessary.

## 2.   Presumption Against Extraterritoriality

Plaintiff further contends that the PLCAA does not apply when the lawsuit is brought by a foreign government for harms that primarily occurred in a foreign country. To resolve that question, the Court must consider whether the presumption against extraterritoriality applies.

"It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United

---

[6] The Court recognizes that the Second Circuit reached an opposite conclusion in *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127 (2d Cir. 2011). However, since that opinion, the Supreme Court clarified in *Patchak* that a statute employing language such as "no action shall be brought under," and instructing that all covered pending actions must be dismissed upon enactment, is jurisdictional in nature. As noted, the PLCAA has both jurisdictional language and jurisdictional consequences.

States.' " *E.E.O.C. v. Arabian Am. Oil Co.*, <u>499 U.S. 244, 248</u> (1991) (quoting *Foley Bros., Inc. v. Filardo*, <u>336 U.S. 281, 285</u> (1949)).  "This principle finds expression in a canon of statutory construction known as the presumption against extraterritoriality:  Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty.*, <u>579 U.S. 325, 335</u> (2016) (citation omitted). The main objective of the presumption against extraterritoriality is "to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Arabian Am. Oil Co.*, <u>499 U.S. at 248</u>.

The Supreme Court has developed a two-step test to examine whether a given statute applies extraterritorially.  *See RJR Nabisco*, <u>579 U.S. at 337</u>.  The first step examines whether Congress included explicit language in the statute that allows it to be applicable to conduct in foreign nations.  *See id.* at 337.  If a court does not find "affirmative and unmistakable" language in the statute that makes it applicable extraterritorially, *see id.* at 335, then, at the second step, the courts must determine the statute's "focus" and "whether the conduct relevant to that focus occurred in United States territory," *WesternGeco LLC v. ION Geophysical Corp.*, <u>138 S. Ct. 2129, 2136</u> (2018).  If the relevant conduct occurred within United States territory, then the "case involves a permissible domestic application of the statute" and the presumption does not apply. *WesternGeco LLC*, <u>138 S. Ct. at 2136</u>.

### a.    <u>Step One</u>

As to the first step, "the question is not whether we think Congress would have wanted a statute to apply to foreign conduct . . . but whether Congress has affirmatively and unmistakably instructed that the statute will do so.  When a statute gives no clear indication of an extraterritorial application, it has none." *RJR Nabisco*, <u>579 U.S. at 335</u> (quoting *Morrison v. National Australia Bank Ltd.*, <u>561 U.S. 247, 255</u>, <u>261</u> (2010)) (cleaned up).  General references

to "foreign commerce" or the use of generic terms such as "any" are not sufficient to defeat the presumption against extraterritoriality. *See Morrison*, 561 U.S. at 262-63; *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013).

The relevant portions of the PLCAA are §§ 7902 and 7903. As noted, § 7902 of the PLCAA bars any "qualified civil liability action" in any United States court. A "qualified civil liability action" includes "a civil action or proceeding" brought by "any person" against gun manufacturers or sellers. 15 U.S.C. § 7903(5)(a). "Person" is defined as "any individual, corporation, . . . or *any other entity, including any governmental entity*." § 7903(3) (emphasis added).

The PLCAA thus explicitly bars *any* governmental entity from bringing a civil action in any United States court against gun manufacturers or sellers. Nonetheless, "it is well established that generic terms like 'any' . . . do not rebut the presumption against extraterritoriality." *Kiobel*, 569 U.S. at 118; *see also id.* (explaining that "the fact that the text [of the statute] reaches '*any* civil action' " does not suggest application to torts committed abroad). Accordingly, the use of the word "any" throughout the PLCAA is not sufficient to rebut the presumption.

Similarly, the PLCAA also contains numerous references to "foreign commerce." For example, both the congressional findings and purposes set out in § 7901 use the term, and one of the explicit statutory purposes is to "prevent the use of such lawsuits to impose unreasonable burdens on interstate and *foreign* commerce." § 7901(b)(4) (emphasis added); *see also* § 7903(2) (defining "manufacturer" to include "a person who is engaged in the business of manufacturing the product in interstate or *foreign* commerce" (emphasis added)). Again, however, such general references are not sufficient to overcome the presumption. *See Morrison*, 561 U.S. at 262-63 (explaining that "we have repeatedly held that even statutes that contain

22

broad language in their definitions of 'commerce' that expressly refer to '*foreign* commerce' do not apply abroad" (cleaned up)).

Thus, there are insufficient indications in the text of the PLCAA to overcome the presumption against extraterritoriality. The Court will therefore turn to step two of the analysis.

**b.** <u>**Step Two**</u>

At the second step, the court must examine "whether the case involves a domestic application of the statute;" this is done by "looking to the statute's 'focus.'" *RJR Nabisco*, <u>579 U.S. at 337</u>. "The focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *WesternGeco LLC*, <u>138 S. Ct. at 2137</u> (cleaned up). "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad . . . ." *RJR Nabisco*, <u>579 U.S. at 337</u>. That is, "[e]ven where the significant effects of the regulated conduct are felt outside U.S. borders, the statute itself does not present a problem of extraterritoriality, so long as the conduct which Congress seeks to regulate occurs largely within the United States." *Environmental Def. Fund, Inc. v. Massey*, <u>986 F.2d 528, 531</u> (D.C. Cir. 1993). Thus, when the conduct regulated by the statute occurs within the United States, the presumption against extraterritoriality does not apply. *See Massey*, <u>986 F.2d at 531</u>.

In *WesternGeco LLC v. ION Geophysical Corp.*, the Supreme Court examined the Patent Act, which provides damages for patent infringement. <u>138 S.Ct. 2129</u> at 2137-39. The court found that patent infringement was "plainly the focus" of that statute. *Id.* at 2137. And it determined that the specific conduct that constituted the infringement was the act of exporting components from the United States. *See id.* at 2138 ("[I]t was ION's domestic act of supplying the components that infringed WesternGeco's patents."). Because the "conduct [] that is relevant

to [the statute's] focus clearly occurred in the United States," it found that this was a domestic application of the Patent Act and the presumption did not apply. *Id.* at 2138-2139. It did not matter that there were other "incidental" "overseas events" or that the profits lost were "foreign profits." *Id.* at 2138-39.

Similarly, in *Environmental Defense Fund, Inc. v. Massey*, the D.C. Circuit determined that the statute at issue in that case was not subject to the presumption against extraterritoriality because the decision-making processes that it regulated took place "almost exclusively in this country" and "involve[d] the workings of the United States government." 986 F.2d at 532. In other words, because the statute regulated a "particular process" that was "uniquely domestic," the presumption did not apply. *Id.*

The focus of the PLCAA is both the civil actions that it "seeks to regulate" and the commercial activity and constitutional rights it "seeks to protect." *See Morrison*, 561 U.S. at 267; *WesternGeco*, 138 S. Ct. at 2137; 15 U.S.C. § 7901(b)(1), (6). That is, the PLCAA seeks to regulate the types of claims that can be asserted against firearm manufacturers and sellers and seeks to protect the interests of the United States firearms industry and the rights of gun owners. Indeed, the statute seeks to prohibit exactly the type of claim that is currently before this Court.

The PLCAA therefore seeks to regulate a "particular process" of government that is "uniquely domestic": the types of cases that can be brought in United States courts against domestic gun manufacturers and distributors. *See Massey*, 986 F.2d at 532; 15 U.S.C. §§ 7902(a), 7903(5)(A). The regulation of the types of cases that can be brought in federal and state courts against domestic defendants is unquestionably a domestic matter. It is the type of conduct that "touch[es] and concern[s] the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 569 U.S. at 124-25.

24

Furthermore, the conduct of defendants for which plaintiff seeks to hold defendants liable occurred in the United States. The complained-of practices—such as the manufacture of certain types of guns, the marketing of guns in a manner intended to appeal to criminal organizations, and the sale of guns through distribution networks that facilitate the transfer to such organizations—all occurred entirely within the borders of the United States. Mexico is seeking to hold defendants liable for practices that *occurred* within the United States and only *resulted* in harm in Mexico.

In short, "the conduct relevant to the statute's focus occurred in the United States." *RJR Nabisco*, 579 U.S. at 337. Therefore, this case "involve[s] a permissible domestic application" of the PLCAA, "even if other conduct occurred abroad," *id.*, and even if the "significant effects of the regulated conduct are felt outside U.S. borders," *Massey*, 986 F.2d at 531.

This case thus represents a valid domestic application of the PLCAA, and the presumption against extraterritoriality does not apply.[7]

### 3. Application of General Prohibition of the PLCAA

There is no doubt that the general prohibition of the PLCAA applies to this lawsuit. It is unquestionably a "qualified civil liability action"—that is, "a civil action or proceeding . . . brought by any person against a manufacturer or seller" of a firearm "for damages, punitive damages, injunctive or declaratory relief," or other relief, "resulting from the

---

[7] In determining whether the presumption applied, the D.C. Circuit in *Massey* also considered whether "the failure to extend the scope of the statute to a foreign setting [would] result in adverse effects within the United States." *Massey*, 986 F.2d at 531. In particular, the court discussed the Sherman Antitrust Act, 15 U.S.C. §§ 1-7 (1976), and the Lanham Trademark Act, 15 U.S.C. § 1051 *et. seq.* (1976), as "prime examples" of when avoiding "negative economic consequences within the United States" was sufficient reason to extend a statute extraterritorially. *Massey*, 986 F.2d at 531. If the PLCAA did not apply to the claims by Mexico, and this lawsuit were to succeed, there would be economic consequences within the United States, which would clearly undermine the intent of Congress. *See* 15 U.S.C. § 7901(a)(6) (stating that lawsuits against firearm manufacturers "invite[] the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitute[] an unreasonable burden on interstate and foreign commerce of the United States").

criminal or unlawful misuse" of a firearm by the person or a third party."   15 U.S.C.
§ 7903(5)(A).  Such a lawsuit "may not be brought in any Federal or State court."  *Id*. § 7902(a).
Accordingly, for the claims to survive a motion to dismiss, an exception to the statute must
apply.

### 4.    **Statutory Exceptions**

The PLCAA contains six exceptions that permit civil actions against gun manufacturers
and distributors.  15 U.S.C. § 7903(5)(A)(i)-(vi).  Of those six, three are potentially applicable
here.

### a.    **Predicate Exception**

The first potentially applicable exception is the so-called "predicate exception."  15
U.S.C. § 7903(5)(A)(iii).[8]  That exception excludes from the definition of "qualified civil
liability action" any

> action in which a manufacturer or seller of a qualified product knowingly violated
> a State or Federal statute *applicable to the sale or marketing of the product*, and
> the violation was a proximate cause of the harm for which relief is sought,
> including –
>
> > (I) any case in which the manufacturer or seller knowingly made
> > any false entry in, or failed to make appropriate entry in, any
> > record required to be kept under Federal or State law with respect
> > to the qualified product, or aided, abetted, or conspired with any
> > person in making any false or fictitious oral or written statement
> > with respect to any fact material to the lawfulness of the sale or
> > other disposition of a qualified product; or
> >
> > (II) any case in which the manufacturer or seller aided, abetted, or
> > conspired with any other person to sell or otherwise dispose of a

---

[8] Courts refer to § 7903(5)(A)(iii) as the "predicate exception" because it requires "proof of a knowing
violation of a 'predicate statute.' "  *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1224 (D. Colo. 2015)
(quoting *Ileto v. Glock*, 565 F.3d 1126, 1132 (9th Cir. 2009)).  *See also City of New York v. Beretta U.S.A. Corp.*,
524 F.3d 384, 390 (2d Cir. 2008); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 168 (D.C. 2008)
("[O]ther courts construing [the section's] language, have referred to subsection (5)(A)(iii) as the 'predicate
exception' to the PLCAA because, to take effect, it requires that the manufacturer or seller have committed an
underlying (or predicate) statutory violation.").

> qualified product, knowing, or having reasonable cause to believe,
> that the actual buyer of the qualified product was prohibited from
> possessing or receiving a firearm or ammunition under subsection
> (g) or (n) of section 922 of Title 18 . . . .

15 U.S.C. § 7903(5)(A)(iii)(I)-(II) (emphasis added).  The term "qualified product," as applied

here, means a firearm.  15 U.S.C. § 7903(4).

      The predicate exception applies only to "statutes," not common-law causes of action.  To

the extent, therefore, that the complaint asserts claims for negligence or other causes of action

arising under common law, the exception does not apply.  Indeed, the claims asserted in Counts

1 through 6 and Count 9 are not claimed to arise under any federal or state statute.  The only

statutory claims asserted are set forth in Count 7, which alleges a claim against Colt under the

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*., and Count 8, which

alleges a claim against Smith & Wesson under the Massachusetts Consumer Protection Act,

Mass. Gen. Laws ch. 93A.

      Both CUTPA and Chapter 93A are consumer-protection statutes that generally prohibit

unfair and deceptive acts or practices.  The question is thus whether those statutes should be

considered "applicable" to the sale or marketing of firearms, and thus fall within the predicate

exception.

      The Second Circuit interpreted the predicate exception in *City of New York v. Beretta*

*U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008).  The court began by noting that the general language

in § 7903(5)(A) is followed by more specific language that refers to statutes that regulate the

firearms industry in specific ways (for example, requiring recordkeeping and prohibiting the sale

of firearms to certain purchasers).  *Beretta*, 524 F.3d at 402.  Because of that, the court

concluded that the "general term—'applicable to'—should be construed to embrace only objects

similar to those enumerated by sections 7903(5)(A)(iii)(I) and (II)" and therefore "to mean

<div align="center">27</div>

statutes that clearly can be said to regulate the firearms industry," as opposed to any federal or state statute that is "capable of being applied" to the sale or marketing of firearms. *Id.* at 402-03 (cleaned up). The court explained that such a reading would also "more accurately reflect[] the intent of Congress." *Id.* at 402.

The court further observed that reading the predicate exception to include any law "capable of being applied to" the sale or marketing of firearms would "allow the predicate exception to swallow the statute." *Id.* at 403. And such a reading would go against the "interpretive principle that statutory exceptions are to be construed narrowly in order to preserve the primary operation of the general rule." *Id.* at 403 (cleaned up) (citing *Commissioner v. Clark*, 489 U.S. 726, 739 (1989)).

The court then held that the New York criminal-nuisance statute was a statute of general applicability that had never been applied to firearms suppliers, and therefore did not fall within the exception. *Id.* at 400, 404. It went on to hold, however, that the predicate exception encompasses not only those statutes that "expressly regulate firearms," but also those that "courts have applied to the sale and marketing of firearms" or that "do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *Id.* at 404.

As the dissent in *Beretta* pointed out, the court's approach creates a number of ambiguities and other issues that (in the dissenting judge's view) would have been better resolved by certifying a question to the New York Court of Appeals whether the statute at issue is "applicable to the sale and marketing of firearms." *Id.* at 408 (Katzmann, J., dissenting).

In any event, there are reasons to conclude that Congress did not intend the predicate exception of the PLCAA to permit lawsuits based on violations of generally applicable state statutes that do not specifically address firearms. *See Soto v. Bushmaster Firearms Int'l, LLC*,

28

331 Conn. 53, 162 (2019) (Robinson, J., dissenting) (concluding that the predicate exception does not apply to consumer-protection statutes of general applicability).  There are also reasons to conclude, as the *Beretta* court did, that generally applicable statutes that "have [been] applied" in the past to the sale or marketing of firearms, or that "clearly can be said to implicate the purchase and sale of firearms," fall within the exception.  *Beretta*, 524 F.3d at 404.  Indeed, the Connecticut Supreme Court has held that CUTPA qualifies as a "sale or marketing" statute that falls within the exception.  *Soto*, 331 Conn. at 125, 129.[9]

Rather than resolve the issue, the Court will assume, for present purposes, that the predicate exception applies to the two state statutory claims.  However, because Count 1 (negligence), Count 2 (public nuisance), Count 3 (defective design), Count 4 (negligence *per se*), Count 5 (gross negligence), Count 6 (unjust enrichment and restitution), and Count 9 (punitive damages) all involve common-law, not statutory, claims, they do not fall within the predicate exception set forth in § 7903(5)(A)(iii).

### b.    Negligence *Per Se* Exception

The second potentially applicable exception to the general prohibition is set forth in § 7903(5)(A)(ii), which (as relevant here) permits an action "against a seller for . . . negligence *per se*."  15 U.S.C. § 7903(5)(A)(ii).  That exception, however, is inapplicable for at least three reasons.

First, the exception clearly does not apply to the seven defendants who are manufacturers of firearms.  The exception applies only to claims against "a seller," which is a defined term; by

---

[9] *Soto* involved a lawsuit by victims of gun violence, rather than a governmental entity alleging that it suffered indirect harms from such acts.  *Cf. Ganim v. Smith & Wesson Corp.*, 258 Conn. 313 (2001).  The predicate exception also requires that "the violation [of the statute]" must be "a proximate cause of the harm for which relief is sought."  § 7903(5)(A)(iii).  As set forth below, the Connecticut Supreme Court held in *Ganim* that a governmental entity does not have statutory standing under CUTPA to assert relief for injuries to citizens caused by gun violence. It is therefore doubtful whether the proximate-cause requirement could be satisfied even if CUTPA falls within the predicate exception.

contrast, the predicate exception applies to claims against "a manufacturer or seller." *Id.*

§§ 7903(5)(A)(ii), (iii). That distinction must be presumed to be meaningful, and to reflect a

deliberate intent on the part of Congress that the exception should not apply to "manufacturers."

*See Duncan v. Walker*, 533 U.S. 167, 173 (2001) (stating that "where Congress includes

particular language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

exclusion" (cleaned up)); *see also* 15 U.S.C. § 7903(5)(C) ("The exceptions [in the PLCAA]

shall be construed so as not to be in conflict . . . .").

The PLCCA defines a "seller," as relevant here, to mean "a dealer (as defined in section

921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign

commerce and who is licensed to engage in the business as such a dealer under chapter 44 of

Title 18." 15 U.S.C. § 7903(6)(B). Section 921(a)(11), in turn, defines "dealer" in part as "any

person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11)

The same statute defines "manufacturer" in part as "any person engaged in the business of

manufacturing firearms or ammunition for purposes of sale or distribution." *Id.* § 921(a)(10).

Again, that demonstrates a congressional intent to distinguish between "sellers" and

"manufacturers."

It is true, of course, that manufacturers sell products, and that therefore in a general sense

all manufacturers are sellers. But if the statute were interpreted so that all manufacturers were

included in the statutory definition of "seller," the statutory distinction between "manufacturers"

and "sellers" would be meaningless, and render the definition of "manufacturer" in § 921(a)(11)

entirely redundant. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining that a

"statute should be construed so that effect is given to all its provisions, so that no part will be

30

inoperative or superfluous, void or insignificant" (cleaned up)).

It is also true that a "manufacturer" may also be a "seller."  But there is nothing in the complaint—other than the general allegation that each of the seven manufacturers is a "manufacturer and seller" of firearms, *see* Compl. ¶¶ 31-39—that plausibly suggests that those manufacturers satisfy the statutory definition of "seller."  In particular, none of the seven is alleged to be "engaged in the business of selling firearms at wholesale or retail," or to possess the necessary licenses to do so.  To the contrary, a central focus of the complaint is the allegation that the manufacturers use a three-tier distribution system to *avoid* being in the business of wholesaling or retailing firearms.  For example, the complaint alleges the following:

> Manufacturer Defendants generally use a three-tier distribution:  (1) manufacturers sell guns to distributors, (2) distributors then sell guns to retailers, and (3) retailers sell guns to civilian purchasers.  This system is not required by law.  Manufacturers could sell guns through their own dealerships (and they sometimes have) or maintain in-house distribution departments that sell to dealers (some do, for some sales).  But they choose not to.

(Compl. ¶ 378).

In short, the complaint does not plausibly allege that any of the seven manufacturers are "sellers" within the meaning of the "negligence *per se*" exception of § 7903(A)(5)(ii).  At most, Interstate Arms (which is alleged to be a wholesaler and distributor of firearms, *see* Compl. ¶¶ 40-41) could qualify as a "seller" within the meaning of the exception.

Second, the exception applies to actions for negligence *per se*.  Count 4 alleges such a cause of action in general terms, without identifying the law of any particular jurisdiction.  There is no federal common law, and the statute itself creates no cause of action; therefore, such a cause of action must arise under the law of one or more states.  *See* 15 U.S.C. § 7903(5)(C) ("no provision of this chapter shall be construed to create a public or private cause of action or remedy"); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) (stating

that any claim that falls within the exception must arise under state law). Neither the complaint

nor plaintiff's opposition to the motion to dismiss identifies what state (or states) that might be.

Because plaintiff filed this action in Massachusetts, and because no party has argued for the

application of the law of any other jurisdiction, the Court will apply Massachusetts law.[10]

Under Massachusetts law, negligence *per se* is not an independent cause of action. *See*

*Deutsche Lufthansa AG v. Massachusetts Port Auth.*, 2018 WL 3466938, at *2 (D. Mass. July

18, 2018) ("The Supreme Judicial Court has repeatedly reaffirmed the principle that negligence

*per se* does not exist as a cause of action independent from a general negligence action . . . .").

Rather, under Massachusetts law, a statutory violation "can only be some evidence of the

defendant's negligence." *Deutsche*, 2018 WL 3466938, at *2. Thus, as to any statutory

violations that plaintiff contends constitutes negligence *per se*, the exception is not applicable

under Massachusetts law.

Finally, and in any event, even if the Court considers negligence *per se* as an abstract

principle, disconnected from the law of any state, the exception still would not apply. Generally,

a claim for negligence *per se* applies only where an actor "violates a statute that is designed to

protect against the type of accident the actor's conduct causes, and if the accident victim is

within the class of persons the statute is designed to protect." Restatement (Third) of Torts §

14 (2010). Here, the complaint asserts a claim for negligence *per se* alleging that defendants'

conduct violates various federal criminal firearm statutes. (Compl. ¶¶ 66-68, 305, 310, 313).

Congress enacted federal firearms laws to protect against unlawful gun violence in the United

---

[10] Interstate Arms, which is the only defendant that is alleged to be a wholesaler or distributor, and therefore a "seller" within the meaning of the exception, is alleged to have "conducted its gun-wholesaling business in Massachusetts for more than 40 years." (Compl. ¶ 41). The complaint further alleges that it "was incorporated in Massachusetts until 2018," that it "continues to conduct its business through its location in Middlesex County," and that it "is at home in Massachusetts and resides in Middlesex County." (*Id.*). It seems likely, therefore, that Massachusetts law would apply to a claim against it in any event.

States, and therefore to protect the victims of that violence. However, Congress did not enact

those laws to protect foreign governments—and in particular, not to protect foreign governments

from increases in health care and law-enforcement expenses incurred as a result of acts of

violence perpetrated against foreign citizens in foreign nations. The citizens of Mexico might

conceivably fall within the class of persons that the statute was intended to protect, but the

Mexican government certainly does not.[11]

Accordingly, and for those reasons, the negligence *per se* exception set forth in

§ 7903(5)(A)(ii) does not apply to Count 4.

### c. Design-Defect Exception

The third potentially applicable exception concerns claims for design or manufacturing

defects. Section 7903(5)(A)(v) of the PLCAA provides as follows:

> an action for death, physical injuries or property damage resulting directly from a
> defect in design or manufacture of the product, when used as intended or in a
> reasonably foreseeable manner, except that where the discharge of the product
> was caused by a volitional act that constituted a criminal offense, then such act
> shall be considered the sole proximate cause of any resulting death, personal
> injuries or property damage.

That section thus contains an exception to an exception—that is, if the discharge of a firearm is

caused by a volitional criminal act, then the design-defect exception does not apply.[12]

The complaint alleges in multiple places that the harm for which Mexico seeks redress is

perpetrated by drug cartels and "other criminals." (*See, e.g.*, Compl. ¶¶ 1, 480-505). That is a

sufficient basis from which to conclude that the claims are based on volitional acts perpetrated

---

[11] *See, e.g., Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 182 Conn. App. 55, 67 (2018) (concluding, in considering a claim for negligence *per se*, that a municipality was not within the class of persons or things that a criminal statute addressing animal cruelty was intended to protect, even if the municipality incurred increased expenses for care provided to animals that were abused or neglected).

[12] Moreover, the Court notes that the exception does not require a criminal conviction, but rather a volitional criminal act. *See Ryan v. Hughes-Ortiz*, 81 Mass. App. Ct. 90, 100 (2012) (citing *Adames v. Sheahan*, 233 Ill. 2d 276, 311 (2009)).

by drug cartels and "other criminals" and thus constitute intervening criminal offenses that "shall be the sole proximate cause" of the resulting injuries and property damage.  15 U.S.C. § 7903(5)(A)(v).

Accordingly, the design-defect exception set forth in § 7903(5)(A)(v) does not apply to Count 3.

### 5.    Conclusion

In summary, the application of the PLCAA under the circumstances presented here is not an impermissible extraterritorial application of United States law; the general prohibition of the statute applies to this lawsuit; and none of the statutory exceptions apply to Counts 1 through 6 and 9.  Those claims are accordingly barred by the PLCAA, and will be dismissed.  The Court does not reach the issue of whether Counts 7 or 8, which are generally applicable consumer-protection statutes, fall under the predicate exception to the PLCAA.  However, for other reasons, and as set forth below, both of those claims fail to state a claim upon which relief can be granted.[13]

### C.    State Statutory Claims Against Colt and Smith & Wesson

Counts 7 and 8 allege claims under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*., and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, respectively.

### 1.    Count 7:  Connecticut Unfair Trade Practices Act

Count 7 alleges a claim against defendant Colt under the CUTPA, Conn. Gen. Stat. § 42-110a, *et seq*.  Even assuming that the predicate exception to the PLCAA applies, Mexico lacks standing under Connecticut law to assert such a claim.

---

[13] Because all nine counts fail for other reasons, the Court need not address defendants' remaining arguments, which are based on lack of proximate cause, absence of a legal duty to plaintiff, and failure to state a claim for public nuisance.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). To be entitled to relief under CUTPA, a plaintiff must "establish both that the defendant has engaged in a prohibited act and that, as a result of this act, the plaintiff suffered an injury." *Sticht v. Wells Fargo Bank, N.A.*, 2022 WL 267470, at *3 (D. Conn. Jan. 28, 2022) (cleaned up). "The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff. Mere 'but for' causation is not sufficient to support a CUTPA claim." *Id.* (cleaned up).

A plaintiff must also have statutory standing under CUTPA in order to assert a claim. "[S]tanding to bring a CUTPA claim will lie only when the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries." *Tyus v. Bertera Subaru*, 2021 WL 4993058, at *8 (D. Conn. Oct. 27, 2021) (quoting *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 94 (2019), *cert. denied sub nom. Remington Arms Co., LLC, et al. v. Soto*, 140 S. Ct. 513 (2019)). The standing inquiry focuses on the directness or remoteness of a plaintiff's claimed injuries. *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 372-73 (2001). *See also Gilbert v. Zablauskas*, 2022 WL 1404219, at *1 (Conn. Super. Ct. Apr. 29, 2022) (explaining that Connecticut courts "have applied traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA" (quoting *Soto*, 331 Conn. at 93-94)).[14]

In *Ganim*, the city and mayor of Bridgeport brought claims under CUTPA against various firearm manufacturers, trade associations, and retail sellers. 258 Conn. at 316. The facts in

---

[14] A plaintiff may have Article III standing and yet still lack statutory standing under CUTPA. *See Gibson v. Bartlett Dairy, Inc.*, 2022 WL 784746, at *9 (E.D.N.Y. Mar. 15, 2022) (finding that plaintiff has Article III standing but that "[p]laintiff does, however, lack statutory standing" under CUTPA); *see also Gale v. Chicago Title Ins. Co.*, 2008 WL 4000477, at *2-3 (D. Conn. Aug. 21, 2008) (determining, at the motion to dismiss stage, whether plaintiff has Article III standing and also whether plaintiff has "standing under CUTPA").

*Ganim* are clearly analogous to those here.  Like Mexico, the city and mayor of Bridgeport claimed that because of defendants' conduct they had incurred increased expenses for police services, emergency services, health care, and social services.  *Ganim*, <u>258 Conn. at 345</u>.  In addition, they sought damages for the harm caused to their citizens who were injured or killed by firearms.  *Id.*

The Supreme Court of Connecticut determined that the city and mayor did not have standing to bring such a claim.  *Id.* at 373.  Specifically, the court concluded that there were too many links in the causal chain connecting the defendants' conduct to the plaintiffs' harm.  *See id.* at 354 (explaining that the manufacturers lawfully sell handguns to distributors or wholesalers who then lawfully sell them to retailers, who then sell to legitimate consumers or "straw man" purchasers, and it is not until then that they could enter the illegal market, and even then, a future intervening act by an unauthorized user must occur that results in injury to another).

Moreover, the *Ganim* court explained that the harms that plaintiffs ultimately suffered were derivative of the injuries suffered by the "primary victims"—the persons who have been actually assaulted or killed by the misuse of the handguns.  *Id.* at 358-60.  Because of that, the court determined that the city and mayor lacked standing to bring a CUTPA claim because the "harms they claim[ed] [were] too remote from the defendants' misconduct" and "too derivative of the injuries of others."  *Id.* at 365, 373.

The Supreme Court of Connecticut applied that same standing inquiry to the CUTPA claims asserted in *Soto v. Bushmaster Firearms Int'l, LLC*, <u>331 Conn. 53</u> (2019).  Plaintiffs in *Soto* were administrators of the estates of elementary school students and faculty who died in the school shooting at Sandy Hook Elementary School.  *Id.* at 66 n.2.  The court held that those plaintiffs, unlike the *Ganim* plaintiffs, did have standing under CUTPA.  *Id.* at 100.  The court

explained that "in this case, unlike in *Ganim*, it is the direct victims of gun violence who are challenging the defendants' conduct [and] no private party is better situated than the plaintiffs to bring the action." *Id.* at 98-99. The court noted that "*Ganim*, in fact, provides an instructive contrast to the present case" because the harms claimed by the "municipal plaintiffs" were too "indirect, remote, and derivative" as compared to those who are more "directly harmed by the [gun manufacturers'] alleged misconduct," such as those "who have been assaulted or killed by the misuse of handguns." *Id*. at 97-98.

Here, plaintiff is the Mexican government, which seeks redress for harms that are derivative of the injuries suffered by its citizens. And, as in *Ganim*, "there are numerous steps between the conduct of the various defendants and the harms suffered by the plaintiffs." *Ganim*, 258 Conn. at 355. Where the causal link is "too remote" from defendants' conduct and a plaintiff's harms are "too derivative of the injuries of others" a plaintiff lacks standing to assert a claim under CUTPA. *Ganim*, 258 Conn. at 365; *Soto*, 331 Conn. at 97-99.

The government of Mexico here is in essentially the same position as the city government of Bridgeport was in *Ganim*, and it therefore lacks standing to assert a claim under CUTPA. Accordingly, Count 7 will be dismissed.

### 2.     Count 8:  Massachusetts Gen. Laws ch. 93A

Count 8 alleges a violation of Mass. Gen. Laws ch. 93A, the Massachusetts consumer-protection statute, against defendant Smith & Wesson. Specifically, it alleges that Smith & Wesson violated Chapter 93A by marketing its guns in ways that "emphasize[] the ability of civilians to misuse Smith & Wesson assault rifles in unlawful, military-style attacks." (Compl. ¶ 342).

### a.     Deceptive Acts

Chapter 93A prohibits unfair methods of competition and unfair or deceptive acts or

practices.  Mass. Gen. Laws ch. 93A, §§ 2, 11.  A violation of Chapter 93A requires that the conduct in question fall within " 'the penumbra of some common-law, statutory, or other established concept of unfairness' or be 'immoral, unethical, oppressive or unscrupulous.' " *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996)) (cleaned up).

"To plausibly state a Chapter 93A claim premised on a deceptive act, the plaintiff must allege '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.' " *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (quoting *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 76 (2009)).  "[A]n advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 396 (2004).  "The spectrum of liability for deceptive acts or practices spans from affirmative misrepresentations to certain kinds of nondisclosures, such as advertising [that] may consist of a half truth, or even may be true as a literal matter, but still create[s] an over-all misleading impression through failure to disclose material information." *Tomasella*, 962 F.3d at 71 (cleaned up).

Here, the complaint alleges that the marketing campaign of Smith & Wesson is false and misleading because it "associates its 'civilian' products with the U.S. military and law enforcement" and its advertisements "repeatedly emphasize its weapons' ability to function in combat-like scenarios and quickly dispatch a large number of perceived enemies with a torrent of

fire." (Compl. ¶ 324).[15] Chapter 93A, however, prohibits statements that are actually false or misleading. *See Aspinall*, 442 Mass. at 396. But the complaint alleges that the violation by Smith & Wesson is that its firearms do exactly what they are advertised to do.

The complaint does not allege that the firearm cannot in fact "quickly dispatch" bullets. Rather, it alleges that the violation by Smith & Wesson is that the firearm functions exactly as it is advertised to, and in doing so it has caused harm in Mexico. Such advertising is perhaps distasteful, but it is not false, misleading, or deceptive within the meaning of the statute.

### b. **Unfair Acts**

The complaint further alleges that the conduct of Smith & Wesson is "unfair" within the meaning of Chapter 93A. The challenged advertisements may be "unfair" if they "1) [are] within the penumbra of some common law, statutory or other established concept of unfairness, 2) [are] immoral, unethical, oppressive or unscrupulous and 3) cause[ ] substantial injury to consumers, competitors or other business entities." *Tomasella*, 962 F.3d at 79 (citations omitted). While "Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact," that determination is "subject to the court's performance of a legal gate-keeping function." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009) (citation omitted).

The crux of Mexico's claim is that Smith & Wesson engaged in unfair conduct by marketing their firearms in such a way that "emphasized the ability of civilians to use Smith & Wesson assault rifles in unlawful, military-style attacks." (Compl. ¶ 550). Specifically, the complaint alleges that by placing "M&P" on their ads, which signifies "Military and Police," the

---

[15] The complaint specifically includes two Smith & Wesson advertisements. (Compl. ¶ 324). One of the advertisements states, "[b]urn through all the ammunition you want with the new M&P 15-22." (*Id.*). The other advertisement contains an image of someone who appears to be in military or law enforcement gear using a sniper rifle. (*Id.*)

advertisements "attract persons and organizations that intend[] to use Smith & Wesson's products to battle against the military and police" and "carry out unlawful military-style combat missions." (*Id.* ¶¶ 551-52).

Mexico has, however, failed to identify any common-law or statutory authority that the advertisements violate. Again, while the defendant's conduct may be distasteful, nothing about the advertisement is unlawful or "immoral, unethical, oppressive or unscrupulous." *See Tomasella*, 962 F.3d at 80-81. The public is fully aware that the police and military use firearms. An image depicting an officer's lawful use of a firearm does not suggest to the reasonable consumer that they should engage in criminal, "combat-like" conduct. And the Court is unwilling to hold that the advertising of lawful conduct to sell a lawful product, without more, constitutes an "unfair" act. *See, e.g.*, *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 369 (S.D.N.Y. Mar. 5, 1996), *aff'd sub nom. McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997) (refusing to find advertisements to be negligent because they highlighted the ammunition's "destructive capabilities" which could make it "attractive to criminals" because the advertisements were not in any way false or misleading).

Accordingly, the complaint fails to allege that the marketing practices of Smith & Wesson violate any common-law, statutory, or other established concept of unfairness.

### c.     Occurring Primarily and Substantially within the Commonwealth

Chapter 93A provides that an action under § 11 can only be brought if "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11.

In considering whether the unfair or deceptive act "occurred primarily and substantially

40

within the commonwealth," Massachusetts courts consider three factors: (1) "where the defendant committed the deception," (2) "where the plaintiff was deceived and acted upon the deception," and (3) "the situs of plaintiff's losses due to the deception." *Garshman Co. v. General Elec. Co.*, 176 F.3d 1, 6-7 (1st Cir. 1999) (citing *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1265-66 (1st Cir. 1990)). However, "[w]hether the 'actions and transactions [constituting the sec. 11 claim] occurred primarily and substantially within the commonwealth' is not a determination that can be reduced to any precise formula." *Stoneridge Control Devices, Inc. v. Teleflex, Inc.*, 2004 WL 389105, at *7 (Mass. Super. Feb. 17, 2004). Rather, it is a "pragmatic, functional analysis," with the "first factor [being] the least weighty of the three factors." *Roche v. Royal Bank of Canada*, 109 F.3d 820, 827, 829 (1st Cir. 1997); *see also Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 473 (2003) (instructing courts to look to "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth").

For example, in *Bushkin Associates, Inc. v. Raytheon Co.*, a New York corporation brought a Chapter 93A claim against Raytheon, a Massachusetts corporation. 393 Mass. 622 (1985). The plaintiff based his Chapter 93A claim on allegedly false statements that were made in a telephone conversation by a Raytheon officer. *Bushkin*, 393 Mass. at 672. The plaintiff contended that those statements caused it to disclose sensitive business information and suffer economic losses. *Id.* The Supreme Judicial Court held that Chapter 93A was inapplicable because the majority of the conduct occurred outside of Massachusetts. *Id.* Specifically, the SJC explained that although the statements were "made in Massachusetts," they were "received and acted on in New York," and "[a]ny loss was incurred in New York." *Id.*

The First Circuit followed the reasoning of *Bushkin* in *Compagnie De Reassurance D'Ile*

*de France v. New England Reinsurance Corp.*, 57 F.3d 56 (1st Cir. 1995).  There, the court

explained that, as in *Bushkin*, "non-Massachusetts residents [were] attempting to recover for the

allegedly unfair trade practices" of a Massachusetts corporation.  *New England Reinsurance*

*Corp.*, 57 F.3d at 90.  Although the allegedly deceptive acts originated in Massachusetts, the

deceptive information was "intended to be, and was, circulated abroad, and plaintiffs received

and acted upon it there."  *Id.*  And the "situs of plaintiffs' losses was also in Europe."  *Id.*  The

court determined that because Chapter 93A is designed to "protect against in-state frauds" and

the bulk of defendants' conduct occurred elsewhere, their "fraudulent conduct did not occur

primarily and substantially in Massachusetts."  *Id.*

 Here, a foreign nation is attempting to recover for the allegedly unfair trade practices of a

Massachusetts corporation.  Even assuming that the advertisements and marketing originated in

Massachusetts, the complaint clearly suggests that its advertisements and marketing practices

were "intended to be [] circulated abroad" and were "received and acted upon [] there."  *New*

*England Reinsurance Corp.*, 57 F.3d at 90.  (*See also* Compl. ¶¶ 551-52 (explaining that Smith

& Wesson knew its marketing practices would attract persons and organizations to use their

products against the military and police, "including the military and police in Mexico" and

would be "appealing especially to criminals like the cartels")); (*id.* ¶ 384 ("Defendants have

affirmatively and deliberately chosen to maintain their supply chain to cartels . . . . Their supply

of guns to the criminal market in Mexico is a feature, not a bug.")).  Furthermore, the situs of

plaintiff's losses is entirely in Mexico.  (*See* Compl. ¶¶ 450-64); *New England Reinsurance*

*Corp.*, 57 F.3d at 90.

 In short, this matter did not occur primarily and substantially in the Commonwealth.  For

that reason, Chapter 93A does not apply.

Accordingly, Count 8 fails to state a claim under Mass. Gen. Laws ch. 93A.

## IV.    __Conclusion__

For the foregoing reasons:

The motion of all defendants to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 66) is DENIED as to Rule 12(b)(1) and GRANTED as to Rule 12(b)(6);

The motion of defendant Sturm, Ruger & Company to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 56) is DENIED without prejudice as moot;

The motion of defendant Barrett Firearms Manufacturing, Inc., to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 58) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot;

The motion of defendant Witmer Public Safety Group, Inc., d/b/a Interstate Arms to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 60) is GRANTED;

The motion of defendant Glock Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 62) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot;

43

The motion of defendant Colt's Manufacturing Company LLC  to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 64) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot;

The motion of defendant Smith & Wesson Brands, Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 69) is DENIED as to Rule 12(b)(1) and GRANTED as to Rule 12(b)(6);

The motion of defendant Century International Arms, Inc. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 70) is DENIED without prejudice as moot; and

The motion of defendant Beretta U.S.A. Corp. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 73) is DENIED without prejudice as moot.


**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: September 30, 2022                    Chief Judge, United States District Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Estados Unidos Mexicanos**
          Plaintiff

      V.

**Smith & Wesson Brands, Inc. et al**
          Defendant

CIVIL ACTION

NO. <u>21-11269-FDS</u>

## **ORDER OF DISMISSAL**

<u>Saylor, C. J.</u>

    In accordance with the Court's Memorandum and Order dated September 30, 2022, it is hereby ORDERED that the above-entitled action be and hereby is DISMISSED.

                  By the Court,

 10/1/2022
     Date

           /s/ Flaviana de Oliveira
           Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

ESTADOS UNIDOS MEXICANOS,
*Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
*Defendants.*

Civil Action No. 1:21-CV-11269-FDS

## NOTICE OF APPEAL

Notice is hereby given that Estados Unidos Mexicanos, the Plaintiff in the above-named matter, hereby appeals to the United States Court of Appeals for the First Circuit from the Order of Dismissal dated October 1, 2022 and entered in this action on October 17, 2022.

Dated: October 26, 2022

s/ Steve D. Shadowen
Steve D. Shadowen (*pro hac vice*)
Richard M. Brunell  (BBO# 544236)
Nicholas W. Shadowen *(pro hac vice)*
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

Respectfully submitted,

s/ Jonathan E. Lowy
Jonathan E. Lowy (*pro hac vice*)
Global Action on Gun Violence
1025 Connecticut Avenue NW, #1210
Washington, DC 20036
Phone: (202) 415-0691
jlowy@actiononguns.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: October 26, 2022                                    Respectfully submitted,

                                                           /s/ *Steve D. Shadowen*
                                                           Steve D. Shadowen