No. 22-1823

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

ESTADOS UNIDOS MEXICANOS,

*Plaintiff-Appellant*,

v.

SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS
MANUFACTURING, INC.; BERETTA U.S.A. CORP.; BERETTA HOLDING
S.P.A.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC; GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Massachusetts (Saylor, C.J.)
No. 1:21-CV-11269-FDS

## JOINT APPENDIX – VOL. 2

Steve D. Shadowen
Richard M. Brunell
Nicholas W. Shadowen
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com

Jonathan E. Lowy
GLOBAL ACTION ON GUN
VIOLENCE
805 15th Street NW, #601
Washington, DC 20005
Phone: (202) 415-0691
jlowy@actiononguns.org

*Counsel for Estados Unidos Mexicanos*

March 14, 2023

# TABLE OF CONTENTS

## Volume 1 of 2

District Court Docket Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000001-JA000043

ECF No. 1 – Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000044-JA000184

ECF No. 108 (Ex. 2) – Plaintiff's First Expert Report on Tort Law of Mexico . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000185-JA000219

## Volume 2 of 2

ECF No. 108 (Ex. 55) – *Fox v. L&J Supply, LLC*, No. 2014-24619 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) . . . . . . . . . . . . . . . .. . . . . . . . JA000220-JA000222

ECF No. 108 (Ex. 58) – *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL (Ca. Super. Ct. Jul. 2, 2021) . . . . . . . . . . . . . . . . . . . . JA000223-JA000234

ECF No. 164 – Electronic Order re Sturm, Ruger & Company's Motion to Dismiss, [ECF No. 56]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000235

ECF No. 165 – Electronic Order re Barrett Firearms Manufacturing, Inc.'s Motion to Dismiss [ECF No. 58]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000236

ECF No. 166 – Electronic Order re Witmer Public Safety Group, Inc.'s Motion to Dismiss [ECF No. 60]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000237

ECF No. 167 – Electronic Order re Glock Inc.'s Motion to Dismiss [ECF No. 62]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000239

ECF No. 168 – Electronic Order re Colt's Manufacturing Company LLC's Motion to Dismiss [ECF No. 64] . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000239

ECF No. 169 – Electronic Order re Smith & Wesson Brands, Inc.'s Motion to Dismiss [ECF No. 69]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000240

ECF No. 170 – Electronic Order re Century International Arms, Inc.'s Motion to Dismiss [ECF No. 70]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .JA000241

ECF No. 171 – Electronic Order re Beretta U.S.A. Corp.'s Motion to Dismiss [ECF No. 73] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA000242

ECF No. 172 – Transcript, Motion to Dismiss Hearing . . . . . . . JA000243-JA000301

ECF No. 175 – Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . JA000302-JA000303

# Exhibit 55

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

LYNSAY R. FOX, as Administrator and :      No. 2014-24619
Personal Representative of the Estate of :
BRADLEY M. FOX and LYNSAY R. FOX, :
on her own behalf :
                       :
           v.            :

L & J SUPPLY, LLC, d/b/a IN SITE FIREARMS
& LAW ENFORCEMENT SUPPLIES, L & J
SUPPLY, LLC, and LUKE J. KELLY III



2014-24619-0189  11/26/2018 12:33 PM # 12075539
Rcpt#Z3530572 Fee:$0.00 Order
Main (Public)
MontCo Prothonotary

## ***ORDER: MOTION FOR SUMMARY JUDGMENT REGARDING BAR TO ALL CLAIMS BY THE PROTECTION OF LAWFUL COMMERCE IN ARMS ACT FILED BY DEFENDANTS LUKE J. KELLY, III AND L & J SUPPLY, LLC***

**AND NOW**, this 26th day of November 2018, upon consideration of the

Motion for Summary Judgment Regarding Bar to all Claims by the Protection of

Lawful Commerce in Arms Act Filed by Defendants Luke J. Kelly, III and L & J

Supply, LLC ("Motion") and Brief in support, Plaintiff's Response in opposition

and Memorandum of Law in support, this Court's thorough review of the

extensive record as well as the relevant and applicable law and the Court

having heard Oral Argument on Tuesday, October 30, 2018, it is hereby

**ORDERED** that Defendants' Motion is **DENIED.**[1]

---

[1] This Court concludes that the "predicate exception" provided by 15 U.S.C. § 7903(5)(iii) applies to this case, thereby removing the entire action out from under the statutory immunity provided in the Protection of Lawful Commerce in Arms Act. *See* 15 U.S.C. §§ 7901-7903. Addressing Defendants' second question presented, our Superior Court recently reiterated the applicable standard as follows:

**BY THE COURT:**

THOMAS P. ROGERS, J.

Copies of the above Order sent on 11/26/18 to the following:

**By Interoffice Mail:**
Denise S. Vicario, Esquire, Chief Deputy Court Administrator
Elizabeth A. Catalano, Second Deputy, Court Administration, Civil Division

**By First-Class Mail:**
Hope S. Freiwald, Esquire, Counsel for Plaintiff, Lynsay R. Fox as
    Administrator and Personal Representative of the Estate of Bradley M.
    Fox, and Lynsay R. Fox, on her own behalf
Jonathan E. Lowy, Esquire, *Pro Hac Vice* Counsel for Plaintiff,
    Lynsay R. Fox as  Administrator and Personal Representative of the
    Estate of Bradley M. Fox, and Lynsay R. Fox, on her own behalf
Edward J. McGinn, Esquire, Counsel for Defendants, L & J Supply, LLC
    and Luke J. Kelly, III
Joseph J. Baldassari, Esquire, Counsel for Defendant, Luke J. Kelly, III

Judicial Assistant

---

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Moreover, when any court considers a motion for summary judgment, it is required to accept all the facts of record as well as the reasonable inferences from those facts in favor of the non-moving party. Additionally, the trial court "must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt."

*Krolczyk v. Goddard Systems, Inc.*, 164 A.3d 521, 526 (Pa.Super. 2017) (internal citations omitted). This Court concludes that there remain genuine issues of material fact precluding summary judgment.

2

Case 1:21-cv-11269-FDS    Document 108-58    Filed 01/31/23    Page 1 of 12

# Exhibit 58

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 07/02/2021                    TIME: 04:48:00 PM          DEPT: C-66

JUDICIAL OFFICER PRESIDING: Kenneth J Medel
CLERK: Bernice Orihuela
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00016638-CU-PO-CTL** CASE INIT.DATE: 05/26/2020
CASE TITLE: **Goldstein vs Earnest [EFILE]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: PI/PD/WD - Other

---

**APPEARANCES**

---

The Court, having taken the above-entitled matter under submission on 6/8/2021 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**Background:**
This case stems from a shooting at the Chabad of Poway synagogue on the last day of Passover in April, 2019. Using a firearm, the shooter shot and killed one person and injured others.
Plaintiffs allege that Smith & Wesson marketed, manufactured, distributed, and ultimately sold (through a retailer, San Diego Guns, LLC) a Rifle that was made to be easily modified into a military-style assault rifle prohibited under California law and which constituted an automatic-fire "machinegun" prohibited under federal law. The gun was marketed to a 19-year-old Shooter who did not have a valid hunting license that would have allowed him to buy the gun. See First Amended Complaint at ¶¶31–33.
As to San Diego Guns, plaintiffs allege San Diego Guns violated its duty as "a principal agent of federal law enforcement" in "restricting criminals' access to firearms. The First Amended Complaint specifically alleges that San Diego Guns violated this duty by (1) choosing to sell the weapon that was used to the Shooter, despite having actual or constructive knowledge that the hunting license the Shooter presented was not valid for the purchase of any firearms in April 2019, months before the license going into effect in July 2020. (Id. at ¶ 130-132); and (2) by transferring a firearm and ammunition to an individual under the age of 21 who had not presented and did not possess a valid hunting license, San Diego Guns knowingly and directly violated Cal. Pen. Code § 27510. (Id. at ¶ 124-125,137)
Also, San Diego Guns, as the seller and distributor engaged in sales of firearms in State of California, knew or should have known that Smith & Wesson included design features in its M&P 15 series of AR-15 style guns that enabled them to be easily modified, including to fire automatically and to constitute a prohibited assault weapon under California law. San Diego Guns, could have and should refused to distribute or sell weapons susceptible to such modifications (as other companies have chosen to do). (Id. at ¶ 52-53).
**Notice of Withdrawal of Certain Allegations**
On or about June 4, 2021, the Court received from Attorneys for Plaintiff a "Notice of Withdrawal of Certain Allegations from the First Amended Complaint." Attached to the Notice is a letter addressed to the Judge indicating that plaintiffs are no longer making allegations that the Rifle was modified in

---

DATE: 07/02/2021                    MINUTE ORDER                    Page 1
DEPT: C-66                                                    Calendar No.

JA000224

CASE TITLE: Goldstein vs Earnest [EFILE]                    CASE NO: **37-2020-00016638-CU-PO-CTL**

---

violation of California's prohibition on assault weapons. Specifically, plaintiffs state the following allegation in the FAC are being withdrawn: p.9, paragraph 50, p. 10, paragraph 54, p.23, paragraph 106. Based upon this notice and statements made at oral argument, the Court STRIKES these allegations from the First Amended Complaint.

**Demurrers and Motions to Strike by LISA C. EARNEST and JOHN A. EARNEST and the State of California, Dept. of Fish and Wildlife**

**At the hearing, Lisa and John Earnest took their Demurrer and Motion to Strike OFF CALENDAR. Prior to the hearing, Plaintiffs dismissed the State of California, Dept. of Fish and Wildlife. The State of California, Dept. of Fish and Wildlife took their Demurrer and Motion to Strike OFF CALENDAR.**

**Demurrer by Smith & Wesson Brands, Inc. [S&W]**

The following causes of action have been alleged against S&W: (1) Products Liability – Defective Design; (2) UCL; (3) Common Law Negligence; (4) Public Nuisance

S&W first argues it is immune under the federal Protection of Lawful Commerce in Arms Act [PLCAA], which provides manufacturers and sellers with immunity against "civil action[s] ... for damages ... injunctive relief ... or other relief, resulting from the criminal or unlawful misuse" of firearms. 15 U.S.C. § 7903(5)(A).

Federal Preemption

Federal preemption is a question of Congressional intent. The PLCAA, both in its operative provisions and statements of purpose, clearly reveals congressional intent to prohibit state common law causes of action that meet the definition of a qualified civil liability action. Ileto v. Glock, Inc., 421 F. Supp. 2d 1274 (C.D. Cal. 2006) ("[C]ongressional intent to [preempt state tort claims] is clear from the text and purpose of the [PLCAA].")

Is this case a "qualified civil liability action"?

Under the PLCAA, a cause of action that meets the definition of a "qualified civil liability action" shall not be brought in any federal or state court. 15 U.S.C. § 7902(a).

Congress defined a "qualified civil liability action" as follows:

...a civil action...brought by any person against a manufacturer or seller of a qualified product...for damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, *resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.* 15 U.S.C. § 7903(5)(A).

Plaintiffs argue this case does not fall within the scope of the general definition of "qualified civil liability action" within § 7903(5)(A), particularly when the section is read in conjunction with the preamble to the statute that indicates the Act's purpose is to prohibit actions for harm "solely caused" by the misuse or criminal use of guns. Plaintiffs argue that the First Amended Complaint alleges independent liability on behalf of the manufacturer and seller and thus, the action is not "resulting from" the [solely caused] criminal or unlawful use of the shooter.

First, as a matter of statutory construction, language stating the purpose for which a statute is enacted cannot be used to limit the clear terms used in the statute's operative provisions. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245. Here, the plain language of Section 7903(5)(A) requires the action to be "resulting from" the criminal or misuse. There is no requirement that it be "solely caused".

Based on the facts alleged in the FAC, the alleged liability here "results from" the criminal use.

The First Amended Complaint alleges the following:

1. On April 27, 2019, worshippers were gathered at the Chabad of Poway synagogue to attend services on the last day of the Jewish holiday, Passover, which commemorates the survival and liberation of the Jewish people.

2. Outside the synagogue was a teenager...who was bent on waging war on the worshippers and exterminating the Jewish people. His hateful views could not, on their own, cause a fraction of the

---

DATE: 07/02/2021                    MINUTE ORDER                    Page 2
DEPT: C-66                                                          Calendar No.

physical and emotional harm he would soon render on the Chabad community of worshippers.

3. As a result of Defendants' actions and/or inaction, the Shooter used a SMITH & WESSON M&P 15, AR-15 style rifle to engage in a mass shooting on April 27, 2019-a military-style assault on the worshippers at the Chabad of Poway synagogue (the "Incident").

There is no dispute that rifle used here is a "qualified product". Paragraph 3 alleges this action results from the misuse of that product. As alleged, this action is a "qualified civil action" within the purview of the PLCAA.

Exceptions

The immunity for firearm manufacturers and sellers is subject to certain exceptions set forth in 15 U.S.C. §§ 7903(5)(A)(i)-(vi). A viable state law action that fits within one of six enumerated exceptions is not prohibited. The following exceptions are relevant to this case.

...

(ii) an action brought against a seller for negligent entrustment or negligence per se;

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including-

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make an appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted or conspired with any person in making any false entry or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any person to sell or otherwise dispose of a qualified product, knowing or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm under subsection (g) or (n) of section 922 of title 18;

...

(v) an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage.

...

15 U.S.C. §§ 7903(5)(A)(i) - (vi).

"Predicate exception" [15 U.S.C. §§ 7903(5)(A)(iii)]

The "predicate exception" permits "[a]ctions where a manufacturer or seller knowingly violated a State or Federal Statute applicable to the sale or marketing of the product, *where violation proximately caused the harm sued upon*[.]" 15 U.S.C. § 7903(5)(A)(iii) [emphasis added].

After the "Notice of Withdrawal" (discussed above), the First Amended Complaint alleges that that Smith & Wesson knowingly violated, either directly or as an accomplice/conspirator: (1) the federal law's prohibition on the sale of automatic fire "machinegun[s]" to the general public (18 U.S.C. 922(b)(4)) and (2) California's prohibition on "deceptive, untrue or misleading advertising" under the Unlawful Competition Law.

(1) Federal Statute prohibiting sale of automatic fire machine guns.

Paragraph 56 of the First Amended Complaint alleges: "The NFA defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The definition also includes "the frame or receiver of any such weapon," as well as "any part" or "combination of parts designed and intended, for use in converting a weapon into a machinegun," and "any combination off parts from which a machinegun can be assembled" as long as those "parts are in the

DATE: 07/02/2021                    MINUTE ORDER                         Page 3
DEPT: C-66                                                              Calendar No.

JA000226

possession of under the control of a person." Id.

Paragraph 57 alleges: "18 U.S.C. § 922(b)(4) prohibits the sale of "machinegun[s]" to members of the general public who have not undergone the required registration process."

Paragraph 58 alleges: "In 1982, the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) underscored that the NFA definition of "machinegun[s]" includes "those weapons which have not previously functioned as machineguns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts."

Paragraph 64 alleges: "SMITH & WESSON chose to design the Rifle in a manner that made it able to be easily modified or degraded to fire automatically." Paragraph 65 alleges that methods for easy modification of the Rifle at issue.

Based on these paragraphs, plaintiffs have alleged a federal statute applicable to the sale or marketing of the product: 18 U.S.C. § 922(b)(4)).

S&M argues that "predicate exception" is still not applicable because in order to qualify for the "predicate exception", the violation must have "proximately caused the harm sued upon." 15 U.S.C. § 7903(5)(A)(iii). According to S&M, plaintiffs have not pleaded, nor do they now argue, that the rifle used in the shooting had actually been so modified to fire fully automatic as allegedly proscribed by the federal law. Thus, any violation of federal law did not "proximately cause" the harm sued upon.

Proximate cause is "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred..." (State of California v. Superior Court (1984) 150 Cal.App.3d 848, 857)

Paragraph 111 alleges: "Upon information and belief, the Shooter would not have acquired the Rifle or used it in the Incident but for his exposure to the reckless, deceptive and illegal marketing campaign disseminated by SMITH & WESSON and SMITH & WESSON's associated design decisions." Plaintiffs have alleged causation – the Shooter would not have acquired the Rifle or used it but for S&M's design decisions, which were allegedly in violation of federal law. Thus, for purposes of pleading, the First Amended Complaint alleges causation.

(2) California's prohibition on "deceptive, untrue or misleading advertising" under the Unlawful Competition Law

The question is whether the UCL is a "State or Federal statute applicable to the sale or marketing" of a firearm.

According to S&W, "Congress had in mind only ... statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry – rather than general tort theories that happened to have been codified by a given jurisdiction." Ileto v. Glock, Inc., 565 F.3d 1126, 1135-36 (2009), cert denied 560 U.S. 924 (2010).

Plaintiffs argue that because Congress chose not to limit the predicate exception to firearms-specific laws, but intended to exempt actions alleging a violation of any law that is capable of being applied to the sale and marketing of firearms, "then there is little doubt that state consumer protection statutes ...would qualify as predicate statutes." See Soto v. Bushmaster Firearms International, LLC, 331 Conn. 53, 119 (2019).

Accordingly, California's UCL-which forbids "unlawful, unfair or fraudulent" conduct with virtually any type of business activity-is clearly capable of being applied to the sale and marketing of firearms and qualifies as a "predicate." Cal. Bus. & Prof. Code §§ 17200 et seq.

There is a split of authority on the broad issue of whether consumer protection statutes such as California's UCL fall within statutes "applicable to the sale or marketing" of a firearm.

In statutory interpretation, the Court is to begin with plain language. See, e.g., Maslenjak v. United States, —— U.S. ——, 137 S.Ct. 1918, 1924, 198 L.Ed.2d 460 (2017). As stated by the Soto court, "applicable" means "capable of being applied." Under this understanding, the UCL is applicable to sale and marketing of a firearm. See Smith & Wesson Corp. v. Gary, 875 N.E.2d 422, 431, 434–35 and n.12 (Ind. App. 2007) (predicate exception unambiguously applies to any state law capable of being applied

DATE: 07/02/2021                    MINUTE ORDER                         Page 4
DEPT: C-66                                                          Calendar No.

JA000227

to sale or marketing of firearms), transfer denied, 915 N.E.2d 978 (Ind. 2009). The UCL would also, by its terms, be a statute involving sale or marketing of any product, including firearms.

Nothing in the statute indicates that that the predicate statutes have to exclusively apply to firearms. The Soto Court also insightfully found that "if Congress had intended to limit the scope of the predicate exception to violations of statutes that are directly, expressly, or exclusively applicable to firearms, however, it easily could have used such language, as it has on other occasions." Soto, supra, 331 Conn. at 119–20, 202 A.3d at 302–03.

The Court in Soto also recognized a significant point implying intent: at the time PLCAA was enacted, no federal statutes directly or specifically regulated the marketing or advertising of firearms. In addition, only a handful of states have enacted firearm specific laws that address in any way the marketing function, and none of those purports to comprehensively regulate the advertising of firearms. "It would have made little sense for the drafters of the legislation to carve out an exception for violations of laws applicable to the marketing of firearms if no such laws existed. Ibid. at 121-22.

Thus, the Court finds that the UCL qualifies as a "predicate statute." (Whether or not the First Amended Complaint meets the necessary elements for a UCL claim is discussed in depth below.)

## Scope of the "Predicate Exception"

The question becomes what is the scope of the "predicate exception." Does the action as a whole, that is,"all" causes of action, survive if the "predicate exception" applies or should the court look at each cause of action on a claims-by-claim basis?

Plaintiffs argue that since this action fits into the "predicate exception" of the PLCAA for alleged violation of a statute relating to the sale of guns, their entire action survives. They make the following statement in Opposition: "Courts across the country have held that PLCAA's "predicate exception" permits the entire "action in which" a predicate statutory violation is alleged to proceed, meaning that all claims survive-including simple negligence or nuisance claims which do not otherwise fall within an enumerated exception. Hence, Smith & Wesson is incorrect that Plaintiffs' negligence and public nuisance claims are automatically barred because there is no express exception for them under PLCAA, and that Plaintiffs' product liability claim is barred if it does not satisfy PLCAA's exception for products liability claims in § 7903(5)(A)(v)." (p.17)

There is a split of authority on this issue as summarized in the case of Ramos v. Wall-Mart Stores Unlimited 202 F.Supp.3d 457, 465-466 (Penn. 2016). (That decision is cited in the Reply Brief of San Diego Guns, LLC to its Demurrer. The issue was left unresolved in the decision, but the cases supporting the split are acknowledged.)

This Court interprets the PLCAA to apply on a claim-by-claim basis, requiring every claim within a case to find its own exception to avoid being blocked by the Act. The express purpose of the Act was to "prohibit *causes of action* against manufacturers, distributors, dealers, and importers of firearms or ammunition products...for the harm solely caused by the criminal or unlawful misuse of firearm products," see 15 U.S.C. § 7901(b)(1) (emphasis added). Further, the Act's exceptions appear to pertain to individual claims, including negligent entrustment or negligence per se as well as products liability.

## Constitutionality

Plaintiffs raise a variety of challenges to the constitutionality of the PLCAA, including that the PLCAA exceeds Congress' commerce clause authority, violates the Tenth Amendment, and deprives them of the due process clause and equal protection rights.

At this juncture, the Court does not need to reach these constitutionality issues in ruling on the demurrer given the analysis above that the statute is not a bar to all allegations in the case. In other words, the constitutionality would only be an issue if the Court were to determine that there was no liability under the statute. These issues are preserved for any future dispositive rulings.

## First Cause of Action for Products Liability

SUSTAINED WITHOUT LEAVE TO AMEND

The basis for this cause of action is the following alleged design defect: "The Rifle was designed to be

DATE: 07/02/2021                    MINUTE ORDER                    Page 5
DEPT: C-66                                                          Calendar No.

JA000228

CASE TITLE: Goldstein vs Earnest [EFILE]     CASE NO: 37-2020-00016638-CU-PO-CTL

easily modified to fire automatically, prohibited under federal law unless sold in compliance with the federal National Firearms Act ("NFA")."

In the demurrer, defendants contend that this cause of action is squarely covered by the PLCAA. Products liability for defects in design or manufacture are exempt under subdivision 7903(5)(A)(v), "*except* that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage."

According to defendant, plaintiffs have pleaded that the shooter deliberately discharged the firearm. (FAC ¶¶ 160-165). The shooter's volitional act was undeniably criminal, and was as a matter of law, the sole proximate cause of the shooting and plaintiff's damages under § 7903(5)(A)(v).

As discussed above, Plaintiffs argue that since this matter fits into the "predicate exception" of the PLCAA for alleged violation of a statute relating to the sale of guns, their entire action survives, including products liability. However, the statute specifically addresses products liability claims. Thus, even if there is a predicate statutory basis for other causes of action, products liability is allowed *except when the discharge of the product was caused by a volitional act that constituted a criminal offense.* As indicated above, the pleading indicates the discharge of the product was caused by a volitional act that constituted a criminal offense. Thus, the products liability claim is barred under the PLCAA.

<u>Second Cause of Action for UCL Violation</u>
SUSTAINED WITH 20 DAYS LEAVE TO AMEND
As stated above, this Court finds that California's UCL qualifies as a statute applicable to the sale or marketing of firearms under the predicate exception to PLCAA immunity. 15 U.S.C. § 7903(5)(A)(iii). Defendant S&W make additional arguments as to the viability of this claim.

(1) No deceptive marketing claim under the UCL fraudulent prong.
The FAC alleges that SMITH & WESSON engaged in a marketing campaign targeting youth with advertisements over social media and through videogame-like commercials despite the known risks that young people in that demographic are highly susceptible to that type of advertising and have disproportionately perpetrated mass shootings using similar firearms. SMITH & WESSON's marketing violated California's prohibition on "deceptive, untrue or misleading advertising" (see Cal. Bus. & Prof. Code § 17200)

S&W argues that, as a matter of fact, the Court will not be able to make findings that support deceptive, untrue or misleading advertising. However, the Court cannot make this determination on demurrer.

(2) Standing
Under cases such as Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011) ("[A] party must ... (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice ... that is the gravamen of the claim." The Court in Kwikset summarized the types of injuries in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Ibid. citing Hall v. Time Inc., supra, 158 Cal.App.4th at pp. 854–855.

The pleading does not allege any injury in fact under any of the categories defined above. Leave to amend is granted in order for plaintiffs to allege an "injury in fact."
<u>Third Cause of Action for Ordinary Negligence and Sixth Cause of Action for Public Nuisance</u>
OVERRULED
Plaintiffs allege that S&W was negligent in designing the firearm, advertising the firearm, and failing to monitor and supervise the downstream retail sale of the firearm by San Diego Guns. (FAC ¶ 197). Plaintiffs also allege that S&W's design of the firearm, its advertisements for the firearm, and its failure to

monitor and supervise the downstream retail sale of the firearm by San Diego Guns was a public nuisance under California Civil Code § 3480. (FAC ¶¶ 228-242).

S&W argues General Negligence and Public Nuisance are not enumerated as exceptions under the PLCAA. The PLCAA preempts common law claims like general negligence and public nuisance. Congress did not provide an enumerated exception for general negligence or public nuisance. "Congress consciously considered how to treat tort claims" and it "chose generally to preempt all common law claims" except negligent entrustment and negligence per se. (Illeto v. Glock 565 F.3d 1126, 1135 n.6 (9th Cir. 2009)).

Plaintiffs argue this claim would survive under the "predicate exception." Paragraph 197 generally alleges that S&W "design[ed] a firearm that could be easily modified, including to become an assault weapon prohibited under California law, and to fire automatically, effectively prohibited to sell to the general public under federal law (unless the NFA's requirements were followed).

As pled, these causes of action are based upon an alleged violation of a federal statute and would thus fall within the predicate exception. It is an "action" where a manufacturer or seller [allegedly] knowingly violated a State or Federal Statute applicable to the sale or marketing of the product."

### First Amendment Argument

The Second Cause of Action for Negligence, the Third Cause of Action for UCL and the Sixth Cause of Action for Public Nuisance are based, in part, on S&W's advertisements. S&W argue alternatively that Plaintiffs' claims that S&W advertisements caused the shooter to commit his crimes should be dismissed because the claims violate the First Amendment of the United States Constitution.

Commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the First Amendment. See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 496, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 388–89, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); see also Thompson v. Western States Medical Center, 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); Lamar Outdoor Advertising, Inc. v. Mississippi State Tax Commission, 701 F.2d 314, 321–22 (5th Cir. 1983). Plaintiffs' First Amended Complaint alleges that the marketing in question promoted unlawful activity.

### Duty to monitor, supervise or control conduct of San Diego Guns

S&W also argue that the Complaint also alleges that S&W is responsible for San Diego Guns' alleged conduct based on a claimed common law duty on the part of S&W to "monitor sales by downstream ... sellers." (FAC ¶¶ 154-157). Plaintiffs assert that S&W's alleged failure to supervise San Diego Guns' sale of the firearm was negligent (Third Cause of Action) and a public nuisance (Sixth Cause of Action).

According to S&W, there is no principal-agent relationship between S&W and San Diego Guns that would lead to vicarious liability.

This argument does not dispose of the negligence cause of action and is thus inappropriate for demurrer.

### Motion to Strike by S&W

The Motion to Strike is DENIED.

Punitive damages are properly pled by identifying a cause of action for which punitive damages are recoverable and describing the acts or omissions that constitute fraud, oppression or malice as those terms are defined in California Civil Code section 3294(c). "Malice" is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff, or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or

legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

A claim for punitive damages is a serious accusation of wrongful conduct, which requires proof by "clear and convincing evidence" that a defendant has been guilty of oppression, fraud, or malice to justify a claim for punitive damages. (Mock v. Michigan Millers Mut. Ins. Co. (1992) 4 Cal.App.4th 306, 327-28; Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1287.) "Clear and convincing" means evidence "so clear as to leave no substantial doubt . . . [i]t must be sufficiently strong to command the unhesitating assent of every reasonable mind." (In re David C.

To support a punitive damages claim, "ultimate facts" of the defendant's oppression, fraud, or malice must be pled. (Cyrus v. Haveson (1976) 65 Cal.App.3d 306, 316-317.) Sparse claims of malice, oppression or fraud, absent specific factual allegations, are nothing more than insufficient, "patently conclusory language." (Brouseau v. Jarret (1977) 73 Cal.App.3d 864, 872.) Simply inserting buzzwords like "oppression," "fraud," or "malice," without factual support, does not create a legitimate punitive damages claim. (See id.; Grieves v. Sup. Ct. (1984) 157 Cal.App.3d 159, 166); Spinks v. Equity Res. Briarwood Apts. (2009) 171 Cal.App.4th 1004, 1055.)

As to S&W, plaintiffs specifically allege that in 2000, Smith & Wesson entered into a settlement with the federal government and several cities, and vowed to reform its business practices to prevent criminal misuse of its guns, including agreeing to not "sell . . . a weapon designed in a manner so that with a few additional parts and/or minimal modifications an owner can convert the firearms into an illegal fully automatic weapon. Complaint ¶62. Twenty years later, Smith & Wesson has continued selling firearms that it knew could be easily modified to turn into fully automatic assault weapons – even when its modified guns have been used in other mass shootings. It also fraudulently and deceptively marketed its Rifle with known intent to put them in the hands of persons in a demographic particularly likely to cause extreme harm--and indeed, harm that is the epitomy of "cruel and unjust hardship in conscious disregard" of the rights and safety of others.

S&W relies on Civil Code section 3294(b) for the proposition that when suing a corporation, plaintiffs are required to plead authorization by an S&W officer, director or managing agent in order to state a claim for punitive damages against a corporation like S&W. However, this argument misapplies Section 3294(b). That section applies when a plaintiff is suing a corporate employer for the actions of a corporate employee. The section provides in full:

An employer shall not be liable for (exemplary damages) based upon the acts of the employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct...or was personally guilty of oppression, fraud or malice.

With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

In this case, the alleged allegations are the policies of the corporation itself and not a specific employee of the corporation.  Civil Code 3294(b) simply does not apply.

**Demurrer by San Diego Guns**

The following causes of action are alleged against SD Guns: (1) Products Liability – Defective Design; (2) Common Law Negligence; (3) Negligence Per Se; (4) Negligent Entrustment (NOT challenged by demurrer); (5) Public Nuisance

Whether this is a "qualified civil action"

See discussion above with respect to S&W's Demurrer. A "qualified civil liability action" is defined, in relevant part, as seeking redress for harm "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." As stated with respect to the analysis of S&W's demurrer, the action does not need to be "solely caused" by the criminal actions.

"Predicate Exception"

See discussion above with respect to S&W's Demurrer.

DATE: 07/02/2021
DEPT: C-66

MINUTE ORDER

Page 8
Calendar No.

JA000231

CASE TITLE: Goldstein vs Earnest [EFILE]                    CASE NO: 37-2020-00016638-CU-PO-CTL

First Cause of Action for Product Liability
SUSTAINED WITHOUT LEAVE TO AMEND
See discussion above with respect to S&W's Demurrer.

Fourth Cause of Action for Negligence Per Se
OVERRULED.

As Defendant concedes in its moving papers, "negligence per se" is already enumerated as an exception to immunity from causes of action against sellers of firearms under PLCAA. Demurrer 9: 12-13. Defendant however argues negligence per se is not a separate cause of action in California, so Plaintiffs cannot use this doctrine to prove San Diego Guns' negligence in this case.

However, the cause of action for negligence per se presumes negligence upon a violation of statute. Negligence per se creates an evidentiary presumption that affects the standard of care in a cause of action for negligence. Millard v. Biosources, Inc., 156 Cal. App. 4th 1338, 1353 (2007).

As alleged in the complaint, San Diego Guns violated laws applicable to the sale or marketing of firearms including but not limited to Cal. Pen. Code § 27510 by selling the Rifle to the Shooter with actual and/or constructive knowledge that the Shooter was under the age of 21 and lacked a valid hunting license. FAC ¶¶212-213. The complaint further alleges that Cal. Pen. Code § 27510 and other potentially applicable state and/or federal firearms laws are designed to protect all members of the general public from the foreseeable harm that results when dangerous possessors like the Shooter gain access to lethal weapons, and as such Plaintiffs were within the class of people Cal. Pen. Code § 27510 and/or other potentially applicable state and/or federal firearms laws are designed to protect. FAC ¶¶ 214-215. And finally, as a direct and foreseeable result of San Diego Guns' actions, Plaintiffs Goldstein and N.D. were seriously injured, and all Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, and further severe and persistent emotional distress, physical manifestations of emotional distress, loss of enjoyment of life, loss of earnings and earning capacity, and incurred substantial expenses for medical and psychological treatment, therapy and counseling and other economic and/or noneconomic damages. FAC ¶¶ 217-218.

Third Cause of Action for Negligence; Sixth Cause of Action for Public Nuisance
OVERRULED.

See analysis with respect to S&W's Demurrer.

**San Diego Guns' Motion to Strike**
DENIED

In their Prayer for Relief, Plaintiffs generally claim entitlement to punitive damages against all defendants. (FAC, p. 51:1.)

Punitive damages are properly pled by identifying a cause of action for which punitive damages are recoverable and describing the acts or omissions that constitute fraud, oppression or malice as those terms are defined in California Civil Code section 3294(c). "Malice" is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff, or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

A claim for punitive damages is a serious accusation of wrongful conduct, which requires proof by "clear and convincing evidence" that a defendant has been guilty of oppression, fraud, or malice to justify a claim for punitive damages. (Mock v. Michigan Millers Mut. Ins. Co. (1992) 4 Cal.App.4th 306, 327-28; Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1287.) "Clear and convincing" means evidence "so clear as to leave no substantial doubt . . . [i]t must be sufficiently strong to command the unhesitating assent of every reasonable mind." (In re David C.

DATE: 07/02/2021                    MINUTE ORDER                    Page 9
DEPT: C-66                                                    Calendar No.

JA000232

CASE TITLE: Goldstein vs Earnest [EFILE]     CASE NO: 37-2020-00016638-CU-PO-CTL

To support a punitive damages claim, "ultimate facts" of the defendant's oppression, fraud, or malice must be pled. (Cyrus v. Haveson (1976) 65 Cal.App.3d 306, 316-317.) Sparse claims of malice, oppression or fraud, absent specific factual allegations, are nothing more than insufficient, "patently conclusory language." (Brouseau v. Jarret (1977) 73 Cal.App.3d 864, 872.) Simply inserting buzzwords like "oppression," "fraud," or "malice," without factual support, does not create a legitimate punitive damages claim. (See id.; Grieves v. Sup. Ct. (1984) 157 Cal.App.3d 159, 166); Spinks v. Equity Res. Briarwood Apts. (2009) 171 Cal.App.4th 1004, 1055.)

As to San Diego Guns, plaintiffs allege it chose to violate Cal. Pen. Code § 27510 by selling the Rifle, a weapon that could have been easily modified to become an assault weapon, and multiple rounds of ammunition to the Shooter. They made the sale despite knowing that the Shooter was under the age of 21 and with the knowledge that the hunting license the Shooter presented was not valid for the purchase of any firearms in April 2019, months before the license going into effect in July 2020. (Id. at ¶ 124-137).

Attorney Fees (SD Guns)

DENIED.

SD Guns seeks to strike the request for attorney fees.

There is at least a potential for attorney fees under the "private attorney general doctrine" under CCP 1021.5, which provides, in part: "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:

(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons.

Injunctive Relief

DENIED.

Injunctive relief is a remedy for the nuisance cause of action.

IT IS SO ORDERED.

*Kenneth J. Medel*

_____
Judge Kenneth J Medel

DATE: 07/02/2021          MINUTE ORDER                    Page 10
DEPT: C-66                                                  Calendar No.

JA000233

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Goldstein vs Earnest [EFILE]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: **37-2020-00016638-CU-PO-CTL** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the attached minute order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 07/02/2021.

Clerk of the Court, by: _B. On_ _____, Deputy
                         B. Onhuela

SEAN R FERRON
LAW OFFICES OF ADRIENNE D COHEN
1551 NORTH TUSTIN AVENUE # 750
SANTA ANA, CA 92705

BETSEY BOUTELLE
880 FRONT STREET # 6293
SAN DIEGO, CA 92101

MARC P MILES
SHOOK HARDY & BACON LLP
5 PARK PLAZA # 1600
IRVINE, CA 92614

P J LUCCA
DEPUTY ATTORNEY GENERAL
600 W BROADWAY # SUITE 1800
SAN DIEGO, CA 92101

NEIL G GILMOR
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

COREY C GARRARD
WINGERT GREBING BRUBAKER & JUSKIE LLP
600 WEST BROADWAY, SUITE 1200
SAN DIEGO, CA 92101

DANIEL R SHINOFF
ARTIANO SHINOFF
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

MAURICE A BUMBU
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

ANNE E WADDELL
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CA 94105

☐ Additional names and address attached.

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 1

JA000234

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss

**Date:** Friday, September 30, 2022 at 4:36:00 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**District of Massachusetts**

**Notice of Electronic Filing**

The following transaction was entered on 9/30/2022 at 5:34 PM EDT and filed on 9/30/2022

**Case Name:**    Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:**    1:21-cv-11269-FDS

**Filer:**

**Document Number:** 164(No document attached)

**Docket Text:**

<span style="color:blue">**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**</span>

<span style="color:blue">**The motion of defendant Sturm, Ruger & Company to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. [56]) is DENIED without prejudice as moot. (de Oliveira, Flaviana)**</span>

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

James B. Vogts    jvogts@smbtrials.com

JA000235

**Friday, March 10, 2023 at 13:58:58 Central Standard Time**

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss/Lack of Jurisdiction

**Date:** Friday, September 30, 2022 at 4:37:52 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**District of Massachusetts**

**Notice of Electronic Filing**

The following transaction was entered on 9/30/2022 at 5:36 PM EDT and filed on 9/30/2022

**Case Name:** Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:** 1:21-cv-11269-FDS

**Filer:**

**Document Number:** 165(No document attached)

**Docket Text:**
<span style="color:blue">**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**</span>

<span style="color:blue">**The motion of defendant Barrett Firearms Manufacturing, Inc., to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. [58]) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot. (de Oliveira, Flaviana)**</span>

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

JA000236

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss

**Date:** Friday, September 30, 2022 at 4:41:36 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 9/30/2022 at 5:40 PM EDT and filed on 9/30/2022

**Case Name:** Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:** 1:21-cv-11269-FDS

**Filer:**

**Document Number:** 166(No document attached)

**Docket Text:**

**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**

**The motion of defendant Witmer Public Safety Group, Inc., d/b/a Interstate Arms to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. [60]) IS GRANTED. (de Oliveira, Flaviana)**

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

James B. Vogts    jvogts@smbtrials.com

JA000237

**Friday, March 10, 2023 at 13:59:47 Central Standard Time**

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss/Lack of Jurisdiction

**Date:** Friday, September 30, 2022 at 4:42:45 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

United States District Court

District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 9/30/2022 at 5:41 PM EDT and filed on 9/30/2022

**Case Name:**   Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:**   1:21-cv-11269-FDS

**Filer:**

**Document Number:** 167(No document attached)

**Docket Text:**
**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**

**The motion of defendant Glock Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b) (2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. [62]) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot. (de Oliveira, Flaviana)**

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

JA000238

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss for Failure to State a Claim

**Date:** Friday, September 30, 2022 at 4:45:25 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### District of Massachusetts

### Notice of Electronic Filing

The following transaction was entered on 9/30/2022 at 5:43 PM EDT and filed on 9/30/2022

**Case Name:**  Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:**  1:21-cv-11269-FDS

**Filer:**

**Document Number:** 168(No document attached)

**Docket Text:**
**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**

**The motion of defendant Colt's Manufacturing Company LLC to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. [64]) is DENIED as to Rule 12(b)(1), GRANTED as to Rule 12(b)(6), and otherwise DENIED without prejudice as moot. (de Oliveira, Flaviana)**

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss

**Date:** Friday, September 30, 2022 at 4:46:54 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 9/30/2022 at 5:45 PM EDT and filed on 9/30/2022

**Case Name:**      Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:**      1:21-cv-11269-FDS

**Filer:**

**Document Number:** 169(No document attached)

**Docket Text:**

**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**

**The motion of defendant Smith & Wesson Brands, Inc. to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. [69]) is DENIED as to Rule 12(b) (1) and GRANTED as to Rule 12(b)(6). (de Oliveira, Flaviana)**

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell      jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney      pdurney@cornellgollub.com

Richard M. Brunell      rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol      Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan      dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski      netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III      colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

James B. Vogts      jvogts@smbtrials.com

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss

**Date:** Friday, September 30, 2022 at 4:48:27 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**District of Massachusetts**

**Notice of Electronic Filing**

The following transaction was entered on 9/30/2022 at 5:46 PM EDT and filed on 9/30/2022

**Case Name:**        Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:**     1:21-cv-11269-FDS

**Filer:**

**Document Number:** 170(No document attached)

**Docket Text:**

<span style="color:blue">**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**</span>

<span style="color:blue">**The motion of defendant Century International Arms, Inc. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. [70]) is DENIED without prejudice as moot. (de Oliveira, Flaviana)**</span>

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

James B. Vogts    jvogts@smbtrials.com

JA000241

**Subject:** Activity in Case 1:21-cv-11269-FDS Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al Order on Motion to Dismiss for Failure to State a Claim

**Date:** Friday, September 30, 2022 at 4:49:31 PM Central Daylight Time

**From:** ECFnotice@mad.uscourts.gov

**To:** CourtCopy@mad.uscourts.gov

<span style="color:red">This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**United States District Court**

**District of Massachusetts**

### Notice of Electronic Filing

The following transaction was entered on 9/30/2022 at 5:47 PM EDT and filed on 9/30/2022

**Case Name:** Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc. et al

**Case Number:** 1:21-cv-11269-FDS

**Filer:**

**Document Number:** 171(No document attached)

**Docket Text:**
**Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered.**

**The motion of defendant Beretta U.S.A. Corp. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. [73]) is DENIED without prejudice as moot. (de Oliveira, Flaviana)**

**1:21-cv-11269-FDS Notice has been electronically mailed to:**

James M. Campbell    jmcampbell@campbell-trial-lawyers.com, coliveira@campbell-trial-lawyers.com, crenaud@campbell-trial-lawyers.com, mmichitson@campbell-trial-lawyers.com

Peter M. Durney    pdurney@cornellgollub.com

Richard M. Brunell    rbrunell@shadowenpllc.com, service@shadowenpllc.com

Thomas M. Sobol    Tom@hbsslaw.com, ChristineT@hbsslaw.com, grega@hbsslaw.com, racheld@hbsslaw.com

David Duncan    dduncan@zalkindlaw.com, agilces@zalkindlaw.com

Christine M. Netski    netski@sugarmanrogers.com, matarazzo@sugarmanrogers.com

Edward V. Colbert, III    colbert@casneredwards.com, sullivan@casneredwards.com, tovern@casneredwards.com

James B. Vogts    jvogts@smbtrials.com

JA000242

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3    ESTADOS UNIDOS MEXICANOS,              )
                        Plaintiff,           )
 4                                           )
      vs.                                    )   No. 21-CV-11269-FDS
 5                                           )
      SMITH & WESSON BRANDS, INC., ET AL.,   )
 6                        Defendants.        )
                                             )
 7

 8

 9

10
                   BEFORE THE HONORABLE F. DENNIS SAYLOR
11               UNITED STATES CHIEF DISTRICT COURT JUDGE
                    MOTION HEARING - BY VIDEOCONFERENCE
12

13

14

15           John Joseph Moakley United States Courthouse
                           One Courthouse Way
16                   Boston, Massachusetts 02210

17
                             April 12, 2022
18                            10:00 a.m.

19

20
                   Kathleen Mullen Silva, RPR, CRR
21                      Official Court Reporter
             John Joseph Moakley United States Courthouse
22                 One Courthouse Way, Room 7209
                     Boston, Massachusetts 02210
23                 E-mail: kathysilva@verizon.net

24         Mechanical Steno - Computer-Aided Transcript

25
```

```
 1    APPEARANCES:

 2            Shadowen PLLC
                Steve D. Shadowen, Esq.
 3            Richard M. Brunell, Esq.
                Tina J. Miranda, Esq.
 4            1135 W. 6th Street, Suite 125
                Austin, Texas 78703
 5            717.903.1177
                and
 6            Jonathan Lowy, Esq.
                840 First Street, N.E., #400
 7            Washington, DC 20005
                202.415.0691
 8            for Plaintiff

 9
                Jones Day
10            Andrew E. Lelling, Esq.
                100 High Street, 21st Floor
11            Boston, Massachusetts 02110
                617.449.6856
12            and
                Jones Day
13            Anthony Dick, Esq.
                Noel J. Francisco, Esq.
14            51 Louisiana Avenue, N.W.
                Washington, DC 20001
15            202.879.7679
                for Smith & Wesson Brands, Inc.
16
                Renzulli Law Firm, LLP
17            Christopher Renzulli, Esq.
                81 Main Street, #508
18            White Plains, New York 10601
                914.285.0700
19            for Glock, Inc.

20            Harrison Law LLC
                Michael L. Rice, Esq.
21            141 West Jackson Boulevard, Suite 2055
                Chicago, Illinois 60604
22            312.638.8781
                and
23            Sugarman, Rogers, Barshak & Cohen
                John G. O'Neill, Esq.
24            101 Merrimac Street, 9th Floor
                Boston, Massachusetts 02114
25            617.227.3030
                for Colt's Manufacturing Co. LLC
```

```
 1          Swanson, Martin & Bell, LLP
            James B. Vogts, Esq.
 2          330 N. Wabash, Suite 3300
            Chicago, Illinois 60611
 3          312.321.9100
            for Sturm Ruger & Co., Inc.
 4
            Cozen O'Connor
 5          Michael B. deLeeuw, Esq.
            Maria Ermakova, Esq.
 6          45 Broadway, Suite 1600
            New York, New York 10006-3792
 7          212.908.1331
            and
 8          Cozen O'Connor
            John Kennedy McDonald, Esq.
 9          1650 Market Street, Suite 2800
            Philadelphia, Pennsylvania 19103
10          215.864.8046
            for Beretta USA Corp.
11
            Pisciotti Lallis Erdreich
12          Ryan Erdreich, Esq.
            30 Columbia Turnpike, Suite 205
13          Florham Park, New Jersey 07932
            973.245.8100
14          and
            Morrison Mahoney LLP
15          Joseph G. Yannetti, Esq.
            250 Summer Street
16          Boston, Massachusetts 02210
            617.439.7585
17          for Century International Arms, Inc.

18          Porter, Porter & Hassinger
            James W. Porter, II, Esq.
19          Richard W. Kinney, III, Esq.
            880 Monclair Road, Suite 175
20          Birmingham, Alabama 35213
            205.322.1744
21          and
            Campbell Conroy & O'Neil, P.C.
22          Trevor J. Keenan, Esq.
            20 City Square, Suite 300
23          Boston, Massachusetts 02129
            617.241.3000
24          for Barrett Firearms Manufacturing, Inc.

25
```

```
 1          Litchfield Cavo LLP
            Daniel Litchfield, Esq.
 2          6 Kimball Lane, Suite 200
            Lynnfield, Massachusetts 01904
 3          781.309.1521
            for Witmer Public Safety Group, Inc.
 4

 5
       Also Present: Alejandro Celorio
 6                    Guillaume Michel

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2          THE CLERK:  Court is now in session in the matter of

 3   Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et

 4   al., Civil Action No. 21-11269.

 5          Those in attendance are reminded that photographing,

 6   recording and rebroadcasting of this hearing is prohibited and

 7   may result in sanctions.

 8          Will counsel please identify themselves starting with

 9   the plaintiff

10          MR. SHADOWEN:  Good morning, Your Honor, Steve

11   Shadowen on behalf of the Government of Mexico.  Here with me

12   in our room are Alejandro Celorio, who's the principal legal

13   advisor to the Government of Mexico.  Also, Guillaume Michel,

14   who's the legal advisor to the Embassy of Mexico in Washington,

15   D.C.

16          THE COURT:  I'm sorry.  I actually can't hear a lot of

17   what you're saying.  I don't know what the issue is.  Can you

18   make sure you're speaking into the mic and that everything is

19   turned up.

20          MR. SHADOWEN:  Is this better?

21          THE COURT:  Yes, it is.

22          MR. SHADOWEN:  So I'll start again.  Steve Shadowen on

23   behalf of the Government of Mexico.  With us in the room here

24   are Alejandro Celorio, who's the principal legal advisor to the

25   Government of Mexico.  Also, Guillaume Michel, who is the legal
```

```
 1    advisor to the Embassy of Mexico in Washington, D.C.

 2           On the camera and from my office, who may have

 3    speaking roles, depending on the questions that the judge asks,

 4    are Rick Brunell and Tina Miranda.

 5           MR. LOWY:  Your Honor, Jonathan Lowy, also for the

 6    government.

 7           THE COURT:  Good morning.

 8           MR. LELLING:  Your Honor, I'll start with counsel for

 9    Smith & Wesson and then I'll hand it off to Glock, I think.

10           I'm Andrew Lelling.  Along with me is Noel Francisco

11    and Anthony Dick.  We represent Smith & Wesson Brands in this

12    case.

13           And, again, I'll hand it off to counsel for Glock.

14           MR. RENZULLI:  Good morning, Your Honor.  Christopher

15    Renzulli here on behalf of defendant Glock, Inc.

16           I'll hand it off to Colt's.

17           MR. RICE:  Good morning, Your Honor.  Michael Rice on

18    behalf of defendant Colt's Manufacturing Co. LLC, and I believe

19    John O'Neill is also going to be here, but not speaking on

20    behalf of Colt's.

21           MR. VOGTS:  Good morning, Your Honor.  James Vogts on

22    behalf of Sturm Ruger & Company, Incorporated.

23           THE COURT:  Good morning.

24           MR. deLEEUW:  Good morning.  Michael deLeeuw on behalf

25    of Beretta USA.  With me also is John McDonald and Maria
```

```
 1    Ermakova.  I don't know that I'll be addressing the Court.  It
 2    depends on the court's questions.  Thank you.
 3              THE COURT:  Good morning.
 4              MR. ERDREICH:  Good morning, Your Honor.  It's
 5    Ryan Erdreich on behalf of Century International Arms, and I
 6    believe Joseph Yannetti is on as well.
 7              MR. PORTER:  Good morning, Your Honor.  Can you hear
 8    me?
 9              THE COURT:  Yes.
10              MR. PORTER:  This is Jim Porter.  I'm counsel for
11    Barrett.  And I'm here with Warren Kinney and Trevor Keenan.
12              THE COURT:  Good morning.
13              MR. LITCHFIELD:  Good morning, Your Honor.  My name is
14    Daniel Litchfield.  I'm here on behalf of Witmer Public Safety
15    Group.
16              THE COURT:  Good morning.  Is that everyone?
17              MR. LELLING:  I think that's everyone, Your Honor.
18              THE COURT:  All right.  This is a hearing on the
19    various outstanding motions to dismiss.
20              I'll ask everyone who is not actually speaking to mute
21    yourself and then remember to unmute when the time comes to
22    talk.  It looks like we don't have a perfectly stable
23    connection here.  There are a lot of people on this call.  So
24    if you see me going like this, it means I'm having trouble or
25    you're breaking up.
```

1    The counsel representing the plaintiff, I was able to

2    hear you, but I was straining a little bit, so I will ask you

3    to make sure you are as close to a microphone as possible under

4    the circumstances to make sure we can all hear you.

5    There's a lot of ground to cover here, and I would

6    like to do this in a time period of no more than an hour and a

7    half.  I have read the papers, and I'm not going to rule from

8    the bench.  So, you know, use your time prudently.

9    The parties have proposed a timetable that begins with

10   the joint motion to dismiss on 12(b)(1) and 12(b)(6) grounds,

11   and obviously that will be the principal focus.  I also want to

12   make sure that we have time for the other motions as well.

13   So let's get into it.  I may not -- I'm not going to

14   set times in advance because I'm not quite sure how this is

15   going to go, but I may ask some of you to wrap up or be

16   reasonably concise in terms of your presentation.

17   So let's start there.  Who's taking the lead?

18   Mr. Lelling, is that you?

19   MR. LELLING:  I am, Your Honor.  Thank you.  As you

20   said, I think we're going to start with sort of a highlight

21   reel on the joint motion to dismiss by both sides and then move

22   on to personal jurisdiction issues and then Unfair Trade

23   Practice Act claims.

24   THE COURT:  All right.  And I'll hear the other side's

25   response when you get to a breaking point.  I don't want to

```
  1  hear all, whatever, six or seven motions, whatever the number
  2  is, at once.  So go ahead.
  3           MR. LELLING:  Right.  Thank you, Your Honor.
  4           Essentially what's happening here, Your Honor, is that
  5  the Mexican Government is using the court as a tool to
  6  circumvent diplomatic or even legislative channels in a dispute
  7  between bordering countries, United States and Mexico.  And the
  8  two central defects of Mexico's complaint reflect that fact.
  9           Mexico's case fails at the threshold for two separate
 10  reasons.  One is that Mexico cannot establish standing even to
 11  the constitutional minimum in Article III.  And even aside from
 12  that, the Protection of Lawful Commerce In Arms Act, which I'm
 13  going to call PLCAA during this hearing, bars the suit at
 14  inception, including all claims that Mexico wants to bring.
 15           As to the first basis, standing, the connection
 16  between the alleged harms to the Government of Mexico and the
 17  defendant's conduct is so attenuated and speculative that
 18  Mexico cannot establish a case or controversy under Article
 19  III.
 20           Mexico, interestingly, essentially concedes this
 21  because it has to.  It is, in fact, the core theory of Mexico's
 22  case.  So look at attenuation, and here there's obviously a lot
 23  of overlap, you know, on the Venn diagram between proximate
 24  causation issues and standing.  Here you have a case in which
 25  guns are manufactured in the United States.  They go to
```

```
 1    wholesalers, wholesalers to retailers, maybe to more than one
 2    retailer.  Then a buyer, who may or may not be a straw
 3    purchaser, from a buyer to who knows how many people.  Then
 4    they're smuggled over the U.S. border into Mexico where they go
 5    through who knows how many acquirers, end up in the hands of an
 6    end user who shoots somebody.  But we're not done yet.  It's
 7    not the victim of the shooting or that person's estate that is
 8    before the court as plaintiff.  It is the Government of Mexico
 9    asserting derivative harm.
10            So this is far more attenuated than can possibly
11    sustain standing in the case and, again, shows lack of probable
12    cause.  But I think more importantly than the Article III
13    standing in that context is that the claims are also
14    speculative.  There are several facts that are in Mexico's
15    complaint that make this point.
16            So about two percent of guns manufactured by the
17    defendants even go to Mexico.  That's from the complaint at
18    paragraph 435.  Many of the guns in Mexico are not made in the
19    United States.  And in fact, less than half of the guns
20    recovered in Mexico were even manufactured by a defendant in
21    this case.  And the odds of any one defendant having
22    manufactured one of these guns is about 10 percent or less.
23            So by Mexico's estimate, this leaves about 6 million
24    guns in Mexico that no defendant in this case made.  And in
25    light of the approximately 16,000 gun-related homicides in
```

JA000252

1    Mexico each year, that leaves approximately 400 guns available

2    in Mexico for any one shooting that no defendant manufactured.

3              Now, under Supreme Court and First Circuit law, what

4    we would have to conclude is that the alleged harms to Mexico

5    are not fairly traceable to the conduct of the defendants.

6    This standard has real teeth especially in the First Circuit.

7    The Court need go no farther than the *Dantzler* decision in

8    2020, which involved one link that was deemed too speculative

9    between the conduct of defendant and the claimed harm to

10   plaintiff in that case, and I won't go through the facts of

11   *Dantzler* unless the court wants me to.  It's supported by other

12   cases in the First Circuit like *Katz*.

13             If the Court is looking for a case discussing the

14   standing issue in the firearms context, *Ganim* in 2000 or 2001

15   before the Connecticut Supreme Court.  Now, that's under state

16   standards for standing but they are similar enough.  *Ganim*

17   involved the City of Bridgeport, Connecticut, two hours from

18   here by car, alleging claims almost perfectly analogous to what

19   Mexico is saying here, that the City of Bridgeport incurred

20   derivative costs because of the conduct of the gun

21   manufacturers in selling and marketing of firearms.

22             As to the second point, Your Honor, the applicability

23   of PLCAA, much has been made of the issue of whether PLCAA

24   applies extraterritorially and so to the claims in this case.

25   But that is to misapprehend the question I think a little bit.

1    PLCAA does one thing.  It immunizes U.S. gun

2    manufacturers and sellers from liability based on unlawful

3    misuse of its products by other people.  The statutory purposes

4    in 7901 actually describe that as an abuse of the legal system.

5    It achieves this goal by simply barring that kind of civil

6    action in federal and state courts in the United States.  The

7    statute says "may not be brought."

8         Okay.  So in light of that, if you have a case where

9    there's an international and domestic element to the underlying

10   facts and you're trying to figure out if the federal statute

11   will apply, we look to *RJR Nabisco* and to cases like *Morrison*.

12        Now, *RJR Nabisco* lays out a two-step test in this

13   context.  One is does the statute clearly indicate, is there a

14   clear affirmation in the statute that Congress intended

15   extraterritorial effect, extraterritorial coverage.  If not,

16   are we nonetheless really dealing with a domestic application

17   of the statute.

18        Now, PLCAA does apply extraterritorially, meaning it

19   meets the first prong of the *RJR Nabisco* test, but the Court

20   doesn't need to go there because this is obviously a domestic

21   application of the statute.  I can cover prong one if the Court

22   wants me to do that, but this issue is decided by prong two.

23        In this case Mexico has sued U.S.-based gun

24   manufacturers and a seller in a U.S. court for making a lawful

25   product in the United States which is then sold in the United

1    States with the goal of U.S. end users.  Again, as Mexico

2    itself concedes, 98 percent of the weapons that these

3    defendants manufacture or sell do not go to Mexico.  So under

4    *RJR* and the *Morrison* decision just before that where the

5    statutory focus is on an event that happened here, the statute

6    applies.  Here the statutory focus is filing a qualified civil

7    action in federal or state court.  So to quote *RJR Nabisco*, "If

8    conduct relevant to the statute's focus happened in the United

9    States, the case involves a permissible domestic application

10    even if other conduct occurred abroad."  That is this case.

11         Now, as the Court sort of thinks about this issue, I

12    think the *Morrison* decision from a few years ago is especially

13    instructive here.  I won't sort of bore you with all the

14    details, but in *Morrison* basically what happens is there's a

15    mortgage fraud in Florida.  But the purchase and sale of the

16    relevant security happens on a foreign exchange and the Supreme

17    Court needed to decide that Section B of the '34 Act applied.

18    The court decides that the core feature of Section 10, and so

19    Rule 10b-5 of the '34 Act, is the purchase and sale of the

20    security.  Where did that happen?  It happened somewhere else.

21    So the statute does not apply.

22         Here you have the opposite.  The core feature of PLCAA

23    is the filing of a qualified civil action in a U.S. court.

24    That is what has happened here.  So PLCAA applies.

25         Now, if the Court's curious about the first prong,

1    PLCAA does have extraterritorial coverage, if the Court wants

2    to address that point.  Both *RJR Nabisco* and earlier cases make

3    clear that the statute does not need to explicitly say we,

4    Congress, intend this statute to apply abroad.  "An express

5    statement of extraterritoriality is not essential."  That's a

6    quote from *RJR Nabisco*.  You can derive it from context.  I

7    think what's very important to understand the nature of the

8    statute which is that, unlike most statutes that come up in

9    these cases dealing with extraterritoriality, this is not an

10   offensive statute.  This is a defensive one.  This isn't a

11   question of whether we are imposing U.S. law on conduct that

12   occurred abroad.  It's the reverse.  It's imposing conduct that

13   occurred abroad on U.S. law.  The statute is designed to

14   immunize certain parties from certain kinds of lawsuits like

15   this one.

16        Look at this way:  Under Mexico's theory as to the

17   extraterritorial applicability of PLCAA, they would have to

18   argue that Congress intended this robust statutory immunity to

19   apply if an independent criminal actor shot somebody in San

20   Diego but not if he zips over the border and shoots somebody in

21   Tijuana.  So shoot somebody in San Diego, you're immune under

22   the statute.  Shoot somebody in Tijuana, you're not immune

23   under the statute.  We would submit that that is an absurd

24   result in the posture of a defensive statute.  So I think under

25   either prong it's pretty clear that PLCAA applies here.

1        Now, within that discussion -- this will be my final

2    point and I'll wrap up.  Within that discussion of PLCAA

3    applicability looms large the question of whether the

4    plaintiff's claims meet the predicate exception.  There are

5    other exceptions involved, negligence per se and negligent

6    entrustment, but a lot of the heat and light is on the

7    applicability of the predicate exception in PLCAA to -- mostly

8    to Unfair Trade Practice Act claims and some other claims.  So

9    I just want to address that very briefly.

10        All of plaintiff's claims fail to meet the predicate

11   exception.  And even if they did allege claims under federal or

12   state statutes that could meet the parameters of the exception,

13   there is no proximate causation.  I think it's important to

14   note that PLCAA itself requires proximate causation.  That

15   would be the application of federal proximate cause law, not

16   the proximate cause law of any given state.  Mexico cannot meet

17   that standard.

18        But as to the first part of it, unfair trade practice

19   laws, like Chapter 93A or the Connecticut Unfair Trade Practice

20   Act, do not fall within the exception.  There are a few reasons

21   for this and obviously some courts have addressed this.

22        First the plain language.  I realize that this swims

23   against the tide a little bit in that courts recently have

24   addressed the issue of whether the language in the predicate

25   exception is ambiguous or not.  I would submit to you it is not

 1   ambiguous.  And it's a pretty easy analysis.

 2          First, it says what it says, which is that what fits

 3   within the predicate exception is federal or state statutes

 4   applicable to sale and marketing of firearms, of the product.

 5   That means federal or state laws that are explicitly

 6   applicable, that are targeting the firearms industry.  How do

 7   we know this?  Because Congress provides two illustrations in

 8   the body of the exception and both of those illustrations

 9   involve laws specifically applicable to the firearms industry.

10   Now, I've seen no decision addressing the obvious question of

11   why is Congress providing the illustrations.  Congress is

12   providing the illustrations to make clear what kinds of federal

13   or state laws it is talking about.

14          There's also the purpose of PLCAA, which is stated

15   pretty starkly in 7901, which is to prevent civil liability for

16   firearms manufacturers when civil liability rests on the

17   independent criminal or other misuse of a properly functioning

18   firearm.

19          That's all the statute does.  In light of the

20   statutory purpose, I think that informs what "applicable" must

21   mean.  And in light of the statutory purpose, meaning

22   essentially the immunity statute, we would define the exception

23   narrowly instead of broadly given the chance.

24          As a corollary to that textually, there's only two

25   ways to read federal or state law and statutes applicable to

1  the sale or marketing of product.  "Applicable" can mean

2  capable of being applied.  That is obviously false, because it

3  would immediately swallow the statute.  Any federal or state

4  statute could be applied.  This point has been made by any

5  number of courts:  *Ileto* in the Ninth Circuit, *City of New York*

6  in the Second Circuit.  Even *Soto* in Connecticut makes that

7  point and that is obviously true.

8          But if that's not the proper textual reading, all you

9  are left with is the textual reading that the defendants are

10 proffering, which is that "applicable" means federal or state

11 statutes that are explicitly applicable specifically to the

12 firearms industry.

13         What *Soto* tries to do, and obviously *Soto* is a

14 significant decision here, is it tries to establish a middle

15 ground.  It spends a lot of pages in what is a very close

16 decision, it was 4/3, spends a lot of pages trying to establish

17 that the middle ground is justifiable when it's really not.

18 The middle ground would require courts to impose themselves

19 where Congress didn't go, which is in the picking and choosing

20 between laws that would apply.

21         And I would urge the Court not to do that.  *Soto* makes

22 some key analytical errors that I think, with all respect to

23 that court, render its final holding incorrect.  A key one

24 being that very early in *Soto's* analysis, it looks to whether

25 firearm-specific marketing laws even existed at the time PLCAA

1   was passed in 2005.  It finds none.  And so asks rhetorically,

2   well, then when PLCAA says federal and state statutes

3   applicable to the sale and marketing of guns, what can

4   "marketing" mean?  Congress must have intended preexisting

5   state laws, general consumer protection laws.  But that is

6   incorrect.  As we say in our brief and we cite them, there were

7   actual multiple existing state laws specifically targeting the

8   marketing of firearms when PLCAA was passed.  But from that

9   error proceeds much of *Soto's* analysis.

10          I think *Soto* also misreads the statute as generally

11  exempting marketing laws when, in fact, it's only exempting

12  marketing laws applicable to or tied to the sale of firearms.

13          So at the end of the day, Your Honor, I don't think

14  the predicate exception can be read as including these sort of

15  consumer protection claims despite plaintiff's efforts.

16          I think with that I will wrap up, unless there's

17  anything specific to these arguments that the Court wants to

18  hear about.  If not, I would hand it off to plaintiff's

19  counsel.

20          THE COURT:  All right.  Thank you.  All right.

21          Who's taking the lead for plaintiff?

22          MR. SHADOWEN:  Your Honor, Steve Shadowen on behalf of

23  the Government of Mexico.

24          On this motion to dismiss the complaint the

25  allegations, the well-pleaded allegations must be accepted as

```
 1    true and they are true.  The defendants actively facilitate

 2    trafficking of their guns to the cartels and other criminals in

 3    Mexico.  The defendants know of the systematic straw purchases,

 4    bulk sales, repeat sales that are the lifeblood of the cartels.

 5    The defendants know that the sales are of military style

 6    assault weapons that are the weapons of choice of the cartels.

 7    The defendants intentionally make these military style weapons

 8    easily convertible into fully automatic machine guns, and about

 9    a third of the assault weapons that are trafficked into Mexico

10    are, in fact, converted into automatic machine guns.

11              THE COURT:  Let me ask you a question.  If the concern

12    here is -- or if -- if the issue is military style weapons --

13    first off, would this -- would your approach apply equally to

14    other criminal organizations, let's say MS-13 or the Mafia?  In

15    other words, the government of El Salvador could sue to recover

16    MS-13 costs or the government of Italy could sue to recover

17    Mafia-related costs, if your theory is correct?

18              MR. SHADOWEN:  I believe there would be no bar to

19    those claims if they can meet the requirements that we meet

20    here, including proximate cause and so forth, they would -- and

21    if their law gives them a claim that they can pursue in the

22    United States, yes, it would.

23              THE COURT:  All right.  And what about terror

24    organizations?  Could the Government of Israel or Ireland sue

25    concerning Hamas or the IRA if American firearms were used?
```

```
 1         MR. SHADOWEN:  I'd have to -- I haven't given that
 2    thought, Your Honor.  I don't know the answer to that.  As we
 3    have styled our case, we say that we -- that PLCAA does not bar
 4    it because of three main things:  The injury occurs in Mexico,
 5    the gun misuse occurs in Mexico, and the plaintiff is the
 6    Government of Mexico.  So I think that this case can be
 7    narrowed down to when those three circumstances are met to
 8    avoid PLCAA, and in addition to meet whatever requirements
 9    there are in the substantive law of the foreign nation.
10         THE COURT:  But I want to understand sort of the
11    implications of your argument, whether there's any logical
12    stopping point, because it seems to me that your argument does
13    not depend on the fact that there's an organization that
14    exists.
15         So let's say that a single person, as happened I think
16    about a week ago, begins shooting civilians on the streets of
17    Tel Aviv, if it turns out that that's a Smith & Wesson firearm
18    or an American-manufactured firearm that was converted to
19    military type use, does that mean the Government of Israel
20    could sue Smith & Wesson in the United States courts?  In other
21    words, does this have to be tied to an organization, an illegal
22    organization?  Wouldn't it apply equally to acts of individuals
23    committed abroad?
24         MR. SHADOWEN:  Our claim and our argument, as we
25    framed it, is dependent upon the plaintiff being a sovereign
```

1    nation.

2         THE COURT:  Right.  So the Government of Israel sues

3    and says, "Hey, Smith & Wesson, this is your fault.  You

4    manufactured these guns."

5         MR. SHADOWEN:  In addition, our complaint is styled

6    and our arguments are styled and are limited to instances in

7    which there is a systematic repeated trafficking of guns into

8    the foreign jurisdiction of which these defendants have

9    knowledge and in which they actively participate.  Those are

10   the fundaments of our case.

11        THE COURT:  But the statute doesn't talk in those

12   terms.  In other words, if you're right, what prevents -- I

13   don't know -- a single bank robbery or carjacking in Rio de

14   Janeiro -- the Government of Brazil suing the gun manufacturer?

15   Your distinction seems to be grounded in the statute or the

16   Constitution, and it seems to me if what you're saying is

17   permissible, then that's permissible as well.  Let me give you

18   maybe the most extreme example of all.

19        If the concern is military type weapons, you know, if

20   Ukrainians are using United States manufactured military

21   weapons or Smith & Wesson revolvers, for that matter, to defend

22   themselves, can the Government of Russia come in and say, "You

23   have caused us harm, U.S. arms manufacturers, by manufacturing

24   these goods and they've killed Russian soldiers and therefore

25   we're suing for damages?"  I mean, why not if your theory is

1   right?

2         MR. SHADOWEN:  Other judicial doctrines would clearly

3   come into play at that point.  Act of state doctrine, the

4   political question doctrine, all sorts of other doctrines that

5   simply are not at play here in this case.

6         And, to return for a moment to the question of

7   systemic trafficking of the weapons, it may be true that

8   someone could avoid PLCAA with a single claim of a single

9   instance, but they also need a substantive claim to bring.  And

10  I doubt that in many circumstances they would be able to meet

11  the criteria of the substantive law that they are invoking.  To

12  get to the manufacturers, as opposed to just getting to the

13  immediate traffickers, the straw purchasers, you must

14  establish, and we will establish, that these gun manufacturers

15  are on notice of systemic repeated trafficking and actively

16  facilitate it and do it for profit.  That's what distinguishes

17  our case.  And these other instances of military use and so

18  forth, Your Honor, these other judicial doctrines would almost

19  certainly come into play at that point.

20        The defendants do raise certain arguments in their

21  reply brief with respect to the applicability of the

22  presumption against extraterritoriality.  With the Court's

23  permission I would like to touch on each of those very briefly

24  because this is our only opportunity to do so.

25        As the Court is aware, we rely principally on the

1    Supreme Court decisions in *Small* and *RJR Nabisco*.  The

2    defendants try to avoid the clear implications of those

3    decisions on a number of grounds, and I'd like to just tick

4    through them and give you our response to those arguments.

5          Defendants say in their reply brief the PLCAA

6    references to foreign commerce are more numerous or somehow

7    different than the references to foreign commerce in the other

8    cases where the Supreme Court has said that references to

9    foreign commerce are not sufficient to overcome the presumption

10   against extraterritoriality.  I would point the Court to the

11   *EEOC v. Arabian American Oil Company*.  That case cites the

12   *McCulloch* decision, which involves the National Labor Relations

13   Act, 29 U.S.C. 151 to 168.  The NLRA uses the term "foreign

14   commerce" or "interstate and foreign commerce" to define labor

15   organizations, to define the covered industries, to define the

16   scope of the bargaining obligation, to define the scope of the

17   enforceability of contracts, to determine the questions that

18   are appropriate for representation contests, and to define the

19   scope of the effective disputes.  Those are all in sections of

20   29 U.S.C. 158(b)(4), 158(d), 158(e), 159(c)(1) and 160(a).

21         The defendants say that PLCAA defines a protected

22   dealer by reference as including someone who's engaged in

23   interstate or foreign commerce, and therefore that necessarily

24   includes an exporter.  That's exactly the sort of use of the

25   term "foreign commerce" that the Supreme Court has emphatically

1   and repeatedly rejected.  It's even more important here to

2   understand why that isn't appropriate.

3        If you look at -- the defendants say Section

4   7903(6)(B) defines a dealer with reference to those who are

5   engaged in interstate or foreign commerce that necessarily

6   includes exporters.  But the immediately preceding definition

7   in the statute, 7903(6)(A), specifically includes a definition

8   of importer.  So if the defendants are right that the

9   definition of dealer includes exporter because it refers to

10  foreign commerce, it would also necessarily include an

11  importer, rendering the immediately preceding definition

12  absolutely surplusage.  And more generally PLCAA refers to

13  manufacturing and importing repeatedly but never refers to

14  exporting, and I draw the Court's attention to Section

15  7901(a)(4), 7901(a)(5) and 7901(b)(1).

16       The defendants say that the decision in *Small* preceded

17  the modern two-step extraterritoriality test, and that's true

18  that it did.  However, the Supreme Court in *Kiobel v. Royal*

19  *Dutch Petroleum*, 569 U.S. 108 at page 118, extensively

20  discusses, quotes and cites the decision in *Small* for the

21  modern rules with respect to extraterritoriality.

22       The defendants say PLCAA does not preclude this claim

23  because the Government of Mexico could bring the claim in its

24  own court in Mexico.  And the defendants say, therefore, this

25  case is not simply the flip side of *RJR Nabisco*, where the

1  court applied the presumption against extraterritoriality to

2  the term "injury" in RICO's claim-granting provision.  But the

3  fact of the matter is that the practicalities of modern

4  international litigation would mean that denying a U.S. forum

5  for this claim would create every bit as much a potential for

6  international friction as would recognizing the claim in *RJR*

7  *Nabisco*.

8       To take just two examples:  There are difficulties in

9  establishing personal jurisdiction.  More importantly, a large

10  part of the relief that we seek in this case is injunctive

11  relief.  We need to get that injunctive relief from a U.S.

12  court.

13       More broadly, the United States has recognized since

14  its founding the important obligation that it has to keep its

15  courts open to foreign sovereigns to litigate cross-border

16  litigation in U.S. courts.  Alexander Hamilton refers to that

17  obligation in Federalist 82.  The Constitution embodies it in

18  Article III, Section 2, Clause 1, where it grants diversity

19  jurisdiction for claims brought by foreign sovereigns, and that

20  jurisdiction has been included in our statutes ever since the

21  Judiciary Act of 1789.

22       Obviously more recently *RJR Nabisco* specifically

23  pointed to the ability of foreign sovereigns to litigate cross-

24  border tort claims under their law in U.S. courts as a reason

25  why the court there would not construe the term "injury" to

1　encompass injury incurred abroad.  And more broadly, *RJR*

2　*Nabisco* notes very strenuously that the presumption against

3　extraterritoriality applies regardless of the nature of the

4　federal statute at issue, whether it just grants jurisdiction,

5　whether it governs conduct, or whether here it has to do with

6　injuries incurred abroad.

7　　　And lastly, Your Honor, I want to address the

8　defendants' reliance on *WesternGeco* with respect to determining

9　the focus of the statute.  They try to avoid *Small* and *RJR*

10　*Nabisco* by saying that the focus of PLCAA is protecting U.S.

11　manufacturers.  Well, *Small* and *RJR Nabisco* apply the

12　presumption or an assumption against extraterritoriality to the

13　individual terms of the statute, even if it's determined that

14　applying the statute generally is a permissible domestic

15　application.

16　　　But there's two key propositions in *WesternGeco* that

17　are determinative here to show that the focus of this statute

18　is not as the defendants say.  Proposition number one is that

19　related provisions of the statute need to be considered

20　together.  Here that means that 7902(a)'s preclusion of

21　qualified civil liability actions obviously has to be

22　considered in connection with the definition of a qualified

23　civil action, which is in 7903(5)(A).

24　　　The second proposition, *WesternGeco* says when the

25　court is analyzing these separate provisions together, the

 1  court must determine the focus of each of the sections.  And

 2  you'll look in vain in the defendants' briefing or in their

 3  argument today for them to articulate what the focus of Section

 4  7903(5)(A) is.  They don't say because if they say and they say

 5  truthfully, they lose, because it's clear as a bell that the

 6  focus of 7903(5)(A) is injury and gun misuse.  Those are the

 7  key terms in that provision and it's absolutely clear here that

 8  both the injury and the gun misuse occur in Mexico.

 9       So the focus of that provision is on those terms.  The

10  conduct relevant to those terms occurs abroad.  So applying

11  PLCAA here would not be a permissible domestic application.

12       And I think with that, Your Honor, I will turn

13  matters -- let's see -- yes, Mr. Lowy's going to address --

14  unless you have more questions for me, Mr. Lowy is going to

15  address the exceptions to PLCAA even if PLCAA generally were to

16  apply.

17       THE COURT:  All right.  Go ahead.

18       MR. LOWY:  Thank you, Your Honor.

19       To begin to address your question about MS-13 and

20  supplying terrorists, the facts in our case are not just that

21  defendants' guns are used in crime but there are very pointed

22  specific allegations that defendant have long had knowledge of

23  trafficking to the Mexican cartels and they've chosen conduct

24  that facilitates trafficking.

25       Let me give you a concrete example from our complaint.

1    We explain how the defendants utilized one gun dealer, and it's

2    one of many, who supplied more than 650 guns to the cartels

3    even after being told that the purchasers planned to bring the

4    guns to Mexico and the dealer advised a purchaser how to

5    structure sales to evade authorities.

6         Some of those guns from defendants were recovered

7    after the killing of a Mexican police chief near the border.

8    Now, defendants know of those sorts of practices.  They know of

9    those dealers.  If they don't know exactly who they are, they

10   can easily find out and actually do know many of them and they

11   have chosen to continue to supply them.  Their policy is

12   literally that if you were to provide all of that information I

13   just told you about their dealer, their response would be, I'm

14   going to continue to supply them all the guns they want at the

15   border unless and until ATF yanks their license.  And while

16   defendants know, and we allege this, that that rarely happens

17   and when it does happen, it takes years, under established law

18   there is liability there.  There is standing.  There is

19   proximate cause.

20        And you wouldn't know it from defendants' briefs and

21   arguments, but over the past 20 years there have been dozens of

22   lawsuits against gun dealers, distributors, manufacturers, many

23   of them after PLCAA was enacted, for causing gun crimes through

24   their sales practices, and virtually every case has rejected

25   defendants' major arguments, most finding those arguments not

1    even worth considering.

2         In fact, of those dozens of cases over the past 20

3    years, not a single one was dismissed for lack of standing.  So

4    to begin briefly on standing, there is for good reason that

5    these courts have not dismissed cases against these defendants

6    for lack of standing.  Again, you have to reach back to the

7    *Ganim* case 21 years ago in Connecticut.  For one, they can't

8    contest that we can establish the first two prongs of standing,

9    a concrete injury that is redressable, and also the fact that

10   the case was brought by the government does not change that

11   analysis, because the Supreme Court recognized in *Pfizer v.*

12   *Government of India* that foreign sovereigns are on equal

13   footing with domestic litigants to seek redress.  So their only

14   attack is on the causation prong of standing, which they

15   concede is a lesser standard than proximate cause.

16        Now, our allegations satisfy proximate cause.  They

17   certainly satisfy causation.  So for one, what we need to

18   establish causation for standing purposes is cause in fact.  In

19   the example that I just gave, Your Honor, there is no serious

20   question that defendants were cause in fact of that injury.

21   They chose to supply this corrupt dealer.  They chose to allow

22   his corrupt practices.  They could have cut off the dealer.  In

23   fact, they were told by the U.S. Department of Justice to stop

24   supplying dealers like that and to stop allowing bulk sales

25   like that.  But they defied the U.S. Department of Justice

1 | years ago.

2 | So it was completely in defendants' control that those

3 | guns were trafficked. That is cause. That constitutes

4 | standing. And the government is the best and maybe the only

5 | party who can seek redress for some or all of its damages, such

6 | as damage to government property and the costs expended to stop

7 | illegal gun trafficking and possession, as well as the

8 | injunctive relief that it seeks to stop the flood of crime guns

9 | across the border.

10 | So defendants have to argue that there's some other

11 | doctrine that prevents standing. They argue that there is a

12 | third-party harm doctrine under which the causation element of

13 | standing can't be satisfied if the injury results in any way

14 | from a third party or has too many intervening steps or

15 | multiple criminal acts. That is not the law.

16 | The Supreme Court in *Department of Commerce v. New*

17 | *York* held that there is proximate cause of harm resulting from

18 | third parties who "will likely act in predictable ways even if

19 | they do so unlawfully." We allege that and more, that

20 | defendants recast variants of this incorrect argument. They

21 | claim that the drug cartels are independent actors who could

22 | and would cause the same harm regardless of what defendants did

23 | because there are a lot of other guns in Mexico. Well, for

24 | one, if there are a lot of other guns around were a defense,

25 | every single lawsuit against a gun manufacturer or dealer in

1    the United States would be dismissed on those grounds; and not

2    a single court has ever accepted that argument.

3          We also allege that the cartels did react and do react

4    in predictable ways to defendants' conduct.  So they are not

5    independent actors under Department of Commerce.

6          And there is absolutely no basis on the pleadings to

7    reject our allegation that if the cartels did not supply -- if

8    the defendants did not supply the cartels the more than 340,000

9    guns each year that they supply across the border, the cartels

10   would have less fire power and there would be less gun crime.

11   They can attempt to rebut that on summary judgment at trial but

12   not on a motion to dismiss where you have well-pled allegations

13   and more, allegations documented by -- including by post-trial

14   findings of fact from a federal judge.  And the complaint also

15   shows how increases in U.S. guns are directly correlated to

16   increased homicides in Mexico.  And, again, we quote the U.S.

17   Department of Justice telling defendants that if they sold guns

18   more responsibly, they could significantly contribute to public

19   safety.  And what that means is defendants would reduce crime

20   guns and gun crimes if they simply acted lawfully and

21   reasonably.  That supports the allegation as well.  Granted,

22   that was towards the United States market, but the same applies

23   across the border.

24          There's been a mountain of case law that has found

25   that the governmental injuries are not just fairly traceable to

1    the gun manufacturers' practices but proximately caused by that

2    conduct.  The closest Massachusetts authority is *City of Boston*

3    *v. Smith & Wesson* in which Judge Hinkle considered very similar

4    claims brought by a governmental entity against many of these

5    defendants and correctly rejected all of their arguments

6    about -- that governmental costs are too remote or attenuated

7    or derivative or that intervening criminal acts cut off

8    liability.

9         And while defendants reach for the *Ganim* case in

10   Connecticut, it's the *City of Boston* that represents the weight

11   of authority.  The *City of Boston* case was agreed with by the

12   Supreme Court of Indiana in *Gary*, the Supreme Court of Ohio in

13   *Cincinnati*, the Northern District of Ohio in *White*, the Eastern

14   District of New York in *City of New York*, the New Jersey

15   Superior Court in *James,* and in many other cases brought by

16   individual victims of gun crimes.  None of these cases were

17   dismissed for lack of standing.

18        And by the way, even *Ganim* made a point to say that it

19   was not considering any claim that the city suffered direct

20   harm, such as harm to municipal property, and we allege that

21   here.  So even *Ganim* does not support their position.

22        Second, PLCAA does not bar these claims.

23        THE COURT:  Before we get there, would it make a

24   difference -- suppose all the gun manufacturers had the

25   identical numbers of sales nationwide but they were distributed

Case: 22-1823   Document: 00117609876   Page: 172   Date Filed: 09/30/2022   Entry ID: 6555729
Case 1:21-cv-11269-FDS   Document 57   Filed 03/02/22   Page 33 of 59

33

1   more evenly.  In other words, I'm inferring that you're saying

2   that the sales in, I don't know, El Paso or San Diego or

3   Brownsville or whatever are disproportionately higher,

4   therefore showing that they know what's going across the

5   border.  But suppose those sales were made in Oklahoma City or

6   Denver or St. Louis, would that make a difference?  In other

7   words, is your case dependent on disproportionate sales near

8   the border?

9        MR. LOWY:  Your Honor, it's certainly not dependent.

10   In fact, there are examples that we have in the complaint from

11   other locations outside of the border.  It's relevant, but

12   other key facts are who are these dealers, what are their

13   practices?  I mean, the fact is what the federal government

14   told them to do and what they should be doing is not supplying

15   dealers where they've got a track record of breaking the law,

16   of supplying kinds of crime guns.  They should not be allowing

17   someone to come into the store and say, "I want 30 assault

18   weapons and I can't give you a good reason why," or 50-caliber

19   sniper rifles that shoot down helicopters, which are some of

20   the weapons that they're selling.

21        So it goes to who is selling and what are their

22   practices.  That's extremely relevant, as well as where are the

23   guns located.

24        THE COURT:  All right.  Let's talk about PLCAA.

25        MR. LOWY:  Your Honor, as defense counsel explained,

1   the predicate exception, which is Section 7903(5)(A)(iii),

2   explicitly allows actions like this in which the defendant

3   knowingly violates a law applicable to the sale and marketing

4   of firearms and thereby causes harm.  Among the dozens of cases

5   that have construed PLCAA's predicate exception, they all

6   recognize that if there's a well-pled allegation that a

7   defendant violated a firearms law that caused harm, there is no

8   basis under PLCAA to dismiss the case.

9          They have no cases to the contrary of that.  We allege

10  that defendants violated several gun laws and thereby caused

11  harm.  You don't even have to get to the argument that they

12  talked about regarding the *Soto* case.  We can get to it a

13  little bit.  But their main argument is that their supply and

14  distribution of guns, like supplying that corrupt gun dealer

15  that I talked about, creates accomplice liability.  They are at

16  best willfully blind that they're aiding illegal gun sales and

17  possession.  That exact theory was upheld by the Court of

18  Appeals of Indiana in the *City of Gary* in 2007 where the court

19  found exactly that, that that theory made defendants out as

20  accomplices and that they violated gun laws, as well as a state

21  public nuisance law, and therefore they lost all protection

22  under PLCAA and all claims were allowed.

23         In 2019 there was another appeal in that case --

24         THE COURT:  Let me stop.

25         Doesn't that make PLCAA basically completely hollow?

1    In other words, doesn't that exception basically eliminate

2    nearly all of the immunity that PLCAA purportedly provides to

3    gun dealers?

4         MR. LOWY:  Respectfully, Your Honor, absolutely not.

5         What Congress made clear, and this is throughout the

6    findings and purposes of PLCAA, is that what they were

7    concerned about were activist judges, they call it maverick

8    judges, making common law.  And PLCAA is all about curtailing

9    the authority of judges to expand common law.  At the same

10   time, they were embracing legislatures and they allow

11   legislatures to create liability standards or for courts to

12   rely on legislative enacted standards.

13        Now, there is absolutely no dispute, Your Honor -- I

14   don't think defendants will dispute -- that if they violated

15   the laws that we say they violated -- and by this I mean the

16   Gun Control Act for aiding and abetting illegal sales -- that

17   that constitutes a predicate exception under PLCAA.  I think

18   they would agree with that.  They disagree that we make out

19   that case, but they would agree that that is a predicate law

20   and that's what we're talking about with this first theory, and

21   that's what the *City of Gary*, the Court of Appeals in the *City

22   of Gary* accepted as a predicate violation, and based on those

23   allegations in 2007 the Court of Appeals of Indiana reached the

24   same decision in 2019.  The Supreme Court in Indiana denied

25   review of each decision.  And by the way, the Supreme Court of

1    Indiana earlier, before PLCAA, held that these allegations

2    supported finding violations of the Gun Control Act.  And

3    courts have held similarly in cases brought by individuals, and

4    for good reason, because this theory of accomplice liability

5    was upheld by the United States Supreme Court in the direct

6    sales case on weaker facts.

7             I mean, direct sales involved, as defendants would put

8    it, the lawful sale of a lawful product to a lawful licensed

9    seller.  There it was morphine sold by a drug manufacturer to a

10   licensed doctor.  But like here, and the Supreme Court

11   explained this, the product like guns had a known illegal

12   market and the manufacturer had noticed that bulk sales might

13   indicate diversion.  But it was willfully blind to the risk

14   that the product would be illegally sold.  The manufacturer was

15   convicted of criminally conspiring with the doctor's illegal

16   sales and had no specific knowledge, by the way, what the

17   doctor was doing.  These were mail orders.  It was just

18   responding to mail orders of this doctor, but their practice

19   was to continue to supply.  The Supreme Court affirmed.  And

20   similar principles have been applied to hold opioid

21   manufacturers liable.

22            Defendants' major response to this is, one, to

23   mischaracterize our allegations and say that just because they

24   know that some of their guns can be misused to commit crime,

25   that's not a basis of liability; but that's not our claim.  We

1     allege, like direct sales, they know how criminals are getting

2     their guns, they could stop and they choose to be willfully

3     blind to the facts.

4           They also claim, and they did here today, that most of

5     their guns are lawfully sold.  But that's no excuse for

6     knowingly supplying criminals with some of your guns.  I assume

7     that that was true in direct sales, and I assume it's true in

8     the opioid cases as well.  You're still liable for the wrong

9     you do.  It was obvious in direct sales that those transactions

10    were intended for the criminal market but we allege the same

11    thing and, in fact, stronger because in direct sales, the

12    Department of Justice told manufacturers stop doing some of

13    these bulk sales and it actually followed that advice.  They

14    still got convicted.  Here defendants have completely defied

15    what federal law enforcement has told them to do and, of

16    course, we're in a far less demanding standard.

17          So, again, every case that has been faced with

18    credible allegations of violations of gun law has found the

19    predicate exception prevents dismissal.  They cite no cases to

20    the contrary.  The cases that they cite either did not involve

21    a credible allegation that a law was violated or they involved

22    a law that codified the common law or codified public nuisance

23    but not gun laws.

24          And then briefly we allege another predicate

25    violation.  We don't need to, but we do, and that is the fact

```
 1    that they make their guns in defiance of ATF Ruling 82-8, its
 2    construction of federal law, which says that you can't make
 3    guns that can be easily -- you can't sell to the general public
 4    guns that can easily be converted to automatic weapons.  That
 5    argument has been considered by two courts.  They both agreed
 6    that that's a valid argument and it constitutes a predicate
 7    violation.  That's the Parsons case and the Goldstein case.
 8    They have, again, no cases that have rejected that argument.
 9    They just argue it's implausible because ATF has not enforced
10    this interpretation.  But whether or not law enforcement
11    chooses to enforce a law doesn't determine whether it exists or
12    what it means.
13           And by the way, the definition is not implausible.  If
14    defendants were right, they could sell guns where there was a
15    little perforated piece that you'd just snap off and, in fact,
16    you could go to YouTube with instructions on how to do it and
17    you'd have yourself a machine gun, and that's okay because
18    that's not the way they made the gun.  That clearly isn't
19    right, and that's what ATF was getting at.
20           They also say that the Supreme Court has rejected that
21    argument in the Staples case.  That's clearly incorrect.  And
22    the Parsons court explains that the Staples case was all about
23    mens rea.  There was no question that the gun was a machine
24    gun.  The only question was whether the defendant knew it was a
25    machine gun.  The court did not define what a machine gun is
```

1    and it certainly did not reject ATF's rule that these guns are

2    machine guns.

3         So you don't have to get to the argument of how broad

4    is the predicate exception because those are undisputable

5    predicate violations.  But Your Honor, if you get to the

6    argument that they violated state unfair business practices

7    laws in Massachusetts and Connecticut, we explain in our brief

8    why *Soto* was correct.  Those are predicate violations.  That's

9    the most logical reading of the statute.  Defendants

10   essentially, as the *Soto* court said, are trying to put new

11   words into the statute that aren't there.  And, again, no court

12   has held that unfair business practice laws or consumer

13   protection laws are not predicate statutes.  The only cases

14   that they cite on this principle are either *Ileto*, which

15   involved a codification of the common law, or *New York City*,

16   which involved public nuisance, or cases where there was no

17   predicate violation.

18        As I explained, Your Honor, this does not swallow the

19   statute.  It is in keeping with the purpose of the statute and,

20   by the way, and the state Attorney General's amicus brief goes

21   into this, the principles of federalism and the presumption

22   against preemption require the Court to construe PLCAA's

23   restrictions on state tort law narrowly, not expansively.  I

24   don't think you need those principles, but if you do, they

25   weigh in our favor again.  And the *Soto* court recognized that

1 | as well.

2 | Finally, Your Honor, the defendants challenge

3 | proximate cause. And to begin, they have not even argued that

4 | there is no proximate cause under Mexican law, which governs

5 | here, but even if Massachusetts law applies, proximate cause is

6 | a jury question in *City of Boston*, *Jupin*, and supporting

7 | authority from out of state, like *Gary* and *Cincinnati* and *White*

8 | all reject defendants' arguments and establish that they can be

9 | deemed a cause of harm that foreseeably results from their

10 | conduct.

11 | In their reply defendants sort of shift gears and

12 | claim that PLCAA imports a federal proximate cause standard.

13 | You will note that they cite no cases that support this idea

14 | because there are none. No court has accepted it.

15 | And they couldn't because under *Erie Railroad*, there

16 | is no federal common law. Federal law can create actions with

17 | proximate cause as a standard, but PLCAA explicitly does not

18 | create a cause of action. It says so. It just bars certain

19 | state common law actions and allows others. So Massachusetts

20 | or Mexican law applies. But regardless, we satisfy defendants'

21 | invented federal standard too.

22 | In the First Circuit there are many cases. *Neurontin*

23 | is one where the court held that as a matter of law they

24 | rejected the argument that there's no proximate cause because

25 | there are too many steps in the causal chain and also explained

1    that the burden is on the defendant to rebut the causal

2    inference when the plaintiff establishes that injury

3    foreseeably results from defendants' conduct.  That's not our

4    burden, certainly not on the pleadings.

5         Defendants argue that we can't suffer injuries from

6    the injury to our citizens, but that isn't what we're claiming.

7    We're claiming the injuries suffered by the government.  They

8    claim apportioning damages is unworkable, but that will be

9    defendants' burden later on.  It is not our burden on the

10   pleadings and it has no application to the injunctive relief

11   that we seek.

12        They suggest they can't be liable unless they directly

13   engage in or facilitate violence in Mexico.  The fact that they

14   choose to use foreseeable intermediaries to supply their

15   ultimate customers and do their dirty work does not insulate

16   them from liability and there is absolutely no rule stating

17   that their duty or their liability stops at the border.  And,

18   again, the Government of Mexico is on equal footing as a

19   domestic litigant per Pfizer.

20        At bottom they're arguing that they can escape

21   accountability for harm that they foreseeably and continually

22   cause through their deliberate and unlawful actions.  That

23   wholly contradicts fundamental principles of foreseeability and

24   accountability that are central to causation under

25   Massachusetts law and all other common law, indeed determining

1      that wrongful conduct is part of the proximate cause analysis.

2           Finally, Your Honor, defendants resort to some sky is

3      falling rhetoric.

4           (Court reporter interrupts due to technical

5      disruption.)

6           MR. LOWY: Your Honor, this case is not an attack on

7      the Second Amendment, the gun industry or American values. We

8      simply want defendants to basically do what the United States

9      government has asked them to do, responsibly sell their guns to

10      supply law-abiding people, not criminals. And the cartels have

11      no Second Amendment rights, nor is there a constitutional right

12      to supply them.

13           In sum, defendants invite this Court to reject the

14      well pled allegations of the complaint, to contradict the most

15      on point Massachusetts authority, *City of Boston* and numerous

16      cases that follow it, contradict all courts that have

17      considered our primary PLCAA arguments about the predicate

18      exception, and invent novel rules of proximate cause and

19      standing that would entitle them to continue to unlawfully

20      cause harm without accountability or redress. We ask that the

21      Court resist that invitation.

22           While there are some aspects of our case that are

23      novel, the principles on which it relies are established law.

24      Virtually every argument they make they can make again at

25      summary judgment and trial when this Court has the benefit of a

1  full factual record.  We are entitled to make that record and

2  to present that evidence in court.  We simply ask to be

3  provided that opportunity.

4       We rely on our briefs for our other arguments unless

5  there are any other questions.

6       THE COURT:  All right.  Thank you.  All right.

7       Mr. Lelling, quick reply?

8       MR. LELLING:  Unless there are specific points from

9  plaintiff's argument that the Court is curious about, I'm

10  sensitive to the fact that many of the defendants have

11  important personal jurisdiction arguments.  I don't want to eat

12  up all of our remaining time without them having the

13  opportunity to address that.

14       THE COURT:  All right.

15       All right.  Who is going to be handling the 12(b)(2)

16  argument?

17       MR. RENZULLI:  Your Honor, Christopher Renzulli here.

18  I appreciate your time.  I will be brief as you've already told

19  us that you've read all the papers.

20       For purposes of the next few minutes, I'm speaking on

21  behalf of the out-of-state defendants.  That would be Glock,

22  Baretta, Barrett, Century, Colt's and Ruger.

23       I think one of the most important issues here came up

24  in a letter that we provided to the Court on April 1st.  We put

25  together the schedule of what the batting order was going to

1    be.  The reason why we put this portion of the hearing after

2    the 12(b)(6) is because, Your Honor, if you determine that the

3    complaint doesn't have merit and you will dismiss it on

4    12(b)(6) grounds, well, you never have to get to these issues.

5    You don't have to get to the issue of jurisdiction.  If the

6    Court does want to go down that road, I point out a couple of

7    quick things from the papers.

8           The plaintiffs have not shown their properly

9    documented evidentiary proofs as required.  The plaintiffs have

10   shown conclusory allegations, far-fetched inferences in the

11   pleadings.  This is all language coming from the First Circuit.

12   They have not put forward the specific facts necessary for the

13   Court to have jurisdiction.

14          But in looking at the due process analysis, the Court

15   obviously looks at the three prongs, relatedness, purposeful

16   availment, reasonableness, and it's all in the papers.  I point

17   out a couple of things.  I point to Attorney Lelling and his

18   analysis of the five, six, seven different hands that a firearm

19   must go through before there was any alleged harm in Mexico.

20   And I also point to the statements of plaintiff's counsel

21   today.  Plaintiff's counsel said number one, Your Honor, the

22   injury occurred in Mexico.  Number two, the gun was used in

23   Mexico.  And number three, the plaintiffs are located in

24   Mexico.  Those are all significant, obviously, for the

25   relatedness inquiry and the language from *Ford Motor Company*,

 1   which both sides agree is controlling in this case.

 2         But *Ford* showed that there was jurisdiction because --

 3   with the foreign state because the plaintiffs were injured in

 4   that foreign state with the defendant's cars.  The injury was

 5   there.  The plaintiffs were located there.  We don't have that

 6   here.

 7         What's also instructive for the Court is that the

 8   court -- the Supreme Court looked at alternative places to

 9   determine whether or not relates to analysis would fit.  The

10   plaintiffs in our case obviously are trying to expand "relates

11   to" beyond what the Supreme Court requires.  But they looked at

12   a couple of states.  They looked at Washington and North

13   Dakota.  Those were the states where the vehicles were

14   originally sold, and the court found, well, there's no real

15   personal jurisdiction there.  Isn't that, in fact, what Mexico

16   is doing here?  They're saying, well, some of these guns were

17   originally first sold in the Commonwealth.

18         So I think that *Ford* is instructive.  *Bristol Meyers*

19   obviously, Your Honor, is very instructive as well, certainly

20   on the gun-related issues.

21         The Lucy Allen report, not too much to talk about

22   there, Your Honor.  It doesn't advance the ball anywhere.  It

23   doesn't have any relevance to this personal jurisdiction

24   inquiry; and even if, Your Honor, some of the defendants'

25   firearms were originally sold to Massachusetts distributors

1    before being legally sold to retailers and consumers down the

2    road and then ultimately illegally trafficked into the country

3    of Mexico by criminal third parties, that does nothing to

4    establish any kind of personal jurisdiction in this case.

5         The second prong, purposeful availment, I just point out

6    that part of that inquiry includes foreseeability.  Was it

7    foreseeable to the defendants that they be subject to

8    jurisdiction in the Commonwealth for harms to non-residents

9    that occurred outside the Commonwealth?

10        Reasonable inquiry is the third prong.  Reasonable minds

11   can differ on the five different prongs.  I think in our papers

12   we argue why the balance would tip in favor of the out-of-state

13   defendants.  Nonetheless, the Court doesn't have to go there

14   either, because plaintiffs must succeed on all three prongs.

15        In some of the opposition papers, the plaintiffs ask for

16   some jurisdictional discovery.  Your Honor, I think it's in

17   about in two sentences in there.  I don't think that they

18   seriously are looking for jurisdictional discovery.  I think

19   they haven't shown they've been diligent.  They haven't shown

20   there's a colorable claim.  As Your Honor pointed out in the

21   *Tomtom* case, even where they've shown that diligence and

22   colorable claims for jurisdiction, the court still has

23   discretion to decide whether or not discovery is required.

24        I finish where I started.  None of this would be relevant

25   if the Court is inclined to dismiss this case on 12(b)(6)

```
 1    grounds.  It could do it without having to jump through the

 2    hoops of determining whether or not there's jurisdiction.

 3        Your Honor, if there's no questions, I appreciate your

 4    time here today.

 5             THE COURT:  All right.  Thank you.

 6             Who's going to respond for the plaintiff?

 7             MS. MIRANDA:  Your Honor, Tina Miranda for the

 8    Government.  I'm cognizant of our time.  With the exception of

 9    a very brief response to the argument the defendants made

10    regarding the application of Ford, we're going to rest on the

11    briefing on the issue of personal jurisdiction.

12             But with respect to Ford, the defendants pointed out

13    the court in that case looked at alternative forums for

14    jurisdiction, for a specific jurisdiction, and rejected a

15    finding of specific jurisdiction in what they claim is a

16    similar situation, but that's not really what's happening here.

17             What the court rejected in Ford was finding specific

18    jurisdiction in a products liability case where the only

19    connection to the forum was the sale of the vehicle to a former

20    owner who was not a party in the case.  What's happening in

21    this case, unlike in Ford, the defendants' initial sales of

22    their weapons are connected, strongly so, to the illegal

23    conduct.

24             So this case is about the defendants' failure, as

25    we've spoken earlier, to monitor and discipline its
```

1    distribution system in a way that promotes or prevents --

2    apologies -- prevents the rampant trafficking of its weapons

3    into Mexico.

4         So the defendants' initial sales of these weapons in

5    Massachusetts to the distributors and dealers go to the heart

6    of the Government's case.  What you have are national gun

7    manufacturers who systematically targeted and served the gun

8    market in Massachusetts.  You have two large national gun

9    wholesalers and a multitude of other dealers who are at home

10   here in Massachusetts to whom and through whom the defendants

11   sell their weapons.  And the Government has alleged and

12   produced evidence through the expert report of Lucy Allen, and

13   those facts are considered true here at this stage of the

14   pleadings, to show that the weapons that the defendants sell in

15   Massachusetts or some of the weapons they sell in Massachusetts

16   are trafficked into Mexico.  So these initial sales in

17   Massachusetts are actually a critical link in the distribution

18   chain that the Government alleges the defendants failed to

19   monitor.  So clearly the defendants' sales here is totally

20   unrelated or unlike the forum contacts that the court rejected

21   in *Ford*.

22        So the defendants say that we're not really interested

23   in discovery.  That is actually not true.  The Government feels

24   like we have strongly pled our case of jurisdiction, but should

25   the Court be interested in more, the Government is happy to

1    submit a short formal order requesting the discovery, setting

2    out in detail the discovery that we seek and from whom.

3         If the Court has no more questions, then we'll rest on

4    our briefing.

5         THE COURT:  All right.  Thank you.

6         Let me hear now from counsel for Colt on the

7    Connecticut discussion.

8         MR. RICE:  Your Honor, Michael Rice for Colt.  I too

9    will try to keep this brief.  I think the papers really do

10   address the arguments, but the claim that is asserted under the

11   Connecticut Unfair Trade Practices Act is essentially that Colt

12   promotes its products in a way to promote the illegal use of

13   those products such that these -- that it's immoral advertising

14   that would violate the Act.

15        In short, we would submit that this case is controlled

16   and the outcome related to Mexico's case is controlled by the

17   *Ganim* case, which you've heard discussion of, from the Supreme

18   Court in Connecticut in 2001, in which the City of Bridgeport

19   and its mayor brought remarkably similar claims against a

20   number of manufacturers, including Colt, about their

21   advertising and a number of other claims.

22        The court in *Ganim* concluded that in looking at the

23   question of standing, which also overlapped with the question

24   of proximate cause, that the plaintiff lacked standing there

25   because the harms that they claim are too remote from the

1  defendants' misconduct and are too derivative of the injuries

2  to others.

3  And in its opposition to Colt's motion, the Government

4  concedes, in fact, that the *Ganim* decision found that municipal

5  harms were too indirectly linked to advertising to allow a

6  CUTPA claim.  And they also concede that the claims in *Ganim*

7  included allegations that the advertising that was the subject

8  of the claims in that case targeted and encouraged a class of

9  dangerous criminals, much like the claims that they assert here

10  that Colt's advertising targets and promotes the use by

11  criminals.  So we would suggest that, based simply on the

12  concessions that the Government has made in its brief, that

13  *Ganim* is controlling.

14  Now, the Government does try to suggest the type of

15  advertising that it is complaining about here is different than

16  what was in *Ganim*.  Two responses.  One, we've already --

17  they've already acknowledged that the same type of advertising

18  was at issue in *Ganim*.  But two, they don't explain or make any

19  effort to explain why that difference, even if it was a

20  different kind of advertising claim, why that difference would

21  matter on the issue of remoteness or the derivative nature of

22  the injuries.  They would still be just as remote.  They would

23  still be seeking derivative recovery.

24  Finally, as Mr. Lowy mentioned, the Government

25  includes allegations -- at least an allegation of direct injury

1    to government property.  They also point to allegations about

2    federal police officers and such that were shot.  But those are

3    not direct.  Those are still derivative injuries related to the

4    shooting of other individuals.

5         But as to -- in paragraph 464 of the complaint, the

6    Government does make allegations about damage to military

7    aircraft, police aircraft and vehicles and security equipment.

8    But nowhere in the complaint does the Government make any

9    effort to tie any of that property damage, which is arguably

10   the only direct claim of injury that they have, to Colt, much

11   less to Colt's advertising.  In fact, in *Ganim*, when the

12   plaintiffs in that case suggested that they could state similar

13   direct property damage type claims, the court dropped a

14   footnote and said even if you did assert those kinds of claims,

15   you'd still face the same issues regarding the remoteness of

16   the conduct from the injuries that are alleged.

17        Indeed, Mexico's claims here of a direct injury are

18   much different than what was in *Soto* where you had retailer

19   sale to mother, firearm used to commit that horrible act.  Here

20   you have all of the links in the chain and they're still there

21   between the sales about which Mexico complains and the damage

22   to the property that they complain.

23        So even if it's not indirect or derivative, it's still

24   too remote under the *Ganim* decision to survive.  So for those

25   reasons, we would suggest that Mexico's claims under the

1    Connecticut Unfair Trade Practices Act cannot be allowed to go

2    forward and we ask they be dismissed.

3                Thank you, Your Honor.

4                THE COURT:  All right.  Thank you.

5                All right.  Who's going to respond?

6                MR. LOWY:  Very quickly, Your Honor.

7                The *Ganim* case mostly concerned misleading advertising

8    about the risks of guns, very little about the marketing of

9    assault weapons.  The *Soto*, the subsequent *Soto* decision is a

10   far more definitive authority as to the marketing of assault

11   weapons, which is the focus of our claim.

12               Also, Ms. Rice addresses, but *Ganim* does say very

13   clearly at the outset that it was not considering direct harm.

14   I recognize there was that footnote, but the preamble of the

15   case is clear that it was not considering what the decision

16   would be if there was direct harm such as property damage, and

17   that is what we allege here.

18               Finally, Your Honor, the purported holes in our

19   evidence will be filled and should be filled in discovery and

20   tested on summary judgment but not on the motion to dismiss.

21               Other than that, we will rely on our briefs.

22               THE COURT:  Thank you.

23               And then for Smith & Wesson on Chapter 93A.

24               MR. DICK:  Your Honor, Anthony Dick, Jones Day for

25   Smith & Wesson.  I will be very brief.

```
 1          I just wanted to specifically address the Chapter 93A
 2   claims which are asserted uniquely against Smith & Wesson.
 3   Just three quick points on those, Your Honor.  In our opening
 4   brief, as we explained, there's no state or federal court that
 5   has ever interpreted Chapter 93A to prohibit or impose
 6   liability on advertisements of the type at issue here.  Those
 7   are advertisements for concededly lawful products that are
 8   truthful and non-misleading and do not say a single word,
 9   depict or mention any unlawful or unsafe activity, and that's
10   what we have here.  So there's no court, state or federal, that
11   has ever read Massachusetts law to impose liability on that
12   type of advertisement.
13          The second point, Your Honor, since this is a federal
14   court sitting in diversity, there's clear precedent from the
15   First Circuit and elsewhere saying that a federal court should
16   not innovate under state law, should not be expanding state law
17   to prohibit conduct that the state courts themselves have not
18   done.  That's exactly what would happen here.  This would be a
19   radical and unprecedented expansion of Massachusetts consumer
20   protection law.  We would urge the court not to do that in this
21   case.  If anything, state courts should consider these types of
22   arguments for expanding state law in the first instance.
23          And the third point, Your Honor, for similar reasons
24   reading state law in this way should not be done because it
25   would flagrantly violate the First Amendment.  There's never
```

```
 1    been a First Amendment case that has found advertising for

 2    lawful products unprotected when they don't depict or mention

 3    any unlawful activity, they're entirely truthful and

 4    non-misleading.

 5          You can look at paragraph 324 of the complaint.  The

 6    advertisements are produced there.  There's just not a single

 7    word or depiction of anything unlawful, untruthful or

 8    misleading.  So imposing liability on those types of

 9    advertisements would violate the First Amendment.  That's a

10    reason not to read the statute to cover and prohibit these

11    types of cases.  And all of this, of course, is if you even get

12    to these claims, which I really don't think the Court needs to

13    do because of the PLCAA standing issues that Mr. Lelling has

14    covered.

15          So if there are no further questions on that, Your

16    Honor, I will rest on those points.

17          THE COURT:  All right.  Response?

18          MR. BRUNELL:  This is Mr. Brunell here.  Very, very

19    quickly.

20          There's nothing innovative or unusual about having

21    liability for unethical advertising of dangerous products for

22    illegal purposes.  Of course, that's what the *Soto* court held;

23    and the *Soto* unfair trade practices statute is similar to

24    Massachusetts.  So it's hardly a leap for Massachusetts to

25    follow *Soto*.
```

1          And on the First Amendment issue, the *Soto* case

2     addresses that.  Other courts cited in our brief also reject

3     the First Amendment arguments with respect to unfair trade

4     practice claims like this.

5          Otherwise, we'll rest on the brief.

6          THE COURT:  Okay.  I think last up, we'll hear from

7     counsel for Witmer.

8          MR. LITCHFIELD:  Good morning, Your Honor.  My name is

9     Daniel Litchfield.  I represent Witmer Public Safety Group

10    d/b/a Interstate Arms.

11         Our focus is very briefly on choice of law, why

12    Mexican law does not apply here.  I seek to supplement

13    co-counsel and their comments and arguments, not to replace

14    them.

15         The allegations against Witmer are that it is a

16    Massachusetts company, that it acquired Interstate Arms in

17    2018, that Interstate Arms was incorporated in Massachusetts

18    for decades, that Interstate Arms continues to do business in

19    Massachusetts in Middlesex County under the name Interstate

20    Arms at the same place as before with the same Massachusetts

21    personnel.  That's paragraph 40.

22         The allegations are that Witmer acts as a distributor.

23    It's not one of the manufacturing defendants which are defined

24    as such in paragraph 11, among other paragraphs in the

25    complaint.  It's the only distributor named in this complaint.

1      Plaintiff focuses on alleged defects in design but

2   Witmer, of course, is not a manufacturing defendant.  There is

3   a grab of a portion of the Web page for Interstate Arms that's

4   at paragraph 330.  And it reflects that Interstate Arms sells

5   to law enforcement, that it has a special sales organization to

6   sell to law enforcement, and that is indeed the principal focus

7   of its entire business, is to service first responders, police,

8   fire and medical.

9      It's alleged that Witmer regularly made purchases in

10  Middlesex County from the various co-defendant manufacturing

11  defendants.  Again, nothing about Mexico there.  It is alleged

12  at paragraph 41 that Witmer is, quote, "At home in

13  Massachusetts."  All of these alleged facts in the complaint

14  show how Mexican law does not apply and should not apply to

15  Witmer.

16      They certainly relate to Witmer's expectations about

17  the applicability of Mexican law or relatedly the applicability

18  of Massachusetts law.  They relate to other factors that have

19  been brought out in the briefing that relate to the choice of

20  law analysis.

21      Should Massachusetts law apply, this will have

22  significant effects on Witmer.  Certainly it will cement the

23  place of PLCAA as applicable and there will be special

24  significance that there's no negligence per se in Massachusetts

25  law, and that is yet asserted in one of the counts and also as

 1    an asserted exception to PLCAA.

 2            So for all of those reasons, we would ask that the

 3    motion to dismiss be granted.  We join in the arguments made by

 4    able co-counsel, and I thank the Court for the time.

 5            THE COURT:  Thank you.  And who's going to respond?

 6            MR. SHADOWEN:  I would also thank you for the time and

 7    generosity the Court has given us with the time.  I will keep

 8    this very, very brief.

 9            We will end where we began, and that is with the

10    defendants simply putting on blinkers as to what the

11    allegations of the complaint are.  Yes, Witmer is located in

12    Massachusetts.  But the complaint alleges in painstaking detail

13    that all of the defendants, including Witmer, actively

14    facilitate the trafficking, systematically, repeatedly, of

15    their guns into Mexico.  There are two U.S. Supreme Court cases

16    that say the general rule of thumb is that the place of the

17    injury, that's whose law applies.  So we take that as the

18    basis.  That's essentially the presumption under Massachusetts

19    choice of law rules, that the place of injury applies; and the

20    Court allowed us to file a sureply brief specifically on the

21    choice of law issue.  So I think that's been discussed fairly

22    well and we'll stop right there, unless the Court has any

23    questions.

24            THE COURT:  All right.  Thank you, everyone, and thank

25    you particularly for getting us in under the time period that

1    I've allotted.  It was well argued all the way around; and I

2    will take all the pending motions under advisement.  Thank you,

3    all.

4            COUNSEL:  Thank you, Your Honor.  Thank you, Judge.

5    (Proceedings adjourned at 11:29 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS     )

6

7

8          I certify that the foregoing is a correct transcript

9    from the record of proceedings taken April 12, 2022 in the

10   above-entitled matter to the best of my skill and ability.

11

12

13

14

15   /s/ Kathleen Mullen Silva                  9/30/22

16

17   Kathleen Mullen Silva, RPR, CRR                 Date
     Official Court Reporter
18

19

20

21

22

23

24

25
```

JA000301

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ESTADOS UNIDOS MEXICANOS,
*Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
*Defendants.*

Civil Action No. 1:21-CV-11269-FDS

**NOTICE OF APPEAL**

Notice is hereby given that Estados Unidos Mexicanos, the Plaintiff in the above-named matter, hereby appeals to the United States Court of Appeals for the First Circuit from the Order of Dismissal dated October 1, 2022 and entered in this action on October 17, 2022.

Dated: October 26, 2022

s/ Steve D. Shadowen
Steve D. Shadowen (*pro hac vice*)
Richard M. Brunell  (BBO# 544236)
Nicholas W. Shadowen *(pro hac vice)*
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

Respectfully submitted,

s/ Jonathan E. Lowy
Jonathan E. Lowy (*pro hac vice*)
Global Action on Gun Violence
1025 Connecticut Avenue NW, #1210
Washington, DC 20036
Phone: (202) 415-0691
jlowy@actiononguns.org

## CERTIFICATE OF SERVICE

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: October 26, 2022                                         Respectfully submitted,

                                                                /s/ *Steve D. Shadowen*
                                                                Steve D. Shadowen

## CERTIFICATE OF SERVICE

I, Steve D. Shadowen, hereby certify that the foregoing Joint Appendix was filed with the Clerk of the Court via CM/ECF. All parties or their counsel are registered as ECF Filers and they will be served by the Court's CM/ECF system.

Dated: March 15, 2023                    /s/ *Steve D. Shadowen*
                                         Steve D. Shadowen