No. 22-1823

---

## IN THE UNITED STATES COURT OFAPPEALS
## FOR THE FIRST CIRCUIT

ESTADOS UNIDOS MEXICANOS,
*Plaintiff–Appellant*,

v.

SMITH & WESSON BRANDS, INC; BARRETT FIREARMS
MANUFACTURING, INC.; BERETTA U.S.A. CORP.; GLOCK, INC.; STURM,
RUGER & COMPANY, INC.; WITMER PUBLIC SAFETY GROUP, INC., d/b/a
INTERSTATE ARMS; CENTURY INTERNATIONAL ARMS, INC.; BERETTA
HOLDINGS SPA; GLOCK GES.M.B.H.; COLT'S MANUFACTURING
COMPANY, L.L.C.,
*Defendants–Appellees.*

---

On Appeal from the United States District Court for the District of Massachusetts,
No. 1:21-cv-11269-FDS, Hon. F. Dennis Saylor, IV, United States District Judge

---

## BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS *AMICI CURIAE*
## IN SUPPORT OF APPELLANT AND REVERSAL

---

MARTEN LAW LLP
Lawson E. Fite
Michael B. Smith
1050 S.W. Sixth Ave., Suite 2150
Portland, OR 97204
(503) 243-2200
(503) 243-2202 fax
lfite@martenlaw.com

*Attorneys for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), Everytown for Gun Safety Support Fund, Giffords Law Center to Prevent Gun Violence, Global Exchange, Newtown Action Alliance, Violence Policy Center, and March for Our Lives Foundation state that they are not-for-profit corporations. Each certifies that it has no parent corporation and that no publicly-held corporation owns ten percent or more of its stock.

Dated: March 21, 2023         */s/ Lawson E. Fite*
                                       Lawson E. Fite

                                       *Attorney for amici curiae Everytown for Gun Safety Support Fund, Giffords Law Center to Prevent Gun Violence, Global Exchange, Newtown Action Alliance, Violence Policy Center, and March for Our Lives Foundation*

i

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

INTEREST OF *AMICI CURIAE* ........................................................................2

SUMMARY OF ARGUMENT ..............................................................................5

ARGUMENT ..........................................................................................................6

  I.    PLCAA does not bar any of Mexico's claims. ...................................... 6

    A.    PLCAA does not provide any protection to Defendants if the "predicate exception" applies. ....................................................................................6

    B.    The District Court erred in summarily dismissing Mexico's tort claims as barred by PLCAA. ......................................................................................11

    C.    State consumer protection statutes are statutes that are "applicable" to the marketing of firearms and thus fit within the predicate exception to PLCAA. 15

  II.    Mexico has stated an actionable public nuisance claim. ................................ 20

CONCLUSION .....................................................................................................26

# TABLE OF AUTHORITIES

## **Cases**

*Am. Shooting Sports Council, Inc. v. Att'y Gen.*, 429 Mass. 871, 711 N.E.2d 899 (1999).................................................................................................................19

*Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 813 N.E.2d 476 (2004) ........19

*Brady v. Walmart Inc.*, No. 8:21-cv-1412, 2022 WL 2987078 (D. Md. July 28, 2022).......................................................................................................................14

*Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 48 Misc. 3d 865 (N.Y. Sup. Ct. 2014) ............................................................................................. 10, 14

*City of Boston v. Purdue Pharma, L.P.*, No. 1884CV02860, 2020 WL 977056 (Mass. Sup. Ct. Jan. 31, 2020)....................................................................... 22, 25

*City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568 (Mass. Super. Ct. July 13, 2000) ............................................................ 21, 22, 23

*City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003)25

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008).......... 18, 19

*Commonwealth v. Purdue Pharma*, No. 1884CV01808BLS2, 2019 WL 5495866 (Mass. Sup. Ct. 2019) ..........................................................................................22

*Connerty v. Metro. Dist. Comm'n*, 398 Mass. 140, 495 N.E.2d 840 (1986), *abrogated on other grounds sub nom Jean W. v. Commonwealth*, 414 Mass. 496, 610 N.E. 2d 305 (1993) .............................................................................. 21, 22

*Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 520 N.E.2d 139 (1988) .................................................................................................................................24

*Corporan v. Wal–Mart Stores E.*, No. 16-CV-2305-JWL, 2016 WL 3881341 (D. Kan. July 18, 2016) ...................................................................................... 10, 14

*Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019) ........................................19

*Englund v. World Pawn Exch.*, Multnomah Cty. No. 16CV00598, 2017 WL 7518923 (Ore. Cir. Ct. 2017)................................................................................10

*French v. Conn. River Lumber Co.*, 145 Mass. 261, 14 N.E. 113 (1887)..............22

*Gelboim v. Bank of Am. Corp.*, 574 U.S. 405 (2015) ...............................................9

*Goldstein v. Earnest*, No. 37-2020-00016638, slip op. (Cal. Super. Ct. San Diego Cnty. July 2, 2021) ...............................................................................................18

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009). ..................................................8

*In re Luckygunner LLC*, No. 14-21-00194-CV, 2021 WL 1904703 (Tex. Ct. App. May 12, 2021)................................................................................................3

*In re MTBE Prod. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ..................26

*Jefferson v. Amadeo Rossi, S.A.*, No. 01-CV-2536, 2002 WL 32154285 (E.D. Pa. Jan. 22, 2002)...........................................................................................12

*Keenan v. McGrath*, 328 F.2d 610 (1st Cir. 1964) ................................................12

*King v. Klocek*, 133 N.Y.S.3d 356, 187 A.D.3d 1614 (2020) ................................13

*Lee v. Conagra Brands, Inc.*, 958 F.3d 70 (1st Cir. 2020) .....................................19

*North Dakota v. United State*s, 480 F. Supp. 3d 917 (D.N.D. 2020) .....................24

*Planned Parenthood League of Mass., Inc. v. Bell*, 424 Mass. 573, 677 N.E.2d 204 (1997)...........................................................................................................22

*Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019) ........... 14, 18

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)...........................................9

*Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d (Ind. Ct. App. 2007) 10, 12, 14, 16

*Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 202 A.3d 262 (2019) .....16, 17, 18

*Stop & Shop Cos., Inc. v. Fisher*, 387 Mass. 889, 444 N.E.2d 368 (1983).............22

*Tretta v. Osman*, No. 20STCV48910, 2021 WL 9273931 (Cal. Super. Ct., L.A. Cnty., June 28, 2021)........................................................................................3

*United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021) ............................................9

*Williams v. Beemiller, Inc.*, 952 N.Y.S.2d 333, 100 A.D.3d 143 (2012), *amended by* 951 N.Y.S.2d 444, 103 A.D.3d 1191 (2013)...................................... 10, 12, 14

**Statutes**

15 U.S.C. § 7902(a) ..............................................................................................7

15 U.S.C. § 7903(4) ..............................................................................................7

15 U.S.C. § 7903(5)(A)................................................................................. passim

18 U.S.C. § 922(a)(6)...........................................................................................15

18 U.S.C. § 922(b)(4)...........................................................................................15

18 U.S.C. § 922(d) ...............................................................................................15

18 U.S.C. § 922(g) ...............................................................................................15

18 U.S.C. § 922(m) ..............................................................................15

18 U.S.C. § 922(r) ...............................................................................15

18 U.S.C. § 922(t)(1) ...........................................................................15

18 U.S.C. § 923(a) ...............................................................................15

18 U.S.C. § 923(g) ...............................................................................15

18 U.S.C. § 924(a)(1) ...........................................................................15

18 U.S.C. § 924(a)(3) ...........................................................................15

18 U.S.C. § 925(d)(3) ...........................................................................15

50 U.S.C. § 1701 ..................................................................................15

**Other Authorities**

151 Cong. Rec. 103, S8911 (July 26, 2005) ........................................13

151 Cong. Rec. 104, S9061 (July 27, 2005) ........................................13

ATF, *Press Release: Government of Mexico Firearms Trace Data* (Mar. 12, 2012). ..............................................................................................26

Restatement (Second) of Torts § 821B(1) ...........................................21

# INTRODUCTION[1]

For almost two decades, firearm manufacturers have turned their backs on the consequences of their own actions, cloaking themselves in the protective embrace of the Protection of Lawful Commerce in Arms Act ("PLCAA"), which grants them expansive—but not absolute—immunity.  Certain manufacturers have relied on this protection to engage in riskier and riskier conduct, profitably unloading their products into channels of illegal distribution that carry these guns around the world for use by cartels and other criminals.  They have done so despite their knowledge that some of the dealers and distributors with whom they do business have displayed consistent patterns and practices of conveying their products to black markets that fuel gun violence.  *See* Compl. ¶¶ 146–209, 227–236, JA000084–98, 000103–105.  And they have continued to do so despite the wide availability of many safeguards that would mitigate much of the harm done by their products and distribution practices.  *Id.* ¶¶ 88–105, JA000069–74.

This conduct has predictably led to tragedy both in the United States and abroad.  In Mexico, where the vast majority of firearms recovered by law enforcement are from the United States, citizens live in terror of heavily armed

---

[1] All parties have consented to the filing of this brief.  No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

1

drug cartels.  These cartels are able to acquire military-grade weapons due, in large part, to actions taken by Defendants.  *Amici* respectfully urge this Court to reverse the District Court's decision and hold that Defendants can be held accountable for the foreseeable downstream repercussions of their actions.

*Amici* submit this brief to address two issues, each informed by their work: first, the proper scope of PLCAA's "predicate exception," and second, that Mexico has stated a viable public nuisance claim.

## INTEREST OF *AMICI CURIAE*

*Amici* Everytown for Gun Safety Support Fund, Giffords Law Center to Prevent Gun Violence, Global Exchange, Newtown Action Alliance, Violence Policy Center, and March for Our Lives Foundation are gun violence prevention groups and advocates that operate in Massachusetts and nationwide.  These organizations draw on their collective expertise to file briefs in numerous cases implicating PLCAA, gun violence, and gun trafficking.  *Amici* have significant expertise in the reduction of gun violence and reform of gun industry practices.

*Everytown for Gun Safety Support Fund* ("Everytown") is the education, research, and litigation arm of Everytown for Gun Safety, the largest gun violence prevention organization in the country.  Everytown for Gun Safety was founded in 2014 through the combined efforts of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combatting illegal guns and gun trafficking, and

Moms Demand Action for Gun Sense in America, an organization formed after the Sandy Hook massacre. Everytown has extensive experience litigating cases under PLCAA on behalf of survivors and municipalities. *See, e.g.*, *Tretta v. Osman*, No. 20STCV48910, 2021 WL 9273931, at *2, *5 (Cal. Super. Ct., L.A. Cnty., June 28, 2021) (overruling demurrer; Everytown serving as plaintiff's counsel in case involving interpretation of PLCAA); *In re Luckygunner LLC*, No. 14-21-00194-CV, 2021 WL 1904703, at *1–2 (Tex. Ct. App. May 12, 2021) (Everytown serving as plaintiff's counsel in case where the appellate court denied mandamus petition after trial court rejected defendants' PLCAA arguments).

*Giffords Law Center to Prevent Gun Violence* ("Giffords Law Center") is a non-profit policy organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others who seek to reduce gun violence and improve the safety of their communities. The organization was founded more than a quarter-century ago following a gun massacre at a San Francisco law firm and was renamed Giffords Law Center in 2017 after joining forces with the gun-safety organization led by former Congresswoman Gabrielle Giffords. Today, through partnerships with gun violence researchers, public health experts, and community organizations, Giffords Law Center researches, drafts, promotes, and defends the laws, policies, and programs proven to effectively reduce gun violence, including those that address gun trafficking.

*Global Exchange*, a non-profit human rights organization established in 1988, sponsors the Stop U.S. Arms to Mexico project. Initiated in 2017, Stop U.S. Arms to Mexico conducts original research; collaborates with Mexican and U.S. gun violence victims, arms control and human rights organizations, academics, and health professionals; publishes reports and data; and develops policy proposals regarding the flow of firearms from the United States to Mexico and their impacts.

*Newtown Action Alliance* is a national grassroots organization founded by Newtown residents after the tragic Sandy Hook Elementary School shooting on December 14, 2012, where 20 children and six educators were senselessly gunned down. Newtown Action Alliance is a group of advocates, families of victims and survivors of gun violence, who are working to transform their tragedies into meaningful action to end gun violence. Newtown Action Alliance is dedicated to reversing the escalating gun violence epidemic in this nation through the introduction of smarter, safer gun laws and broader cultural change.

The *Violence Policy Center* is a national non-profit educational organization that conducts research on firearms violence and provides information and analysis to policymakers, journalists, researchers, advocates, and the general public. The Violence Policy Center examines the role of firearms in the United States, analyzes trends and patterns in firearms violence, and works to develop policies to reduce gun-related deaths and injuries. In addressing these matters, the Violence Policy

4

Center conducts numerous fact-based studies on a wide range of gun violence issues, which have influenced Congressional and state policymaking on the regulation of firearms. This includes extensive research regarding the trafficking of U.S.-sourced guns to Mexico.

*March For Our Lives Foundation* ("MFOL") is a non-profit organization of young people from across the country that seeks to promote civic engagement in support of sensible gun violence prevention policies. Formed after the mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida, MFOL immediately began organizing the largest single day of protest against gun violence in history. Since then, students seeking to create change have formed hundreds of MFOL chapters across the country. As young people and Americans, MFOL's members are motivated to ensure their country's products are not used to perpetuate violence abroad.

## SUMMARY OF ARGUMENT

This brief addresses two questions informed by *amici*'s work and experience on gun violence prevention issues. First, the District Court's decision did not correctly apply PLCAA's "predicate" exception. Simply put, PLCAA does not offer *any* protection to gun industry defendants who knowingly violate the law, when such violations are a proximate cause of the harm to the plaintiff. Thus, the District Court erred when it summarily dismissed seven out of nine claims in the

Complaint, since Mexico sufficiently alleged knowing violations of law by the

Defendants.  The predicate exception is also broad enough to include violations of

consumer protection statutes, such as the ones identified in Mexico's Complaint.[2]

Second, Mexico has stated a viable public nuisance claim.  Public nuisance

is a flexible doctrine meant to protect the public from a wide set of harms.  It is

certainly capacious enough to recognize the increasing militarization of the U.S.

firearms industry and its intentional—and profitable—disregard for harms it is

causing by flooding Mexico with guns.  Like noxious smoke cast skyward by a

smokestack or excessive amounts of prescription opiates funneled through corrupt

pain management clinics, Defendants' distribution practices have channeled their

military-style firearms across the U.S.–Mexico border where cartels use those

weapons to wreak havoc on the public.

## ARGUMENT

### I.  PLCAA does not bar any of Mexico's claims.

#### A. PLCAA does not provide any protection to Defendants if the "predicate exception" applies.

As a threshold matter, the Protection of *Lawful* Commerce in Arms Act does

not apply to any action in which the firearms industry defendant has knowingly

---

[2] For purposes of this brief, *amici* assume that PLCAA is applicable to this lawsuit. However, *amici* agree with Mexico that this Court should hold that dismissing the Complaint at this stage would be an improper extraterritorial application of PLCAA. *See* Appellant Br. 15–33.

violated a statute applicable to the sale and marketing of firearms.  In other words, if Mexico has sufficiently alleged that the Defendants' actions fall within PLCAA's "predicate exception," then this entire suit is exempted from PLCAA. PLCAA's operative clause provides:  "A qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. § 7902(a).

> A "qualified civil liability action" is
>
> a civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party[.]

15 U.S.C. § 7903(5)(A).  And a "qualified product" is a firearm or ammunition "that has been shipped or transported in interstate or foreign commerce."  15 U.S.C. § 7903(4).

There are six exceptions to PLCAA's grant of immunity. 15 U.S.C. § 7903(5)(A)(i)–(vi). The third exception—the predicate exception—allows a plaintiff to bring a case against a member of the gun industry that has knowingly violated a qualifying statute:

> The term "qualified civil liability action" . . . shall not include ***an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product***, and the violation was a proximate cause of the harm for which relief is sought, including —

7

> (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or
>
> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of title 18[.]

15 U.S.C. § 7903(5)(A)(iii) (emphasis added).

These three paragraphs, taken together, have "come to be known as the 'predicate exception,' because a plaintiff not only must present a cognizable claim," but "also must allege a knowing violation of a 'predicate statute.'" *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132 (9th Cir. 2009).

The predicate exception applies broadly. Once a claim has satisfied the predicate exception, the entire action is permitted to proceed. This is evident from the text of the exception, which excludes from PLCAA's grant of immunity "*an action in which* a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product. . . ." 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). As the Supreme Court has

8

recognized, and as is clear under the Federal Rules of Civil Procedure, an "action" may comprise multiple claims for relief. *See, e.g.*, *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (construing Fed. R. Civ. P. 54(b)); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 429 (1956) (same). And the text of the predicate exception does not use limiting language to refer to "a cause of action" or a "claim." Nor does it refer to "an action *for* the violation of the predicate statute," which would, by means of the limiting clause, refer to a specific cause of action.

PLCAA's other exceptions use narrower language. For example, PLCAA also exempts "*an action for* breach of contract or warranty" and "*an action* brought against a seller *for* negligent entrustment or negligence per se." 15 U.S.C. § 7903(5)(A)(ii), (iv) (emphases added). That difference—between "an action in which" and "an action for"—must be given meaning. *See United States v. Prasad*, 18 F.4th 313, 324 (9th Cir. 2021) (noting that "under the presumption of consistent usage and material variation, a material change in terminology within the same statute denotes a change in meaning"). "An action for" breach of contract or negligence per se is most naturally read as a reference to the individual cause of action. By contrast, "an action in which" a violation of a predicate statute is alleged casts a broader net.

Because the predicate exception refers to "an action in which" a seller violates federal law, courts have held that once a predicate violation against a

defendant is alleged, a claim-by-claim analysis of the lawsuit is not required, and the entire lawsuit may proceed. *Williams v. Beemiller, Inc*., 952 N.Y.S.2d 333, 339, 100 A.D.3d 143 (2012) (concluding that a separate analysis of the plaintiff's negligent entrustment and negligence per se exceptions was unnecessary after determining that the predicate exception applies), *amended by* 951 N.Y.S.2d 444, 103 A.D.3d 1191 (2013)*; Englund v. World Pawn Exch*., Multnomah Cty. No. 16CV00598, 2017 WL 7518923, at *11 (Ore. Cir. Ct. 2017) ("[T]he Court notes that the predicate exception's broad language provides that an entire 'action' survives—including all alleged claims . . . ."); *Corporan v. Wal–Mart Stores E.*, No. 16-CV-2305-JWL, 2016 WL 3881341, at *13, n.4 (D. Kan. July 18, 2016) ("[B]ecause the court finds the predicate exception applicable to this action, it declines to engage in the claim-by-claim analysis advanced by defendants."); *Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787, 48 Misc. 3d 865 (N.Y. Sup. Ct. 2014) ("as long as one PLCAA exception applies to one claim the entire action continues"); *see also Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 434–35 (Ind. Ct. App. 2007).

Thus, once Mexico alleged facts sufficient to support a claim that that Defendants violated a predicate statute and that violation proximately harmed Mexico, it was entitled to proceed with its entire action against that party—

including any non-statutory tort claims.  To the extent that the District Court held
otherwise, it erred.

### B. The District Court erred in summarily dismissing Mexico's tort claims as barred by PLCAA.

In its decision, the District Court summarily dismissed all of Mexico's tort
claims (Counts 1-6, 9) because they did not "arise under any federal or state statute."
ADD000027.  The District Court held that "[t]he predicate exception applies only to
'statutes,' not common-law causes of action." *Id.*  The text of PLCAA, its legislative
history, and cases interpreting the statute make clear that this holding was in error.

The text of the predicate exception allows tort claims to go forward if the
plaintiff is harmed by both a violation of a predicate statute and the commission of
a tort for which the plaintiff has a private right of action.  There is no explicit
requirement that the cause of action be statutory—the statute simply requires "an
action in which" a defendant "knowingly violated" a statute.  While a plaintiff can
meet both requirements by bringing a cause of action under a statute applicable to
the sale or marketing of firearms or ammunition, the text of the statute does not
make this conflation of the two elements necessary.

Nor does the predicate exception's text *implicitly* require that the cause of
action be statutory.  To the contrary, reading the three paragraphs together leads to
the conclusion that both common law and statutory causes of actions are permitted
under the predicate exception.  Paragraphs (I) and (II) list exemplar predicate statutes

11

that do not have private rights of action.  For instance, 18 U.S.C. § 922(g) and (n) are part of the federal Gun Control Act; there is no private right of action (express or implied) under those provisions.  *Jefferson v. Amadeo Rossi, S.A.*, No. 01-CV-2536, 2002 WL 32154285, at *4 (E.D. Pa. Jan. 22, 2002).  Rather, the violation of the statute can be evidence of a defendant's negligence.  Violations of federal criminal statutes are after all prosecuted by the government, not by private plaintiffs. *Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964).

The exemplars in subparagraphs (I) and (II) could not serve as the basis for a purely statutory claim on their own.  Rather, they can be the basis for a tort claim based on the statutory violation.  *Jefferson*, 2002 WL 32154285 at *2 (noting plaintiff brought claims for negligent distribution and sale and public nuisance that asserted underlying violations of Gun Control Act).  And this is exactly why courts refer to this exception as the *predicate* exception.  *City of Gary*, 875 N.E.2d at 429–30 ("This exception has been referred to as the 'predicate exception' because its operation requires an underlying or predicate statutory violation."); *Williams*, 952 N.Y.S.2d at 337 ("[The] exception is often referred to as the 'predicate exception,' because a plaintiff not only must present a cognizable claim, [but] he or she also must allege a knowing violation of a 'predicate statute[.]'")

Nothing in PLCAA's legislative history suggests that Congress meant to bar liability where gun industry conduct breached a duly enacted federal or state laws

applicable to the sale or marketing of firearms.  For instance, Senator Sessions, one of the bill's proponents, explained PLCAA's effect thusly:  "Manufacturers and sellers are still responsible for their own negligent or criminal conduct and must operate entirely within the complex State and Federal laws.  Therefore, plaintiffs are not prevented from having a day in court."  151 Cong. Rec. 103, S8911 (July 26, 2005) (statement of Sen. Sessions).  Senator Craig, the bill's sponsor, explained on the floor of the Senate that the bill "does not protect firearms or ammunition manufacturers, sellers, or trade associations from any other lawsuits based on their own negligence or criminal conduct."  151 Cong. Rec. 104, S9061 (July 27, 2005) (statement of Sen. Craig).

This reading of the predicate exception has played out without incident in trial and appellate courts across the country.  Relying on the predicate exception, courts have consistently held that non-statutory tort claims are permitted under PLCAA when they are predicated on knowing violations of a statute applicable to the sale of firearms and ammunition.  Many of these cases used a "negligence plus" approach to pleading:  the cause of action sounded in negligence, while the complaint also included allegations (not as a separate of cause of action but instead incorporated into the common law cause of action) that the defendant violated a state or federal predicate statute.  *See, e.g.*, *King v. Klocek*, 133 N.Y.S.3d 356, 187 A.D.3d 1614, (2020) (permitting negligence case to proceed against gun store that

sold handgun ammunition to an underage individual because the case fit within predicate exception); *Williams*, 952 N.Y.S.2d at 337 (permitting negligence and public nuisance claims to go forward because the plaintiff sufficiently alleged the violation of multiple predicate statutes); *City of Gary*, 875 N.E.2d at 434–45 (allowing negligence and public nuisance claims to proceed after concluding that violation of a statutory public nuisance law triggered application of the predicate exception); *Corporan*, 2016 WL 3881341 at *3–13  (permitting plaintiff's negligence claim to proceed where the defendant's alleged conduct, with anticipated amendments to the complaint, fell within the predicate exception); *Chiapperini*, 13 N.Y.S.3d at 787–88 (permitting plaintiffs' negligence claim to proceed where complaint sufficiently alleged knowing violations of gun laws); *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138 (D. Nev. 2019) (denying dismissal of negligence claim against bump stock manufacturer where plaintiffs alleged manufacturer's predicate violation of Nevada's Deceptive Trade Practices Act); *Brady v. Walmart Inc.*, No. 8:21-cv-1412, 2022 WL 2987078, at *10 (D. Md. July 28, 2022) (denying motion to dismiss negligence claims where plaintiff alleged violation of statute prohibiting firearms possession by individuals with certain mental health disorders).

Mexico has properly alleged tort claims and predicated them on multiple violations of the Gun Control Act.  The first through sixth claims are rooted in

traditional tort claims (*e.g.*, negligence, nuisance, and product liability). The Complaint cited numerous federal statutes that Defendants' actions were designed to circumvent. *See*, *e.g.*, Compl. ¶¶ 63–65, 68–71, 301, 304–305, 313; JA000064–66, 000120–22 (citing 18 U.S.C. §§ 925(d)(3), 922(r), 922(b)(4); regulations promulgated under 50 U.S.C. § 1701, 18 U.S.C. § 923(a), 18 U.S.C. §§ 922(a)(6), 922(m), 922(t)(1), 923(g), 924(a)(1)(A), 924(a)(3)(A), 922(d), 922(g)). And Mexico identified in its opposition several federal statutes which they alleged the manufacturers had violated. Dist. Ct. Dkt., ECF No. 111, at 22–24 (citing 18 U.S.C. § 922(b)(4) (federal machinegun ban), and 18 USC § 922(a)(6), 924(a)(1)(a) (bans on straw purchases)). These statutes are plainly "applicable to the sale or marketing of" firearms and ammunition. The District Court did not engage in the analysis required under the exception, and therefore dismissed the tort claims in error.[3]

### C. State consumer protection statutes are statutes that are "applicable" to the marketing of firearms and thus fit within the predicate exception to PLCAA.

In addition to its tort claims, Mexico has alleged that certain Defendants' actions violated the Connecticut Unfair Trade Practices Act ("CUTPA") and the

---

[3] At this threshold stage of the proceedings, Mexico has also sufficiently alleged that Defendants' knowing violation of these statutes proximately caused it harm. *See* Compl. ¶¶ 446–505, JA000159–171 (detailing how the defendants' unlawful acts, such as the knowing facilitation of straw purchases and gun trafficking, distribution of illegal machineguns, and use of unfair trade practices, have inflicted massive harm upon Mexico).

Massachusetts Consumer Protection Act ("Chapter 93A"). The District Court assumed, without resolving the issue, that both statutes qualified as predicate statutes under the predicate exception. ADD000029. This assumption was correct. The text of the predicate exception, PLCAA's broader statutory framework, and the applicable caselaw support the conclusion that both CUTPA and Chapter 93A are "*applicable to* the . . . marketing of" firearms. 15 U.S.C. § 7903(5)(A)(iii) (emphasis added).

The text of the predicate exception demonstrates that state consumer protection laws are covered by the exception. First, while the phrase "applicable to" is undefined in PLCAA, "the principal definition of 'applicable' is simply 'capable of being applied . . .'" *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 119, 202 A.3d 262 (2019) (quoting Black's Law Dictionary 120 (10th ed. 2014) and citing Webster's Third New International Dictionary 105 (2002)) (cleaned up); *see also City of Gary*, 875 N.E.2d at 431–34 (relying on dictionary definition of "applicable," among other things, to hold that Indiana's generally applicable nuisance statute qualified as a predicate statute). There is no question that both CUTPA and Chapter 93A are state statutes that are capable of being applied to the sale and marketing of firearms.

Second, by specifically including in the predicate exception statutes that are "applicable to the . . . *marketing* of" firearms, 15 U.S.C. § 7903(5)(A)(iii)

16

(emphasis added), Congress demonstrated its intent for the predicate exception to apply to laws like CUTPA and Chapter 93A. At the time PLCAA was passed, there were no federal or state firearm-specific statutes that comprehensively regulated the marketing and advertising of firearms. *Soto*, 331 Conn. at 121–23 (explaining that only a handful of firearm-specific state statutes addressed any type of firearms marketing at all, and none of them did so comprehensively). "It would have made little sense for the drafters of the legislation to carve out an exception for violations of laws applicable to the marketing of firearms if no such laws existed." *Id.* at 122. Instead, the more sensible reading of this carve out is that Congress had in mind the very consumer protection laws that regulated marketing of consumer products. *Id.* at 123 ("We must presume that Congress was aware, when it enacted PLCAA, that both the FTC Act and state analogues such as CUTPA have long been among the primary vehicles for litigating claims that sellers of potentially dangerous products such as firearms have marketed those products in an unsafe and unscrupulous manner.").

While Defendants have previously argued that only statutes like those listed as examples of predicate statutes, may qualify as predicate statutes, *see* Defendants' Joint Mem. in Supp. of Mots. to Dismiss, Dist. Ct. Dkt., ECF No. 67, at 21–22 (Nov. 22, 2021), those statutes only address the ultimate sale or transfer of firearms. *See* 15 U.S.C. § 7903(5)(A)(iii)(I)–(II). But the predicate exception

on its face applies to statutes "applicable to the sale or *marketing* of" firearms, and Defendants' cramped interpretation reads "marketing" out of the statute.

For the above reasons, and others, the Connecticut Supreme Court held that CUTPA qualified as a predicate statute under PLCAA. *Soto*, 331 Conn. at 157-58. Other courts have followed suit and held that consumer protection statutes qualify as predicate statutes. *See Prescott*, 410 F. Supp. 3d at 1137–39 (finding that Nevada's Deceptive Trade Practices Act qualifies as a predicate statute); *Goldstein v. Earnest*, No. 37-2020-00016638, slip op. at *3–5 (Cal. Super. Ct. San Diego Cnty. July 2, 2021) (holding that California's Unfair Competition Law constitutes a predicate statute and granting plaintiffs leave to amend their standing allegations); JA000226–28.

*Soto*'s interpretation of the predicate exception is consistent with the approach adopted by the Second Circuit in *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008). *Beretta* found "nothing in [PLCAA] that requires any express language regarding firearms to be included in a statute in order for that statute to fall within the predicate exception." *Id.* at 399–400. It thereby held that there are three categories of statutes that qualify as PLCAA predicates: (1) statutes "that expressly regulate firearms;" (2) statutes "that courts have applied to the sale and marketing of firearms;" and (3) statutes "that do not expressly regulate firearms but that clearly can be said to implicate the purchase

and sale of firearms." *Id.* at 403–04. Both CUTPA and Chapter 93A unquestionably fall into the last two categories, as they both implicate the sale and marketing of firearms, and have been previously applied to the sale and marketing of firearms by their respective state courts of last resort. *See Soto,* 331 Conn. at 126–27 (citing previous Connecticut case applying CUTPA to the sale of firearms); *Am. Shooting Sports Council, Inc. v. Att'y Gen.*, 429 Mass. 871, 905, 711 N.E.2d 899 (1999) (applying Chapter 93A to the sale of firearms to conclude that merchanting defective handguns could be an unfair trade practice). Thus, if this Court were to reach the issue it should also hold that CUTPA and Chapter 93A qualify as predicate statutes.[4]

---

[4] The District Court held that Mexico had not satisfied the first element of its Chapter 93A claim against Smith & Wesson—namely, unfair or deceptive marketing statements. ADD000037–40. The court misapplied the principle that statements violating Chapter 93A must be "actually false or misleading." ADD000039. Mexico alleged that the advertisements gave the false impression that the firearms advertised were equivalent to military arms. JA000179–80. In essence, Smith & Wesson advertised its products for unlawful uses.

The District Court found these advertisements not actually false. But Massachusetts law requires only that an advertisement have "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 396, 813 N.E.2d 476, 488 (2004). These are not mere omissions, as in this Court's Decision, but representations to give a misleading impression as to the nature and usage of the product. This Court has permitted claims to proceed under Chapter 93A for much less. *See*, *e.g.*, *Lee v. Conagra Brands, Inc.*, 958 F.3d 70, 76 (1st Cir. 2020) (oil contained GMOs despite label of "100% Natural"); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir. 2019) ("Hazelnut Crème" coffee lacked hazelnuts).

## II. Mexico has stated an actionable public nuisance claim.

Defendants' design, marketing, distribution, and sales decisions have facilitated the trafficking of military-style and high-capacity semi-automatic firearms across the border into Mexico. According to a 2021 U.S. General Accounting Office Report, approximately 200,000 firearms are trafficked from the United States to Mexico per year.[5] The share that the manufacturer Defendants alone contribute to this illegal supply of guns is staggering. During 2020, out of all the firearms recovered by law enforcement in Mexico for which a manufacturer was identified, over 50% were manufactured by just seven companies: the manufacturer Defendants.[6] Cartels use that flood of firearms—made available to them by the unlawful business practices of both the manufacturer and distributor Defendants—to terrorize the Mexican public with extortion, kidnapping, and murder. Compl. ¶¶ 441–489 (describing specific uses of Defendants' firearms), JA000156–67. Defendants' activities constitute a classic public nuisance: an unreasonable interference with public health, safety, and order.

In Massachusetts, "[a] nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury." *Connerty v. Metro. Dist. Comm'n*, 398 Mass. 140, 148, 495

---

[5] Decl. of Lucy P. Allen, ¶ 10, Dist. Ct. ECF No. 108-1 (Ex. 1 to Decl. of Nicholas Shadowen).

[6] *Id.* ¶ 13.

N.E.2d 840 (1986), *abrogated on other grounds sub nom Jean W. v. Commonwealth*, 414 Mass. 496, 610 N.E. 2d 305 (1993); *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *14 (Mass. Super. Ct. July 13, 2000) ("A public nuisance is an 'unreasonable interference with a right common to the general public.'" (quoting Restatement (Second) of Torts § 821B(1))).[7]

To analyze whether a particular activity unreasonably interferes with a public right, the Commonwealth's courts examine: (1) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience; (2) whether the conduct is proscribed by a statute, ordinance, or administrative regulation; or (3) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right. *City of Boston v. Smith & Wesson*, 2000 WL 1473568, at *13 (citing Restatement (Second) of Torts § 821B); *Sullivan v. Chief Just. for Admin. & Mgmt. of Trial Ct.*, 448 Mass. 15, 34, 858 N.E.2d 699 (2006).

---

[7] Mexico argues that its claims arise under Mexican tort law. *See* Appellant's Br. 8. *Amici* do not take any position on this argument, but provide their analysis under Massachusetts common law, in case this Court determines that Massachusetts law applies. However, *amici* note that the laws of Mexico and Massachusetts are not in conflict. JA000205 (describing effect of Article 1830 of the Federal Civil Code of Mexico, which permits tort actions for any act "against public order laws or good customs").

Massachusetts courts have applied public nuisance to cover a wide array of harms.  The decisions show the flexibility of this common law action to address the needs of the sovereign to protect the public.  For example, Massachusetts courts have applied public nuisance to: the obstruction of a river, *French v. Conn. River Lumber Co.*, 145 Mass. 261, 264, 14 N.E. 113 (1887); the obstruction of a drawbridge, *Stop & Shop Cos., Inc. v. Fisher*, 387 Mass. 889, 899, 444 N.E.2d 368 (1983); the discharge of raw sewage into Boston Harbor, *Connerty*, 398 Mass. at 148; extraordinarily loud and bothersome protest conduct at an abortion clinic, *Planned Parenthood League of Mass., Inc. v. Bell*, 424 Mass. 573, 585, 677 N.E.2d 204 (1997); the sale of firearms in such a way that fuels a black market, *City of Boston v. Smith & Wesson*, 2000 WL 1473568, at *13; and, most recently, to the facilitation of black-market opiate trade by pharmaceutical companies, *City of Boston v. Purdue Pharma, L.P.*, No. 1884CV02860, 2020 WL 977056 (Mass. Sup. Ct. Jan. 31, 2020); *Commonwealth v. Purdue Pharma*, No. 1884CV01808BLS2, 2019 WL 5495866 (Mass. Sup. Ct. Sept. 17, 2019).

In *City of Boston v. Smith & Wesson*, a Commonwealth trial court denied a motion to dismiss Boston's public nuisance claim against multiple firearm manufacturers where the city sufficiently alleged that it faced high levels of violent crime involving guns manufactured by the defendants in that case, and that "[e]asy movement of firearms from the legal marketplace to unauthorized and illegal users,

through an illegal, secondary firearms market, fuel[ed] the gun violence." 2000 WL 1473568 at *1. Boston further alleged that the gun manufacturers "could have taken action to control and prevent the illegal diversion." *Id.* at *1. Boston also alleged that the gun manufacturers used deceptive marketing to put forward claims that "firearm ownership enhances security and that firearms are safe" despite knowledge that "studies and statistics show that the 'presence of firearms in the home increases the risk of harm.'" *Id.* at *3. The trial court concluded that Boston had pled "sufficient facts to state a claim for public nuisance." *Id*. at *14.

Similarly, Mexico has described in detail how Defendants' design, manufacture, market, and sell military-style guns that pose a unique threat to the public and law enforcement. Compl. ¶¶ 278–340, JA000114–31. Mexico goes on to describe how those guns are trafficked to Mexico through channels allegedly known to Defendants. *Id.* ¶¶ 118–226, JA000076–79. Mexico's allegations include statistical analysis showing the relationship between arms sales in the United States and violence in Mexico, *id.* ¶¶ 13, 434–445, JA000051, 000154–58, and descriptions of the types of harms Mexico and its citizens experience, *id.* ¶¶ 446–474, JA000159–65. Mexico provides evidence of a nearly 20-year rise in violence in the country that corresponds with a parallel rise of gun manufacturing and trafficking. *Id*. ¶¶ 434–505, JA000154–71. Mexico argues that Defendants are on notice to how their activities fuel a black market of firearms that ultimately

fuels violence in Mexico.  Mexico points to specific instances of Defendants' guns used in crimes, government and media reports on gun trafficking, specific instances of gun trafficking, and reports of notorious violent incidents using Defendants' firearms.  Compl. ¶¶ 115–226, JA000076–79.

Such unfair and unlawful business practices directly create and maintain the public nuisance at issue, and proximately cause the harms that Mexico seeks to mitigate.  The District Court mischaracterized these business practices as an "indirect cause" of harm in Mexico.  ADD000002; *see also* ADD000037 (characterizing the harm alleged by Mexico as too indirect and remote under CUTPA).  This misapprehends the crux of Mexico's claim.  Part of the nuisance of which Mexico complains is a surfeit of easily obtained and highly lethal weapons. This oversupply creates greater opportunities for criminals and cartels to do harm, but the existence of nuisance does not depend solely on those parties' actions. Compl. ¶¶ 466–468, 470, JA000163–64.  Criminal actions of drug cartels may be the last link in a causal chain that ends with the acts of violence giving rise to Mexico's suit, but the wrongful conduct of Defendants for which Mexico seeks redress are distinct from the criminal actions of those third parties.[8] The harms are

---

[8]  At any rate, the "intervening criminal act of a third party is a superseding cause which breaks the chain of proximate causation only where the original wrongdoer *reasonably could not have foreseen such act*." *Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 862, 520 N.E.2d 139 (1988) (emphasis added).  That articulation is the broadly accepted formulation of nuisance liability when third

created by the overabundance of weapons itself, which has resulted in

destabilization of many areas of Mexico, loss of civil society, and interference with

national life, including an increasing number of Mexican citizens attempting to flee

to the United States.  Compl. ¶¶ 466–68, 470, JA000163–64.

The proliferation of illegal, military-grade weapons due to Defendants'

unlawful trade practices is a particularly salient threat to public health and safety in

Mexico.  Many such products, like AR-style weapons, were designed to provide

the user with the look and function of military equipment.  Compl. ¶ 282,

JA000115.

Such weapons have, in fact, enabled cartels and other criminal organizations

to conduct military-style assault operations against each other, against civilians,

against law enforcement, and against the public peace.  "Law enforcement in

Mexico now report that certain types of rifles, such as the AK and AR variants

---

party acts are implicated.  *See, e.g., North Dakota v. United State*s, 480 F. Supp. 3d
917, 935 (D.N.D. 2020) (North Dakota stated a public nuisance claim from
damage to its land by protestors); *see also City of Boston v. Purdue Pharma, L.P*.,
2020 WL 97705, at \*4 ("that there are other contributing causes does not absolve
the Distributor Defendants from liability if they could have reasonably foreseen the
result"); *City of Gary ex rel. King v. Smith & Wesson Corp*., 801 N.E.2d 1222,
1234 (Ind. 2003) (finding that the City's claim against firearm companies
reasonably relied on the "foreseeable laxness of dealers, and employees, and the
ingenuity of criminals to ensure that thousands of [firearms] find their way into
their expected place in the illegal secondary market").  Compare with Complaint, ¶¶
146–209, 227–236, JA000084–98, 000103–05.  The law of Mexico on "adequate
cause" is similar.  JA000202–03.

with detachable magazines, are used more frequently to commit violent crime by drug trafficking organizations."[9]  These weapons have the capacity, speed, and reduced recoil needed for a shooter to accurately direct a high volume of bullets over a wide potential kill zone.  High-profile violent attacks using Defendants' weapons in Mexico highlight the deadly consequences of this trafficking on the Mexican military and public.  Compl. ¶¶ 210–226, JA000098–102.

The climate of violence and fear seeded by the availability of these weapons is a foreseeable consequence of Defendants' design, marketing, and sales practices—and as such, proximately caused by them—analogous to the drift of air pollutants or contamination of waters by a gasoline additive.  *See*, *e.g.*, *In re MTBE Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 630 (S.D.N.Y. 2001) (finding that the mere presence of product following its intended use could constitute a nuisance).[10]  For this reason, Mexico has stated a viable public nuisance claim against the Defendants.

## CONCLUSION

In the view of *amici*, the District Court's judgment should be reversed.

---

[9] ATF, *Press Release: Government of Mexico Firearms Trace Data* (Mar. 12, 2012), https://www.hsdl.org/?abstract&did=706915.

[10] As such, it is not even clear that Mexico's public nuisance claim, which is partially based on the surfeit of illegal, military-style guns, falls within the ambit of PLCAA, since PLCAA only bars actions seeking damages or relief resulting "from the criminal or unlawful misuse of a qualified product by the person or a third party." 15 U.S.C. § 7903(5)(A).

Respectfully submitted this 21st day of March, 2023.

MARTEN LAW LLP

*/s/ Lawson E. Fite*
Lawson E. Fite
Michael B. Smith
1050 S.W. Sixth Avenue, Suite 2150
Portland, OR 97204
Telephone: (503) 243-2200
Fax: (503) 243-2202
lfite@martenlaw.com

*Attorneys for* amici curiae *Everytown for Gun Safety Support Fund, Giffords Law Center to Prevent Gun Violence, Global Exchange, Newtown Action Alliance, Violence Policy Center, and March for Our Lives Foundation.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. Rule 29(a)(5) because it contains 6,464 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word-counting feature of Microsoft Word.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 21st day of March, 2023.

*/s/ Lawson E. Fite*
Lawson E. Fite