No. 22-1823

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

ESTADOS UNIDOS MEXICANOS,
Plaintiff-Appellant,

v.

SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS
MANUFACTURING, INC.; BERETTA U.S.A. CORP.; BERETTA HOLDINGS
S.P.A.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC; GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC.;
D/B/A INTERSTATE ARMS,
Defendants-Appellees.

---

On Appeal from the United States District Court for the District of Massachusetts,
No. 1:21-cv-11269-FDS, Hon. F. Dennis Saylor, IV, United States District Judge

---

## BRIEF OF AMICI CURIAE PROFESSORS OF TRANSNATIONAL
## LITIGATION IN SUPPORT OF PLAINTIFF-APPELLANT AND
## REVERSAL OF THE DISTRICT COURT

---

Scott Harshbarger (Bar No. 32040)
Edward V. Colbert III (Bar No. 1067439)
CASNER & EDWARDS, LLP
303 Congress Street
Boston, MA 02210
Telephone: (617) 426-5900
Facsimile:  (617) 426-8810
colbert@casneredwards.com
*Attorneys for Amici Curiae*

# <u>TABLE OF CONTENTS</u>

Table Of Contents…………………………………………………………………..i

Table Of Authorities…………………………………………………………………..ii

Interest Of Amici…………………………………………………………………...1

Introduction and Summary of Argument…………………………………………...4

Argument........................................................................................................................8

   I.   PLCAA Does Not Bar Claims Under Foreign Law .......................................8

   II.   PLCAA Does Not Bar Claims by Foreign Governments ............................12

   III.  Because the Scope of PLCAA Is Clear, Its Focus Is Irrelevant ..................15

   IV. Under Massachusetts Choice-of-Law Rules, Mexican Law Governs the Non-Statutory Claims………………………………………………………16

   V.  Neither International Law nor International Comity Bars Mexico's Claims………………………………………………………………………19

Conclusion……………………………………………………………………...23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964)…………………...22

*Bank of Augusta v. Earle*, 38 U.S. 519 (1839)…………………………………..21

*Brogie v. Vogel*, 205 N.E.2d 234 (Mass. 1965)…………………………………....19

*Bushkin Assocs. v. Raytheon Co.*, 473 N.E.2d 662 (Mass. 1985)………………17

*Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581 (Mass. 1983)…………...18

*Conway v. Planet Fitness Holdings, LLC*, 189 N.E.3d 675 (Mass. App. 2022), *review denied*, 193 N.E.3d 453 (Mass. 2022)…………………………………...17

*Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832 (Mass. 1994)……………17

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991)…………………………...10

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004)……..21

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020)……….7,16,17

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993)……………………..20

*Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18 (D. Mass. 2019)………….22

*In Re Vitamin C Antitrust Litig.*, 8 F.4th 136 (2d Cir. 2021)…………………...21

*Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424 (D.N.J. 1999)……………….22

*Jackson v. Anthony*, 185 N.E. 389 (Mass. 1933) …………………………....19

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013)…………………...16

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)………………...16

*Lou v. Otis Elevator Co.*, 933 N.E.2d 140 (2010)……………………………...17

*Loucks v. Standard Oil Co. of New York*, 120 N.E. 198 (N.Y. 1918)………….19

*Morrison v. National Australia Bank*, 561 U.S. 247 (2010)…………………..10,15

*RJR Nabisco v. European Community*, 579 U.S. 325 (2016)…………………10,15

*Small v. United States*, 544 U.S. 385 (2005)………………………………11,12,13

*Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952)……………………………..20

*The Sapphire*, 78 U.S. (11 Wall.) 164 (1870) …………………………………22

*Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004)……..22

*United States v. Palmer*, 16 U.S. (3 Wheat.) 610 (1818)………………………12

*United States v. Smith*, 680 F.2d 255 (1st Cir. 1982)…………………………..20

**Statutes**

15 U.S.C. § 7301……………………………………………………………….9

15 U.S.C. § 7901………………………………………………………….passim

15 U.S.C. § 7902 ………………………………………………………………5

15 U.S.C. § 7903………………………………………………………….passim

16 U.S.C. § 3372……………………………………………………………….9

16 U.S.C. § 450rr-1(b)………………………………………………………14

16 U.S.C. § 5102(11)………………………………………………………..13

16 U.S.C. § 7408(b)…………………………………………………………14

18 U.S.C. § 922………………………………………………………………11

18 U.S.C. § 924……………………………………………………………….8

19 U.S.C. § 1527……………………………………………………………9

22 U.S.C. § 3102(3)……………………………………………………..14

22 U.S.C. § 3504…………………………………………………………..14

29 U.S.C. § 53……………………………………………………………9

42 U.S.C. § 1705…………………………………………………………9

42 U.S.C. § 18311………………………………………………………..14

**Other Authorities**

William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev. 2071, 2099-2119 (2015)……………………………………………………...21

Restatement (Second) of Conflicts § 6(2)…………………………………18

Restatement (Second) of Conflicts (Am. L. Inst. 1971) § 90…………………...19

Restatement (Second) of Conflicts (Am. L. Inst. 1971) §§145,146……….7,17,18

Restatement (Fourth), Part IV, Chapter 1, Intro. Note…………………………20

Restatement (Fourth) of U.S. Foreign Relations Law §§ 401,407-413 (Am. L. Inst. 2018)……………………………………………………………7,19-20

Restatement (Fourth) § 424 reporters' note 9………………………………..22

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012)…………………………………………………………...14

Joseph Story, *Commentaries on the Conflict of Laws* § 33, at 38 (2d ed. 1841)..21

**Interest of Amici[1]**

Amici are law professors who write and teach about transnational litigation, including choice of law, extraterritoriality, international law, and international comity.

George A. Bermann is the Jean Monnet Professor of European Union Law, Walter Gellhorn Professor of Law, and Director of the Center for International Commercial and Investment Arbitration at Columbia Law School. He served as Chief Reporter for the American Law Institute's *Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* (Proposed Final Draft 2019).

Ronald A. Brand is Chancellor Mark A. Nordenberg University Professor and John E. Murray Faculty Scholar at the University of Pittsburgh School of Law. He has represented the United States at the Hague Conference on Private International Law and is a member of the State Department's Advisory Committee on Private International Law. He has written widely on transnational litigation, including *International Civil Dispute Resolution* (West 2d ed. 2008).

---

[1] No person or entity other than amici and their counsel authored the brief in whole or in part. No person or entity other than amici and their counsel contributed money intended to fund preparing or submitting the brief.

1

William S. Dodge is Martin Luther King, Jr. Professor of Law and John D. Ayer Chair at the University of California, Davis, School of Law. He served as Counselor on International Law to the Legal Adviser at the U.S. Department of State from 2011 to 2012 and as Co-Reporter for the American Law Institute's *Restatement (Fourth) of the Foreign Relations Law of the United States* (2018) from 2012 to 2018.

Kermit Roosevelt is David Berger Professor for the Administration of Justice at the University of Pennsylvania, Carey School of Law. He currently serves as Chief Reporter for the American Law Institute's *Restatement (Third) of the Conflict of Laws*.

Aaron D. Simowitz is Assistant Professor at Willamette University College of Law, an Affiliated Scholar at the Classical Liberal Institute at New York University, and a former Chair of the American Association of Law Schools Conflict of Laws Section. His work on transnational litigation has appeared in the *Fordham Law Review*, the *Southern California Law Review*, and the *NYU Law Review* among other journals.

Robert D. Sloane is Professor of Law & R. Gordon Butler Scholar in International Law at Boston University School of Law. He holds a high-level diploma in public international law from the Hague Academy of International Law. He is the author of *Foreign Affairs Federalism* (Oxford University Press 2016).

2

David L. Sloss is the John A. and Elizabeth H. Sutro Professor of Law at Santa Clara University. His articles on transnational litigation and foreign relations law have appeared in the *Cornell Law Review*, the *Stanford Law Review*, the *Harvard International Law Journal*, and the *Yale Journal of International Law* among other journals.

Beth Stephens is a Distinguished Professor of Law at Rutgers Law School. She served as an Adviser for the *Restatement (Fourth) of the Foreign Relations Law*. Her articles on transnational litigation have appeared in the *Fordham Law Review*, the *Notre Dame Law Review*, and the *William & Mary Law Review* among other journals.

Symeon C. Symeonides is Dean Emeritus and Alex L. Parks Distinguished Chair in Law at the Willamette University College of Law. He is one of the world's leading authorities on conflict of laws. His publications include *Conflict of Laws* (West 6th ed. 2018) and *Oxford Commentaries on American Law: Choice of Law* (Oxford University Press 2016).

Carlos M. Vázquez is the Scott K. Ginsburg Professor of Law at Georgetown University Law Center. He was an Adviser to the *Restatement (Fourth) of Foreign Relations Law* and is currently a member of the Members Consultative Group for the *Restatement (Third) of the Conflict of Laws*. He has written extensively about extraterritoriality and conflict of laws, and his articles have appeared in the

3

*California Law Review*, the *Harvard Law Review*, and the *Virginia Law Review* among other journals.

Christopher A. Whytock is Vice Dean and Professor of Law and Political Science at the University of California, Irvine. He currently serves as an Associate Reporter for the American Law Institute's *Restatement (Third) of the Conflict of Laws*.

Amici believe that their expertise may be helpful to the Court in considering this appeal.

## Introduction and Summary of Argument

The Government of Mexico has sued seven U.S. gun manufacturers and one distributor. Mexico alleges that the defendants design, market, and sell guns in ways they know will arm Mexican drug cartels. Although Mexico has strict gun laws, an estimated half million guns flow from the United States into Mexico each year.

Mexico's non-statutory claims include five tort claims (negligence, public nuisance, defective design, negligence *per se*, and gross negligence), plus unjust enrichment and restitution. Mexico also seeks punitive damages. Before the district court, defendants argued that these claims are properly governed by U.S. law, *see* Joint Reply in Support of Defendants' Motion to Dismiss 6-9, whereas Mexico argued that these claims are properly governed by Mexican law, *see* Plaintiff's Sur-Reply Memorandum of Law in Opposition to Defendants' Motion to Dismiss. The

district court concluded, however, that "no choice-of-law analysis is necessary" because the Protection of Lawful Commerce in Arms Act (PLCCA), 15 U.S.C. § 7901-7903, strips the court of jurisdiction regardless of the governing law. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, CV 21-11269-FDS, 2022 WL 4597526, at \*10 (D. Mass. Sept. 30, 2022). Amici believe this is incorrect.[2]

Congress passed PLCAA in 2005 to shield gun manufacturers and sellers from the kind of suits that U.S. states and municipalities had brought under U.S. common law. Congress specifically identified these suits in its codified findings: "The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law." 15 U.S.C. § 7901(a)(6). Nowhere does PLCAA mention claims under foreign law or actions by foreign governments.

PLCAA's immunity is not absolute—it applies only to "qualified civil liability action[s]." *Id.* § 7902. That term is defined as a civil action or administrative proceeding brought by "any person" against a gun manufacturer or seller for damages or other relief "resulting from the criminal or unlawful misuse of a [firearm]

---

[2] Mexico also brings two claims under state statutes. Amici take no position on whether those claims fit within PLCAA's exceptions.

by the person or a third party." *Id.* § 7903(5)(A). There are also six enumerated exceptions in the definition, including actions for knowing violations of federal and state statutes. *Id.* § 7903(5)(A)(iii).

PLCAA defines "person" to mean "any individual, corporation, company, association, firm, partnership, society, joint stock company, or any other entity, including any governmental entity." *Id.* § 7903(3). In contrast to other federal statutes, it does not list foreign governmental entities. PLCAA does not define the phrase "criminal and unlawful," but the context of the statute makes clear that it refers to federal and state law and therefore does not include actions for violations of foreign law. Thus, PLCAA does not immunize defendants from claims brought under foreign law *or* by foreign governments. Mexico's non-statutory claims are both claims brought under foreign law *and* claims by a foreign government.

Applying the federal presumption against extraterritoriality, the district court determined that applying PLCAA should be considered domestic because the "focus" of the statute was in the United States. But the dispositive question in this case is PLCAA's *substantive* scope—that is, whether PLCAA reaches the kind of claims that Mexico has brought. Even if applying PLCAA is considered domestic, it still does not immunize defendants against claims by a foreign government under foreign law.

6

Because PLCAA does not immunize defendants against claims under foreign law, a choice-of-law analysis is necessary. Massachusetts applies a "functional approach" that looks for guidance to the Restatement (Second) of Conflicts (Am. L. Inst. 1971). *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41 (1st Cir. 2020). For personal injury claims, Section 146 of the Restatement (Second) presumes that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless … some other state has a more significant relationship." Restatement (Second) § 146. No U.S. state has a more significant relationship than Mexico to the claims in this case.

Finally, neither international law nor international comity bars Mexico's claims. Under international law, Mexico has authority to apply its law to conduct outside its territory that causes substantial effects within its territory. *See* Restatement (Fourth) of U.S. Foreign Relations Law § 409 (Am. L. Inst. 2018). And none of the international comity doctrines invoked by the defendants below apply in this case.

In sum, Mexican tort law legitimately applies to conduct by the defendants in the United States that causes devastating harm in Mexico. Both PLCAA's text and its findings and purposes indicate that the statute does not immunize defendants from claims brought under foreign law or claims brought by foreign governments. Such actions were simply not in Congress's contemplation when PLCAA was passed. If

Congress today wishes to shield gun manufacturers and sellers in whole or in part from such suits, it may amend PLCAA to that end.

## Argument

### I.    PLCAA Does Not Bar Claims Under Foreign Law

PLCAA bars actions for damages or other relief "resulting from the *criminal or unlawful* misuse of a [firearm] by the person [bringing the action] or a third party." 15 U.S.C. § 7903(5)(A) (emphasis added). In context, it is clear that "criminal or unlawful" refers only to U.S. federal and state law and not to foreign law. Because Mexico's non-statutory claims are based on the misuse of firearms under *Mexican* law, they are not covered by PLCAA.

The first indication that "criminal or unlawful" refers only to U.S. federal and state law is found in PLCAA's definition of the civil actions that are prohibited, where one finds six exceptions. Two refer explicitly to federal and state law. Section 7903(5)(A)(i) permits actions against persons convicted of transferring guns knowing that they will be used in violent crimes or drug crimes in violation of 18 U.S.C. § 924(h) "or a comparable or identical State felony law." Section 7903(5)(A)(iii) permits actions against manufacturers or sellers of guns who "knowingly violated a State or Federal statute applicable to the sale or marketing of the product." If Congress had intended PLCAA to apply to the misuse of guns that is criminal or unlawful under foreign law, Congress would naturally have drafted

8

these exceptions to refer to foreign law as well. Congress knows how to refer to foreign law when it wants to do so. *See, e.g.*, 16 U.S.C. § 3372(a)(2) (prohibiting the importation of "any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law"); 19 U.S.C. § 1527(a) (prohibiting the importation of wild mammals and birds in violation of "the laws or regulations of any country, dependency, province, or other subdivision of government"); 29 U.S.C. § 53 (defining "person" for the purpose of labor disputes to include business entities "existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country"); 42 U.S.C. § 1705(a) (limiting workers' compensation benefits to any person who receives such benefits "for the same injury or death under any other law of the United States, or under the law of any State, Territory, possession, foreign country, or other jurisdiction).

The conclusion that "criminal or unlawful" refers only to federal and state law finds confirmation in Congress's codified findings and purposes. Congress's findings begin by referring twice to the Second Amendment right to bear arms. 15 U.S.C. § 7901(a)(1) & (2). Congress also notes that guns "are heavily regulated by Federal, State, and local laws," *id.* § 7301(a)(4), with no mention of foreign laws. Congress specifically identifies the civil actions with which PLCAA is concerned as those "commenced or contemplated by the Federal Government, States,

municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States." *Id.* § 7901(a)(7). Nowhere does PLCAA mention actions based on foreign law.

Before the district court, the defendants' argument that PLCAA applies to foreign law claims relied almost entirely on the statute's references to "foreign commerce." Motion to Dismiss 28 (MTD) (quoting 15 U.S.C. §§ 7901(a)(5), 7901(b)(4) & 7903(2), (4), (6)). But these references are boilerplate, intended to invoke Congress's Article I commerce power, rather than a specification of PLCAA's scope. In applying the presumption against extraterritoriality (discussed below), the Supreme Court has repeatedly rejected reliance on such language to indicate the scope of federal statutes. *See RJR Nabisco v. European Community*, 579 U.S. 325, 353 (2016); *Morrison v. National Australia Bank*, 561 U.S. 247, 262-63 (2010); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 251 (1991).

Even if the statute's references to "foreign commerce" were relevant to determining PLCAA's scope, they refer in context only to *imports* of firearms. The finding on which defendants principally relied below says that U.S. businesses "that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, *importation*, or sale to the public of firearms or ammunition products" should not be subject to liability. 15 U.S.C. § 7901(a)(5)

10

(emphasis added). Indeed, the findings and purposes explicitly refer five times to importers or the importation of guns. *Id.* §§ 7901(a)(3), (4), (5) & (b)(1), (6). The sole mention of exports is a reference in one of the findings to the Arms Export Control Act, *id.* § 7901(a)(4), a statute that Congress listed simply as an illustration of the fact that firearms "are heavily regulated by Federal, State, and local laws," *id.* As noted above, that list of regulations notably does not include foreign law.

Congress's focus on imports in foreign commerce is consistent with Congress's overriding concern with the Second Amendment rights of U.S. citizens. *Id.* §§ 7901(a)(1) & (2). It is PLCAA's stated purpose "[t]o preserve *a citizen's* access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting." *Id.* § 7901(b)(2) (emphasis added). Congress was not concerned with providing access to guns for Mexican citizens in Mexico.

How to read "criminal and unlawful" in PLCAA's definition of a "qualified civil liability action" is strikingly similar to the interpretive question the Supreme Court faced in *Small v. United States*, 544 U.S. 385 (2005). There, a federal statute made it unlawful for a person "who has been convicted in any court" of a crime punishable by imprisonment for more than one year to possess a firearm. 18 U.S.C. § 922(g)(1). The Court held that "any court" referred only to courts in the United States. It began with the "commonsense notion that Congress generally legislates

with domestic concerns in mind." *Small*, 544 U.S. at 388. The Court in *Small* found confirmation in the statute's exceptions and other references to federal and state laws, *id.* at 391-92, like the references in PLCAA discussed above. Indeed, the argument for reading "criminal and unlawful" to refer only to U.S. domestic law is stronger than the argument in *Small* because the statute at issue there did not contain the extensive findings and purposes that confirm PLCAA's concern with domestic conditions.

In sum, PLCAA's plain text, its findings and purposes, and the "commonsense notion that Congress generally legislates with domestic concerns in mind," *Small*, 544 U.S. at 388, all lead to the conclusion that PLCAA does not apply to claims under foreign law.

## II.  PLCAA Does Not Bar Claims by Foreign Governments

To constitute a "qualified civil liability action" barred by PLCAA, an action must not only be based on "the criminal or unlawful misuse" of a firearm; it must also be brought by a "person." 15 U.S.C. § 7903(5)(A). "Person" is defined as "any individual, corporation, company, association, firm, partnership, society, joint stock company, or any other entity, including any governmental entity." The word "any" is not sufficient to indicate that Congress meant to include foreign governmental entities. Two centuries ago, in *United States v. Palmer*, 16 U.S. (3 Wheat.) 610 (1818), the Supreme Court held that the words "any person or persons" in the U.S.

piracy statute did not encompass foreign subjects. "The words 'any person or persons,' are broad enough to comprehend every human being," Chief Justice Marshall noted. "But general words must not only be limited to cases within the jurisdiction of the state, but also to those objects to which the legislature intended to apply them." *Id.* at 631; *see also Small*, 544 U.S. at 388 (noting that "a legislature that uses the statutory phrase 'any person' may or may not mean to include 'persons' outside the jurisdiction of the state" (cleaned up)).[3]

In other statutes, Congress has clearly indicated when it wishes to include foreign governmental entities. For example, the Atlantic Coastal Fisheries Cooperative Management Act defines "person" to mean "any individual (whether or not a citizen or national of the United States), any corporation, partnership, association, or other entity (whether or not organized or existing under the laws of any State), and any Federal, State, local, *or foreign government* or any entity of any such government." 16 U.S.C. § 5102(11) (emphasis added). A provision of the National Aeronautics and Space Administration Authorization Act defines "commercial provider" to exclude entities primarily controlled "by persons other

---

[3] Because Mexico asserts that all its claims lie outside the scope of PLCAA, the Court need not decide whether Mexico's status as a foreign governmental entity alone would be sufficient to exempt it from PLCAA. Put another way, if the Court agrees that PLCAA does not apply to claims under foreign law, *see* Part I, *or* that PLCAA does not apply to claims by foreign governments, *see* Part I, *or* both, Mexico's non-statutory claims would not be barred.

than the Federal Government, a State or local government, *or a foreign government*." 42 U.S.C. § 18311(a)(2)(A) (emphasis added). And a statute establishing the Institute for Scientific and Technological Cooperation authorizes the President to make contracts "with governments or government agencies, domestic or foreign." 22 U.S.C. § 3504(a)(1) (emphasis added). It is easy to multiply the examples. *See, e.g.*, 16 U.S.C. § 450rr-1(b); 16 U.S.C. § 7408(b); 22 U.S.C. § 3102(3). Congress's failure to include similar language in PLCAA's definition of "person" demonstrates that PLCAA does not bar actions by foreign governments.

This conclusion is confirmed, once again, by Congress's codified finding indicating the actions with which PLCAA is concerned, specifically those "commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others" that are "based on theories without foundation in hundreds of years of the common law … and do not represent a bona fide expansion of the common law." 15 U.S.C. § 7901(a)(7). Under the canon of *ejusdem generis*, the general term "others" must be read to refer to other domestic plaintiffs, not to foreign governments, and certainly not to foreign governments suing under civil law rather than common law. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012) ("Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned.")

14

### III.    Because the Scope of PLCAA Is Clear, Its Focus Is Irrelevant

The district court did not address the arguments above. Instead, it applied the federal presumption against extraterritoriality and concluded that applying PLCAA would be a "permissible domestic application" because the statute's focus is domestic. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2022 WL 4597526, at *13 (quoting *RJR Nabisco*, 579 U.S. at 337). Specifically, the court found that "[t]he focus of the PLCAA is both the civil actions that it 'seeks to regulate' and the commercial activity and constitutional rights it 'seeks to protect.'" *Id.* (quoting *Morrison*, 561 U.S. at 267). But when there is a "clear indication" of a statute's scope, a court "do[es] not proceed to the 'focus' step." *RJR Nabisco*, 579 U.S. at 342. Instead, the application of the statute "turns on the limits Congress has (or has not) imposed." *Id.* at 337-38.

Although the parties below framed the question of PLCAA's application as one of extraterritoriality, the Supreme Court's two-step framework for the presumption against extraterritoriality fits poorly here.[4] The Supreme Court has

---

[4] Some of the current amici joined an amicus brief below that similarly analyzed PLCAA's scope under the presumption against extraterritoriality. *See* Brief of Professors of Transnational Litigation as *Amici Curiae* at 3 n.2, *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, CV 21-11269-FDS, 2022 WL 4597526 (D. Mass. Sept. 30, 2022), https://papers.ssrn.com/sol3/abstract_id=4022789. While those amici continue to think that plaintiffs should prevail on the extraterritoriality question, they believe that PLCAA does not bar the plaintiffs' claims no matter how the extraterritoriality question is resolved.

noted that it "typically appl[ies] the presumption to discern whether an Act of Congress regulating conduct applies abroad." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013). Even in *Kiobel*, the Court applied the presumption to a cause of action, albeit one implied under a jurisdictional statute. *See id.* PLCAA, by contrast creates an immunity from suit. The question in this case is about the *substantive* scope of that immunity—that is, whether PLCAA reaches the kind of claims that Mexico has brought.

Thus, even if the district court were correct that applying PLCAA in this case should be considered domestic, there remains the question whether PLCAA immunizes the defendants against claim by a foreign government brought under foreign law. As explained above, because PLCAA's definition of "person" does not include foreign governmental entities and because "criminal and unlawful" refers only to U.S. federal and state law, PLCAA does not bar Mexico's non-statutory claims.

## IV.   Under Massachusetts Choice-of-Law Rules, Mexican Law Governs the Non-Statutory Claims

Because PLCAA does not apply to claims under foreign law, it is necessary to conduct a choice-of-law analysis. A federal court sitting in diversity must follow the conflicts rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27,

41 (1st Cir. 2020) ("When resolving disagreements about which state's law applies, we employ the choice-of-law principles of the forum state (here, Massachusetts).").

"Massachusetts courts normally settle choice-of-law disputes using a functional approach, looking to the Restatement (Second) of Conflict of Laws as '[o]ne obvious source of guidance.'" *Foisie*, 967 F.3d at 41 (quoting *Bushkin Assocs. v. Raytheon Co.*, 473 N.E.2d 662, 668-69 (Mass. 1985)); *see also Conway v. Planet Fitness Holdings, LLC*, 189 N.E.3d 675, 681 (Mass. App. 2022), *review denied*, 193 N.E.3d 453 (Mass. 2022) ("Though we do not tie our analysis to any single doctrine, examination of our cases reveals that we often find useful guidance in the Restatement (Second) of Conflict of Laws." (quoting *Lou v. Otis Elevator Co.*, 933 N.E.2d 140, 150 (2010))).

In tort cases, the Supreme Judicial Court of Massachusetts has looked to Section 145 and 146 of the Restatement (Second). *See, e.g.*, *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834-35 (Mass. 1994). Section 146 provides: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflicts § 146 (Am. L.

17

Inst. 1971). In this case, Mexico is where the injuries occurred. Thus, Mexican law

governs unless another state has a more significant relationship.

Section 145 instructs courts to determine which state has the "most significant

relationship" to an issue in tort by considering the principles set forth in Section 6[5]

and various contacts, including "the place where the injury occurred," "the place

where the conduct causing the injury occurred," "the domicil, residence, nationality,

place of incorporation and place of business of the parties," and "the place where the

relationship, if any, between the parties is centered." Restatement (Second) § 145.

Here, Mexico has a strong interest in applying its law to injuries in Mexico, and the

interests of no U.S. state are strong enough to outweigh that interest. *See also Cohen*

*v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 585 (Mass. 1983) ("The law of

Massachusetts is that ordinarily 'the substantive law governing an action of tort for

---

[5] Section 6(2) sets forth the following principles:

   (a) the needs of the interstate and international systems,
   (b) the relevant policies of the forum,
   (c) the relevant policies of other interested states and the relative interests of
   those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) ease in the determination and application of the law to be applied.

Restatement (Second) § 6(2).

physical injury is that of the place where the injury occurred.'" (quoting *Brogie v. Vogel*, 348 Mass. 619, 621, 205 N.E.2d 234 (1965))).

Restatement (Second) § 90 contains a public policy exception that allows the district court to refuse to hear a foreign cause of action that "is contrary to the strong public policy of the forum." But the test is a strict one, and "[a] court should not refuse to entertain such a suit unless to do so, in the words of Judge Cardozo, 'would violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth.'" Restatement (Second) § 90 cmt. c (quoting *Loucks v. Standard Oil Co. of New York*, 120 N.E. 198, 202 (N.Y. 1918); *see also Jackson v. Anthony*, 185 N.E. 389, 392 (Mass. 1933) (asking whether foreign law "is offensive to good morals, creative of injustice or contrary to the sound public policy of Massachusetts").

## V.    Neither International Law nor International Comity Bars Mexico's Claims

Before the district court, defendants argued that international law and international comity bar Mexico's claims. MTD 3, 42-44. Neither does.

Under international law, the authority of a state to make law applicable to persons property or conduct is known as jurisdiction to prescribe. Restatement (Fourth) § 401(a). Customary international law allows a state to exercise jurisdiction to prescribe if there is a "genuine connection" between the subject of the regulation and the regulating state. *Id.* § 407. There are six traditional bases for jurisdiction to

prescribe under international law: territory, effects, nationality (active personality), passive personality, the protective principle, and universal jurisdiction. *See id.* §§ 408-413. In this case, the most relevant basis is effects: "International law recognizes a state's jurisdiction to prescribe law with respect to conduct that has a substantial effect within its territory." *Id.* § 409; *see also United States v. Smith*, 680 F.2d 255, 258 (1st Cir. 1982) (recognizing the effects principle, referred to in that case as the "objective territorial principle," as "including acts done outside a geographic jurisdiction, but which produce detrimental effects within it"). The United States regularly applies its laws extraterritorially based on effects in the United States. *See, e.g.*, *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("[T]he Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States."); *Steele v. Bulova Watch Co.*, 344 U.S. 280, 285-87 (1952) (holding that Lanham Act applied to trademark infringement in Mexico on the basis of effects in the United States). There is no question that Mexico has alleged that the defendants' conduct in the United States caused substantial effects in Mexico. If proved, such effects would be sufficient under international law to justify the application of Mexican law.

International comity is different from international law. In fact, international comity is "deference to foreign states that is *not* required by international law." Restatement (Fourth), Part IV, Chapter 1, Intro. Note (emphasis added). Thus, each

nation may decide for itself whether and how to limit the application of its laws and the jurisdiction of its courts as a matter of comity. *See* Joseph Story, *Commentaries on the Conflict of Laws* § 33, at 38 (2d ed. 1841) ("Every nation must be the final judge for itself, not only of the nature and extent of the duty, but of the occasions on which [comity's] exercise may be justly demanded.").

International comity is the basis for many doctrines of U.S. law. *See* William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev. 2071, 2099-2119 (2015). Indeed, it is the basis for choice-of-law rules, like Massachusetts's, that recognize foreign law in appropriate cases. *See Bank of Augusta v. Earle*, 38 U.S. 519, 589 (1839) (noting that, "by the general practice of civilized countries, the laws of the one, will, by the comity of nations, be recognised and executed in another"). But none of the U.S. comity doctrines that defendants invoked before the district court could even potentially limit the reach of Mexican law precisely because they are doctrines of U.S. law not doctrines of Mexican law.

The principle of "constru[ing] ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations," *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004), is a U.S. principle of statutory interpretation applicable only to U.S. law. The same is true of the doctrine of "prescriptive comity" that the Second Circuit applied in *In Re Vitamin C Antitrust*

21

*Litig.*, 8 F.4th 136, 144 n.8 (2d Cir. 2021) (noting that prescriptive comity is "a form of statutory interpretation").

Below, the defendants also invoked the doctrine of international comity abstention applied in *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237-41 (11th Cir. 2004), and *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 490 (D.N.J. 1999). But this doctrine limits the jurisdiction of U.S. courts, not the application of foreign law. In most Circuits, this international comity abstention doctrine applies only if there is a parallel proceeding pending abroad. *See* Restatement (Fourth) § 424 reporters' note 9 (collecting cases). The First Circuit has not adopted a doctrine of international comity abstention, although district courts in this Circuit have sometimes stayed or dismissed cases in favor of pending foreign actions based on international comity. *See Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 28 (D. Mass. 2019). In this case there is no parallel proceeding pending abroad.

In fact, international comity supports Mexico's claims here. The Supreme Court has long held that foreign sovereigns may bring suit in federal court, reasoning that "[t]o deny him this privilege would manifest a want of comity and friendly feeling." *The Sapphire*, 78 U.S. (11 Wall.) 164, 167 (1870). The Court has subsequently reaffirmed that principle. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 408-09 (1964) ("Under principles of comity governing this country's

relations with other nations, sovereign states are allowed to sue in the courts of the United States."). As discussed in Part IV, international comity also supports the recognition and enforcement of foreign law pursuant to Massachusetts's choice-of-law rules.

In sum, Mexico's non-statutory claims are properly governed by Mexican law, and neither international law nor international comity bars Mexico's claims.

## Conclusion

For the reasons above, this Court should reverse the decision of the district court and remand for further proceedings.

Respectfully submitted,

PROFESSORS OF TRANSNATIONAL LITIGATION

By its counsel,

*/s/ Edward V. Colbert III*
Scott Harshbarger (# 32040)
Edward V. Colbert III (# 1067439)
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
Tel: (617) 426-5900
Fax: (617) 425-8810
harshbarger@casneredwards.com
colbert@casneredwards.com

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because the brief contains 5,291 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: March 28, 2023                  */s/ Edward V. Colbert III*
                                       Edward V. Colbert III

## CONSENT TO FILE

Pursuant to Fed. R. App. P. 29 (a)(2), all parties have consented to the filing of this brief.

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 28, 2023                  */s/ Edward V. Colbert III*
                                       Edward V. Colbert III