No. 22-1823

————————

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

————————

ESTADOS UNIDOS MEXICANOS,

*Plaintiff-Appellant,*

v.

SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS
MANUFACTURING, INC.; BERETTA U.S.A. CORP.; GLOCK, INC.; STURM,
RUGER & COMPANY, INC.; WITMER PUBLIC SAFETY GROUP, INC.,
D/B/A INTERSTATE ARMS; CENTURY INTERNATIONAL ARMS, INC.;
BERETTA HOLDING S.P.A.; GLOCK GES.M.B.H.;
COLT'S MANUFACTURING COMPANY, LLC,

*Defendants-Appellees.*

————————

On Appeal from the U.S. District Court
for the District of Massachusetts
No. 21-cv-11269
Hon. F. Dennis Saylor IV, Chief Judge

————————

**BRIEF OF DEFENDANTS-APPELLEES**

————————

Andrew E. Lelling
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
(617) 960-3939

Noel J. Francisco
Anthony J. Dick
Harry S. Graver
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
(202) 879-3939
njfrancisco@jonesday.com

*Counsel for Defendant-Appellee Smith & Wesson Brands Inc.*
(additional counsel listed on inside cover)

James M. Campbell
CAMPBELL CONROY & O'NEIL, P.C.
1 Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com

James W. Porter, II
PORTER & HASSINGER, P.C.
880 Montclair Road, Suite 175
Birmingham, AL 35213
(205) 322-1744

*Counsel for Defendant-Appellee*
*Barrett Firearms Manufacturing, Inc.*

Patricia A. Hartnett
Peter M. Durney
SMITH DUGGAN CORNELL &
GOLLUB
88 Broad Street, Sixth Floor
Boston, MA 02110
(617) 482-8100
pdurney@smithduggan.com

Christopher Renzulli
Jeffrey Malsch
RENZULLI LAW FIRM LLC
One North Broadway, Suite 1005
White Plains, NY 10601
(914) 285-0700

*Counsel for Defendant-Appellee*
*Glock, Inc.*

Mark D. Sheridan
SQUIRE PATTON BOGGS (US) LLP
382 Springfield Avenue, Suite 300
Summit, NJ 07901
(973) 848-5600

*Counsel for Defendant-Appellee*
*Beretta U.S.A. Corp.*

Jonathan I. Handler
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston MA 02110
(617) 345 4734
jihandler@daypitney.com

James Vogts
Andrew A. Lothson
SWANSON, MARTIN & BELL LLP
330 N. Wabash Suite 3300
Chicago, IL 60611
(312) 222-8517

*Counsel for Defendant-Appellee*
*Sturm, Ruger & Co., Inc.*

(additional counsel listed on next page)

Nora R. Adukonis
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
(781) 309-1521
adukonis@litchfieldcavo.com

S. Jan Hueber
  *(Admission Application Pending)*
LITCHFIELD CAVO LLP
100 Throckmorton Street Suite 500
Fort Worth, Texas 76102
(817) 945-8025

*Counsel for Defendant-Appellee*
*Witmer Public Safety Group, Inc.*


John G. O'Neill
SUGARMAN, ROGERS,
BARSHAK & COHEN, P.C.
101 Merrimac Street, Suite 900
Boston, MA 02114
(617) 227-3030
oneill@sugarmanrogers.com

Michael L. Rice
Katie J. Colopy
HARRISON LAW LLC
141 West Jackson Boulevard, Suite 2055
Chicago, IL 60604
(312) 638-8776

*Counsel for Defendant-Appellee*
*Colt's Manufacturing Company LLC*

Joseph G. Yannetti
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7585
jyannetti@morrisonmahoney.com

Anthony M. Pisciotti
Danny C. Lallis
Ryan L. Erdreich
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
(973) 245-8100

*Counsel for Defendant-Appellee*
*Century International Arms, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees submit the following statement:

Smith & Wesson Brands, Inc. hereby certifies that Smith & Wesson Brands, Inc. does not have a parent corporation and no other publicly held corporation currently owns more than 10% of its stock.  Smith & Wesson Inc. and Smith & Wesson Sales Company are wholly-owned subsidiaries of Smith & Wesson Brands, Inc.

Barrett Firearms Manufacturing, Inc., certifies that it is wholly owned by NIOA USA Firearms Inc. and no publicly held corporation currently owns more than 10% of its stock.

Beretta U.S.A. Corp. hereby certifies that Beretta U.S.A. Corp. is owned 98% by Beretta Holding S.A. and no other publicly held corporation currently owns more than 10% of its stock.

Glock, Inc. hereby certifies Glock Ges.m.b.H. and INC Holding GmbH as parent corporations and no publicly held corporations own 10% or more of its stock.

Sturm, Ruger & Co., Inc. hereby certifies that Sturm, Ruger & Co., Inc. does not have a parent corporation and no other publicly held corporation currently owns more than 10% of its stock.

Witmer Public Safety Group, Inc., d/b/a Interstate Arms hereby certifies that Witmer Public Safety Group, Inc., d/b/a Interstate Arms does not have a parent

corporation and no other publicly held corporation currently owns more than 10% of its stock.

Century International Arms, Inc. hereby certifies that Century International Arms, Inc. does not have a parent corporation and no other publicly held corporation currently owns more than 10% of its stock.

Colt's Manufacturing Company, LLC hereby certifies that Colt's Manufacturing Company, LLC does not have a direct parent corporation and no corporation publicly traded in the United States is a member of Colt or directly owns ten percent or more of Colt. Colt states that Colt CZ Group SE, which indirectly owns 100% of the members of Colt, is publicly traded in the Czech Republic.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT..............................................................i

TABLE OF AUTHORITIES..............................................................................iv

INTRODUCTION .............................................................................................1

STATEMENT OF THE CASE .............................................................................3

    A.   The Protection of Lawful Commerce in Arms Act ...........................3

    B.   Mexico's Lawsuit............................................................................4

    C.   The District Court's Decision.........................................................7

SUMMARY OF ARGUMENT..............................................................................8

ARGUMENT .....................................................................................................9

I.    APPLYING THE PLCAA TO THIS LAWSUIT IS NOT "EXTRATERRITORIAL."............9

    A.   Applying the PLCAA to This Case Does Not Contravene the Presumption Against Extraterritoriality ...........................................10

        1.   This case involves a domestic application of the PLCAA....................10

        2.   Mexico's counterarguments fail.................................................13

        3.   Limiting what suits can be brought in U.S. court does not implicate the presumption against extraterritoriality .............................15

    B.   There Is No Reason to Carve This Suit From the PLCAA's Plain Text .................................................................................18

II.   THE PLCAA BARS THIS SUIT .................................................................24

    A.   A Claim Must Arise Under the Predicate Statute to Qualify for the Predicate Exception .....................................................25

    B.   Mexico Has Not Stated a Violation of Any Firearms Statute......................29

        1.   Aiding and Abetting .......................................................30

        2.   Machinegun Ban............................................................35

III.  MEXICO'S CLAIMS ARE MERITLESS........................................................38

    A.   Mexico Cannot Establish Proximate Cause ....................................39

    B.   The Defendants Owe No Legal Duty to Mexico ............................44

IV.  U.S. TORT LAW GOVERNS THIS CASE ....................................................46

CONCLUSION ................................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ........................................................................40

*Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
103 F. Supp. 2d 134 (N.D.N.Y. 2000) ...........................................20

*Bank of Am. Corp. v. City of Miami*,
581 U.S. 189 (2017) ........................................................................43

*Bushkin Assocs., Inc. v. Raytheon Co.*,
473 N.E.2d 662 (Mass. 1985) .................................................. 46, 48

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*,
295 F.3d 59 (1st Cir. 2002) ............................................................48

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
123 F. Supp. 2d 245 (D.N.J. 2000) ................................................41

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) (en banc) ..........................................36

*City of Chicago v. Beretta U.S.A. Corp.*,
821 N.E.2d 1099 (Ill. 2004)......................................................41, 42

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
863 F.3d 474 (6th Cir. 2017) .........................................................40

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
615 F.3d 496 (6th Cir. 2010) .........................................................42

*City of New York v. Beretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008) ............................................................4

*City of Philadelphia v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3d Cir. 2002) ........................................ 40, 42, 43, 44

*City of Philadelphia v. Beretta U.S.A., Corp.*,
126 F. Supp. 2d 882 (E.D. Pa. 2000) .............................................44

*Copithorne v. Framingham Union Hosp.*,
520 N.E.2d 139 (Mass. 1988) ........................................................40

*Cosme v. Whitin Mach. Works, Inc.*,
632 N.E.2d 832 (Mass. 1994) ........................................................46

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*CSX Transp., Inc. v. McBride,*
564 U.S. 685 (2011) ...................................................................29

*Delana v. CED Sales, Inc.,*
486 S.W.3d 316 (Mo. 2016).........................................................23

*Direct Sales Co. v. United States,*
319 U.S. 703 (1943) ............................................................. 32, 33

*Earsing v. Nelson,*
212 A.D.2d 66 (N.Y. App. Div. 1995) .........................................28

*Estados Unidos Mexicanos v. DeCoster,*
229 F.3d 332 (1st Cir. 2000)........................................................17

*Exxon Co., U.S.A. v. Sofec, Inc.,*
517 U.S. 830 (1996) ....................................................................40

*Ganim v. Smith & Wesson Corp.,*
780 A.2d 98 (Conn. 2001) .................................................... 42, 43

*Gidwani v. Wasserman,*
365 N.E.2d 827 (Mass. 1977) ......................................................40

*Gobeille v. Liberty Mut. Ins. Co.,*
577 U.S. 312 (2016) ....................................................................23

*Hardin v. ATF,*
No. 20-6380, 2023 WL 3065807 (6th Cir. Apr. 25, 2023)...........37

*Harris News Agency, Inc. v. Bowers,*
809 F.3d 411 (8th Cir. 2015) .......................................................31

*Hemi Grp., LLC v. City of New York,*
559 U.S. 1 (2010) ........................................................................40

*Holmes v. Sec. Inv. Prot. Corp.,*
503 U.S. 258 (1992) ............................................................. 39, 40

*Ileto v. Glock, Inc.,*
565 F.3d 1126 (9th Cir. 2009) .....................................................11

*In re Academy, Ltd.,*
625 S.W.3d 19 (Tex. 2021) ..........................................................12

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Jane Doe No. 1 v. Backpage.com, LLC,*
817 F.3d 12 (1st Cir. 2016) ............................................................43

*Jones v. Bock,*
549 U.S. 199 (2007) ....................................................................27

*Katz v. Pershing, LLC,*
672 F.3d 64 (1st Cir. 2012) ............................................................44

*Kemper v. Deutsche Bank AG,*
911 F.3d 383 (7th Cir. 2018) ..........................................................41

*Kiobel v. Royal Dutch Petroleum Co.,*
569 U.S. 108 (2013) ................................................................ 14, 15

*Kozoway v. Massey-Ferguson, Inc.,*
722 F. Supp. 641 (D. Colo. 1989) ....................................................47

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) ................................................................ 41, 43

*Luoni v. Berube,*
729 N.E.2d 1108 (Mass. 2000) ........................................................44

*McCloskey v. Mueller,*
446 F.3d 262 (1st Cir. 2006) ..........................................................44

*Mitchell v. Lone Star Ammunition, Inc.,*
913 F.2d 242 (5th Cir. 1990) ..........................................................46

*Monroe v. Medtronic, Inc.,*
511 F. Supp. 3d 26 (D. Mass. 2021) ..................................................46

*Nat'l Shooting Sports Found., Inc. v. Jones,*
716 F.3d 200 (D.C. Cir. 2013) ........................................................38

*Parsons v. Colt's Mfg. Co. LLC,*
No. 19-cv-01189, 2020 WL 1821306 (D. Nev. Apr. 10, 2020) ..................37

*Patchak v. Zinke,*
138 S. Ct. 897 (2018) ..................................................................20

*Penelas v. Arms Tech., Inc.,*
778 So. 2d 1042 (Fla. Dist. Ct. App. 2001) ........................................42

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) ....................................................... 41, 42

*Pevoski v. Pevoski*,
  358 N.E.2d 416 (Mass. 1976) ....................................................................46

*Pfizer, Inc. v. Gov't of India*,
  434 U.S. 308 (1978) ........................................................................... 17, 20

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
  579 U.S. 115 (2016) ..................................................................................23

*Ramos v. Wal-Mart Stores, Inc.*,
  202 F. Supp. 3d 457 (E.D. Pa. 2016) ........................................................27

*Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*,
  827 So. 2d 339 (Fla. Dist. Ct. App. 2002) .................................................45

*RJR Nabisco, Inc. v. Eur. Cmty.*,
  579 U.S. 325 (2016) ............................................................................*passim*

*Rodriguez v. Pan Am. Health Org.*,
  29 F.4th 706 (D.C. Cir. 2022) ..................................................................27

*Rosemond v. United States*,
  572 U.S. 65 (2014) ....................................................................................30

*Saharceski v. Marcure*,
  366 N.E.2d 1245 (Mass. 1977) .................................................................46

*SEIU Health & Welfare Fund v. Philip Morris Inc.*,
  249 F.3d 1068 (D.C. Cir. 2001) ........................................................... 42, 45

*Shew v. Malloy*,
  994 F. Supp. 2d 234 (D. Conn. 2014) .......................................................37

*Small v. United States*,
  544 U.S. 385 (2005) ........................................................................... 20, 21

*Smith & Wesson Corp. v. City of Gary*,
  875 N.E.2d 422 (Ind. Ct. App. 2007) .......................................................34

*Soto v. Bushmaster Firearms Int'l, LLC*,
  202 A.3d 262 (Conn. 2019) .......................................................................42

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Staples v. United States,*
511 U.S. 600 (1994) .................................................................... 36, 37

*State of São Paulo of Federative Republic of Braz. v. Am. Tobacco Co.,*
919 A.2d 1116 (Del. 2007) ................................................................45

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.,*
990 F.3d 31 (1st Cir. 2021) ........................................................ 42, 43

*Turkiye Halik Bankasi A. S. v. United States,*
143 S. Ct. 940 (2023) ........................................................................19

*United Nurses & Allied Pros. v. NLRB,*
975 F.3d 34 (1st Cir. 2020) ...............................................................37

*United States v. Apel,*
571 U.S. 359 (2014) ...........................................................................36

*United States v. Aponte-Suarez,*
905 F.2d 483 (1st Cir. 1990) ....................................................... 31, 32

*United States v. Bishop,*
926 F.3d 621 (10th Cir. 2019) ...........................................................35

*United States v. Boidi,*
568 F.3d 24 (1st Cir. 2009) ...............................................................33

*United States v. Falcone,*
109 F.2d 579 (2d Cir. 1940) ..............................................................31

*United States v. Ford,*
821 F.3d 63 (1st Cir. 2016) ...............................................................34

*United States v. George,*
886 F.3d 31 (1st Cir. 2018) ...............................................................39

*United States v. Marzzarella,*
614 F.3d 85 (3d Cir. 2010) ................................................................48

*United States v. Medina-Román,*
376 F.3d 1 (1st Cir. 2004) .................................................................30

*United States v. Nieves-Castaño,*
480 F.3d 597 (1st Cir. 2007)....................................................... 36, 37

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*United States v. Peoni,*
  100 F.2d 401 (2d Cir. 1938) ................................................................30

*United States v. Thompson/Ctr. Arms Co.,*
  504 U.S. 505 (1992) ...........................................................................37

*Watkins v. Omni Life Sci., Inc.,*
  692 F. Supp. 2d 170 (D. Mass 2010) ................................................46

*WesternGeco LLC v. ION Geophysical Corp.,*
  138 S. Ct. 2129 (2018) ..........................................................10, 13, 14

*Williams v. Beemiller, Inc.,*
  100 A.D.3d 143 (N.Y. App. Div. 2012) ...........................................34

**STATUTES**

15 U.S.C. § 7901 ...........................................................................*passim*

15 U.S.C. § 7902 ....................................................................4, 11, 23, 27

15 U.S.C. § 7903 ...........................................................................*passim*

18 U.S.C. § 922 ..............................................................................20, 35, 38

18 U.S.C. § 924 ......................................................................................34

18 U.S.C. § 3231 ....................................................................................19

26 U.S.C. § 5845 ....................................................................................35

28 U.S.C. § 1332 ....................................................................................16

D.C. Code § 7-2551.02 ..........................................................................28

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 90 (1971)...........................47

## INTRODUCTION

The government of Mexico has sued America's leading firearms companies, seeking to hold them liable for billions of dollars in damages stemming from violence inflicted by drug cartels in Mexico. Through this suit, Mexico seeks to use Mexican tort law to transform how firearms are regulated in the United States. The district court dismissed this case in full. This Court should affirm.

Mexico does not allege—nor could it—that any Defendant does any business with the drug cartels. Nor does Mexico allege that any Defendant does any business with anyone else it knows works with the cartels. Rather, Mexico's theory is that after Defendants legally sell their firearms to federally licensed wholesalers and/or retailers in the United States, third-party criminal actors illegally purchase and smuggle the firearms into Mexico, where drug cartels later use them to commit violent crimes, resulting in injuries and social costs that are ultimately born by the Mexican government.

Mexico's claims fail several times over. At the outset, they are barred by the Protection of Lawful Commerce in Arms Act (PLCAA), which prevents law-abiding firearms companies from being held liable for harms inflicted by third-party criminals. Tellingly, Mexico barely disputes that the PLCAA would bar this suit if it applied. Instead, Mexico chiefly argues that the PLCAA should not apply here due to the "presumption against extraterritoriality." The district court properly rejected that gambit. This case involves a suit in U.S. court against U.S. companies based on their U.S. operations. There is nothing "extraterritorial" about applying the PLCAA here.

The district court also properly held that Mexico's claims do not fit within any exception to the PLCAA. Mexico argues that its claims fit within the so-called "predicate" exception because Defendants have supposedly violated the federal criminal prohibitions against "aiding and abetting" criminal conduct and selling "machineguns." But as the district court recognized, that argument fails because there is no private right of action under those federal statutes. And in any event, the alleged "violations" rest on a clear misreading of the law. Defendants' sale of lawful firearms in the United States cannot be deemed a criminal act of "aiding and abetting" just because some downstream criminals use them to commit crimes abroad. Likewise, as both this Court and the Supreme Court have made clear, the ban on "machineguns" does not apply to the ordinary semi-automatic rifles Defendants sell.

Mexico's underlying tort claims fail for other reasons too. Defendants are not the proximate cause of any harms inflicted by drug cartels in Mexico—a defect fatal under both the PLCAA and basic tort principles. Likewise, Defendants do not owe Mexico any duty to alter how their firearms are manufactured and sold in the United States in order to prevent cartel violence in Mexico. In arguing to the contrary, Mexico cannot cite any case where any court has ever adopted its expansive view of tort law.

At bottom, this case arises out of a clash of national values. Mexico has made no secret that it strongly disapproves of U.S. firearms policy, and that this suit is an attempt to reshape that policy. But the proper avenue to pursue that agenda is through the political branches, not the federal courts. This Court should affirm the dismissal below.

## STATEMENT OF THE CASE

### A.    The Protection of Lawful Commerce in Arms Act

Congress passed the PLCAA to deal with a specific problem: Around the turn of the century, a growing number of individuals and governmental entities had started suing the U.S. firearms industry under novel tort theories, seeking to hold them liable for criminals and other third parties misusing their firearms. These suits progressed under different banners—such as public nuisance or negligent marketing—but shared a common objective. As Congress put it: "Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3).

The PLCAA was enacted to end these lawsuits. Congress acted for two reasons. First, there was widespread recognition that firearms companies were already subject to a legion of laws and regulations concerning the proper production, marketing, and sale of firearms. *See id.* § 7901(a)(4) (finding the industry is "heavily regulated" at all levels of government). Second, Congress determined that when a firearms company complied with these laws, it was unfair to hold them liable for what third parties later did with their products. "Businesses in the United States that are engaged in … the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms … are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products." *Id.* § 7901(a)(5).

3

This culminated in a basic deal at the heart of the PLCAA. If a firearms company complies with all state and federal firearm laws, no U.S. court would entertain a "cause[] of action" seeking to hold that company liable for what criminals did with its firearms. *Id.* § 7901(b)(1). Indeed, because Congress viewed such suits as threats to firearms companies and their ability to engage in interstate and foreign commerce, the PLCAA provides immunity from such suits, and Congress mandated that any covered claims pending on the Act's effective date "shall be immediately dismissed." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir. 2008); 15 U.S.C. § 7902(b). On the other hand, if a firearms company commits a knowing violation of a firearm statute that proximately causes harm to another—or commits some other enumerated unlawful act—then the PLCAA's protections may recede. 15 U.S.C. § 7903(5)(A).

## B.    Mexico's Lawsuit

Mexico is facing a scourge of violence at the hands of its drug cartels. But rather than take the steps necessary to stem that problem—improving border security, rooting out corruption, and adequately funding its police, for starters—Mexico has decided to file this lawsuit, laying the blame at the feet of eight U.S. firearms companies.

The upshot of the Complaint is simple enough: Defendants are liable for the financial harms Mexico has sustained due to cartel violence. Compl. ¶ 146. The path Mexico uses to get there is less so. The Complaint does not allege that Defendants themselves have engaged in or directly facilitated violence in Mexico. Nor does it allege that they ever sold firearms to any entity they knew was funneling firearms to Mexico

4

(or breaking any other law, for that matter). Rather, Mexico's theory is that after Defendants sell their firearms to independent federally licensed U.S. wholesalers, the firearms are *then* resold to independent federally licensed retailers, *then* acquired by criminal "straw purchasers," who *then* smuggle some of those firearms into Mexico, where they are *then* used by cartels to commit criminal violence, which *then* gives rise to derivative financial harms to the Mexican Government. The Defendants are liable, Mexico says, because they are aware of this chain of events, and have continued to sell their firearms regardless. *Id.* ¶ 117.[1]

In describing this, Mexico admits that a majority of the illegal firearms in that country are not produced or sold by the Defendants. *Id.* ¶ 435. Likewise, the Complaint acknowledges that a vast majority of U.S. firearms dealers are completely law-abiding, have nothing to do with the sale of firearms that end up in Mexico, and that those trafficked firearms come from only a "small percentage" of dealers. *Id.* ¶ 119. And this small percentage of dealers handle an even smaller fraction of the Defendants' products, with only about 2% of *all* firearms manufactured in the United States (whether produced by the Defendants or not) smuggled into Mexico. *Id.* ¶ 437.

---

[1] In its brief, Mexico states that the Complaint "alleges in detail that Defendants engage in *conduct in Mexico* when they aid and abet trafficking guns into Mexico." Br. 28. But as the court below recognized, the Complaint does not allege any instance of any Defendant taking any act in Mexico; it alleges only that Defendants make firearm sales within the United States and then, through a chain of unspecified events and over an extended period of time, independent criminals eventually take some of those firearms across the border where different criminals use them to commit crimes in Mexico.

For those firearms that are trafficked into Mexico, the Complaint details a number of "costs" that the Mexican Government has incurred as a result of violence perpetrated by cartels and other criminals, as well as "resources" it has devoted to address those issues. *Id.* ¶¶ 448-49. In particular, Mexico allegedly has had to increase spending on "health care, law enforcement and military and services, criminal justice administration, public assistance, and other social services and public programs." *Id.* ¶ 447. Mexico has also alleged certain broader economic losses, such as diminished property values and a depressed national workforce. *Id.* ¶ 448-49.

Based on these diffuse harms, the Complaint asserts a range of common law and statutory claims. (Mexico has since abandoned the latter.) As for the common-law claims, the Complaint raises simple negligence (Count One), public nuisance (Two), defective design (Three), negligence *per se* (Four), gross negligence (Five), unjust enrichment (Six), and punitive damages (Nine). *Id.* ¶¶ 506-60. Again, none of these claims alleges any Defendant made any sale to any person that it knew would commit a crime. Rather, the gravamen of all of Mexico's claims is that the Defendants—despite complying with the panoply of federal, state, and local firearms laws in the United States—failed to do *more* to prevent the cartels from harming the Mexican Government.

For this, Mexico seeks billions of dollars. *Id.* ¶ 560. It also seeks as injunctive relief a number of gun-control measures that Mexico would like to see adopted in this country, such as limits on "assault" weapons and greater background checks. *Id.* ¶ 245.

### C.    The District Court's Decision

The district court dismissed the Complaint in full. Add.44. First, Judge Saylor held that the PLCAA generally "bars exactly this type of action from being brought in federal and state courts." Add.20. He rejected Mexico's argument that applying the PLCAA here involves any "extraterritoriality," since the statute is focused on regulating "the types of cases that can be brought in United States courts against domestic gun manufacturers and distributors." Add.23-25.

As to Mexico's common-law claims, Judge Saylor held that they did not fit within any PLCAA exception. They do not satisfy the "predicate" exception—which allows claims alleging knowing violations of firearms statutes—because it is limited to claims arising under "statutes," not the common law. Add.27. Judge Saylor also held that the PLCAA's "design-defect" and "negligence *per se*" exceptions do not apply. Add.29-34.

As for Mexico's statutory claims under the Connecticut Unfair Trade Practices Act (CUTPA) and the Massachusetts Consumer Protection Act (MCPA), Judge Saylor did not reach whether they fit within the predicate exception, holding instead that they fail on the merits. Add.29.

On appeal, Mexico abandons (and therefore waives) its MCPA and CUTPA claims, and its argument that the PLCAA's "design defect" or "negligence per se" exceptions apply. Instead, it argues solely that the PLCAA does not apply due to the presumption against extraterritoriality, and that its tort claims fit within the predicate exception regardless.

## SUMMARY OF ARGUMENT

**I.**     Applying the PLCAA here does not involve an extraterritorial application of the statute. The test for extraterritoriality is whether the conduct relevant to the statutory "focus" occurred in the United States. The PLCAA's focus is on protecting the U.S. firearms industry by barring certain suits from being filed in U.S. courts. And here, all of the conduct relevant to that focus happened in the United States: This is a suit filed in U.S. court against U.S. companies based solely on their U.S. conduct. Applying the PLCAA to this U.S. lawsuit is not "extraterritorial" in any sense.

**II.**     This case squarely fits within the PLCAA's bar on "qualified civil liability actions," and Mexico cannot satisfy the predicate exception. The predicate exception is limited to *statutory* causes of action, but Mexico's remaining claims all arise under the common law. And regardless, Mexico has not properly pled any violation of a firearms statute. Both of Mexico's theories—that the Defendants have violated federal aiding-and-abetting laws, as well as the ban on "machineguns"—are clearly wrong. Lawfully selling firearms that are later used by third-party criminals does not make one a criminal accomplice. And semi-automatic rifles are not "machineguns" under federal law.

**III.**     Mexico's suit also fails for two further reasons. First, Defendants' lawful sale of firearms in the U.S. does not proximately cause harm to the Mexican government from cartel violence in Mexico—a point that is fatal under both the PLCAA and longstanding tort principles. Second, Defendants do not owe the Mexican government any legal duty to protect it from violence within its own borders.

**IV.** Mexico cannot evade U.S. tort limits (or the PLCAA) by asserting that its claims should be governed by Mexican substantive law. Under the Massachusetts choice-of-law rules that govern Mexico's chosen forum, U.S. tort law applies because the sovereign interests of the United States in regulating its firearms industry trump Mexico's interests in the same.

## ARGUMENT

### I.     APPLYING THE PLCAA TO THIS LAWSUIT IS NOT "EXTRATERRITORIAL."

Mexico is trying to bring a lawsuit that no state, local, or federal government agency could bring: a sprawling tort action against the U.S. firearms industry, premised on the misuse of firearms by third-party criminals. Since this is exactly the type of lawsuit that the PLCAA was enacted to prevent, Mexico's principal argument is that the PLCAA does not apply here at all. Instead, Mexico argues that the PLCAA's protections disappear when a plaintiff alleges a foreign injury resulting from third-party criminals smuggling American-made firearms over the border, where they are used by other criminals to commit crimes in foreign countries.

Mexico has the law upside-down. The presumption against extraterritoriality guards against courts projecting domestic law abroad. It does not strip away the legal protections that apply to U.S. companies for their U.S. operations based on the alleged misconduct of foreign actors. And it surely does not provide foreign plaintiffs privileged access to U.S. courts, by allowing suits that U.S. domestic plaintiffs cannot bring.

**A.      Applying the PLCAA to This Case Does Not Contravene the Presumption Against Extraterritoriality.**

Applying the PLCAA here does not involve an "extraterritorial" application of the statute. As the district court recognized, the PLCAA is focused on regulating what types of cases U.S. courts might hear, in service of protecting the U.S. firearms industry from lawsuits based on third-party criminals misusing firearms. Applying the Act to this lawsuit—one that is filed in U.S. court against U.S. companies seeking to impose liability for their U.S. sales and manufacturing activity—is a purely domestic application of the law. The American firearms industry does not lose its protection under the PLCAA just because criminals may smuggle firearms abroad and use them in foreign countries.

**1.      This case involves a domestic application of the PLCAA.**

To determine whether applying a statute would be extraterritorial, courts look to the law's "focus," asking "whether the conduct relevant to that focus occurred in United States territory." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018). If "the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application [of the statute] even if other conduct occurred abroad." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016). Courts determine the "focus" of a statute by looking to "the object of its solicitude," which turns on the "interests it seeks to protect or vindicate" and "the conduct it seeks to regulate." *WesternGeco*, 138 S. Ct. at 2137 (cleaned up). Here, both considerations point in the same direction.

*First*, as Judge Saylor recognized, the PLCAA "seeks to protect the interests of the United States firearms industry and the rights of gun owners." Add.24. The PLCAA was designed to shield the firearms industry from certain suits, on the ground those suits were costly and unfair. *Supra* at 3-4. By its terms, the PLCAA is animated by the view that "[b]usinesses in the United States" engaged in the lawful manufacturing and sale of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products." 15 U.S.C. § 7901(a)(5). The Act also safeguards individuals' Second Amendment rights against indirect infringement from suits seeking to cripple the U.S. firearms industry with crushing civil liability. *Id.* § 7901(b)(2). Nowhere is there any indication that Congress sought to protect anything besides the interests of the domestic firearms industry and its customers. *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136-37 (9th Cir. 2009) (detailing legislative history).

*Second*, the PLCAA protects the U.S. firearms industry by regulating the filing of covered lawsuits in U.S. courts. The PLCAA is explicit that it does not "create a[ny] public or private cause of action or remedy," and does not substantively regulate anything regarding the manufacture, sale, or use of firearms. 15 U.S.C. § 7903(5)(C). Rather, the Act exclusively regulates the filing of lawsuits. The operative text provides that "qualified civil liability action[s] may not be brought in any Federal or State court." *Id.* § 7902(a). And the Act requires courts to immediately dismiss such actions. *Id.* § 7902(a), (b). In short, to borrow from one section's title, the PLCAA is solely a "[p]rohibition on bringing" certain suits in U.S. courts. *Id.* § 7902.

11

The Act's findings confirm this focus. The PLCAA explains that it was enacted to specifically address a raft of "[l]awsuits" and "liability actions" filed against firearms companies for lawful sales and manufacturing activity. *Id.* § 7901(a)(3), (7), (8). And to that end, the PLCAA's first stated "purpose[]" is "[t]o prohibit [these sorts of] *causes of action* against" U.S. firearms companies. *Id.* § 7901(b)(1) (emphasis added).

Importantly, nothing in the PLCAA suggests that the Act cares about—or is focused on—whether the plaintiff or the source of law invoked is foreign or domestic. Rather, the PLCAA takes issue with a certain *type* of claim and shuts the courthouse doors to such claims, full stop. *See, e.g., In re Academy, Ltd.*, 625 S.W.3d 19, 35 n.19 (Tex. 2021) ("[T]he PLCAA tells the court when it is (and is not) available as a forum to decide certain disputes under any law."). The statute's animating concerns about the effects of "qualified civil liability actions" are implicated in equal measure when a claim is brought by a domestic or a foreign plaintiff, under domestic or foreign law, or when the injury occurs at home versus abroad. There is no reason to think Congress wanted the Act's protections for firearms companies to apply when a criminal misuses a firearm in New Mexico, but not when he brings it across the border and misuses it in Mexico.

Applying the PLCAA here—a suit filed in a U.S. court against U.S. defendants based on their U.S. operations—thus involves a valid, domestic application of the Act. The Act is focused on protecting the U.S. firearms industry by barring the filing of certain suits in U.S. courts, and all of the "conduct relevant to [that] focus occurred in the United States." *RJR Nabisco*, 579 U.S. at 337.

### 2.    Mexico's counterarguments fail.

Mexico's core claim is the PLCAA's focus is actually the "criminal or unlawful misuse" of firearms, and that applying the Act here is therefore extraterritorial because the cartels' misuse of firearms and the resulting injuries happened in Mexico. Br. 22.

That is wrong. As explained, the "focus" of a statute turns on the "interests it seeks to protect or vindicate" and "the conduct it seeks to regulate." *WesternGeco*, 138 S. Ct. at 2137 (cleaned up). But the PLCAA does not seek to protect or regulate anything about the criminal or unlawful misuse of firearms; it creates no new regulations, imposes no new duties, establishes no new criminal law, and forges no new causes of action. The one thing the PLCAA does—the only thing it does—is forbid U.S. courts from hearing certain lawsuits. It makes no difference *where* any firearm misuse or injury occurred; all that matters is whether someone is trying to file a suit in a U.S. court to hold a U.S. firearms company liable for that misconduct.

Mexico raises four points in support of its view of the PLCAA's focus. All fail. *First*, Mexico says that the decision below contradicts *WesternGeco LLC*, 138 S. Ct. at 2137. Br. 23. But as Judge Saylor recognized, the exact opposite is true. Add.23-24. *WesternGeco* concerned the Patent Act, which prohibits U.S. exports that infringe on U.S. patents. The Court held that the focus of the statute was on protecting U.S. patents against infringement, and thus it was not "extraterritorial" to apply the statute to infringing activity that occurred in the United States. 138 S. Ct. at 2137-38. Using the statute to recover foreign lost profits that resulted from domestic infringement did not

result in any extraterritoriality problem, because lost profits were not the statute's focus. *Id.* Indeed, the Court expressly rejected the suggestion of a "rule" that whenever a U.S. law is applied to a case involving foreign injuries, that application is "extraterritorial." *Id.* at 2138.

*Second*, Mexico relies on *RJR Nabisco* to claim that U.S. statutes presumptively do not apply when the plaintiff's injury occurs abroad. Br. 26-27. But the *WesternGeco* Court rightly rejected that reading. 138 S. Ct. at 2138. *RJR Nabisco* involved RICO, which creates a "private right of action" for persons "injured in [their] business or property." 579 U.S. at 346. The Court explained that RICO's private cause of action was *focused* on addressing the defined injury—*i.e.*, it "protected" business and property interests against injury. Accordingly, since injury was the statutory focus, the Court construed the statute to cover only "*domestic* injury to … business or property." *Id.*

This case is different in kind. The PLCAA does not create domestic liability for anything. It expressly does not create private rights of action or remedies. 15 U.S.C. § 7903(5)(C). And it is decidedly *not* focused on protecting plaintiffs from injuries or firearm misuse. Rather, the Act's singular focus is shielding U.S. companies from certain suits in U.S. courts. What matters is where the suit is filed, and where the defendant was operating. The location of any asserted injury is irrelevant.

*Third*, Mexico cites *Kiobel v. Royal Dutch Petroleum Co.* for the proposition that jurisdictional statutes should not be read to exclude foreign claims. Br. 28 n.12. But Mexico badly misreads that decision. In *Kiobel*, the Court held that the Alien Tort Statute

should not be read to provide a substantive cause of action based on conduct occurring abroad. 569 U.S. 108, 116-17 (2013). The Court did not create some free-floating presumption in favor of domestic jurisdiction for foreign claims. Nor did the Court hold that the presumption *against* applying U.S. law abroad somehow created a presumption in *favor* of opening U.S. courts to foreign actions. It held the very opposite, foreclosing a claim in U.S. courts based on foreign conduct. *Id.* at 123-24.

*Fourth*, Mexico contends that *RJR Nabisco* and *Kiobel*, would have come out differently under the decision below. Br. 21. But that rests on a caricatured reading of Judge Saylor's opinion. The district court did not say—as Mexico charges—that the focus of *every* statute is domestic because *all* statutes are applied in U.S. courts. Rather, it simply recognized that the PLCAA is focused on protecting U.S. companies in their U.S. operations by barring certain suits in U.S. courts. *RJR Nabisco* and *Kiobel* involved different statutes with different focuses, and naturally involved different analyses.

### 3. Limiting what suits can be brought in U.S. court does not implicate the presumption against extraterritoriality.

Mexico's argument also suffers from a more fundamental defect: The presumption against extraterritoriality is triggered only when U.S. law is projected abroad to *create* domestic legal liability for events that occur elsewhere. But the PLCAA exclusively *limits* what sorts of cases can be heard in U.S. courts. A forum-regulating statute like the PLCAA can only be applied domestically. Thus, as even some of

15

Mexico's *amici* accept, the Act does not implicate the presumption against extraterritoriality at all. *See* Amicus Br. for Transnat'l Litig. Professors at 15-16.

Like any sovereign, the United States regulates what claims its courts can hear—be it with Article III standing, jurisdiction-stripping statutes, or § 1332's amount-in-controversy requirement. But under Mexico's view, if its asserted damages fell below § 1332's $75,000 minimum—or if the Complaint flunked Article III—dismissing its suit would involve an *extraterritorial* application of U.S. law, because Mexico is a foreign plaintiff alleging foreign injury. That is obviously wrong. When a country *declines* to hear a foreign claim, it is not projecting its law abroad; it is *refusing* to have its courts resolve the dispute.

Mexico disagrees, arguing that there should be a clear statement rule before any statute may be read as closing U.S. courthouse doors to claims (i) arising under foreign law for injuries incurred abroad (Br. 26-30), or (ii) concerning a foreign sovereign's injuries in its own territory (Br. 30-32). But Mexico cannot cite any case to support either proposition, which would wreak havoc on all sorts of jurisdictional statutes.

Mexico's basic premise is there is no difference between "granting a claim under U.S. law for injury incurred abroad" and "precluding a claim under [foreign] law for injury incurred [abroad]." Br. 18. Not so. There is a clear difference between a country projecting its substantive law abroad to regulate foreign activity, versus applying its forum law evenhandedly at home to bar a certain category of cases, regardless of whether the plaintiff is foreign or domestic. The essence of sovereignty is the plenary

control over what occurs within one's borders. That sovereignty is impinged when one country seeks to regulate what takes place within another country's territory. *See, e.g.*, *RJR Nabisco*, 579 U.S. at 348. By contrast, no sovereign has a categorical right to use another country's courts. At most, norms of comity require that a foreign litigant be treated the *same* as "any other." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319 (1978); *see also Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 340 (1st Cir. 2000). And here, the PLCAA equally bars qualifying claims by all plaintiffs, foreign and domestic.

To be sure, as Mexico emphasizes, the presumption against extraterritoriality should be applied with "commonsense." Br. 19. But that hurts rather than helps Mexico's position here. On Mexico's reading of the PLCAA, there is nothing to prevent Russia from suing Defendants in federal court tomorrow under Russian tort law, seeking to hold the Defendants accountable for how their firearms have been used in Ukraine. Indeed, Mexico says, courts should *presume* that Congress drafted the PLCAA to preserve such claims because they arise overseas. And, the theory goes, liability would then turn solely on the contours of Russian tort law. That argument makes no sense, as there is no reason to presume that a statute barring lawsuits in U.S. courts should give way just because the plaintiff happens to be located abroad.

Of course, insofar as the PLCAA is concerned, Mexico remains free to press its own claims under its own law in its own courts; nothing in the PLCAA precludes that. But it cannot evade the PLCAA's protection against claims filed in U.S. courts against U.S. companies for their U.S. operations.

17

### B.    There Is No Reason to Carve This Suit From the PLCAA's Plain Text.

As a fallback, Mexico says that even if the PLCAA nominally applies, this Court should nonetheless construe its substantive terms to implicitly exempt this type of suit. Br. 34. This argument, though, is just derivative of Mexico's flawed extraterritoriality argument. And because applying the PLCAA to this action does not involve any extraterritorial application, there is no reason to artificially narrow the plain meaning of PLCAA's text. Mexico raises six specific points on this score, but all fail.

*First*, Mexico argues that the PLCAA should not be read to cover suits by foreign governments, nor actions arising under foreign law. Br. 34-38.[2] But that argument rests on holding that the Act means something other than what it says. Indeed, as Judge Saylor explained, there can be "no doubt" that Mexico's suit fits within the clear terms of the PLCAA. Add.25. The Act generally bars all "civil action[s]" brought by "any person" against a firearm "manufacturer or seller" that is "for damages … resulting from the criminal or unlawful misuse of [their] product by the person or a third party." 15 U.S.C. § 7903(5)(A). Here, Mexico is clearly a "person" under the Act, which defines the term to include "*any* governmental entity." *Id.* § 7903(3) (emphasis added). Likewise,

---

[2]    Mexico's suit does not arise under foreign law. *See* Part IV *infra*. But regardless, the PLCAA applies to all "civil actions," including those based on foreign law.

the Act applies to *all* "civil action[s]" filed in U.S. courts, regardless of whether they arise under foreign or domestic law. *Id.* § 7903(5)(A).[3]

Just this year, the Supreme Court squarely rejected the very approach that Mexico advocates here. In *Turkiye Halik Bankasi A. S. v. United States*, Turkey argued that 18 U.S.C. § 3231—which provides district courts with original jurisdiction over "all offenses against the laws of the United States"—"implicitly excludes foreign states" because it "refers generically to 'all' federal criminal offenses without specifically mentioning foreign states." 143 S. Ct. 940, 944-45 (2023). But the Court squarely rejected that argument, declined "to graft an atextual limitation" onto the law's plain text, and refused to "create a new clear-statement rule requiring Congress to 'clearly indicat[e] its intent' to include foreign states," *id.* at 945, where its "text as written [already] encompasses" such cases, *id.* That forecloses Mexico's argument here.

Accordingly, the Transnational Litigation Professors are mistaken to say that when Congress wants to include foreign governments in a law, it must refer to them expressly. Amicus Br. for Transnat'l Litig. Professors at 13-14. Although some federal laws do contain such an express reference, many—like the statute at issue in *Turkiye*—do not. Indeed, the Supreme Court has already held that foreign sovereigns can readily

_____

[3] Mexico's suit also unquestionably meets the other parts of the Act's definition of "qualified civil liability action." The Defendants are undisputedly all either a "manufacturer" (15 U.S.C. § 7903(2)) or a "seller" (*id.* § 7903(6)). *See* Compl. ¶¶ 31-41, 54. And all of Mexico's alleged injuries, *id.* ¶ 449, undisputedly "result[] from" the "criminal or unlawful misuse" of firearms by "third part[ies]," 15 U.S.C. § 7903(5)(A).

fit within the plain meaning of "person"—without more—such as in the Clayton Act. *Pfizer*, 434 U.S. at 313-18; *see also, e.g.*, *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 103 F. Supp. 2d 134, 149 (N.D.N.Y. 2000) (collecting cases holding same for RICO). And this case is even easier than *Pfizer*, because the PLCAA (unlike the Clayton Act) specifically defines "person" to include "*any* governmental entity." 15 U.S.C. § 7903(3) (emphasis added).

Relatedly, the Professors' suggestion of a clear-statement rule is at odds not only with precedent, but also with common sense and common practice. Nobody would think, for instance, that the jurisdiction-stripping statute from *Patchak v. Zinke*—which barred any "action" "relating to" a specific property in Michigan—would not cover claims by Canada. 138 S. Ct. 897, 904 (2018). That is so even though the statute never mentions foreign claims or foreign plaintiffs. The same holds here.

*Second*, Mexico tries to buttress its atextual approach with *Small v. United States*, 544 U.S. 385 (2005). Br. 35. But that case offers no help. There, the Court addressed § 922(g)(1)—which bars firearms possession by individuals who have been "convicted in any court" of certain crimes—and analyzed whether the phrase "any court" meant only U.S. courts, or foreign courts too. 544 U.S. at 387. *Small* thus involved whether to impose *domestic* legal consequences (losing the right to possess a firearm) for activity *abroad* (convictions by foreign courts). Given that dynamic, the Court reasoned that "any court" was best read as applying only to U.S. courts. *Id.* at 389. But the dynamic

20

here is fundamentally different. Nothing in the PLCAA involves creating domestic liability for foreign activity, and thus nothing implicates the reasoning of *Small*.

Moreover, unlike the statute in *Small*, narrowing the PLCAA's text as Mexico proposes here would produce incoherent results. For one, it makes no sense that the Act's protections for U.S. companies would be *eliminated* just because a criminal takes a firearm across the border and uses it to commit a crime abroad. Further, under Mexico's logic for why a foreign *government* cannot be a "person" under the Act, the same would be true for a foreign *citizen*. That would mean a foreign national shot in Chicago could sue, but a U.S. citizen could not. That would be absurd.

*Third*, Mexico argues that the PLCAA's terms do not contemplate foreign suits. Br. 36. Not so. To the extent relevant, the Act repeatedly *does* discuss foreign conduct. The Act expressly covers those "manufacturer[s]" and "seller[s]" engaged in "foreign commerce." 15 U.S.C. § 7903(2), (6). It further defines "seller" to include any licensed "dealer," which encompasses exporters. *Id.* § 7903(6)(B); *see also id.* § 7901(a)(4) (citing Arms Export Control Act). It defines the "qualified product[s]" as including firearms "shipped or transported in … foreign commerce." *Id.* § 7903(4). And its findings repeatedly reference entities with foreign operations, including in saying those companies engaged in "foreign commerce" through firearms "transported in … foreign commerce" should not "be liable for the harm caused by those who criminally or unlawfully misuse [their] firearm products." *Id.* § 7901(a)(5).

*Fourth*, Mexico contends that reading the PLCAA as reaching foreign suits would be problematic because it would force U.S. courts to interpret foreign criminal law to decide whether the Act applies. Br. 36-37. That concern rings hollow. To start, whether third-party misuse is "criminal or unlawful" will rarely be an issue, as Mexico's suit illustrates—there is no question the cartels' reign of terror violates Mexican law. More fundamental, Mexico's alternative—where the PLCAA does not apply to foreign claims, and where U.S. courts must interpret and enforce foreign tort regimes against U.S. companies—would create far worse foreign law complexities.

*Fifth*, Mexico says that "significant anomalies" would result from applying the PLCAA to suits like this one. Br. 37. In particular, Mexico emphasizes that the Act's predicate exception extends only to claims arising under knowing violations of certain "State or Federal statute[s]," but not under foreign laws. *Id.*; 15 U.S.C. § 7903(5)(A)(iii).

But this is a feature, not a bug. The entire purpose of the PLCAA is to protect domestic firearms companies that operate lawfully in the United States. 15 U.S.C. § 7901(b)(1). There is no reason to think Congress would have wanted the PLCAA's protection to fall away for alleged violations of *foreign* laws—laws that lack any domestic legitimacy and, more important, are unburdened by the limits of the Second Amendment. Indeed, exposing U.S. companies to these sorts of possibly hostile foreign laws would completely undermine the basic deal at the heart of the Act. *Supra* at 3-4.

*Sixth*, Mexico elsewhere pairs federalism principles and the presumption against preemption to support its atextual construction of the PLCAA. Br. 51-52. But this too

is mistaken. As the Supreme Court has stressed, courts should "not invoke any presumption against pre-emption" when interpreting a statute that "contains an express pre-emption clause." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). That applies in spades where the issue is not preemption of a state law claim, but (in Mexico's view) a foreign one, where the presumption against preemption does not apply at all. Regardless, preemption doctrines (even where they apply) instruct courts not to conjure preemption amidst ambiguity; they do not charge courts with whittling down plain text when a law specifically contemplates preemption. *E.g.*, *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 325 (2016).

Here, there is no question that the PLCAA specifically contemplates preemption. Again, Congress stated that it was enacting the law to stop "[l]awsuits" and "causes of action" against firearms companies seeking "relief for the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3), (b)(1). It provided that any such action "may not be brought in any Federal or State court," and it mandated the dismissal of any such actions pending at the time. *Id.* § 7902(a)-(b). Accordingly, this Court should "focus on the plain wording of the [PLCAA], which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico*, 579 U.S. at 125; *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 323 (Mo. 2016). And that is especially so, as noted at the start, given the PLCAA's unambiguous terms.

## II.    THE PLCAA BARS THIS SUIT.

There is an apparent reason Mexico spends almost all its brief trying to avoid the PLCAA: It is hard to come up with a suit more clearly barred by the Act. As noted, the PLCAA generally bars suits against U.S. firearms companies based on the criminal misuse of their firearms. And here, Mexico seeks to hold eight U.S. firearm companies liable for cartels unlawfully misusing their firearms. That is an archetypal PLCAA case.

Mexico's sparse attempt to confront the PLCAA is as flawed as its attempt to avoid the statute in the first place. On appeal, Mexico abandons most of its arguments below, instead relying on just one: That its suit qualifies for the Act's predicate exception, which allows claims alleging that a firearms company has "knowingly violated a State or Federal statute applicable to the sale or marketing of [firearms]," if "the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). Mexico argues that its common-law tort claims may proceed under this exception because the Defendants have supposedly violated two firearms statutes: aiding and abetting unlawful firearm trafficking by third-party criminals, and violating the federal ban on selling "machineguns."

Mexico's argument fails. First, as Judge Saylor held, the predicate exception allows only *statutory* causes of action, but Mexico has abandoned all of its statutory claims on appeal and now presses only common-law claims. And second, even if the predicate exception allowed common-law claims based on the violation of statutes that

have no private right of action, the Complaint does not adequately allege violations of the federal bans on "aiding and abetting" firearm trafficking or selling "machineguns."

Moreover, *even if* Mexico plausibly alleged that the Defendants violated a federal firearms law, its suit *still* could not proceed under the PLCAA. To satisfy the PLCAA's predicate exception, the statutory violation must be the "proximate cause of the harm for which relief is sought." *Id.* Mexico barely acknowledges this requirement, let alone tries to meet it. Part III.A *infra*.

### A. A Claim Must Arise Under the Predicate Statute to Qualify for the Predicate Exception.

As Judge Saylor recognized, the "predicate exception applies only to 'statutes,'" and thus cannot be used to assert "causes of action arising under common law." Add.27. The PLCAA's text and structure make this point clear. The predicate exception allows claims "in which" a U.S. firearms company knowingly violated a firearms "statute." 15 U.S.C. § 7903(5)(A)(iii). This makes clear that the statutory violation must be contained "in" the cause of action—i.e., it must be an element of the statutory claim.

If the predicate exception were read to allow common-law claims based on the violation of statutes that do not provide their own private right of action, then it would wholly subsume the separate exception for "negligence *per se*." *Id.* § 7903(5)(A)(ii). Under the PLCAA, a common-law negligence *per se* claim may be asserted based on a statutory violation if (i) the statute was "designed to protect against the type of accident the actor's conduct causes," and (ii) the victim was "within the class of persons the

statute is designed to protect." Add.32-33. But if the predicate exception were construed to allow *all* common-law claims based on *any* statutory violation, the negligence *per se* exception and its associated limits would be rendered meaningless.

This case illustrates the problem: Mexico is trying to use the predicate exception to assert common-law tort claims based on alleged statutory violations that cannot satisfy negligence *per se*. As Judge Saylor held, Mexico does not fall "within the class of persons" that any of the underlying statutes are "designed to protect." *Id.* And Mexico has not appealed that ruling. Thus, Mexico is attempting to use the predicate exception to circumvent the limits of the negligence *per se* exception. That is not sound statutory interpretation, especially given the PLCAA's express statement that its different exceptions "shall be construed so as not to be in conflict." 15 U.S.C. § 7903(5)(C). Of course, reading the predicate exception to render the negligence *per se* exception meaningless is to read them "to be in conflict."

Mexico's contrary reading is unpersuasive. In its view, whenever *any* defendant violates *any* predicate statute, the exception "permits *all* of the plaintiff's tort claims to proceed" in the same case, even if the claims bear no relation to the statutory violation. Br. 40 (emphasis added). That is so, Mexico says, because the exception does not just authorize particular claims, but allows any "action in which" a violation occurred. *Id.*

That is clearly wrong. On Mexico's reading, the predicate exception would allow claims to proceed based on the arbitrary happenstance of whether they are asserted in the same case where an unrelated statutory violation occurred. Indeed, if a single

defendant in the case committed a violation, then all of the *other* defendants in the same case would lose the PLCAA's protection. Such an absurd reading cannot be correct.

Judge Saylor's reading avoids that nonsensical result, and also fits best with the text. The PLCAA contains a general bar on certain "causes of action." 15 U.S.C. §§ 7901(b)(1), 7902(a). The Act then has a handful of exceptions for permissible "action[s]" that are carved from the general bar. Read in context, the predicate exception's reference to a permissible "action" thus refers to a specific *cause of action* tied to the statutory violation; it does not allow *all* claims in the entire lawsuit to proceed just because a single statutory violation occurred. *See Jones v. Bock*, 549 U.S. 199, 221 (2007) (explaining that "action" need not mean "every claim"); *see also Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 713 (D.C. Cir. 2022) (explaining that "action" may "serve as shorthand for a 'cause of action'"); *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 466 (E.D. Pa. 2016) (same).

Mexico's position also clashes with the predicate exception's requirement that "the" predicate statutory violation be a "proximate cause" of "the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). That close connection between the statutory claim and the injury asserted makes sense for claims arising under the statute at issue. But it makes no sense if Congress wanted to strip away all PLCAA protections in any lawsuit where any firearms company committed any predicate violation.

Mexico raises four other points on this score, but none supports its reading. *First*, Mexico offers a fallback argument that even if a predicate violation does not usher in

*all* other claims, it at least allows common-law claims based on the same allegedly illicit conduct. Br. 48. But this runs into the same problem of making the negligence *per se* exception superfluous, since plaintiffs could just use the predicate exception to press common-law claims based on statutory violations without regard to the express limits that negligence *per se* imposes. Mexico also points out that the negligence *per se* exception applies only to sellers, not manufacturers. Br. 49 n.24. But again, that type of deliberate limit should be respected, not obliterated.

*Second,* Mexico also stresses that the predicate exception must be read to include claims that do not arise under statutes, because many firearms statutes are not privately enforceable. Br. 49. But that does not follow. It is perfectly sensible to read the predicate exception, as Judge Saylor did, to allow claims only under statutes that a legislature has already decided should be privately enforceable. *See, e.g.*, D.C. Code § 7-2551.02 (providing private cause of action in tort in connection with "machine gun" or "assault weapon" bans). Mexico is similarly mistaken to suggest that the illustrative examples mentioned in the predicate exception have no private rights of action. Br. 49. The listed examples are not specific statutes, but instead describe *types* of statutes—such as those that prohibit illegally giving a firearm to someone who cannot lawfully possess one. 15 U.S.C. § 7903(5)(A)(iii). Some states do have statutes like that with private causes of action. *See, e.g.*, *Earsing v. Nelson*, 212 A.D.2d 66, 70-71 (N.Y. App. Div. 1995) (recognizing private right of action under state statute barring the sale of certain weapons to minors).

*Third*, Mexico argues that the predicate exception cannot be limited to claims arising under statutes, because then the PLCAA's "proximate cause" requirement would be superfluous, as "proximate cause would already be an element of a private statutory right of action." Br. 48. But Mexico cites nothing for its naked assertion that every statutory right of action necessarily includes a proximate cause requirement. *See, e.g.*, *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 688 (2011) (refusing to incorporate traditional common-law view of proximate cause into Federal Employers' Liability Act).

*Fourth*, Mexico emphasizes that a number of trial courts have read the predicate exceptions to allow common-law claims based on statutory violations. Br. 47 & n.23. But none of Mexico's examples are binding on this Court, and none grapple with the arguments above regarding the PLCAA's text and structure. Indeed, none of these cases acknowledge—let alone resolve—the tension between Mexico's reading of the predicate exception and the existence of the negligence *per se* exception.

In short, Judge Saylor was correct that the predicate exception is limited to claims arising under a predicate firearms statute. And since none of Mexico's claims arise under a predicate statute, the case should end there.

## B.    Mexico Has Not Stated a Violation of Any Firearms Statute.

Regardless, even if the predicate exception allowed common-law claims based on the violation of statutes with no private right of action, Mexico's claims still fail for an independent reason: Mexico does not state a valid claim that the Defendants violated

either of the two firearms statutes it raises—the federal criminal ban on aiding and abetting firearms trafficking, or the federal criminal ban on "machineguns."

### 1. Aiding and Abetting

Mexico alleges that Defendants are accomplices to unlawful firearms trafficking because they make sales to licensed wholesalers, who sell to licensed dealers, who sell to straw purchasers, whose firearms are unlawfully smuggled into Mexico. Br. 41. But its argument rests on a plainly incorrect view of accomplice liability.

Courts have long distinguished those who "actively participate" in a crime from those who do nothing more than "incidentally facilitate" it. *Rosemond v. United States*, 572 U.S. 65, 77 n.8 (2014). To become liable as an accomplice requires active participation. As Judge Learned Hand put it, the defendant must "associate himself with the [criminal] venture," "participate in it as in something that he wishes to bring about," and "seek by his action to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938); *see also United States v. Medina-Román*, 376 F.3d 1, 3 (1st Cir. 2004) (same).

Merely selling a product that someone later uses in a crime does not make the seller an accomplice. Indeed, a company selling lawful products does not violate federal law even if the company knows that some of its products may eventually be put to unlawful downstream use. For instance, Budweiser knows that some of its beer will be sold to minors or consumed by drunk drivers. But nobody would think that Budweiser

could be held liable—as an accomplice or otherwise—for those illegal acts, however predictable they may be.[4]

Here, Mexico's Complaint falls far short of stating a claim for accomplice liability. In essence, Mexico's theory boils down to this: In selling firearms to independent, federally licensed wholesalers in the United States, the Defendants have become accomplices to gun-trafficking because they are aware that some of their firearms are later sold to licensed dealers, then purchased by straw purchasers, then smuggled into Mexico by fourth- and fifth-party traffickers, and then ultimately used downstream by sixth- or seventh-party cartel members for criminal ends, causing injuries to victims that end up imposing costs on the Mexican government. *E.g.*, Compl. ¶¶ 244-50. Defendants are liable, according to Mexico, not because they have themselves violated any particular law designed to limit access to firearms, but rather because they have not gone far enough *beyond* what the law requires—namely, by refusing to adopt Mexico's favored gun-control policies. *See id.* ¶ 229; *see also* Amicus Br. Law Enf't Officers at 8-11 (contending that the Defendants passively "enable" a litany of independent bad actors).

---

[4] *See, e.g.*, *United States v. Aponte-Suarez*, 905 F.2d 483, 491 (1st Cir. 1990) (accomplice liability only for those who "took an active role" in the criminal venture, but not for those who were "indifferent" to it); *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir. 1940) (seller not an accomplice just because "he knows that others will make an unlawful use" of product; "he must in some sense promote their venture himself, make it his own, have a stake in its outcome"), *aff'd*, 311 U.S. 205 (1940); *Harris News Agency, Inc. v. Bowers*, 809 F.3d 411, 413 n.1 (8th Cir. 2015) (discussing the "affirmative participation required for aiding-and-abetting liability" of a firearms dealer).

Taken in the worst light of the Complaint's allegations, Defendants are portrayed as being indifferent toward what others do with their firearms, continuing certain lawful sales practices despite knowing criminals may capitalize on them. But even taking this inaccurate and unsupported allegation at face value, mere "indifferen[ce]" is a far cry from the sort of "active" efforts required for accomplice liability. *Aponte-Suarez*, 905 F.2d at 491.

In arguing otherwise, Mexico badly misreads *Direct Sales Co. v. United States*, 319 U.S. 703 (1943). There, a drug company was convicted of criminal conspiracy for knowingly selling vast amounts of morphine directly to a private doctor who resold it illegally. *Id.* at 705. Importantly, the company sold the doctor such a large quantity of narcotics that they could not possibly have been used for any lawful purpose. *Id.* Of course, that is not this case. Mexico acknowledges the vast majority of retailers are completely law-abiding (Compl. ¶ 119); only 2% of U.S. firearms are diverted to Mexico (*id.* ¶ 437); and nowhere does Mexico allege that any Defendant sold firearms to any party it knew was breaking the law. Nevertheless, Mexico takes *Direct Sales* for the proposition that manufacturers may become accomplices to downstream criminal activities so long as they know that a small percentage of their products will be used unlawfully, and that they continue to sell them anyway. Br. 43.

That is decidedly not the law. In *Direct Sales*, the Supreme Court did not radically depart from well-settled principles of accomplice liability. It instead simply rejected the argument that whenever someone engages in "legal sales," he "cannot, under any

32

circumstances, be found guilty of conspiracy with the buyer to further his illegal end." 319 U.S. at 708-09. And that makes good sense—providing a lawful input to an unlawful enterprise does not immunize someone from criminal liability (for instance, someone who knowingly buys gas for a getaway car). But at no point did the Court say that a seller could be on the hook for a buyer's unlawful acts purely from the "mere knowledge" that its products might be used unlawfully. *Id.* at 711. Indeed, it repeatedly *rejected* that proposition, explaining that there must be "more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern," and rather some "informed and interested cooperation, stimulation, [or] instigation." *Id.* at 713.

This Court, in an opinion authored by Judge Boudin, recognized all of this when discussing *Direct Sales*. There must be a "joint purpose" to establish joint liability, because it is "axiomatic that more is required than mere knowledge" on the part of the seller that a later-on buyer may use his products for unlawful ends. *United States v. Boidi*, 568 F.3d 24, 30 (1st Cir. 2009). And here, it bears emphasis that Mexico's Complaint does not even allege *that* much. The Complaint fails to identify *any* dealer to whom *any* Defendant directly sold *any* firearm knowing that the dealer would commit or facilitate a crime. Indeed, as the Complaint acknowledges, the manufacturer-defendants do not sell to dealers at all. Compl. ¶ 378. Mexico instead relies exclusively on the high-level allegation that a fraction of the Defendants' firearms—the vast majority of which are lawfully sold and lawfully used—will go on to "supply" the cartels, and the Defendants are generally aware of that fact. *Id.* ¶ 50.

33

Mexico's other cited cases do not move the needle. Br. 41-42. Mexico invokes two state intermediate appellate court decisions—but neither offers any actual analysis of accomplice liability and neither is on point. Unlike here, the plaintiffs in *Williams v. Beemiller, Inc.* alleged a manufacturer and distributor sold firearms to a *specific* licensee they knew was engaged in unlawful sales. 100 A.D.3d 143, 149-50 (N.Y. App. Div. 2012). And in *Smith & Wesson Corp. v. City of Gary*, the court did not discuss federal accomplice liability at all, instead stating in a single sentence the complaint alleged (under a notice pleading standard) that a manufacturer may be an accomplice under state law. 875 N.E.2d 422, 432-33 (Ind. Ct. App. 2007). This Court's decision in *United States v. Ford*, 821 F.3d 63 (1st Cir. 2016), is even further afield. There, this Court *vacated* an aiding-and-abetting conviction on the ground that the trial court's "reason to know" standard set the bar too low for scienter. *Id.* at 73-75. And unsurprisingly, none of the out-of-circuit cases Mexico relegates to a footnote (Br. 47 n.23) better help its unprecedented position.

Finally, Mexico's theory of accomplice liability would eviscerate the PLCAA's first exception (15 U.S.C. § 7903(5)(A)(i)), which applies to transferors who are convicted of violating 18 U.S.C. § 924(h) by giving someone a firearm "knowing or having reasonable cause to believe that [it] will be used to commit a felony." On Mexico's theory, a plaintiff need not show a conviction or that any Defendant knew or had reason to believe it was giving a firearm to someone who would use it unlawfully. Rather, for Mexico, it is enough to show that a Defendant was simply aware its product

may eventually be unlawfully used by someone downstream. That sweeping theory cannot square with either the PLCAA's first exception, or the traditional principles of aiding-and-abetting liability that it is based on.

Once more, Mexico alleges that in lawfully manufacturing and selling firearms in the United States, the Defendants have become accomplices to international firearms-trafficking operations. Settled precedent confirms what common sense would compel: That is baseless. America's law-abiding firearms companies that manufacture and sell lawful firearms to licensed wholesalers and licensed dealers in the United States are not somehow criminal accomplices to international drug cartels.

### 2.    Machinegun Ban

Even less plausible is Mexico's assertion that the country's largest firearms companies have for decades been openly violating the federal ban on "machinegun[s]," 18 U.S.C. § 922(b)(4), while federal law-enforcement authorities have done nothing. Br. 44-45. That claim is unbelievable on its face, and it has no basis in law.

Under federal law, "machinegun[s]" are firearms that "shoot[], [are] designed to shoot, or can be readily restored to shoot" as fully automatic. 26 U.S.C. § 5845(b). But a semi-automatic firearm—which fires only one shot with each pull of the trigger—does not and is not designed to shoot as fully automatic. *Accord United States v. Bishop*, 926 F.3d 621, 624-25 (10th Cir. 2019). And a firearm cannot be "restored" into a machinegun unless it previously functioned as one (which is not alleged here).

For these reasons, the Supreme Court has already held that "readily convertible semiautomatics" are a "class" of firearms that "bears no relation to the definition[] [of a machinegun]." *Staples v. United States*, 511 U.S. 600, 612 n.6 (1994). This Court has held the same, recognizing that a "commercial semi-automatic AK-47" does not meet the federal definition of a machinegun because it "cannot be made into an automatic weapon without some modification or alteration." *United States v. Nieves-Castaño*, 480 F.3d 597, 600 (1st Cir. 2007). Simply put, a semi-automatic rifle does not become a "machinegun" just because it "may be converted, either by internal modification or, in some cases, simply by wear and tear, into [one]." *Staples*, 511 U.S. at 612-613 & n.6, 615; *see also, e.g.*, *Cargill v. Garland*, 57 F.4th 447, 452 (5th Cir. 2023) (en banc) (holding that "[s]emi-automatic rifles like the AR-15 are not machineguns").

Mexico engages with none of this. It does not even cite *Staples* or *Nieves-Castaño*. Rather, Mexico relies principally on an earlier 1982 administrative ruling from the Bureau of Alcohol, Tobacco, Firearms and Explosives for the proposition that semi-automatic firearms may meet the definition of machineguns if they "can easily be modified to fire automatically." Br. 45. But a 1980s-era ATF administrative ruling—which has never formed the basis of any enforcement action by the United States against any maker of AR and AK-type semi-automatic rifles—cannot overcome binding precedent. And even on its own terms, an agency's interpretation of a criminal statute is not entitled to any deference. *United States v. Apel*, 571 U.S. 359, 369 (2014).

The cases Mexico does cite provide no help. One is an unpublished California superior court minute order that provides no meaningful analysis at all. JA226-27. And in the one federal case Mexico does cite (Br. 45), *Parsons v. Colt's Manufacturing Co. LLC*, the district court cast aside the *Staples* Court's definition of machineguns as "dicta." No. 19-cv-01189, 2020 WL 1821306, at *5 (D. Nev. Apr. 10, 2020). Obviously, that says nothing about this Court's decision in *Nieves-Castaño*. And it also does not justify the court's decision to simply ignore what *Staples* said. *United Nurses & Allied Pros. v. NLRB*, 975 F.3d 34, 40 (1st Cir. 2020) ("We are bound by the Supreme Court's 'considered dicta.'"). But in all events, *Parsons* is wrong. *Staples'* analysis was not dicta, because it was necessary to the Court's *mens rea* holding—that the knowing possession of a "readily convertible semiautomatic[]" does not establish the knowing possession of a "machinegun." 511 U.S. at 612 n.6.

At minimum, the rule of lenity compels adopting *Staples'* interpretation. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 (1992) (federal courts should "apply[] lenity in interpreting a criminal statute invoked in a civil action"); *see also Hardin v. ATF*, No. 20-6380, 2023 WL 3065807, at *5 (6th Cir. Apr. 25, 2023). Given that the federal machinegun ban extends to simply possessing such a weapon, Mexico's understanding of a "machinegun" would make immediate federal criminals out of the "[m]illions of Americans" who currently own semiautomatic AR-type rifles for lawful purposes, such as "hunting and target shooting." *Shew v. Malloy*, 994 F. Supp. 2d 234, 245 (D. Conn. 2014), *aff'd in part, rev'd in part on other grounds*, 804 F.3d 242 (2d Cir. 2015).

Indeed, if AR- and AK-type semi-automatic rifles were already illegal "machineguns," that would have made the now-expired federal ban on "assault weapons" pointless. *Compare* 18 U.S.C. § 922(v) (1994) (criminalizing manufacture and transfer of semiautomatic "assault weapon[s]"), *with* 18 U.S.C. § 922(o) (1986) (criminalizing civilian ownership of newly manufactured "machinegun[s]"). It would also make nonsensical the current debate over whether to *reinstate* an "assault weapon" ban. Indeed, even the ATF has recognized the distinction between semi-automatic rifles and "machineguns," by imposing unique reporting requirements on lawful sales of the former. *See, e.g.*, *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200 (D.C. Cir. 2013). In short, all three branches of the federal government have recognized the difference between prohibited "machineguns" and AR-type rifles. This Court should too.

## III. MEXICO'S CLAIMS ARE MERITLESS.

Even apart from the foregoing defects, Mexico's remaining tort claims suffer from two additional fatal defects. First, Mexico cannot establish proximate cause, which is required by both the PLCAA and established tort law. Its Complaint is premised on a Rube Goldberg theory of causation, where Mexico relies on eight separate steps in order to connect the Defendants' alleged actions to Mexico's alleged injuries. And second, the Defendants do not owe any legal duty to Mexico to protect that country from illicit violence committed by criminals within its own borders.[5]

---

[5] Proximate cause and duty were both raised before the district court, but Judge Saylor did not reach them because he dismissed on other grounds. Add.34 n.13.

### A.     Mexico Cannot Establish Proximate Cause.

As a matter of both the PLCAA and tort law, each of Mexico's claims requires proximate cause. As noted, the PLCAA's predicate exception imposes a federal proximate-cause requirement. 15 U.S.C. § 7903(5)(A)(iii). Independently, as the Complaint concedes, proximate cause is an element of each tort claim pressed here. *See* Compl. ¶¶ 509, 519, 522, 524, 532, 548, 556, 559.

Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). A causal chain that is "too remote," "purely contingent," or "indirec[t]" is not enough. *Id.* at 271, 269. Here, proximate cause is lacking for at least four independent reasons.

*First*, Mexico's chain of causation is far too attenuated. The "general tendency of the law" has long been not to stretch proximate causation "beyond [its] first step." *Id.* at 271. But here, the Complaint relies on *eight* separate steps to connect Defendants' conduct with the harms allegedly suffered by the Mexican government.

1. The Defendants sell firearms to independent federally licensed wholesale distributors.

2. Those distributors then sell those firearms to separate independent federally licensed retail dealers.

3. A subset of those retail dealers then sell those firearms to non-licensed buyers with illegal intentions.

---

Nevertheless, this Court remains free to affirm the judgment below on either basis. *See United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018). Defendants also do not waive any other arguments they pressed below, and expressly preserve them now—including those as to personal jurisdiction and public nuisance—in the event of any remand.

4. Those buyers then illegally sell some of those firearms to smugglers, or themselves smuggle the firearms across the Mexican border.

5. Cartel members in Mexico then buy those firearms.

6. Cartel members then use those firearms in violent attacks in Mexico.

7. Those attacks injure people and property in Mexico.

8. The Mexican Government suffers some derivative financial harm from those injuries.

Simply put, "[b]ecause [Mexico's] theory of causation requires [the Court] to move well beyond the first step" in the causal chain, it "cannot meet [proximate cause's] direct relationship requirement."[6]

*Second*, the causal chain is not only attenuated, but is also broken by multiple intervening criminal acts. In general, intervening volitional acts are superseding causes that eliminate proximate cause. *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). And in particular, an "intervening criminal act of a third party" is *the* textbook intervening act, *Copithorne v. Framingham Union Hosp.*, 520 N.E.2d 139, 141 (Mass. 1988), with the rare exception being when a defendant itself *directly* exposes a plaintiff to the risk of immediate criminal danger, *see, e.g.*, *Gidwani v. Wasserman*, 365 N.E.2d 827, 831 (Mass. 1977) (landlord disabling the burglar alarms).

---

[6] *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010); *see also id.* at 9 (rejecting theory premised on six steps); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-59 (2006) (two steps); *Holmes*, 503 U.S. at 262-63 (four); *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422-26 (3d Cir. 2002) (rejecting similar firearms suit); *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (Sutton, J.) (applying same principles to public nuisance suit by city).

Here, separate and apart from the *other* intervening acts that make up Mexico's chain of causation, the Complaint depends upon at least *four* independent, volitional criminal acts: (i) straw purchasers buying the Defendants' firearms in the United States; (ii) smuggling them into Mexico; (iii) selling them to the cartels; and (iv) the cartels then criminally using them in Mexico. That is too much for any fair notion of proximate cause to bear. *See, e.g.*, *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018).

Indeed, in similar suits, courts have repeatedly found proximate cause lacking. This because the "highly regulated" act of manufacturing and selling firearms is simply too "far removed from the downstream, unlawful use of handguns" by criminals—acts that are entirely "out of [the companies'] control." *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 93 (N.Y. App. Div. 2003); *see also, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1136-37 (Ill. 2004) (similar); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 265 (D.N.J. 2000) (similar). And here, it bears emphasis that the fact pattern is even *more* attenuated than in the cases just noted—unlike there, where firearms made by U.S. companies were misused domestically against U.S. citizens, causation turns here on an even longer, international chain of unlawful activity. No case has *ever* found proximate cause on facts like these.

*Third*, Mexico's alleged harms are wholly derivative of injuries suffered by others—i.e., the direct victims of cartel violence. Proximate cause "generally bars suits for alleged harm … [when] the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

41

572 U.S. 118, 133 (2014); *see also, e.g.*, *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35-37 (1st Cir. 2021). Courts have thus rebuffed attempts by U.S. cities to sue over derivative financial harms. *See, e.g.*, *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 504-06 (6th Cir. 2010). So too foreign governments. *See, e.g.*, *SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001).

Most relevant, courts have regularly dismissed tort suits by domestic government entities against firearms companies for derivative injuries caused by downstream criminals.[7] For example, in *Ganim v. Smith & Wesson Corp.*, a city sued firearm companies for negligently making and selling firearms, allegedly leading to violence that caused "substantial costs" to the city. 780 A.2d 98, 113-15 (Conn. 2001). The Connecticut Supreme Court dismissed the case, because the harms were entirely "derivative of the injuries of others" and thus insufficient "as a matter of law." *Id.* at 129-30, 122; *see also Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 291 (Conn. 2019) (reaffirming that government entities cannot bring claims based on derivative harms to citizens); Add.29 n.9 (recognizing same). There is no reason a foreign government should succeed where domestic governments have failed. Mexico's derivative harms, however costly, cannot satisfy proximate cause.

---

[7] *See, e.g.*, *City of Philadelphia*, 277 F.3d at 424; *City of Chicago*, 821 N.E.2d at 1136; *Spitzer*, 309 A.D.2d at 102-03; *Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042, 1045 (Fla. Dist. Ct. App. 2001).

*Fourth*, apportioning damages and liability would be unworkable. This Court has held that proximate cause takes stock of two practical factors: one, whether it is feasible to "ascertain the amount of … damages attributable to" each defendant; and two, the "administrability" of apportioning damages without "multiple recoveries." *Sterling Suffolk Racecourse*, 990 F.3d at 36. Here, both of these factors foreclose proximate cause. First off, looking at the Complaint's parade of bad actors—from U.S. firearms makers to line-level cartel members—there is no sound way to apportion fault. *See, e.g.*, *City of Philadelphia*, 277 F.3d at 426. Especially so given the Complaint admits a majority of illegal firearms in Mexico are not the Defendants'. Compl. ¶ 435. And related, it would be impossible to avoid multiple recoveries, given how Mexico's indirect injuries are bound up part-and-parcel with its citizens' direct ones. *See, e.g.*, *Ganim*, 780 A.2d at 126.

Mexico responds by collapsing proximate cause into foreseeability, arguing that liability can attach for any harm that was not unforeseeable. ECF 111 at 33-34. But it is black-letter law that proximate cause requires not just foreseeability, but also a direct connection between the defendant's conduct and the plaintiff's injury. *See, e.g.*, *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 202 (2017) ("Foreseeability alone does not ensure the close connection that proximate cause requires."). Indeed, the purpose of proximate cause is to ensure that tort liability does not "encompass every conceivable harm that can be traced to alleged wrongdoing." *Lexmark*, 572 U.S. at 132.

When a complaint "fails [to] plausibly … allege a causal chain sufficient to ground an entitlement to relief," it should be dismissed. *Jane Doe No. 1 v. Backpage.com,*

*LLC*, 817 F.3d 12, 24 (1st Cir. 2016). This case presents the quintessential example of such a lawsuit. If the harms in this case are not too attenuated, none ever will be.

### B.    The Defendants Owe No Legal Duty to Mexico.

Mexico's tort claims fail for another basic reason: The Defendants do not owe a duty to Mexico to shield it from criminal violence committed within its own borders.

In tort, duty encompasses the "sum total" of "considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Luoni v. Berube*, 729 N.E.2d 1108, 1113 (Mass. 2000). "[A]s a general matter, there is no duty to control the conduct of a third person as to prevent him from causing physical harm to another." *McCloskey v. Mueller*, 446 F.3d 262, 267 (1st Cir. 2006) (cleaned up). Accordingly, courts have repeatedly held that "gun manufacturers are under no [general] duty to protect [U.S.] citizens from the deliberate and unlawful use of their products." *City of Philadelphia*, 277 F.3d at 425 (collecting cases). And the decision of whether to craft a new rule imposing greater duties on the firearms industry is one for the legislature. *See City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 902 (E.D. Pa. 2000).

Contrary to these cases, Mexico argues Defendants have a duty to the Mexican government to protect it from harms resulting from their products being misused there. That is unprecedented—Mexico cannot cite any case that has ever found such a duty to a foreign sovereign. That is dispositive, since federal courts in diversity may not adopt novel theories to "expand[] state law," as they are "charged with ascertaining state law, not with reshaping it." *Katz v. Pershing, LLC*, 672 F.3d 64, 73-74 (1st Cir. 2012).

Mexico's position is not just without precedent; it is in the teeth of it. Courts have repeatedly rejected similar claims brought by foreign governments—in particular, claims against U.S. tobacco companies for harms stemming from their citizens' tobacco use. Even when those companies have sold "their products to citizens of the Foreign Governments who later bec[a]me injured" (which is not the case here), there is "[n]o basis" for discerning any "duty running directly to the Foreign Governments" *themselves*, "separate and apart from any duty owed [by the companies] to [those] citizens." *State of São Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1126 (Del. 2007); *see also SEIU Health & Welfare Fund*, 249 F.3d at 1074 (explaining how countries' claims failed under traditional tort principles); *Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002) (similar). The question of whether to create a freestanding duty on the part of a domestic company to a foreign sovereign is freighted with "complex and intricate" policy questions that are "better addressed by [a] legislature[], not by courts applying common law principles." *State of São Paulo*, 919 A.2d at 1126 Even more so here, where subjecting the firearms industry to sweeping foreign liability would raise serious Second Amendment concerns.

All told, the history of firearms law in this country is a history of laws continually calibrated to protect Americans' constitutional rights while also protecting people from a potentially dangerous product. This Court should not allow that gradual evolution to be upended by a novel lawsuit filed by a foreign power. It should reject Mexico's attempt to commandeer U.S. firearms policy via an unprecedented expansion of tort.

## IV.    U.S. Tort Law Governs This Case.

To evade basic tort requirements like duty and proximate cause (as well as the PLCAA), Mexico argues its claims should be governed by Mexican law. Not so.

Mexico agrees that Massachusetts's choice-of-law rules govern. Br. 32. And under those rules, the law of the jurisdiction with the most "significant relationship to the underlying cause of action" applies. *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 33 (D. Mass. 2021). Massachusetts is not a *lex loci* state; it does not just apply the law of the place of injury. *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985).

Here, the United States has a far greater sovereign interest than Mexico does in regulating how firearms are manufactured and sold in America. Most importantly, the United States has an overarching "interest" in "regulating the conduct of businesses operating under its laws," which "trumps any interest" that a foreign state may have in regulating the downstream effects of a domestic company's goods. *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 175 (D. Mass 2010). Indeed, a jurisdiction's interest in applying its own law is "particularly strong" when the "product in question [is] manufactured and placed in the stream of commerce" within its borders. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 250 (5th Cir. 1990); *see also Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 835 (Mass. 1994) (applying Massachusetts law to claim brought against Massachusetts company by Connecticut individual injured in Connecticut); *Saharceski v. Marcure*, 366 N.E.2d 1245, 1249 (Mass. 1977) (same for out-of-state car crash); *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976) (same).

Courts have also recognized that "[t]he United States has a legitimate interest in assuring that domestic law is applied when a foreign plaintiff claiming to have been injured by an American corporation chooses a court in this country in seeking redress." *Kozoway v. Massey-Ferguson, Inc.*, 722 F. Supp. 641, 644 (D. Colo. 1989). This promotes "uniformity and predictability." *Id.* But the alternative—where U.S. corporations are subject to the "law[s] of other nations"—would severely hamper the country's ability to "control and protect their domestic corporations." *Id.*

There is also no doubt that the United States—rather than Mexico—supplies the better rule of law here. This case is about liability for manufacturing and selling firearms in the civilian market. But Mexico outlaws virtually all private firearm sales, and thus has no salient legal framework for determining liability for companies that manufacture and sell firearms for private use. *See* Compl. ¶ 4. By contrast, the American legal system has a highly developed set of rules—filtered through the lens of the Second Amendment—for determining when the manufacturing and sale of firearms can give rise to civil liability based on third-party criminal conduct.

Notions of international comity confirm that American law governs. It is a choice-of-law maxim that "[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." Restatement (Second) of Conflict of Laws § 90 (1971). And here, applying Mexican tort law would violate the strong public policy of the United States twice over.

First, subjecting the firearms industry to the tort law of Mexico, which virtually bans firearms sales, would conflict with the Second Amendment's protection of "the commercial sale of firearms." *See United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). Second, Mexican tort law purportedly jettisons proximate cause, allowing liability as long as an injury is not "unforeseeable." ECF 111 at 33-34. If true, that too would threaten U.S. constitutional values, since allowing unbounded liability for "very remote" events violates core due process protections in American courts. *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 295 F.3d 59, 65 (1st Cir. 2002); *see also* 15 U.S.C. § 7901(a)(7) (noting import of traditional proximate cause principles).

Against all of this, Mexico offers next to nothing, asserting in a couple sentences that Mexican law should apply because the injuries at issue occurred in Mexico. Br. 32. But the location of the injury is not dispositive under Massachusetts law; the State has clearly "reject[ed] the traditional *lex loci* approach." *Bushkin*, 473 N.E.2d at 668-69.

In short, Mexico is seeking to use its tort law to regulate the American firearms industry. If that gambit is allowed, there is nothing stopping other countries from doing the same—thus placing American firearms companies under the multifarious yoke of the world's various tort regimes. The United States has a determinative interest in not having its own laws give way to that perilous legal landscape. And Massachusetts' choice-of-law rules account for that overriding interest. The laws of the United States— both federal law and the law of the states where Defendants operate—govern here.

## CONCLUSION

For these reasons, this Court should affirm the judgment below.

Dated:  May 11, 2023

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Anthony J. Dick
Harry S. Graver
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
(202) 879-3939
njfrancisco@jonesday.com

Andrew E. Lelling
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
(617) 960-3939

*Counsel for Defendant-Appellee Smith & Wesson Brands Inc.*

James M. Campbell
CAMPBELL CONROY & O'NEIL, P.C.
1 Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com

James W. Porter, II
PORTER & HASSINGER, P.C.
880 Montclair Road, Suite 175
Birmingham, AL 35213
(205) 322-1744

*Counsel for Defendant-Appellee*
*Barrett Firearms Manufacturing, Inc.*

Mark D. Sheridan
SQUIRE PATTON BOGGS (US) LLP
382 Springfield Avenue, Suite 300
Summit, NJ 07901
(973) 848-5600

*Counsel for Defendant-Appellee*
*Beretta U.S.A. Corp.*

Jonathan I. Handler
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston MA 02110
(617) 345 4734
jihandler@daypitney.com

James Vogts
Andrew A. Lothson
SWANSON, MARTIN & BELL LLP
330 N. Wabash Suite 3300
Chicago, IL 60611
(312) 222-8517

*Counsel for Defendant-Appellee*
*Sturm, Ruger & Co., Inc.*

Patricia A. Hartnett
Peter M. Durney
SMITH DUGGAN CORNELL &
GOLLUB
88 Broad Street, Sixth Floor
Boston, MA 02110
(617) 482-8100
pdurney@smithduggan.com

Christopher Renzulli
Jeffrey Malsch
RENZULLI LAW FIRM LLC
One North Broadway, Suite 1005
White Plains, NY 10601
(914) 285-0700

*Counsel for Defendant-Appellee*
*Glock, Inc.*

John G. O'Neill
SUGARMAN, ROGERS,
BARSHAK & COHEN, P.C.
101 Merrimac Street, Suite 900
Boston, MA 02114
(617) 227-3030
oneill@sugarmanrogers.com

Michael L. Rice
Katie J. Colopy
HARRISON LAW LLC
141 West Jackson Boulevard, Suite 2055
Chicago, IL 60604
(312) 638-8776

*Counsel for Defendant-Appellee*
*Colt's Manufacturing Company LLC*

Nora R. Adukonis
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
(781) 309-1521
adukonis@litchfieldcavo.com

S. Jan Hueber
　*(Admission Application Pending)*
LITCHFIELD CAVO LLP
100 Throckmorton Street Suite 500
Fort Worth, Texas 76102
(817) 945-8025

*Counsel for Defendant-Appellee*
*Witmer Public Safety Group, Inc.*

Joseph G. Yannetti
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7585
jyannetti@morrisonmahoney.com

Anthony M. Pisciotti
Danny C. Lallis
Ryan L. Erdreich
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
(973) 245-8100

*Counsel for Defendant-Appellee*
*Century International Arms, Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the length limitations of Fed. R. App. P. 32(a)(7). The brief contains 12,991 words, excluding the items exempted by Fed. R. App. P. 32(f).

2.      This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). It was prepared using Microsoft Office Word 2016 in 14-point, proportionally spaced Garamond font.


Dated:  May 11, 2023                    */s/ Noel J. Francisco*
                                        Noel J. Francisco
                                        *Counsel for Defendant-Appellee*
                                        *Smith & Wesson Brands Inc.*

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2023, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system. Counsel for the United States are registered CM/ECF users and will be served by the CM/ECF system.


Dated: May 11, 2023                    _/s/ Noel J. Francisco_
                                        Noel J. Francisco
                                        *Counsel for Defendant-Appellee*
                                        *Smith & Wesson Brands Inc.*