No. 22-1823

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

————————————

ESTADOS UNIDOS MEXICANOS,

*Plaintiff-Appellant*,

v.

SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS
MANUFACTURING, INC.; BERETTA U.S.A. CORP.; BERETTA HOLDING
S.P.A.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC; GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,

*Defendants-Appellees*.

————————————

On Appeal from the United States District Court
for the District of Massachusetts (Saylor, C.J.)
No. 1:21-CV-11269-FDS

————————————

## REPLY BRIEF OF APPELLANT
## ESTADOS UNIDOS MEXICANOS

————————————

Steve D. Shadowen
Richard M. Brunell
Nicholas W. Shadowen
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com

Jonathan E. Lowy
GLOBAL ACTION ON GUN
VIOLENCE
805 15th Street NW, #601
Washington, DC 20005
Phone: (202) 415-0691
jlowy@actiononguns.org

*Counsel for Estados Unidos Mexicanos*

July 13, 2023

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.    APPLYING PLCAA WOULD BE IMPERMISSIBLY
      EXTRATERRITORIAL. ............................................................................2

      A.    The Focus Inquiry Applies to Each Provision. ...................................3

      B.    The Inquiry Finds the Focus in the Provision's Specific
            Text. ..................................................................................................4

      C.    The Focus Inquiry Determines Where the Conduct
            Relevant to the Focus Occurred. ........................................................5

      D.    The Focus Inquiry Applies to All Federal Statutes. ...........................6

      E.    Two Special Circumstances Reinforce the Government's
            Focus Analysis. ..................................................................................7

II.   EVEN IF PLCAA OTHERWISE APPLIED, IT WOULD NOT
      BAR THE GOVERNMENT'S CLAIMS. .....................................................8

      A.    If PLCAA Applied, Courts Must Construe Its Key Terms
            to Be Domestic in Scope. ...................................................................8

      B.    If PLCAA Applied, the Government's Action Is Allowed
            Under the "Predicate" Exception. .....................................................12

            1.    The Defendants' Reading Is Inconsistent With
                  PLCAA's Text. ........................................................................12

            2.    Defendants' Reading Is Inconsistent With the
                  Presumption Against Preemption. ...........................................16

            3.    Defendants' Reading Has Absurd Implications. ......................17

      C.    The Well-Pled Allegations Establish Knowing Violations
            of Law. ...............................................................................................17

            1.    The Allegations Support Defendants' Accomplice
                  Liability for Unlawful Sales and Distribution. ........................17

i

2.    Defendants' Machinegun Sales Are Predicate Violations. ..................................................................19

III.   THE COMPLAINT ADEQUATELY PLEADS TORT ELEMENTS. ..................................................................21

A.    Mexico's Tort Law Applies. ................................................21

B.    Defendants' Proximate Cause Arguments Lack Merit. .......................24

C.    Defendants' Duty Does Not Stop at the Border. ...............................28

CONCLUSION ..................................................................29

# TABLE OF AUTHORITIES

## Cases

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  No. 21-1043, 2023 WL 4239255 (U.S. June 29, 2023) ............................... passim

*Ahmed v. Boeing Co.,*
  720 F.2d 224 (1st Cir. 1983) ................................................................. 21

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998) ............................................................................ 16

*Brady v. Walmart*,
  2022 WL 2987078 (D. Md. July 28, 2022) ........................................... 15

*Callanan v. United States*,
  364 U.S. 587 (1961) ............................................................................ 20

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
  123 F. Supp. 2d 245 (D. N.J. 2000) ..................................................... 27

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992) ............................................................................ 17

*City of Boston v. Smith & Wesson Corp.*,
  2000 WL 1473568 (Mass. Sup. Ct. July 13, 2000) .......................... 25, 26, 27, 28

*City of Chicago v. Purdue Pharma L.P.*,
  No. 14 CV 4361, 2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) ......... 27

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ................................................... 26, 27, 28

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
  801 N.E.2d 1222 (Ind., 2003) ..................................................... 26, 28

*City of Gary v. Smith & Wesson*,
  216 N.E.3d 813 (Ind. App. 2019) ........................................................ 13

*Commonwealth v. Carlson*,
  849 N.E.2d 790 (Mass. 2006) .............................................................. 26

*Copithorne v. Framingham Union Hosp.*,
  520 N.E.2d 139 (Mass. 1988) .............................................................. 24

*Cosme v. Whitin Mach. Works, Inc.*,
  632 N.E.2d 832 (Mass. 1994) .............................................................. 22

*CSX Transp. Inc. v. McBride*,
    564 U.S. 685 (2011) ........................................................................................15

*Davis v. United States*,
    670 F. 3d 48 (1st Cir. 2012) ...........................................................................25

*Direct Sales v. United States*,
    319 U. S. 703 (1943) ...................................................................................18, 19

*Doull v. Foster*,
    163 N.E. 3d 976 (Mass. 2021) ...................................................................25, 28

*Goldstein v. Earnest*,
    No. 37-2020-00016638-CU-PO-CTL (Cal. Super. Ct. Jul. 2, 2021)..................20

*Griffin v. Oceanic Contractors*,
    458 U.S. 564 (1982) ........................................................................................17

*In re Nat'l Prescription Opiate Litig.*,
    477 F. Supp. 3d 613 (N.D. Ohio 2020).............................................................18

*James v. Arms Technology, Inc.*,
    820 A. 2d 27 (N.J. Super. 2003) .................................................................26, 27

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016).............................................................................26

*Jupin v. Kask*,
    849 N.E.2d 829 (Mass. 2006) ........................................................................25

*King v. Clocek*,
    133 N.Y.S.3d 356 (N.Y. App. Div. 2020) ........................................................13

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013) ..........................................................................................5

*Kozoway v. Massey-Furguson, Inc.*,
    722 F. Supp. 641 (D. Colo. 1989)...................................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)...................................................................................15, 28

*Louisville & N.R. Co. v. United States*,
    282 U.S. 740 (1931) ........................................................................................21

*Minnesota v. Fleet Farm LLC*,
    2023 WL 4203088 (D. Minn. June 27, 2023)....................................................13

*Mitchell v. Lone Star Ammunition, Inc.*,
    913 F.2d 242 (5th Cir. 1990) ..........................................................................22

iv

*Mitchell v. Zurich Payroll Sols.*,
  1999 WL 693730 (D. Mass. Aug. 16, 1999) ......................................................23

*Monroe v. Medtronic, Inc.*,
  511 F. Supp. 3d 26 (D. Mass. 2021) ....................................................................21

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) .........................................................................................5, 8

*Parsons v. Colt's Mfg. Co.*,
  2020 WL 1821306 (D.Nev. Apr. 10, 2020) ........................................................20

*People v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) .................................................................26

*Pevoski v. Pevoski*,
  358 N.E.2d 416 (Mass. 1976) .............................................................................22

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
  579 U.S. 115 (2016) ............................................................................................16

*Ramos v. Wal-Mart Stores, Inc.*,
  202 F. Supp. 3d 457 (E.D. Pa. 2016) ..................................................................14

*RJR Nabisco, Inc. v. Eur. Cmty.*,
  579 U.S. 325 (2016).....................................................................................5, 6, 8

*Saharceski v. Marcure*,
  366 N.E.2d 1245 (Mass. 1977) ...........................................................................22

*Saleh v. Titan*,
  580 F.3d 1 (D.C. Cir. 2009) ..................................................................................8

*Small v. United States*,
  544 U.S. 385 (2005)........................................................................................9, 11

*Smith & Wesson Corp. v. City of Gary*,
  875 N.E.2d 422 (Ind. App.2007) .....................................................................2, 13

*Soto v. Bushmaster Firearms Int'l, LLC*,
  202 A.3d 262 (Ct. 2019) ......................................................................................17

*Southwest Airlines v. Saxon*,
  142 S.Ct. 1783 (2022)..........................................................................................14

*Staples v. United States*,
  511 U.S. 600 (1994)..............................................................................................20

*State of São Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*,
  919 A.2d 1116 (Del. 2007) ..................................................................................29

v

*Szulik v. State Street Bank and Trust Co.*,
   935 F. Supp. 2d 240 (D. Mass. 2013) ....................................................26

*TargetSmart Holdings, LLC v. GHP Advisors, LLC*,
   366 F. Supp. 3d 195 (D. Mass. 2019) ...................................................21

*Travenol Laboratories, Inc. v. Zotal, Ltd.*,
   474 N.E.2d 1070 (Mass. 1985) .............................................................23

*Turkiye Halk Bankasi A.S. v. United States*,
   143 S. Ct. 940 (2023) ............................................................................11

*Twitter, Inc. v. Taamneh*,
   143 S.Ct. 1206 (2023) ...........................................................................19

*United States v. Falcone*,
   109 F.2d 579 (2d Cir. 1940) .................................................................19

*United States v. Mowad*,
   641 F.2d 1067 (2d Cir. 1981) ...............................................................10

*United States v. Murphy*,
   852 F.2d 1 (1st Cir. 1988) ..................................................................... 10

*United States v. Nieves-Castano*,
   480 F.3d 597 (1st Cir. 2007) ................................................................20

*United States v. Olofson*,
   563 F.3d 652 (7th Cir. 2009) ...............................................................20

*Watkins v. Omni Life Sci., Inc.*,
   692 F. Supp. 2d 170 (D. Mass. 2010) .............................................21, 22

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018) ............................................................................3

*Williams v. Beemiller*,
   952 N.Y.S. 2d 333 (N.Y.App.Div. 2012) ...........................................13

*Yakubowicz v. Paramount Pictures Corp.*,
   404 Mass. 624 (1989) ...........................................................................28

## Statutes

15 U.S.C. § 1114 .........................................................................................4

15 U.S.C. § 7902 .........................................................................................4

15 U.S.C. § 7903 ..................................................................................passim

18 U.S.C. § 922 ...................................................................................10

28 U.S.C. § 2778 .................................................................................10

**Other Authorities**

Dan B. Dobbs, *The Law of Torts* (2000) ................................................24

Executive Order 13637....................................................................10

Restatement (Second) of Conflict of Laws (1971)...……...………..…….. 21, 22, 23

Restatement (Second) of Torts (1965) .................................................24

**Regulations**

17 C.F.R. § 205.7 ...............................................................................13

22 C.F.R. §§ 121 ................................................................................10

## INTRODUCTION

The Government sues under Mexico's tort law for harm Defendants systematically cause in Mexico, seeking redress and tailored injunctive relief in the only national forum that can effectively grant it.

There is no "clash of national values." Despite Defendants' refrain that the Complaint seeks liability for their "U.S. operations" (*e.g.*, D.Br.[1] 1, 10, 12, 17, 35), they knowingly participate in trafficking guns into Mexico (*e.g.*, Br. 5-7)—conduct that is trans-national. It violates Mexican *and* U.S. laws, including Mexican statutes on gun imports and U.S. strictures on gun exports. Br. 5, 40.

Even if Defendants violated only Mexican law, Supreme Court extraterritoriality precedent requires construing PLCAA not to apply to this case. The two-step inquiry mandates that Congress, not the courts, make the foreign-policy decision whether to bar this claim for injury from gun misuse abroad.

Defendants' conduct also violates U.S. gun statutes, so PLCAA's "predicate exception" permits this action in any event. The district court's assertion that the exception applies only if the violated gun statute provides a private right of action (Add. 27) contradicts PLCAA's plain text. Over 30 courts have addressed PLCAA, and none agree with the district court. The judicial consensus is that law-breaking

---

[1] References to "D.Br." and "Br." are to Defendants' brief and the Government's opening brief, respectively.

1

gun companies do not get PLCAA's special protection. Defendants are wrong in arguing that the Government is "trying to bring a lawsuit that no state, local or federal government agency could bring" (D.Br. 9, 24)—courts have allowed similar suits by U.S. cities under PLCAA. *See*, *e.g.*, *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. App. 2007). Defendants' arguments on choice-of-law, proximate cause, and duty similarly lack merit.

Defendants want to radically expand PLCAA by arbitrarily shrinking the predicate exception and by precluding liability for trafficking guns into a neighboring nation. PLCAA's text prohibits both those expansions.

## ARGUMENT

## I. APPLYING PLCAA WOULD BE IMPERMISSIBLY EXTRATERRITORIAL.

Defendants do not contest the district court's conclusion that, at the first step of the extraterritoriality analysis, they failed to overcome the presumption against extraterritoriality. Add. 23. Regarding "focus," the Government demonstrated that the focus of PLCAA's Section 7903(5)(A) is injury and criminal or unlawful gun misuse, and the conduct relevant to that focus occurs in Mexico. Br. 20-25. Neither the district court nor the Defendants have denied either of those conclusions: *the focus of Section 7903(5)(A) and the location of the conduct relevant to it are conceded on this appeal.*

2

Instead, the district court and the Defendants assert that the overall focus of "the statute" is "regulat[ing] the types of claims that can be asserted against firearm manufacturers and sellers." Add. 24; D.Br. 12. The "regulat[ing]" occurs in the U.S., they contend, so PLCAA properly applies.

That analysis fundamentally misapplies the focus inquiry.

## A.     The Focus Inquiry Applies to Each Provision.

Where a statutory provision "works in tandem" with other provisions, the court must determine the focus of *each provision. WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018). Defendants misstate *WesternGeco* as having found a permissible domestic application because the focus of "the statute" was "protecting U.S. patents against infringement." D.Br. 13-14. That is not at all what the Court said. The provision granting damages for "infringement" (§ 284) worked in tandem with the provision that defined the relevant act of infringement (§ 271(f)(2)), so *WesternGeco* applied the focus of the *provision that defined the relevant infringement* ("its focus … is the domestic act of 'suppl[ying] in or from the United States'"). 138 S. Ct. at 2137; *see* Br. 23-24 & n.7.

The Court recently re-emphasized determining the focus of each "relevant provision[]." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 2023 WL 4239255, at *5, n.3 (U.S. June 29, 2023) ("Our cases sometimes refer to whether the 'statute'

3

applies extraterritorially, but the two-step analysis applies at the level of the particular provision implicated."). In *Abitron*, the Lanham Act (15 U.S.C. § 1114(1)) mandated that a person "shall be liable in a civil action" for unlawful uses of trademarked goods, and those uses were defined in two subsections (§1114(1)(a)&(b)). The Court applied the focus of those defining provisions. 2023 WL 4239255, at *9-10.

Here Sections 7902(a) and 7903(5)(A) work in tandem, the latter providing the definition for the former. The uncontested focus of 7903(5)(A) is injury from gun misuse, which occurs in Mexico.

## B.    The Inquiry Finds the Focus in the Provision's Specific Text.

The district court and Defendants also err in positing an overall "animating concern[]" (D.Br. 12) of "regulat[ing] the types of claims" that can be filed. Every Supreme Court decision has found the focus not in some broad "policy" or "intent," but in the specific statutory text. Br. 23-24 & nn.7, 8. *Abitron* reinforced this point:

> Congress proscribed the use of a [trade]mark in commerce *under certain conditions*. … Because Congress has premised liability on a *specific action (a particular sort of use in commerce)*, that specific action would be the conduct relevant to any focus on offer today.

*Abitron,* 2023 WL 4239255, at *2 (emphasis added).

Untethering the focus from the statutory text would involve courts in "divining what Congress would have wanted if it had thought of the situation."

4

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 261 (2010). The two-step

inquiry prevents such "judicial-speculation-made-law," ensuring that only

Congress makes those foreign-policy judgments. *Id.*; Br. 21.[2] The district court's

"expansive understanding of" the relevant focus, unmoored from the text,

"threatens to negate the presumption against extraterritoriality" and thereby thrust

"the Judiciary … into the unappetizing task of navigating foreign policy disputes

belonging to the political branches." *Abitron*, 2023 WL 4239255, at *8 (cleaned

up).

### C.    The Focus Inquiry Determines Where the Conduct Relevant to the Focus Occurred.

Defendants argue that PLCAA itself does not focus on whether the injury or

source of law is domestic or foreign. D.Br. 12. But the relevant inquiry is where

the conduct relevant to the provision's focus occurred. Br. 10; *see also Abitron*,

2023 WL 4239255, at *7 ("'if the conduct relevant to the focus occurred in a

foreign country, then the case involves an impermissible extraterritorial application

regardless of any other conduct that occurred in U.S. territory.'") (quoting *RJR*

*Nabisco, Inc. v. Eur. Cmty*, 579 U.S. 325, 337 (2016)). Any other rule "would give

---

[2] Defendants cannot deny that, at the district court's level of (over)-generality, the claim-granting provisions in *RJR Nabisco* and *Kiobel* could equally be described as "regulating the type of claims that can be asserted," flipping the result in both cases. Br. 21; D.Br. 15.

[a provision] an untenably broad reach that undermines our extraterritoriality framework." *Id*.

*Abitron* likewise rebuts the district court's contention (Add. 25 n.7) that applying a statute is permissibly domestic if it produces domestic effects. 2023 WL 4239255, at *8. And Defendants do not support on appeal the district court's embrace of an out-of-Circuit, pre-two-step-inquiry decision. *See* Br. 28-29.

### D.    The Focus Inquiry Applies to All Federal Statutes.

Defendants retreat into arguing that the two-step inquiry does not apply to statutes that limit, rather than create, claims or jurisdiction. D.Br. 15. But the inquiry applies to *all* federal statutes, including "strictly jurisdictional" statutes. Br. 28 n.12.[3]

Even if the issue were open, Defendants offer no viable rationale for distinguishing between claim-granting and claim-denying statutes. They assert a difference between the U.S. "projecting its substantive law abroad" versus "bar[ring] a certain category of cases." D.Br. 16. There is no difference *relevant* to the requirement that Congress, not the courts, make decisions about applying

---

[3] The Government contends neither that jurisdictional requirements are automatically inapplicable when a foreign sovereign sues for injury incurred abroad, nor that "jurisdictional statutes should not be read to exclude foreign claims." D.Br. 14, 16. The Government simply argues what the Supreme Court has held: that jurisdictional statutes are subject to the same two-step inquiry. Br. 28 n.12.

federal statutes when significant foreign-policy concerns would arise. Section 7903(5)(A) would squarely raise such concerns if it were construed to bar the Government's claim, under Mexican tort law, for injury in Mexico from gun misuse in Mexico, for Defendants' systematic importing of guns into Mexico, pursued in the only national forum that can grant effective relief. Br. 19-20, 26-32.

### E. Two Special Circumstances Reinforce the Government's Focus Analysis.

*Abitron* reinforced its conclusion by noting that extending the Lanham Act to infringing uses abroad would conflict with an established international trademark regime. 2023 WL 4239255, at *8-9. To similar effect, the Supreme Court has elsewhere explained that, for tort claims, the usual choice-of-law rule selects the substantive law of the place of injury—the standard rule throughout the world. Br. 8, 31. And the Court held that U.S. courts are open to foreign sovereigns to pursue claims for those injuries under their tort law. *Id.* at 31.

Consequently, "the 'probability of incompatibility with the applicable laws of other countries is so obvious that if Congress intended such foreign application it would have addressed the subject of conflicts with foreign laws and procedures.'" *Abitron*, 2023 WL 4239255, at *8 (quoting *Morrison*, 561 U.S. at 269). So when the injury occurs abroad, "the need to enforce the presumption [against extraterritoriality] is at its apex." *RJR Nabisco*, 579 U.S. at 348.

Moreover, while foreign sovereigns' access to U.S. courts is not a "categorical right" (D.Br. 17), "the U.S. Congress has never, in peacetime, stripped foreign sovereigns of their ability to litigate claims under their laws in U.S. courts" (Br. 30).[4] The foreign-relations consequences that would ensue from breaching that centuries-old *reciprocal* international custom reinforce the conclusion under the two-step inquiry that the political branches should make such a decision.[5]

## II. EVEN IF PLCAA OTHERWISE APPLIED, IT WOULD NOT BAR THE GOVERNMENT'S CLAIMS.

### A. If PLCAA Applied, Courts Must Construe Its Key Terms to Be Domestic in Scope.

Even if PLCAA otherwise applied, courts must construe it using a rule of construction akin to the presumption against extraterritoriality—the "assumption" that Congress used terms in their strictly domestic scope. *See Small v. United States*, 544 U.S. 385, 389 (2005); Br. 34-38.

---

[4] Defendants say Russia could sue them "for how their firearms have been used in Ukraine." D.Br. 17. If Russia would somehow have a viable claim under Ukrainian tort law, the public-policy exception to choice of law could preclude this and other sky-is-falling hypotheticals as offensive to universal principles of justice (*see infra* at Section III(A)) as could justiciability doctrines such as Political Questions and Acts of State. *See generally Saleh v. Titan*, 580 F.3d 1, 7 (D.C. Cir. 2009) ("tort duties of reasonable care do not apply on the battlefield").

[5] The Government does not seek "privileged access to U.S. courts." D.Br. 9. It seeks the access that Congress has not deprived it of.

*Small* used the assumption because applying the statute would have resulted in "impos[ing] domestic legal consequences" for "activity abroad" (D.Br. 20)—the same dynamic here. Defendants nevertheless assert it "makes no sense" that Congress would have withheld PLCAA's protections when the gun misuse and injury occur abroad. D.Br. 21. Even if that argument had anything to do with PLCAA's text, respecting the right of Mexico to pursue these claims makes the same sense as construing federal statutes to withhold U.S. claims from victims injured abroad while permitting them to sue under foreign law in U.S. courts.

Defendants also fail to counter the Government's comprehensive showing that PLCAA explicitly extends its protections to "importers" and "importing," but not exporters or exporting. Br. 36 & n.17. They assert that the term "dealer" in Section 7903(6)(B) can include exporters (D.Br. 21), but provide no support. That Section's reference to "dealer" is immediately preceded by "importers" (Section 7903(6)(A)), who, under Defendants' broad interpretation, would also be included in "dealers." So Section 7903(6)(B) highlights, rather than refutes, Congress's decision to not include exporters.[6] PLCAA similarly refers to protections for

---

[6] Defendants' amicus asserts that PLCAA defines manufacturers and sellers in part by reference to 18 U.S.C. §922(a)(1). Amicus Br. of Nat'l Sporting Sports Fnd. ("NSSF") at 10. Contrary to NSSF's analysis, that provision does not apply to exporters for the very reason that PLCAA also does not: "although the terms 'importer' and 'importing' are specifically mentioned in the statute, the terms 'exporter' and 'exporting' are conspicuously absent." *United States v. Mowad*, 641

importing but not exporting.[7] The extensive federal framework for arms exports[8] makes the absence of exporters/exporting in PLCAA especially conspicuous.

Defendants invoke PLCAA's boilerplate references to "foreign commerce." D.Br. 21. The Supreme Court has "repeatedly held that even statutes that . . . expressly refer to '*foreign* commerce' . . . are not extraterritorial." *Abitron*, 2023 WL 4239255, at *5. This rule "dooms [Defendants'] argument." *Id*.; *see also* Add. 22; Br. 19-20.

Reading PLCAA to extend to injury from gun use abroad would implausibly require courts to interpret foreign criminal law. Br. 36-37. Defendants say that there is "no question" that the misuse here is criminal under Mexican law. D.Br. 22. But requiring courts to construe foreign criminal law is not made more plausible if construing it in a particular case is easy. *See Small*, 544 U.S. at 390

---

F.2d 1067, 1071 (2d Cir. 1981) (reversing conviction for unlawful exporting under § 922(a)(1) because it does not apply to exporters/exporting); *see also United States v. Murphy*, 852 F.2d 1, 6-7 (1st Cir. 1988) (upholding conviction under § 922(a)(1) for domestically purchasing weapons, but under different statute for conspiring to export them).

[7] PLCAA refers to the Arms Export Control Act (D.Br. 21), but it regulates arms manufacture and import as well as export, so the reference proves nothing. *See, e.g*., 28 U.S.C. § 2778(a)(1); *id*. § 2778(b)(1)(A)(i); *id*. § 2778(b)(2).

[8] *See, e.g*., *id*.; International Traffic in Arms Regulations, 22 C.F.R. §§ 121 et seq.; Executive Order 13637 and statutes and regulations cited therein.

("[t]o somehow weed out inappropriate foreign convictions that meet the statutory definition is not consistent with the statute's language").[9]

Construing PLCAA to reach injury from gun misuse abroad would also result in its anomalously providing exceptions when manufacturers violate certain "federal or state" statutes but not corresponding foreign statutes. Br. 37. Defendants say this is "a feature not a bug" because foreign statutes "lack any domestic legitimacy" and are "possibly hostile foreign laws." D.Br. 22. *Small* prohibits that jingoism. 544 U.S. at 391-92. Moreover, PLCAA's predicate exception refers to state laws "comparable or identical" to federal law and could easily have guarded against "possibly hostile" foreign law by attaching a similar condition on foreign law. And surely it is not a "feature rather than a bug" that Defendants' reading would provide an exception for certain claims by U.S. children but not foreign children. Br. 37.

Nor do Defendants offer an explanation for the absence of any reference in the legislative history to exporting, foreign nations, foreign injuries, or even to Canada or Mexico or any of their nationals. *See* Br. 36-38. In the end, their

---

[9] PLCAA similarly refers to precluding claims by domestic governments but not foreign governments. Br. 38. Defendants cite *Turkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940 (2023), but the statute there, unlike PLCAA, did not refer to refer generally to governmental entities without including foreign ones, and extraterritoriality (and the presumption against it) was not at issue.

argument is about what they think PLCAA should have said, not what it actually says.

**B.    If PLCAA Applied, the Government's Action Is Allowed Under the "Predicate" Exception.**

**1.    The Defendants' Reading Is Inconsistent With PLCAA's Text.**

The district court held that Defendants are not liable for harm they cause by violating a U.S. gun statute unless it provides a private right of action. Add. 27. PLCAA's predicate exception does not say it allows only statutory actions. It allows "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." Section 7903(5)(A)(iii).

The district court offered no reasons for its conclusion. Defendants fail to fill that void.

First, Defendants fail to grapple with the fact that over 30 courts have addressed PLCAA, and only the court below held that the predicate exception is limited to violations of privately enforceable gun laws.[10] Defendants dismiss this mountain of authority as "trial courts" (D.Br. 29), but numerous appellate courts

---

[10] In addition to the cases cited at Br. 47 n.23, 49, *see, e.g., Minnesota v. Fleet Farm LLC*, 2023 WL 4203088 (D. Minn. June 27, 2023).

have allowed negligence and other non-statutory claims under the predicate exception. *See, e.g., Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. App. 2007); *City of Gary v. Smith & Wesson*, 216 N.E.3d 813 (Ind. App. 2019); *Williams v. Beemiller*, 952 N.Y.S. 2d 333 (N.Y.App.Div. 2012); *King v. Clocek*, 133 N.Y.S.3d 356 (N.Y.App.Div. 2020). Even the decision Defendants cite recognized that "a plaintiff not only must present a cognizable claim, he or she *also* must allege a knowing violation of a 'predicate statute.'" *Ileto v. Glock*, 565 F.3d 1126, 1132 (9th Cir. 2009) (emphasis added).

Second, Defendants misstate PLCAA when they assert: "The predicate exception allows *claims* 'in which' a U.S. firearms company knowingly violated a firearms 'statute.'" D.Br. 25 (emphasis added). PLCAA actually allows "an *action* in which" defendant knowingly violated an applicable statute. §7903(5)(A) (emphasis added). In contrast, when exempting specific claims PLCAA allows "actions *for*" negligence per se and other claims. § 7903(A)(ii, iv) (emphasis added). *See* Br. 40. *Cf., e.g*, 17 C.F.R. § 205.7 ("No private right of action"). Congress chose different words to convey different meanings. *See Southwest Airlines v. Saxon*, 142 S.Ct. 1783, 1789 (2022). The case Defendants cite, *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 465 (E.D. Pa. 2016) (D.Br. 27), confirms that the predicate exception's two examples "consist of 'cases,' not

individual claims, suggest[ing] that if there are allegations present in a case that a defendant violated state or federal law, the case is exempt from the Act."

Third, Defendants cannot explain why PLCAA's definition of predicate statutes refers to "Federal statute[s]," that do not provide private causes of action (§7903(5)A)(iii)), or why it specifically identifies such statutes as *examples* of predicate violations. *Id*. at I, II; *see* Br. 48-50. Defendants assert that the examples "are not specific statutes." D.Br. 28. But the examples refer to federal statutes, such as "any record required to be kept under Federal or State law," and "subsection (g) or (n) of section 922 of title 18." Defendants suggest PLCAA refers to and gives examples of predicate statutes that are not (in their reading) predicate statutes.

Fourth, the Government does not contend that the exception permits all claims to proceed "even if the claims bear no relation to the statutory violation." D.Br. 26. The predicate exception's proximate-cause requirement ensures that claims unrelated to the harm do not qualify for exemption. Nor does the Government contend that a violation by one Defendant removes PLCAA protections for all. *Id*. 26-27. The Government's claims can proceed because each claim is closely related to each Defendant's statutory violations.

Fifth, Defendants cannot coherently explain why, if the predicate exception allows only statutory claims, it expressly requires proximate cause (and the claim-

14

based exceptions do not), given that statutory claims inherently require proximate cause. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014) ("[a] statutory cause of action is [presumed to be] limited to plaintiffs whose injuries are proximately caused by violations of the statute"). The statutory action in Defendants' authority, *CSX Transp. Inc. v. McBride*, 564 U.S. 685 (2011), included proximate cause, albeit tailored to the applicable statute.

Sixth, no court, including the district court, has agreed with Defendants that their reading is necessary to avoid making the negligence per se exception surplusage. D.Br. 25-27. The predicate and negligence per se exceptions simply serve different functions. The predicate exception removes PLCAA's protections for harm caused by knowing violations of applicable law, including by manufacturers that are not "sellers." The negligence per se exception provides a remedy for any violations by "sellers," with lesser mens rea, in states that allow such claims. For example, *Brady v. Walmart*, 2022 WL 2987078 (D. Md. July 28, 2022), held that the predicate exception was satisfied, so allowed plaintiff's negligence claim, but dismissed plaintiff's negligence per se claim because it did not satisfy Maryland law.

Subjecting gun manufacturers that knowingly violate federal gun laws to negligence liability "circumvent[s] the limit of the negligence per se exception" (D.Br. 26) only if PLCAA is intended to shield lawbreakers. It isn't. The

Protection of *Lawful* Commerce in Arms Act was not intended to shield companies that "break the law." Br. 50-51; *see Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (title of act may reflect intent). Defendants acknowledge that under the "basic deal at the heart of PLCAA" "if a firearms company commits a knowing violation of a firearm statute that proximately causes harm to another—or commits some other enumerated unlawful act—then the PLCAA's protections *may* recede," D.Br. 4 (emphasis added), which is almost correct. Under PLCAA, precluded actions "*shall not* include" actions in which there is a predicate violation. § 7903(5) (emphasis added).

### 2. Defendants' Reading Is Inconsistent With the Presumption Against Preemption.

Defendants also fail to square their argument with the presumption against preemption. *See* Br. 51-52. Defendants' authority, *Puerto Rico v. Franklin Cal. Tax-Free Tr.,* 579 U.S. 115 (2016), refused to apply the presumption where express preemptive language was clear, but it does not address this situation, where the presumption is needed to construe the scope of preemption. *See Cipollone v. Liggett Grp., Inc*., 505 U.S. 504, 523 (1992); *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 313 (Ct. 2019) (applying federalism and presumption to construe PLCAA). *See also* Amicus Br. of Massachusetts, et. al. at 6-8.

16

### 3.    Defendants' Reading Has Absurd Implications.

Defendants (and the trial court) do not address the absurd implications of their reading. Consider if a gun manufacturer expressly conspired with cartels to traffic guns to murder police. The manufacturer is convicted as an accomplice to murder. A family sues. According to Defendants, PLCAA would immunize the manufacturer. A third party pulled the trigger, so the case would meet the general definition of "qualified civil liability action;" the Gun Control Act does not provide a private right of action, so the predicate exception would not apply; the conviction is not covered by §7903(A)(5)(i); and homicide is not an applicable gun law, so no other exception would apply. The trafficking murderer would enjoy immunity that no one else in society has.

"[T]o construe statutes so as to avoid results glaringly absurd, has long been a judicial function." *Griffin v. Oceanic Contractors*, 458 U.S. 564, 586 n.16 (1982).

### C.    The Well-Pled Allegations Establish Knowing Violations of Law.

### 1.    The Allegations Support Defendants' Accomplice Liability for Unlawful Sales and Distribution.

The Government alleges that Defendants violate federal firearms statutes, including those prohibiting unlicensed exports. Br. 40-45. Defendants' arguments to the contrary (D.Br. 29-38) contradict plausible allegations that must be accepted as true, and defy Supreme Court precedent.

Ignoring the Complaint's actual allegations, Defendants assert they cannot be liable "just because some downstream criminals use [guns] to commit crimes abroad," "[m]erely selling a product that someone later uses in a crime does not make the seller an accomplice," and "more is required than mere knowledge," D.Br. 1, 2, 30-33. The Government alleges that Defendants deliberately choose to distribute, market, and design their guns in unsafe ways that supply criminals. Compl. ¶¶63-69, 244-395. *See also In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613, 633 (N.D. Ohio 2020) (defendants "systematically ignored red flags that they were fueling a black market"). The Government's case would resemble a suit against Budweiser (D.Br. 30-31) only if Budweiser deliberately sold beer to distributors that Budweiser *knows* systematically supply minors.

*Direct Sales v. United States*, 319 U. S. 703 (1943), refutes Defendants' arguments on accomplice liability. Defendants feebly assert that the purchases in *Direct Sales* were for "such a large quantity of narcotics that they could not possibly have been used for any lawful purpose." D.Br. 32. The Government makes equivalent but stronger allegations about repeated bulk sales of assault weapons to obvious traffickers. Compl. ¶¶146-209; 251-57. Defendants fail to explain why their conduct is not at least as culpable, since *Direct Sales* stopped some bulk sales at law enforcement's request, while Defendants here defied law enforcement entirely. Br. 43.

18

*Direct Sales* also explains why it is immaterial that Defendants assert that they did not violate "any particular law" and sold to "legal" dealers. D.Br. 31. Direct Sales sold to a "legal" reseller (a doctor), and did not directly violate any law, but its practices supported a criminal conspiracy conviction.

Defendants even cite *United States v. Falcone*, 109 F.2d 579 (2d Cir. 1940) (D.Br. 31 n.4), which *Direct Sales* distinguished. 319 U.S. at 709. The Supreme Court recently cited *Direct Sales* approvingly. *Twitter, Inc. v. Taamneh*, 143 S.Ct. 1206, 1228 (2023). And similar allegations of accomplice liability have prevented dismissal under PLCAA. *See* Br. 41-42, 47 n.23. The same is true of upstream liability in the opioid litigations. Br. 43.

### 2.    Defendants' Machinegun Sales Are Predicate Violations.

Defendants cannot dispute that ATF has determined that semi-automatic guns that can easily be modified to fire automatically are machineguns, or that both courts that have considered the issue held that Defendants' sale of readily convertible guns constitutes predicate violations. Br. 45.

Those courts properly rejected Defendants' argument that *Staples v. United States,* 511 U.S. 600 (1994), holds otherwise. *Staples* "was not considering the definition of a machine gun but rather whether 26 U.S.C. § 5861(d) required proof that the defendant knew the rifle he possessed had characteristics that made it a machine gun." *Parsons v. Colt's Mfg. Co.*, 2020 WL 1821306, at *5 (D.Nev. Apr.

10, 2020); *see also Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL
(Cal. Super. Ct. Jul. 2, 2021); *United States v. Olofson*, 563 F.3d 652, 657 (7th Cir.
2009) ("The narrow holding from *Staples* is that mens rea was an element of the
crime in question."). Defendants cite *United States v. Nieves-Castano*, 480 F.3d
597, 600 (1st Cir. 2007), but there too "[t]he question [was] whether the
government proved, beyond a reasonable doubt, that she knew this particular AK-
47 had the characteristics of an automatic weapon." While Defendants complain
that the ATF's definition would make criminals out of all AR-15 owners, D.Br. 37,
*Staples*' mens rea threshold prevents that.

The rule of lenity (D.Br. 37) likewise is inapplicable, as it only "comes into
operation at the end of the process of construing what Congress has expressed, not
at the beginning as an overriding consideration of being lenient to wrongdoers."
*Callanan v. United States*, 364 U.S. 587, 596 (1961).

Defendants invite the Court to determine as a matter of law that the ATF's
definition is wrong, and that ATF's lack of enforcement establishes that easily
modifiable assault rifles are not machineguns. D.Br. 35. However, "[a] failure to
enforce the law does not change it." *Louisville & N.R. Co. v. United States*, 282
U.S. 740, 759 (1931).

## III.  THE COMPLAINT ADEQUATELY PLEADS TORT ELEMENTS.

### A.  Mexico's Tort Law Applies.

Massachusetts choice-of-law rules provide that "the law of the place where the injury occurred presumptively applies." *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 212 n.2 (D. Mass. 2019); *see Ahmed v. Boeing Co.,* 720 F.2d 224, 226 (1st Cir. 1983) ("Massachusetts generally follows [the] doctrine of *lex loci delicti*") (Breyer, J.); *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 33 (D. Mass. 2021) ("tort claims are governed by the law of the state where the injury occurred unless another state has a more significant relationship to the underlying cause of action"); *see also* ECF 152 (JA000037) (Plaintiff's Sur-Reply Memo on Choice of Law). Even when the injury and conduct occur in different jurisdictions, the law of the place of injury usually applies, and carries even greater weight when plaintiff is domiciled there. Br. 32.

Defendants' cases are inapposite. In *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 175 (D. Mass. 2010), class action members were injured in 50 states while the sole defendant was headquartered in only one. *See Burleigh v. Alfa Laval Inc.,* 313 F. Supp. 3d 343, 354 n.14 (D. Mass. 2008) (distinguishing *Watkins*). *Saharceski v. Marcure*, 366 N.E.2d 1245, 1249 (Mass. 1977), and *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976), involved car accidents where the place of injury was "fortuitous," *see* Restatement (Second) of Conflict of Laws §

145 cmt. e (1971), and lacked any substantial connection to either party. In *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 836 (Mass. 1994), unlike here, "'the domicile and place of business of the plaintiff and the defendant are grouped in a single state.'" *Id.* (quoting Conflict Restatement § 145 cmt. e).

*Kozoway v. Massey-Furguson, Inc.*, 722 F. Supp. 641, 644 (D. Colo. 1989), does not overturn the presumption that the place of injury governs even when the injury occurs abroad. *See* Br. 8; Conflict Restatement § 10, Rpt.'s Note (courts generally "have not distinguished between international and interstate conflicts"). *Kozoway* declined to apply the law where the injury occurred, based not on any preference for U.S. law, but for the *law that is most protective of the injured plaintiff*. 722 F. Supp. at 644. The same pro-plaintiff approach explains *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 250 (5th Cir. 1990).[11]

Defendants assert that the "United States . . . supplies the better rule of law" (D.Br. 47), but "the United States is not a state within the meaning of the [choice-of-law] rule[s]." Conflict Restatement § 3, cmt c. The choice is between Mexican and *Massachusetts* tort law. Moreover, this factor is not part of the Restatement test, and Defendants cite no Massachusetts case applying it. Merely because "two laws simply reflect different weighing of values; one is not inherently better than

---

[11] Defendants cite no case rejecting a sole plaintiff's request to apply the law of the place where it was injured and domiciled. *See* Symeonides, at 367 (in cases of "true conflict" courts overwhelmingly apply pro-plaintiff law of state of injury).

the other." *Mitchell v. Zurich Payroll Sols*., 1999 WL 693730, at *5 (D. Mass. Aug. 16, 1999). At most, the factor might influence a close case. *See Travenol Laboratories, Inc. v. Zotal, Ltd*., 474 N.E.2d 1070, 1074 (Mass. 1985). It has no place here because the primary Restatement factors (injury and plaintiff's domicile) clearly point to applying Mexican law.

Defendants rely on the public-policy exception to choice-of-law principles, but that exception "has narrow application" that "rarely" governs. Conflict Restatement § 90, cmt. c (only if suit "would violate some principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth"). Defendants do not identify any infringed "strong local public policy" *(id.*, cmt. a), and Massachussetts clearly does not see one. Amicus Br. of Massachusetts et al. at 1-2. Nor is there a conflict with the policies of the United States. This lawsuit does not seek "to regulate the American firearms industry," D.Br. 48. Consistent with nearly universal tort-law principles, the Government seeks to hold Defendants liable for trafficking guns into its territory, and seeks tailored injunctive relief directed at halting trafficking *to Mexico*. Br. 3-4, 6. And whatever rights the Second Amendment confers, it provides none to participate in trafficking firearms to Mexico.

## B.    Defendants' Proximate Cause Arguments Lack Merit.

The district court found that "the complaint plausibly alleges that Mexico's injuries are 'fairly traceable' to defendants' conduct for purposes of Article III standing." Add. 18. The Complaint alleges that the "trafficking of firearms into Mexico, and the resulting violence, are the direct product of the intentional sales practices of defendants," *id*. at 16, and the "violence in Mexico is a predictable, or 'foreseeable,' result of defendants' actions." *Id*. at 17 (citing allegations); *see also* Compl. ¶116 ("Defendants' guns are the overwhelming source of the cartels' arsenals.").

A subsequent crime is not (*contra* D.Br. 40) "the textbook intervening act" that cuts off liability. *See* Plaintiff's First Expert Report on Tort Law of Mexico ("First Tort Law Report") ¶ 73 (JA000202); Restatement (Second) of Torts § 448 (1965); Dan B. Dobbs, *The Law of Torts* § 190, at 472 (2000). Even Defendants' cases recognizes that a criminal act is a superseding cause "only where the original wrongdoer reasonably could not have foreseen such act." *Copithorne v. Framingham Union Hosp*., 520 N.E.2d 139, 141 (Mass. 1988); *see also Jupin v. Kask*, 849 N.E.2d 829 (Mass. 2006); *Davis v. United States*, 670 F. 3d 48, 56 (1st Cir. 2012). Defendants' superseding-cause argument "fails in Massachusetts if the third person's acts could have been foreseen, which is what Plaintiffs allege." *City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568, at *15 n.65 (Mass. Sup.

24

Ct. July 13, 2000). As these authorities demonstrate, Defendants are simply wrong that the only exception is when "a defendant itself directly exposes a plaintiff to the risk of immediate criminal danger," D.Br. 40, which the Complaint alleges in any event, *e.g.*, Compl. ¶¶ 2-8, 12-16, 21.

Indeed, Amicus NSSF (at 11-12) notes that PLCAA makes certain volitional criminal acts "the sole proximate cause" of harm under the product liability exception; this proves that Congress chose ***not*** to impose a sole-cause standard in actions under the predicate exception.

Defendants are similarly incorrect that too many "steps" separate their conduct and the harm. Neither Mexican nor Massachusetts tort law cuts off causation at some number of steps; causation exists if the injuries foreseeably resulted from Defendants' misconduct. *See* First Tort Law Report" ¶¶ 67-69, 74 (JA0000203); *Doull v. Foster*, 163 N.E. 3d 976, 983 (Mass. 2021).[12] Foreseeability "is a question of fact for the jury to decide based on an assessment of the circumstances." *Commonwealth v. Carlson*, 849 N.E.2d 790, 795 (Mass. 2006). Resolving proximate cause on the pleadings is generally inappropriate. *See Szulik v. State Street Bank and Trust Co.*, 935 F. Supp. 2d 240, 268 (D. Mass. 2013).

---

[12] PLCAA does not create causes of action, so it does not supply a federal rule of proximate cause in actions subject to the predicate exception.

Defendants cite *Jane Doe No. 1 v. Backpage.com, LLC,* 817 F.3d 12, 24, 25 (1st Cir. 2016), but there the "causal chain is shot through with conjecture: it pyramids speculative inference upon speculative inference" and "is forged entirely out of surmise" and "conclusory statements." And the chain of causation here does not involve eight steps, as Defendants assert; the Government's injuries are a *direct* result of Defendants' trafficking.

"Most relevant" are not the few out-of-state cases Defendants cite (D.Br. 41-42), but on-point Massachusetts authority, and more recent cases, that have found similar allegations of proximate cause sufficient. *See City of Boston*, 2000 WL 1473568; *James v. Arms Technology, Inc*., 820 A. 2d 27, 38-39 (N.J. Super. 2003); *Ileto*, 349 F.3d at 1206-09; *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147-1149 (Ohio 2002); *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1248 (Ind. 2003). Defendants' authorities did not apply Massachusetts or Mexico law, and either assumed manufacturers' conduct was legal, *e.g.*, *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 103 (N.Y. App. Div. 2003); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 258 n.8 (D. N.J. 2000), and/or followed a federal antitrust/RICO causation standard, which "does not fit squarely in a case . . . involving application of traditional tort concepts," *James*, 820 A. 2d at 38; *see also*

*City of Chicago v. Purdue Pharma L.P.*, 2021 WL 1208971, at *13 (N.D. Ill. Mar. 31, 2021) (RICO/FHA standards not applicable to Illinois tort claim).

The Government's injuries are not solely "derivative" of the harm to its citizens. "Plaintiffs' harm is in essence the type of harm typically suffered by [governments] due to public nuisances. Indeed, much of the harm alleged is of a type that can only be suffered by [government] plaintiffs." *City of Boston*, 2000 WL 1473568, at *6. Other courts have similarly found that the cost of governmental services in responding to gun crime is not derivative. *See City of Cincinnati*, 768 N.E. 2d at 1147-49; *James*, 820 A.2d at 41; *see also City of Boston*, 2020 WL 977056, at *4 (opioids).[13] Moreover, many of the Government's increased costs to fight gun violence—for example, increased expenses for law enforcement and security—are necessary to protect its citizens from additional future harms. And harm to Government personnel and property is plainly not "derivative."

Any potential difficulty of apportioning damages is not ground for dismissal. *See* First Tort Law Report ¶¶ 75-79 (JA0000203); *City of Boston,* 2000 WL 1473568, at *7 n.33 ("[t]he difficulty in ascertaining damages in this case is best assessed when the case has gone beyond the pleading stage"); *Doull*, 163 N.E. 3d

---

[13] Mexican tort law does not recognize any such restriction on the Government's right to recover. *See* First Tort Law Report ¶74 (JA0000203).

at 983. The Government seeks recovery for independent harms for which only it can recover. And the requested injunctive relief is not subject to apportionment. *Cf. Lexmark*, 572 U.S. at 135 ("[e]ven when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to injunctive relief").

### C.    Defendants' Duty Does Not Stop at the Border.

The Government does not seek to impose a duty to control third parties or to "protect" Mexico. D.Br. 44. Defendants' wrongful acts are ones of commission, not omission. Defendants have "a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm." *Yakubowicz v. Paramount Pictures Corp.*, 536 N.E.2d 1067, 1070 (Mass. 1989); *see also* First Tort Law Report ¶¶ 25, 34-36, 67-69 (same) (JA0000203). *City of Boston* rejected similar arguments, noting that "Plaintiffs do not allege that Defendants were negligent for failure to protect from harm but that Defendants engaged in conduct the foreseeable result of which was to cause harm to Plaintiffs." 2000 WL 1473568, at *15; *see also City of Cincinatti,* 768 N.E.2d at 1144; *City of Gary*, 801 N.E.2d at 1242.

Nor does Defendants' duty stop at the border. They cite three tobacco cases in which countries sued in their capacity as "insurer or third party provider of medical care" to smokers, and the courts merely held that allowing plaintiffs to proceed directly rather than by subrogration would "strip the defendants of

defenses which would otherwise be available to them." *State of São Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1123 (Del. 2007). Those cases are not remotely applicable here.

## CONCLUSION

The Court should reverse and remand.


Dated: July 13, 2023                    Respectfully submitted,

                                        /s/ *Steve D. Shadowen*
                                        Steve D. Shadowen
                                        Richard M. Brunell
                                        Nicholas W. Shadowen
                                        SHADOWEN PLLC
                                        1135 W. 6th Street, Suite 125
                                        Austin, TX 78703
                                        Phone: 855-344-3298
                                        sshadowen@shadowenpllc.com
                                        rbrunell@shadowenpllc.com
                                        nshadowen@shadowenpllc.com

                                        /s/ *Jonathan E. Lowy*
                                        Jonathan E. Lowy
                                        GLOBAL ACTION ON GUN
                                        VIOLENCE
                                        805 15th Street NW, #601
                                        Washington, DC 20005
                                        Phone: (202) 415-0691
                                        jlowy@actiononguns.org

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,486 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Steve D. Shadowen*
Steve D. Shadowen

## CERTIFICATE OF SERVICE

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: July 13, 2023               /s/ *Steve D. Shadowen*_____

                                   Steve D. Shadowen