# United States Court of Appeals
## for the First Circuit

No. 22-1823

ESTADOS UNIDOS MEXICANOS,
*Plaintiff-Appellant*,

*v.*

SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS MANUFACTURING, INC.;
BERETTA U.S.A. CORP.; CENTURY INTERNATIONAL ARMS, INC.;
COLT'S MANUFACTURING COMPANY, LLC; GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,
*Defendants-Appellees*.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF MASSACHUSETTS, CALIFORNIA, CONNECTICUT,
DELAWARE, THE DISTRICT OF COLUMBIA, HAWAI'I, ILLINOIS,
MARYLAND, MICHIGAN, MINNESOTA, NEW JERSEY,
NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA,
RHODE ISLAND, AND VERMONT AS *AMICI CURIAE*
IN SUPPORT OF APPELLANT AND REVERSAL**

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Elizabeth N. Dewar, 1st Cir. No. 1149723
*State Solicitor*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2204
bessie.dewar@mass.gov

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

INTERESTS OF AMICI ............................................................................1

ARGUMENT ............................................................................................2

I.    Federal Statutes May Not Be Read to Displace Traditional Areas of State Authority Absent an Unmistakably Clear Statement from Congress. .....................................................3

II.    PLCAA Preserves State-Law Remedies for Harms Caused by Gun Manufacturers' and Gun Sellers' Misconduct. ............................9

    A.    PLCAA's Plain Text Conveys Its Circumscribed Scope. ..........9

    B.    PLCAA's Legislative History Reinforces the Limited Scope of Its Protections for Gun Sellers and Manufacturers. .........................................................13

III.    PLCAA Authorizes Actions, Like Mexico's Here, Alleging That a Gun Manufacturer or Seller Knowingly Violated State or Federal Statutes Applicable to the Sale or Marketing of Guns...........15

    A.    Mexico's Complaint Alleges Violations of Statutes Applicable to the Sale or Marketing of Guns Within the Meaning of PLCAA's Predicate Exception. ............................16

    B.    The District Court Erroneously Construed the Predicate Exception Too Narrowly in Failing to Consider All of the Complaint's Alleged Violations of Statutes Applicable to the Sale and Marketing of Firearms..........................................23

CONCLUSION ......................................................................................26

CERTIFICATES OF COMPLIANCE AND SERVICE .........................................29

# TABLE OF AUTHORITIES

## Cases

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021) (per curiam)............................................5

*American Shooting Sports Council, Inc. v. Attorney General*,
    711 N.E.2d 899 (Mass. 1999)....................................................22

*Atascadero State Hosp. v. Scanlon*,
    473 U.S. 234 (1985)....................................................................4

*Bond v. United States*,
    564 U.S. 211 (2011)....................................................................4

*Bond v. United States*,
    572 U.S. 844 (2014)....................................................................3

*BP America Prod. Co. v. Burton*,
    549 U.S. 84 (2006)....................................................................12

*BP P.L.C. v. Mayor & City Council of Baltimore*,
    141 S. Ct. 1532 (2021)........................................................10, 23

*Brownback v. King*,
    141 S. Ct. 740 (2021)................................................................12

*Chamber of Commerce of U.S. v. Whiting*,
    563 U.S. 582 (2011)..................................................................26

*Chiapperini v. Gander Mountain Co.*,
    13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014)....................................22

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992)....................................................................7

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008) ................................8, 13-14, 20, 25

ii

*Corporan v. Wal-Mart Stores E., LP*,
    No. 16-2305-JWL, 2016 WL 3881341
    (D. Kan. July 18, 2016) .............................................................22

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014)........................................................................6

*Cushing v. Packard*,
    30 F.4th 27 (1st Cir. 2022) (en banc) ........................................5

*EEOC v. Arabian American Oil Co.*,
    499 U.S. 244 (1991)....................................................................3

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
    --- F. Supp. 3d ---, 2022 WL 4597526,
    (D. Mass. Sept. 30, 2022) ..............................................19, 23-24

*Gould v. Morgan*,
    907 F.3d 659 (1st Cir. 2018)......................................................1

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991).......................................................3-4, 8, 26

*Husted v. A. Philip Randolph Inst.*,
    138 S. Ct. 1833 (2018)..............................................................10

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) .......................................8, 20, 25

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)................................................................5, 7

*Melton v. Century Arms, Inc.*,
    243 F. Supp. 3d 1290 (S.D. Fla. 2017).....................................21

*New York v. United States*,
    505 U.S. 144 (1992)....................................................................4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)................................................................ 1

*Nixon v. Missouri Municipal League*,
    541 U.S. 125 (2004)................................................................... 5

*Penobscot Nation v. Frey*,
    3 F.4th 484 (1st Cir. 2021) (en banc) ...................................... 10

*Pokorny v. Ford Motor Co.*,
    902 F.2d 1116 (3d Cir. 1990) .................................................... 7

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017).............................................21

*Prescott v. Slide Fire Sols., LP*,
    410 F. Supp. 3d 1123 (D. Nev. 2019) ...................................... 19

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984)................................................................... 6

*Smith & Wesson Corp. v. City of Gary*,
    875 N.E.2d 422 (Ind. Ct. App. 2007) .......................... 19, 22, 25

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) .................................... 10, 19, 21-22

*United States v. Bass*,
    404 U.S. 336 (1971)................................................................... 4

*United States v. Guerrero-Narváez*,
    29 F.4th 1 (1st Cir. 2022) .......................................................... 5

*United States v. Ven-Fuel, Inc.*,
    758 F.2d 741 (1st Cir. 1985).................................................... 13

*United States Forest Serv. v. Cowpasture River Pres. Ass'n*,
    140 S. Ct. 1837 (2020)........................................................ 5, 26

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)....................................................................4

*Williams v. Beemiller, Inc.*,
    952 N.Y.S.2d 333 (N.Y. App. Div. 2012)...............................22

*Williamson v. Mazda Motor of Am., Inc.*,
    562 U.S. 323 (2011)...............................................................6

*Wos v. E.M.A. ex rel. Johnson*,
    568 U.S. 627 (2013)...............................................................6

*Wyeth v. Levine*,
    555 U.S. 555 (2009)...............................................................7

## **Statutes**

Federal Trade Commission Act,
    15 U.S.C. §§ 41 *et seq.* .........................................................21

Gun Control Act of 1968,
    18 U.S.C. §§ 921 *et seq.* .......................................................11
    18 U.S.C. § 922(b)(4) ...........................................................17
    18 U.S.C. § 922(g) ...............................................................20
    18 U.S.C. § 922(m) ..............................................................17
    18 U.S.C. § 922(n) ...............................................................20
    18 U.S.C. § 922(t) ................................................................17
    18 U.S.C. § 923(g) ...............................................................17
    18 U.S.C. § 924(a)(3)(A) ......................................................17
    18 U.S.C. § 924(h) ...............................................................11

National Firearms Act of 1934,
    26 U.S.C. §§ 5801 *et seq.* .....................................................11
    26 U.S.C. § 5845(b) .............................................................17
    26 U.S.C. § 5861..................................................................17

Protection of Lawful Commerce in Arms Act,
   15 U.S.C. §§ 7901-7903 .............................................................. 1
   15 U.S.C. §§ 7901................................................................... 10
   15 U.S.C. § 7901(a)(4) ............................................................ 18
   15 U.S.C. § 7901(a)(6) .......................................................... 5, 10
   15 U.S.C. § 7901(a)(7) .............................................................. 5
   15 U.S.C. § 7901(b)(1) ............................................................ 10
   15 U.S.C. § 7902(a) ........................................................... 5, 11, 18
   15 U.S.C. § 7903.................................................................... 10
   15 U.S.C. § 7903(5)(A) ......................................................... 6, 13
   15 U.S.C. § 7903(5)(A)(i)-(vi) .........................................6, 11-12
   15 U.S.C. § 7903(5)(A)(iii) .............................................. *passim*
   15 U.S.C. § 7903(5)(A)(iii)(I) ............................................ 18, 20
   15 U.S.C. § 7903(5)(A)(iii)(II) ...............................................20

Colo. Rev. Stat. Ann. § 29-11.9-103 ................................................ 20

Conn. Gen. Stat. § 42-110a ......................................... 16-17, 19, 22-23

Mass. Gen. Laws c. 93A ............................................. 16-17, 19, 22-23

Ohio Rev. Code Ann. § 4737.01 ....................................................... 20

## Rules and Regulations

Fed. R. App. P. 29(a)(2) ........................................................................ 1

Fed. R. Civ. P. 2 .................................................................................. 12

## Miscellaneous

151 Cong. Rec. S8908-01 (July 26, 2005) ...................................13-14

151 Cong. Rec. S9087 (July 27, 2005) .............................12, 14-15, 19

151 Cong. Rec. S9374-01 (July 29, 2005) ...................................13-14

Black's Law Dictionary (11th ed. 2019) ............................................ 12

*In re Browning Arms Co.*,
    80 F.T.C. 749 (1972) ................................................................. 21

*In re Colt Industries Operating Corp.*,
    84 F.T.C. 58 (1974 (9th Cir. 2009).......................................... 21

*In re Ithaca Gun Co.*,
    78 F.T.C. 1104 (1971) ............................................................. 21

*In re National Housewares, Inc.*,
    90 F.T.C. 512 (1977) ............................................................... 21

Merriam-Webster's Collegiate Dictionary (11th ed. 2003) .............. 19

J. Vernick et al., *Availability of Litigation as a Public Health
    Tool for Firearm Injury Prevention: Comparison of
    Guns, Vaccines, and Motor Vehicles*,
    97 Am. J. of Pub. Health 1991 (Nov. 2007) ............................. 8

vii

**INTERESTS OF AMICI**

Massachusetts, California, Connecticut, Delaware, the District of Columbia, Hawaiʻi, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, and Vermont submit this brief as *amici curiae* under Fed. R. App. P. 29(a)(2) in furtherance of our strong interest in preserving all lawful state-law remedies afforded for misconduct by gun manufacturers and sellers that inflicts harm on our residents.

"[F]ew interests are more central to a state government than protecting the safety and well-being of its citizens." *Gould v. Morgan*, 907 F.3d 659, 673 (1st Cir. 2018), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The *Amici* States, as independent sovereigns, bear weighty responsibility for protecting our residents from the risks of gun violence and promoting safety in the use of firearms within our borders. Exercising our police powers in service of these goals, we have adopted a range of measures regulating the possession and carrying of firearms. We have also adopted measures to encourage responsible gun manufacturing and sales practices. And when, despite those regulatory efforts, our residents are injured or killed as a result of gun violence, our states have historically provided civil remedies to redress injuries in court.

In the decision below, the District Court construed the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903, to broadly shield gun

manufacturers and sellers from liability for the harms inflicted by firearms and ammunition. While PLCAA does provide a defense to members of the gun industry against certain forms of civil liability, it does not extinguish all forms of accountability for gun manufacturers and sellers. To the contrary, Congress sought through PLCAA to preserve longstanding tort remedies in actions alleging that gun manufacturers' and sellers' own misconduct has inflicted harm. Such remedies not only provide compensation to victims, but also enhance public safety by encouraging manufacturers to produce safer products and sellers to employ more responsible sales practices.

The *Amici* States thus have a strong interest in ensuring that, in construing PLCAA, courts adhere to PLCAA's text and Congress's aim to adopt only a narrow restriction on state-law remedies. A broader interpretation of PLCAA, like the one advanced by the defendants-appellees here, would stray far from congressional intent and from the principle that, absent exceedingly clear language, federal statutes must not be read to displace traditional domains of state authority.

## **ARGUMENT**

When Congress enacted PLCAA, it deliberately struck a balance: it sought to ensure that manufacturers and sellers of guns would not face liability for harms inflicted solely as a result of third parties' unlawful conduct, but simultaneously preserved certain common law and statutory remedies for harms brought about by

gun industry members' own misconduct. That balance is reflected in PLCAA's text and its legislative history. Nothing in PLCAA expresses in unmistakably clear language an intent to erect broad immunity for gun manufacturers and sellers; rather, the statute authorizes actions, like the one brought by Mexico here, alleging that gun manufacturers have knowingly violated state and federal statutes applicable to the sale or marketing of firearms. The District Court's contrary conclusion, premised on a misreading of PLCAA, should be reversed.

## I.    Federal Statutes May Not Be Read to Displace Traditional Areas of State Authority Absent an Unmistakably Clear Statement from Congress.

Whenever Congress enacts a federal statute like PLCAA, it "'legislates against the backdrop' of certain unexpressed presumptions." *Bond v. United States*, 572 U.S. 844, 857 (2014) ("*Bond II*") (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)). Among them is the "well-established principle that 'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides' the 'usual constitutional balance of federal and state powers.'" *Id.* at 858 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)). Grounded in the "basic principles of federalism" central to our constitutional order, this presumption instructs courts to "insist on a clear indication" from Congress before construing a federal statute to intrude on an area of traditional state authority. *Id.* at 859-60. Thus, should Congress wish to "'alter the usual constitutional balance

3

between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.'" *Gregory*, 501 U.S. at 460-61 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989)).

This federalism canon of construction serves important functions. Like other presumptions that respect the system of dual sovereignty embodied within our Constitution,[1] the "requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue," an intrusion on state authority, before a court may conclude that Congress "effect[ed] a significant change" through "legislation affecting the federal balance." *United States v. Bass*, 404 U.S. 336, 349 (1971). And that federal balance "'is not just an end in itself: Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power.'" *Bond v. United States*, 564 U.S. 211, 221 (2011) ("*Bond I*") (quoting *New York v. United States*, 505 U.S. 144, 181 (1992)). The federalism canon thus simultaneously safeguards "the integrity, dignity, and residual sovereignty of the States" and allows for "local policies" and remedies that are "'more sensitive to the diverse needs of a heterogeneous society.'" *Id.* (quoting *Gregory*, 501 U.S. at 458).

Courts have applied the federalism canon in cases involving diverse realms of state authority. To give a few examples, the Supreme Court has relied on the canon

---

[1] *See, e.g.*, *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242-43 (1985) (courts presume federal statutes do not abrogate states' Eleventh Amendment immunity unless "unmistakably clear in the language of the statute").

in actions involving state-law primacy in landlord-tenant law, *see Alabama Association of Realtors v. Department of Health & Human Services*, 141 S. Ct. 2485, 2489 (2021) (per curiam); private property rights, *see United States Forest Service v. Cowpasture River Preservation Association*, 140 S. Ct. 1837, 1849-50 (2020); state and municipal provision of telecommunications services, *see Nixon v. Missouri Municipal League*, 541 U.S. 125, 140-41 (2004); and the availability of tort remedies to compensate for harm, *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 500-02 (1996). This Court has likewise relied on the federalism canon in cases involving immunity for state legislators, *see Cushing v. Packard*, 30 F.4th 27, 45 (1st Cir. 2022) (en banc), and criminal law, *see United States v. Guerrero-Narváez*, 29 F.4th 1, 9-10 (1st Cir. 2022). Across a wide range of controversies, courts have not wavered from the precept that Congress must "enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power." *Cowpasture*, 140 S. Ct. at 1849-50.

The federalism canon bears directly on the proper construction of PLCAA. Congress enacted PLCAA in response to what it perceived as an unjustified "expansion of the common law" that threatened to impose novel forms of civil liability on firearms manufacturers and sellers for harms "solely caused by others." 15 U.S.C. §§ 7901(a)(6)-(a)(7). To that end, PLCAA instructs that "[a] qualified civil liability action may not be brought in any Federal or State court," *id.* § 7902(a),

and it defines a "qualified civil liability action" to include, subject to exceptions, *see id.* §§ 7903(5)(A)(i)-(vi), any civil action "brought by any person against a manufacturer or seller" of firearms or ammunition "resulting from the criminal or unlawful misuse of a [firearm or ammunition] by the person or a third party," *id.* § 7903(5)(A). The statute specifies that a "qualified civil liability action" encompasses actions seeking all forms of relief: "damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief." *Id.*

In design and effect, PLCAA thus intrudes directly on an area of traditional state authority: the States' longstanding prerogative to provide remedies for injuries to our residents. "In our federal system, there is no question that States possess the 'traditional authority to provide tort remedies to their citizens' as they see fit." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 639-40 (2013) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). That authority, which predates the Founding, is fundamental to the States' exercise of our police powers. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014) (States' "traditional authority to provide tort remedies to their citizens" is "an area traditionally governed by the States' police powers" (quotation marks omitted)). State-law remedies have long been available to redress harms caused by any number of consumer products—from cars, *see, e.g., Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 336 (2011) (state common-

6

law tort claims against manufacturer not preempted); to cigarettes, *see, e.g.*, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518-19 (1992) (same); *id.* at 529-30 (plurality opinion) (same); to heavily regulated prescription drugs, *see, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 573, 578-81 (2009) (same).

Relatedly, PLCAA also intrudes on "the historic primacy of state regulation of matters of health and safety." *Medtronic*, 518 U.S. at 485.  The existence of tort remedies for harms caused by consumer products can encourage manufacturers to make products safer and encourage sellers to adopt more responsible sales practices. *See, e.g.*, *Wyeth*, 555 U.S. at 574 ("[S]tate-law remedies further consumer protection by motivating manufacturers to produce safe and effective drugs and to give adequate warnings."); *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1126 (3d Cir. 1990) (noting "[c]ommon law liability . . . would 'encourage' automobile manufacturers to provide safety features in addition to those listed in" federal regulations).  Federal displacement of such remedies can therefore "eliminat[e] a critical component of the States' traditional ability to protect the health and safety of their citizens" and amount to a "radical readjustment of federal-state relations." *Cipollone*, 505 U.S. at 544 (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part).  By precluding certain state remedies for harm inflicted by firearms, PLCAA impedes public-health and safety efforts by removing a mechanism long relied upon by States to promote safety in consumer

7

products.  *See* J. Vernick et al., *Availability of Litigation as a Public Health Tool for Firearm Injury Prevention: Comparison of Guns, Vaccines, and Motor Vehicles*, 97 AM. J. OF PUB. HEALTH 1991, 1996 (Nov. 2007), https://tinyurl.com/36bpskcv ("[U]nder the PLCAA, the lack of both regulation *and* litigation as public health tools for firearm injury prevention is a potentially dangerous combination for the public's health." (emphasis in original)).

While, as discussed below, PLCAA does not foreclose *all* forms of relief against manufacturers and sellers of guns, the statute has been repeatedly invoked to shield manufacturers and sellers from traditional forms of state-law liability for harms inflicted by firearms and ammunition.  *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1134-46 (9th Cir. 2009) (PLCAA held to shield licensed firearms manufacturer from plaintiffs' negligence and public nuisance claims); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008) (PLCAA held to shield firearms manufacturer from City's common-law nuisance claim).   In construing PLCAA, then, this Court must be mindful of the statute's incursion into spheres of state authority that are as longstanding as they are vital to the wellbeing of our residents.  Absent an "unmistakably clear statement" from Congress, the Court should not interpret PLCAA in this appeal to shield gun manufacturers and sellers from state-law liability.  *Gregory*, 501 U.S. at 460-61.

## II.    PLCAA Preserves State-Law Remedies for Harms Caused by Gun Manufacturers' and Gun Sellers' Misconduct.

While Congress sought through PLCAA to limit novel forms of liability for gun manufacturers and sellers whose guns and ammunition are used by third parties to inflict harm, Congress did not wish to extinguish liability for wrongful conduct by manufacturers and dealers of guns themselves. As PLCAA's text and legislative history make plain, the statute provides a defense to gun industry members for injuries inflicted solely by unrelated third parties, but does not provide a defense when a plaintiff seeks redress for a gun manufacturer or seller's own misconduct. In such cases, Congress made clear, the entire action against the manufacture or seller may proceed.

### A.    PLCAA's Plain Text Conveys Its Circumscribed Scope.

In enacting PLCAA, Congress expressly prohibited certain civil actions against manufacturers and sellers of guns, while simultaneously preserving actions against members of the gun industry for harms resulting from their own misconduct.

PLCAA's text emphasizes that its purpose is to provide gun manufacturers and sellers a defense to liability for harm caused by third parties, but not harm caused by sellers and manufacturers themselves. Congress specified that PLCAA's principal purpose is "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for the harm *solely* caused by the criminal or unlawful misuse of firearm products or

ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1) (emphasis added). And Congress found that "[t]he possibility of imposing liability on an entire industry for harm that is *solely* caused by others is an abuse of the legal system" that "erodes public confidence in our Nation's laws." *Id.* § 7901(a)(6) (emphasis added).

In stressing PLCAA's defense extends only to liability for harms caused "solely" by unrelated third parties, Congress plainly limited PLCAA's scope. "'[S]olely' means 'alone.'" *Penobscot Nation v. Frey*, 3 F.4th 484, 492 (1st Cir. 2021) (en banc) (quoting *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018)); *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021) ("solely" is "limiting" language). Thus, while the statute protects lawful manufacturing and sales practices from liability for harm resulting entirely from others' misconduct, it does not foreclose remedies against manufacturers and sellers for their own misconduct. *See* 15 U.S.C. §§ 7901, 7903. As explained by the Connecticut Supreme Court, Congress's "primary concern was that liability should not be imposed in situations in which the producer or distributor of a consumer product bears absolutely no responsibility for the misuse of that product in the commission of a crime." *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 320 (Conn. 2019); *see also id.* at 309 ("At no time and in no way does the congressional statement [of facts and purposes] indicate that firearm sellers should

evade liability for the injuries that result if they promote the illegal use of their products.").

In accordance with this objective, Congress carved out a number of exceptions to PLCAA's general directive that a "qualified civil liability action may not be brought in any Federal or State court" against a licensed gun seller or manufacturer. 15 U.S.C. § 7902(a).  The statute specifies that "[t]he term 'qualified civil liability action' . . . shall not include" the following six categories of "action[s]": (1) an action brought against a transferor of a gun who was convicted under 18 U.S.C. § 924(h) or a comparable state law for knowingly receiving or transferring a gun with reasonable cause to believe the gun will be used to commit a felony; (2) an action against a seller for negligent entrustment or negligence *per se*; (3) the predicate exception at issue here, for "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought"; (4) an action for breach of contract or warranty; (5) an action "resulting directly from a defect in design or manufacture or the product, when used as intended or in a reasonably foreseeable manner"; and (6) an action by the Attorney General to enforce the federal Gun Control Act, 18 U.S.C. §§ 921 *et seq*., and National Firearms Act, 26 U.S.C. §§ 5801 *et seq*.  15 U.S.C. §§ 7903(5)(A)(i)-(vi). Each of these categories—that is, categories of judicial proceedings where PLCAA

provides no defense to liability—involves misconduct by gun sellers and manufacturers themselves. *See* 151 Cong. Rec. S9087, S9089 (July 27, 2005) (Sen. Craig) ("What all these nonprohibited lawsuits have in common is that they involve actual misconduct or wrongful actions of some sort by a gun manufacturer, a seller or a trade association.").

Further, when any one of PLCAA's exceptions is plausibly invoked, the entire action against the gun manufacturer or seller may proceed. In identifying the categories of lawsuits *not* covered by PLCAA's general directive, Congress repeatedly used the word "action," rather than "claim" or "cause of action." 15 U.S.C. §§ 7903(5)(A)(i)-(vi). An "action" is defined as a "civil or criminal judicial proceeding." Black's Law Dictionary 37 (11th ed. 2019); *see also BP America Prod. Co. v. Burton*, 549 U.S. 84, 91 n.3 (2006) (quoting the 2004 edition of Black's Law Dictionary in defining "action" as "[a] civil or criminal judicial proceeding"). Unquestionably, Congress understood that the term "action" refers to a lawsuit as a whole, not just an individual claim. *See, e.g.*, Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); *Brownback v. King*, 141 S. Ct. 740, 751 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit," while "[i]ndividual demands for relief within a lawsuit, by contrast, are 'claims.'").[2] Thus,

---

[2] Construing PLCAA's exceptions to allow only a "claim," rather than an "action," to move forward would deprive the term "action" of independent meaning. (footnote continued)

when a plaintiff makes allegations falling within one of PLCAA's exceptions, the entire action seeking relief for that alleged misconduct may proceed, because the "action" is not a "qualified civil liability action" under 15 U.S.C. §§ 7902(a) and 7903(5)(A). *See Beretta*, 524 F.3d at 399 (Congress "allow[ed] *suits* to proceed that meet any of the . . . criteria" specified in PLCAA's "exceptions to the definition of qualified civil liability action" (emphasis added)).

### B.     PLCAA's Legislative History Reinforces the Limited Scope of Its Protections for Gun Sellers and Manufacturers.

PLCAA's legislative history confirms that Congress sought to prevent firearms industry liability for harms caused solely by unrelated third parties, but did not intend to foreclose remedies for unlawful conduct by manufacturers and sellers.

Two of PLCAA's sponsors—Senator Jeff Sessions of Alabama and Senator Larry Craig of Idaho—made this point repeatedly in explaining PLCAA's scope. Senator Sessions characterized PLCAA as "incredibly narrow." 151 Cong. Rec. S8908-01, S8911 (July 26, 2005). The statute, he explained, "allows lawsuits for violation of contract, for negligence, in not following the rules and regulations and for violating any law or regulation that is part of the complex rules that control sellers and manufacturers of firearms." 151 Cong. Rec. S9374-01, S9378 (July 29, 2005);

---

But "[a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751-52 (1st Cir. 1985).

*see Beretta*, 524 F.3d at 403 (relying on this statement).  He emphasized that "[p]laintiffs can go to court if the gun dealers do not follow the law, if they negligently sell the gun, if they produce a product that is improper or they sell to someone they know should not be sold to or did not follow steps to determine whether the individual was [eligible] to bu[y] a gun."  151 Cong. Rec. S8908-01, S8911 (July 26, 2005).  Thus, he underscored, "[m]anufacturers and sellers are still responsible for their own negligent or criminal conduct."  151 Cong. Rec. S8908-01, S8911 (July 26, 2005).

Senator Craig struck a similar note.  He explained that PLCAA "does not prevent [gun manufacturers and sellers] from being sued for their own misconduct. [The] bill only stops one extremely narrow category of lawsuits[:] lawsuits that attempt to force the gun industry to pay for the crimes of third parties over whom they have no control."  151 Cong. Rec. S9087, S9088 (July 27, 2005).  "We have tried," Senator Craig emphasized, "to make that limitation as clear as we possibly can."  *Id.*; *see also id.* ("This is not a gun industry immunity bill.").  "If a gun dealer or manufacturer violates the law," Senator Craig confirmed, "this bill is not going to protect them from a lawsuit brought against them for harms resulting from that misconduct."  *Id.* at S9089; *accord* 151 Cong. Rec. S9374-01, S9378 (July 29, 2005) (statement of Sen. Thune) ("The bill allows suits against manufacturers who breach a contract or a warranty, for negligent entrustment of a firearm, for violating a law

in the production or sale of a firearm, or for harm caused by a defect in design or manufacture.").

As this record confirms, Congress did not understand PLCAA to invariably bar negligence claims, public nuisance claims, and other tort-law claims against gun industry members. Rather, Congress intended to bar only those lawsuits seeking to hold manufacturers and sellers liable when their conduct played no role whatsoever in harm wrought by others' use of firearms. That intent accords with both the text that Congress adopted and with Congress's awareness that PLCAA should intrude no further on state-law remedies than necessary to achieve its narrow aims. *See* 151 Cong. Rec. S9087, S9089 (July 27, 2005) (Sen. Craig) ("tort reform" should be "narrow," because "law-abiding citizens have their rights and should not in any way be jeopardized in the legal sense from their constitutional right to go to court").

## III. PLCAA Authorizes Actions, Like Mexico's Here, Alleging That a Gun Manufacturer or Seller Knowingly Violated State or Federal Statutes Applicable to the Sale or Marketing of Guns.

The District Court's construction of PLCAA below did not account for the statute's intrusion on traditional domains of state authority or hew to its circumscribed scope. While the District Court considered in part whether Mexico's complaint plausibly alleged that the defendants' conduct fell within one of PLCAA's statutory exceptions, it did not complete the analysis with respect to all of the misconduct alleged in the complaint. In particular, the court considered whether

some of the defendants' alleged conduct—namely, their alleged violations of two state consumer protection statutes, the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A (Chapter 93A)—could fall within PLCAA's predicate exception, but it did not consider whether the defendants' alleged violations of *federal* statutes could likewise bring this action within PLCAA's predicate exception. That was error: the federal statutes, no less than the state consumer protection laws, constitute "State or Federal statute[s] applicable to the sale or marketing of" firearms and ammunition. 15 U.S.C. § 7903(5)(A)(iii). The federal and state statutes identified in the complaint are precisely the sort of statutes contemplated by the predicate exception, and when a complaint plausibly alleges violations of such laws—regardless of whether the predicate statute itself also supplies the cause of action—the entire action must go forward.

### A. Mexico's Complaint Alleges Violations of Statutes Applicable to the Sale or Marketing of Guns Within the Meaning of PLCAA's Predicate Exception.

Under the predicate exception, PLCAA's bar on qualified civil liability actions does not apply to "an action in which a manufacturer or seller of [firearms and ammunition] knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). Mexico's complaint asserted

16

multiple knowing violations of such statutes applicable to the sale or marketing of firearms.

Among other things, Mexico's complaint alleged that, by knowingly doing business with dealers that transfer guns to straw purchasers, the defendants have violated multiple provisions of the federal Gun Control Act of 1968, including provisions proscribing false entries in gun transactions, 18 U.S.C. §§ 922(m), 923(g), 924(a)(3)(A), and a provision requiring gun transferors to verify transferees' identities, *id.* § 922(t)(1).  Compl. ¶¶ 249-250.  The complaint also alleged that defendants have violated provisions of the National Firearms Act of 1934, 26 U.S.C. §§ 5845(b), 5861, and the Gun Control Act, 18 U.S.C. § 922(b)(4), by unlawfully selling high-caliber assault rifles easy to convert into automatic-fire machineguns.[3] Compl. ¶¶ 70-72, 280-313.  In addition, the complaint alleged that Smith & Wesson, a Massachusetts corporation, and Colt, a Connecticut corporation, knowingly violated Chapter 93A and CUTPA, respectively, by marketing their semiautomatic

---

[3] A "machinegun" under federal law is: "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."  26 U.S.C. § 5845(b).

AR-15 style rifles to civilians for use in unlawful, military-style attacks. Compl. ¶¶ 342-351.

The predicate statutes identified in Mexico's complaint are precisely the types of statutes falling within PLCAA's predicate exception. The federal laws—namely, the Gun Control Act and National Firearms Act provisions—directly regulate the sale of firearms throughout the country and are therefore "applicable to" the sale of firearms. 15 U.S.C. § 7903(5)(A)(iii). These statutes are expressly acknowledged in PLCAA's finding that "[t]he manufacture, importation, possession, *sale*, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws," including under "the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act." *Id.* § 7901(a)(4) (emphasis added). Furthermore, the predicate exception itself identifies cases alleging aiding or abetting false data entry, in violation of federal law—as alleged in Mexico's complaint, Compl. ¶¶ 249-250—as a category of actions falling within the exception's ambit. *Id.* § 7903(5)(A)(iii)(I); *see infra*, note 6. And PLCAA's legislative history confirms that the federal statutes identified in Mexico's complaint fall within the predicate exception: Senator Craig, the PLCAA sponsor, explained that if a gun seller or manufacturer "violated the law, and I am referring to the Federal firearms laws that govern a licensed firearm dealer and that govern our

18

manufacturers today," PLCAA "does not shield them."  151 Cong. Rec. S9087, S9089 (July 27, 2005).

State consumer protection statutes are likewise the type of predicate statutes that, when violated, preclude a PLCAA defense.  Courts have uniformly construed the predicate exception to allow actions against gun manufacturers and sellers plausibly alleged to have knowingly violated state consumer protection statutes like CUTPA and Chapter 93A.  *See Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138-39 (D. Nev. 2019) (Nevada's Deceptive Trade Practices Act is a PLCAA predicate statute because it "specifically regulates the sale and marketing of goods"); *Soto*, 202 A.3d at 321 ("Because CUTPA specifically regulates commercial sales and marketing activities such as those at issue in the present case . . . it falls squarely within the predicate exception.").[4]

The courts' consensus is rooted in a straightforward interpretation of the statutory text. The key statutory phrase in the predicate exception—"applicable to"—means "capable of or suitable for being applied: appropriate." Merriam-Webster's Collegiate Dictionary 60 (11th ed. 2003); *see Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 431 (Ind. Ct. App. 2007) ("applicable to"

---

[4] Below, the District Court assumed, without deciding, that actions alleging knowing violations of CUTPA and Chapter 93A fall within PLCAA's predicate exception. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, --- F. Supp. 3d ---, 2022 WL 4597526, at *16 (D. Mass. Sept. 30, 2022).

19

unambiguously means "capable of being applied"). Following that key phrase, Congress listed several non-exclusive but illustrative examples of statutes "applicable to" the sale or marketing of firearms.[5] 15 U.S.C. §§ 7903(5)(A)(iii)(I) & (II). Some of those examples—in particular, actions involving knowing violations of record-keeping requirements—can involve statutory predicates that do not pertain solely to firearms. *See Ileto*, 565 F.3d at 1134 (noting "some of the examples do not pertain exclusively to the firearms industry").[6] The predicate exception thus at a minimum encompasses statutes of general applicability, like state consumer protection laws, that "courts have applied to the sale and marketing of firearms" or that "do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *Beretta*, 524 F.3d at 404.

---

[5] The identified examples include: "(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18[.]" 15 U.S.C. §§ 7903(5)(A)(iii)(I) & (II).

[6] For example, Colo. Rev. Stat. Ann. § 29-11.9-103 and Ohio Rev. Code Ann. § 4737.01 impose general recordkeeping requirements on sellers of products and can be applied to the sale of firearms, but do not regulate the sale of firearms exclusively.

Indeed, Congress enacted PLCAA amidst a long and continuing history of applying consumer protection statutes to false or deceptive practices in the sale or marketing of firearms. The federal government has repeatedly applied the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.*, to enjoin false or misleading marketing of guns. *See Soto*, 202 A.3d at 306 & n.48 (citing *In re National Housewares, Inc.*, 90 F.T.C. 512, 516, 587-88, 601-03 (1977); *In re Colt Industries Operating Corp.*, 84 F.T.C. 58, 61-62 (1974); *In re Browning Arms Co.*, 80 F.T.C. 749, 752 (1972); and *In re Ithaca Gun Co.*, 78 F.T.C. 1104, 1107-08 (1971)). Courts have likewise applied state consumer protection laws to misconduct in sales or marketing of firearms by dealers and manufacturers. *See, e.g.*, *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304-06 (S.D. Fla. 2017) (denying motion to dismiss action against rifle manufacturer under the Florida Deceptive and Unfair Trade Practices Act, where manufacturer allegedly made false representations about rifles' safety and effectiveness); *Pollard v. Remington Arms Co., LLC*, No. 13-86, 320 F.R.D. 198, 203, 224 (W.D. Mo. 2017) (certifying class action against manufacturer whose rifles fired without a trigger pull, after previously denying motion to dismiss because manufacturer allegedly violated Missouri's consumer protection law by fraudulently concealing trigger defect in public-facing statements, *see* ECF No. 40, at 7-8). And the high courts of Connecticut and Massachusetts have made clear that the two predicate consumer protection statutes identified in Mexico's

complaint—CUTPA and Chapter 93A—apply to the sale or marketing of firearms. *See Soto*, 202 A.3d at 307 ("[C]onsumer protection statutes such as CUTPA long have been an established mechanism for regulating the marketing and advertising schemes of firearms vendors."); *American Shooting Sports Council, Inc. v. Attorney General*, 711 N.E.2d 899, 902-08 (Mass. 1999) (upholding the application of the Attorney General's Chapter 93A rulemaking authority to regulate the sale and marketing of firearms in Massachusetts).

Thus, when a plaintiff plausibly alleges a knowing violation of the federal and state predicate statutes identified in Mexico's complaint, PLCAA provides no defense to liability, and the entire action against the gun seller or manufacturer must go forward. *See, e.g.*, *Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787 (N.Y. Sup. Ct. 2014) ("as long as one PLCAA exception applies to one claim, the entire action continues"); *Williams v. Beemiller, Inc.*, 952 N.Y.S.2d 333, 338-40, 342 (N.Y. App. Div. 2012) (permitting entire case to proceed after finding one applicable PLCAA exception); *City of Gary*, 875 N.E.2d at 434 (because the City "alleged that the Manufacturers 'violated a State or Federal statute applicable to the sale or marketing of the product,' we conclude that the City's *action* falls under the predicate exception and is not barred by the PLCAA" (emphasis added)); *Corporan v. Wal-Mart Stores E., LP*, No. 16-2305-JWL, 2016 WL 3881341, at *4 n.4 (D. Kan. July 18, 2016) ("[B]ecause the court finds the predicate exception applicable to this

action, it declines to engage in the claim-by-claim analysis advanced by defendants.").[7]

**B.    The District Court Erroneously Construed the Predicate Exception Too Narrowly in Failing to Consider All of the Complaint's Alleged Violations of Statutes Applicable to the Sale and Marketing of Firearms.**

While the District Court in the decision below assumed that Chapter 93A and CUTPA qualify as statutes "applicable to the sale or marketing" of firearms, it failed to acknowledge that the provisions of the Gun Control Act and National Firearms Act identified in the complaint also so qualify, and failed to analyze whether Mexico had plausibly alleged violations of these federal statutory predicates. *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, --- F. Supp. 3d ---, 2022 WL

---

[7] Such an outcome is not atypical for a statutory scheme. In *BP P.L.C. v. Mayor and City Council of Baltimore*, for example, the Supreme Court recently construed a statute to authorize appellate review of all statutory bases for "[a]n order" remanding a case that had been removed to federal court. 141 S. Ct. 1532 (2021). The statute at issue, 28 U.S.C. § 1447(d), provides generally that any such remand order "is not reviewable on appeal or otherwise," but provides an exception for "[a]n order remanding a case to the State court from which it was removed pursuant to [28 U.S.C. §§ 1442 or 1443]." The Supreme Court rejected the argument that appellate courts can review the propriety of the remand order only with respect to the bases for removal under section 1442 or 1443, but not other bases for removal, such as 28 U.S.C. § 1441. *BP P.L.C.*, 141 S. Ct. at 1537-39. Instead, focusing on the plain meaning of the word "order" in section 1447(d), the Court explained that "the statute allows courts of appeals to examine the whole of a district court's 'order,' not just some of its parts or pieces." 141 S. Ct. at 1538. In the same way, using the word "action" in PLCAA's statutory exceptions, Congress signaled that despite PLCAA's general bar on qualified civil liability actions, the court may adjudicate the whole of a plaintiff's "action" when an exception to that bar is plausibly invoked. *See supra* at 12-13.

4597526, at *14-16, *18-23 (D. Mass. Sept. 30, 2022). Instead, the court erroneously construed PLCAA to require any predicate statute to supply not only the substantive violation—that is, the predicate violation of a statute applicable to the sale or marketing of firearms—but *also* to supply the cause of action. *See id.* at *14 ("The predicate exception applies only to 'statutes,' not common-law causes of action. To the extent, therefore, that the complaint asserts claims for negligence or other causes of action arising under common law, the exception does not apply."). PLCAA's predicate exception is not so narrow.

In construing the predicate exception to require a predicate statute to itself supply a statutory cause of action, the District Court read PLCAA to foreclose far more state-law remedies than the statute's text can bear. Mexico has asserted several causes of action—among them, claims for negligence, including under a negligence *per se* theory, and public nuisance—based on various alleged statutory violations. Compl. ¶¶ 506-519, 523-526; *see id.* ¶¶ 249-250 (listing federal statutes). By PLCAA's plain text, Mexico thus brought a damages action predicated on the violation of federal statutes applicable to the sale or marketing of firearms. *See* 15 U.S.C. § 7903(5)(A)(iii). Nothing in the language of the predicate exception requires a "statute applicable to the sale or marketing" of firearms to also contain a cause of action.

Indeed, other courts have recognized that a plaintiff can assert a common-law cause of action and separately allege a knowing violation of a predicate statute; as long as the claim is cognizable and the predicate statute is "applicable to the sale or marketing" of firearms or ammunition, PLCAA is no defense to liability. *See Ileto*, 565 F.3d at 1132 (explaining that the exception "has come to be known as the 'predicate exception,' because a plaintiff not only must present a cognizable claim, he or she must allege a knowing violation of a 'predicate statute'"). Thus, in *City of New York v. Beretta U.S.A. Corp.*, as the Ninth Circuit in *Ileto* noted as an example, "the plaintiffs brought a common-law nuisance claim (the cause of action) and also alleged that the defendants knowingly violated a state criminal statute (the predicate statute)." *Ileto*, 565 F.3d at 1132 (citing *Beretta*, 524 F.3d at 390, which ultimately concluded that the claimed predicate statutes did not come within PLCAA's predicate exception). In *Smith & Wesson Corp. v. City of Gary*, the court likewise interpreted the predicate exception to permit common-law causes of action coupled with a plausible allegation of a knowing violation of a state or federal statute applicable to the sale or marketing of firearms; where the City's public nuisance claim against firearms manufacturers plausibly alleged that the manufacturers violated state regulatory statutes governing the sale of handguns, the action fell within the predicate exception, and PLCAA was no bar. *See* 875 N.E.2d at 432-35. These holdings reflect the plain text of the statute: the predicate exception is satisfied

by "an action *in which* a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product[.]" 15 U.S.C. § 7903(5)(A)(iii) (emphasis added).

Furthermore, to the extent any ambiguity on this point exists in the predicate exception, the District Court should have construed the statute in light of the federalism canon. There is no language—and certainly no "exceedingly clear language"—that justifies the District Court's cramped reading of the predicate exception, a reading that occasions significant displacement of state tort remedies. *Cowpasture*, 140 S. Ct. at 1849-50. Such a statutory construction is incompatible with the Supreme Court's admonition that, absent an unmistakably clear statement to the contrary, federal statutes must be construed to preserve traditional domains of state authority. *See Gregory*, 501 U.S. at 460-61; *cf. Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 601 (2011) (plurality opinion) (when "Congress specifically preserve[s] . . . authority for the States," courts must not construe federal statutes to "prevent the States from using appropriate tools to exercise that authority").

## CONCLUSION

For the foregoing reasons, the District Court's judgment should be reversed and the action remanded for further proceedings.

26

Respectfully submitted,

ANDREA JOY CAMPBELL
  *Attorney General of Massachusetts*
Elizabeth N. Dewar, 1st Cir. No. 1149723
  *State Solicitor*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2204
bessie.dewar@mass.gov

Date: March 21, 2023

ROB BONTA
*Attorney General of California*
1300 I St.
Sacramento, CA 95814

WILLIAM TONG
*Attorney General of Connecticut*
165 Capitol Ave.
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General of Delaware*
820 North French St.
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General for the*
*District of Columbia*
400 6th St., NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
*Attorney General of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General of Illinois*
100 West Randolph St.
Chicago, IL 60601

ANTHONY G. BROWN
*Attorney General of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

DANA NESSEL
*Attorney General of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General of Minnesota*
102 State Capitol
75 Rev. Dr. Martin
Luther King Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General of New Jersey*
Richard J. Hughes Justice Complex
25 Market St.
Trenton, NJ 08625

RAÚL TORREZ
*Attorney General of New Mexico*
408 Galisteo St.
Santa Fe, NM 87501

LETITIA JAMES
*Attorney General of New York*
28 Liberty St.
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General of Oregon*
1162 Court St. N.E.
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General of Pennsylvania*
Strawberry Sq., 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General of Rhode Island*
150 South Main St.
Providence, RI 02903

CHARITY R. CLARK
*Attorney General of Vermont*
109 State Street
Montpelier, VT 05609

## CERTIFICATES OF COMPLIANCE AND SERVICE

### Certificate of Compliance with Rule 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 6,492 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO Version 2208 in 14-point Times New Roman font.

/s/ Elizabeth N. Dewar

### Certificate of Service

I hereby certify that on March 21, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  Counsel of record for all parties are registered as ECF Filers and will therefore be served by the CM/ECF system.

/s/ Elizabeth N. Dewar