No. 22-1823

# United States Court of Appeals
## FOR THE FIRST CIRCUIT

ESTADOS UNIDOS MEXICANOS,

*Plaintiff-Appellant,*

v.

SMITH & WESSON BRANDS INC.; BARRETT FIREARMS
MANUFACTURING, INC.; BERETTA U.S.A. CORP.; GLOCK, INC.; STURM
RUGER & CO. INC.; WITMER PUBLIC SAFETY GROUP, INC., d/b/a
Interstate Arms; CENTURY INTERNATIONAL ARMS, INC.; BARETTA
HOLDINGS SPA; GLOCK GES.M.B.H.; COLT'S MANUFACTURING CO.
LLC,

*Defendant-Appellees.*

On Appeal from the United States District Court
for the District of Massachusetts
Hon. Saylor, C.J.
Case No. 1:21-CV-11269-FDS

**BRIEF OF THOMAS KADNER GRAZIANO AND ALEX MILLS,
SCHOLARS OF INTERNATIONAL LAW, AS *AMICI CURIAE* IN
SUPPORT OF APPELLANT**

Thomas M. Sobol
tom@hbsslaw.com
HAGENS BERMAN SOBOL
SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, Massachusetts 02109
Telephone: (617) 482-3700
Facsimile:  (617) 482-3003

*Counsel for Amici Curiae Scholars of
International Law*

March 21, 2023

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, these scholars of international law as *Amici Curiae* hereby certify that they are individuals.

/s/ Thomas M. Sobol_____

Thomas M. Sobol

*Counsel for Amici Curiae Scholars of International Law*

i

# **TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................4

    A.    Applying Mexican law to govern the tort liability of U.S. companies for damage caused in Mexico would be consistent with principles of international law and comity and fully in line with the rules on conflict of laws in a large majority of jurisdictions worldwide. ...............................................................4

        1.    Canada (Excluding Quebec) .......................................................8

        2.    United Kingdom ..........................................................................9

        3.    Australia ...................................................................................11

        4.    European Union: The Rome II Regulation ...............................13

        5.    Codified Conflict of Laws Rules in Other Jurisdictions ..........20

    B.    The applicable law governs substantive questions arising in the proceedings, which generally include questions of liability and exemption from liability. .....................................................................23

II.    CONCLUSION ..........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amaca Pty Ltd. v Frost*,
    [2006] NSWCA 173 (Austl.) ................................................................12

*British Columbia v. Imperial Tobacco Canada Ltd.*,
    (2004) 239 D.L.R. (4th) 412 (Can.) ......................................................8

*Distillers Co. (Bio-Chemicals) Ltd v. Thompson*,
    [1971] 1 AC 464 ..................................................................................12

*Edmunds v. Simmonds*,
    [2001] 1 WLR 1003 (UK) ....................................................................11

*Hanlan v. Sernesky*,
    (1998) 38 O.R. 3d 479 (Can.) ..............................................................8

*Hilton v. Guyot*,
    159 U.S. 113 (1895) ..............................................................................6

*Moran v. Pyle Nat'l (Canada) Ltd.*,
    [1975] 1 S.C.R. 393 (Can.) ..................................................................9

*Ostroski v. Global Upholstery Co.*,
    [1996] ACWS (3d) 990 (Can.) ............................................................9

*Pfeiffer v. Rogerson*,
    [2000] HCA 36, (2000) 203 CLR 503 (Austl.) ................................11, 12, 13, 24

*Regie National des Usines Renault SA v. Zhang*,
    [2002] HCA 10, (2002) 210 CLR 491 (Austl.) ..................................11

*Sophocleous v. Secretary of State for Foreign and Commonwealth*
    *Affairs*,
    [2018] EWCA Civ 2167 (Eng.) ..........................................................12

*Tolofson v. Jensen*,
    [1994] 3 S.C.R. 1022 (Can.) ................................................................8

iii

*Trafigura Beheer BV v. Kookmin Bank Co.*,
    [2006] EWHC 1450 (Comm) (UK) ...................................................................11

*Wong v. Lee*,
    (2002) 58 OR (3d) 398 (Can.) ..............................................................................8

**Statutes**

Belarus Law No 218-Z of 7 December 1998 ...............................................................22

Chinese Statute of Application of Law to Foreign Civil Relations ..........................22

Civil Code of the Russian Federation Art. 1219(1) ...........................................21, 22

Japanese Act on General Rules for Application of Laws (Hōno Tekiyō
    ni Kansuru Tsūsokuhō) Law No 10 of 1898 .................................................21, 22

Private Int'l Law (Choice of Law in Tort) Act 2017 (New Zealand)
    (2017) ....................................................................................................................9

Private International Law (Miscellaneous Provisions) Act 1995, UK
    ST 1995 c. 42 ............................................................................................9, 10, 11

Québec: the Civil Codes of Québec (L.Q. 1991, ch 64) .........................................22

Swiss Private International Law Act (*Bundesgesetz über das
    Internationale Privatrecht*) of 18 December 1987, 1988 BBL I 5 ..............21, 22

Treaty on the Functioning of the European Union (Oct. 26, 2012) ........................14

Tunisia: Code of Private International Law (Law No 98-97 of 27
    November 1998) ..................................................................................................22

**Other Authorities**

Guinchard, *Rome I and Rome II in Practice* (2020) ................................................14

James Crawford, *Brownlie's Principles of Public International Law*
    ch. 21 (9th ed. 2019) ............................................................................................4

Piotr Machnikovski, *in*: Ulrich Magnus, et al., *Rome II Regulation*,
    EUROPEAN COMMENTARIES ON PRIVATE INT'L LAW, Vol. III, (2019) ...............16

Regulation (EC) No. 864/2007 of the European Parliament and of the
     Council of 11 July 2007 on the Law Applicable to Non-
     Contractual Obligations, 2007 O.J. (L199) 40 .............................................*passim*

Restatement (Fourth) of Foreign Relations Law pt. IV (2018) .................................4

Restatement (Second) of Conflict of Laws § 90 (1971) ...........................................7

Thomas Kadner Graziano, *Products Liability*, *in* Jürgen Basedow et
     al., 2 *Encyclopedia of Private International Law* (2017) ...................................22

Thomas Kadner Graziano, *Torts*, in Jürgen Basedow et al., 2
     *Encyclopedia of Private International Law* (2017) ...........................................20

## <u>STATEMENT OF IDENTIFICATION</u>[1]

*Amici* are prominent scholars and professors of international law who research, publish, and teach in the fields of public international law and/or the conflict of laws (private international law). *Amici* believe that their expertise may be helpful to this Court in considering the appeal. *Amici* are filing this brief as individuals.

Thomas Kadner Graziano is a Professor of Law at the University of Geneva, where he serves as Director of the Transnational Law Program and the Department of Private International Law. Professor Kadner Graziano has served as a member of the Swiss delegation to the Hague Conference on Private International Law and a member of the Working Group and Drafting Committee on International Contracts and is the co-founder and a council member of the European Association of Private International Law (EAPIL). Alex Mills is a Professor of Public and Private International Law at University College London, one of the specialist editors of *Dicey, Morris and Collins on the Conflict of Laws* (16th edition, Sweet and Maxwell, 2022), and on the editorial board of the International and

---

[1] No party's counsel authored this brief in whole or in part. No party or its counsel contributed financial support intended to fund the preparation or submission of this brief. No individual or organization other than these scholars of international law and their counsel contributed financial support intended to fund the preparation or submission of this brief.

Comparative Law Quarterly. The *amici* have both authored numerous books and articles on and served as experts on matters of private international law.

These scholars of international law file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and all parties to the appeal have consented to the filing of this brief.

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's dismissal of the case because the District Court did not adequately or correctly analyze the issues of applicable law. Mexico has stated that its claims arise under Mexican tort law because the place of the injury is Mexico.[2] But the District Court concluded that "no choice-of-law analysis is necessary" because the Protection of Lawful Commerce in Arms Act (PLCCA), 15 U.S.C. § 7901-7903, strips the court of jurisdiction regardless of the governing law.[3] *Amici* believe this analysis is incorrect and inconsistent with international practice.

This brief shows that the predominant choice of law rule applicable to tort claims is the law of the place of the tort, also known as the *lex loci delicti* rule. Appellees' claim in their motion to dismiss that "[u]nder basic principles of

---

[2] Brief of Appellant at 8.

[3] Mem. & Order on Mot. Dismiss, Sept. 30, 2022, ECF No. 163, at 19 ("MTD Order").

international comity, a foreign sovereign cannot use foreign law to regulate the operations of U.S. companies within the United States" was inaccurate, or at best misleading.[4] Courts commonly apply the law of the place of damage in cross-border tort claims, even if that involves applying foreign law to local defendants. While product liability cases present distinct policy challenges, and are sometimes regulated by specific rules, these rules also often select the law of the place of damage or of the place where the victim had its habitual residence when it suffered the damage; this is particularly so where it was foreseeable that the product, as alleged in this case, would be used in that territory. The application of Mexican law in the circumstances of this case would not be contrary to accepted principles of comity, public international law or the conflict of laws, and would be consistent with the practice of other states.

Analysis of international practice further demonstrates that issues concerning questions of liability and exemption from liability are generally considered to be substantive (not procedural) questions which should be governed by the applicable law (not the law of the forum).

---

[4] MTD Order at 42.

3

# I.   ARGUMENT

**A.   Applying Mexican law to govern the tort liability of U.S. companies for damage caused in Mexico would be consistent with principles of international law and comity and fully in line with the rules on conflict of laws in a large majority of jurisdictions worldwide.**

The present case raises the question of the law applicable to a complex tort, *i.e.*, a tort where the act that allegedly caused the damage (manufacture, marketing, and distribution of guns) has taken place in one country or jurisdiction (the U.S.) and the injury to the legally protected interest (the killing or injuring of citizens) occurred in another jurisdiction (Mexico). The application of Mexican law to a U.S. claim arising from harm allegedly caused in Mexico by foreign companies would be entirely consistent with well-established rules of public and private international law.

Public international law rules governing prescriptive jurisdiction provide a general framework for limiting state exercises of regulatory authority.[5] The primary basis for the exercise of lawful regulatory authority by a state is a territorial connection—a state has jurisdiction to regulate within its territory, including events, persons or things in its territory. Where an event crosses borders, such as where a wrongful act in one state causes damage in another state, this

---

[5] *See generally* Restatement (Fourth) of Foreign Relations Law pt. IV (2018); James Crawford, *Brownlie's Principles of Public International Law* ch. 21 (9th ed. 2019); Alex Mills, *Rethinking Jurisdiction in International Law*, 84 Br. Yearbook Int'l L. 187 (2014).

ground of jurisdiction is further understood to authorize both "subjective territorial jurisdiction" and "objective territorial jurisdiction"—both the state where the act occurred and the state where the damage occurred have lawful jurisdiction. The "effects doctrine," under which a state may regulate extraterritorially where the relevant conduct causes harmful effects within its territory, has increasingly been accepted as an application or expansion of objective territorial jurisdiction. The application of Mexican law to a claim arising from harm allegedly caused in Mexico by foreign companies would be entirely consistent with these well-established rules of international law.

The conflict of laws, also known as private international law, includes detailed choice of law rules which determine the application of each state's rules of private law, particularly in cases in which more than one state's laws may purport to apply consistently with rules of public international law. In the context of private law, questions of adjudicative jurisdiction and the applicable law are disaggregated, so it is common for national courts to assert jurisdiction but apply foreign law.[6] This is unexceptional, for example, where claims are brought in the home state of the defendant but relate to the defendant's extraterritorial activities.

---

[6] *See* Ex. 3 to Proposed Amici Curiae Brief, Alex Mills, *Private Interests and Private Law Regulation in Public Int'l Law Jurisdiction*, in Stephen Allen et al., *Oxford Handbook of Jurisdiction in Int'l Law* (2019), Jan. 31, 2022, ECF No. 112-1.

Appellees argued that "[u]nder basic principles of international comity, a foreign sovereign cannot use foreign law to regulate the operations of U.S. companies within the United States."[7] This argument misunderstands the legal character of "comity," which has been defined by the U.S. Supreme Court as "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and goodwill, upon the other."[8]

Indeed, comity does not *prohibit* foreign law from applying to U.S. companies, but rather provides a *justification* for U.S. courts to apply foreign law (including to U.S. companies) in cases connected to foreign states. Choice of law rules give concrete effect to comity, consistent with broader principles of public international law. As the plaintiff, Mexico argues consistent with international law that Mexican law applies to its claims in tort, based on the harm suffered in and to Mexico; it does not seek to "use foreign law to regulate the operations of U.S. companies."

This brief focuses principally on this choice of law question, demonstrating that, in the circumstances of this case, the application of Mexican law by a U.S. court would be consistent with the practice of other countries. Where claims are

---

[7]  Joint Memo. in Supp. of Mot. Dismiss, Nov. 22, 2021, ECF No. 67, at 42.

[8]  *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895).

brought in tort, states commonly apply the law of the place of the tort, and in cross-border complex torts this is often understood to mean the place of the damage.

Predominantly in international practice, the choice of law rule applicable to tort claims designates the law of the place of the tort, also known as the *lex loci delicti* rule, and that usually means the place where damage or injury occurred.[9] This is true also in cross-border complex torts. (Courts invariably retain a safeguard to refuse application of foreign law where it is contrary to domestic public policy, but these safeguards are applied only in exceptional cases involving a fundamental principle of justice or morality.[10])

The analysis below considers the applicable choice of law rules in Canada, the United Kingdom, Australia, the European Union, and in other states which have modern national codifications on choice of law. In general, they employ the *lex loci delicti* rule in cross-border events, finding the law of the place of the injury applies.

---

[9] Professor Symeon Symeonides, a leading international comparativist in the field, observed in 2014 that "[o]utside the United States, virtually all codifications enacted in the last 50 years continue to follow the *lex loci delicti* rule as the basic rule for tort conflicts." *See* Ex. 4 to Proposed Amici Curiae Brief, Symeon C. Symeonides, *Codifying Choice of Law Around the World*, at 52 (2014), Jan. 31, 2022, ECF No. 112-1; Ex. 8 to Proposed Amici Curiae Brief, Thomas Kadner Graziano, *Torts in* Jürgen Basedow et al., 2 *Encyclopedia of Private International Law* at 52 (2017), Jan. 31, 2022, ECF No. 112-1.

[10] *See* Restatement (Second) of Conflict of Laws § 90 (1971).

1. **Canada (Excluding Quebec)**

The modern common law rule for choice of law in tort in Canada was adopted by the Supreme Court in *Tolofson v. Jensen*.[11] Although the case concerned an inter-provincial tort, the court found that the *lex loci delicti* rule was applicable in both inter-provincial and international tort disputes. The court acknowledged the possibility of a flexible exception in international cases, where, for example, both parties were from a common home state but the tort occurred in a foreign state,[12] but this is only applied exceptionally in practice.[13] On the question of localizing a cross-border tort, the court observed that:

> There are situations, of course, notably where an act occurs in one place but the consequences are directly felt elsewhere, when the issue of where the tort takes place itself raises thorny issues. In such a case, it may well be that the consequences would be held to constitute the wrong.[14]

Consistent with this, Canadian courts apply the *lex loci delicti* rule in product liability cases, generally in favor of the law of the place of the damage, as it is damage which establishes the tort.[15] In complex cases where manufacture,

---

[11] *Tolofson v. Jensen,* [1994] 3 S.C.R. 1022 (Can.).

[12] *Id.* at 1057; *see also Hanlan v. Sernesky,* (1998) 38 O.R. 3d 479 (Can.).

[13] *See, e.g.*, *Wong v. Lee*, (2002) 58 OR (3d) 398 (Can.).

[14] *Tolofson*, 3 S.C.R. 1022, 1050.

[15] *See, e.g., British Columbia v. Imperial Tobacco Canada Ltd.*, (2004) 239 D.L.R. (4th) 412 (Can.).

distribution and injury may occur in different locations, there is authority that localizes the tort at the place of the injury if "it is reasonably foreseeable that the product would be used or consumed where the plaintiff used or consumed it."[16] (Appellant alleges foreseeability of use and injury in Mexico in this case, evidenced by, for example, the design of products to appeal to Mexican residents.[17])

### 2.    United Kingdom

Since 2009, choice of law in tort in the United Kingdom has been regulated by a European Union instrument, the Rome II Regulation, which has also been retained as law despite the withdrawal of the United Kingdom from the European Union. The Rome II Regulation is discussed in Section I.A.4 below. Prior to this regulation, choice of law in tort in the United Kingdom was regulated by the Private International Law (Miscellaneous Provisions) Act 1995.[18] The Act also continues to apply in cases falling outside the temporal or subject matter scope of the Regulation. The key provision is as follows:

Section 11 – Choice of applicable law: the general rule.

---

[16] *Moran v. Pyle Nat'l (Canada) Ltd.*, [1975] 1 S.C.R. 393 (Can.); *see also Ostroski v. Global Upholstery Co.*, [1996] ACWS (3d) 990 (Can.) (applying *Moran*).

[17] JA000099-100.

[18] UK ST 1995 c. 42. *See also* Private Int'l Law (Choice of Law in Tort) Act 2017 (New Zealand) (2017).

> (1) The general rule is that the applicable law is the law of the country in which the events constituting the tort or delict in question occur.
>
> (2) Where elements of those events occur in different countries, the applicable law under the general rule is to be taken as being—
>
>> (a) for a cause of action in respect of personal injury caused to an individual or death resulting from personal injury, the law of the country where the individual was when he sustained the injury;
>>
>> (b) for a cause of action in respect of damage to property, the law of the country where the property was when it was damaged; and
>>
>> (c) in any other case, the law of the country in which the most significant element or elements of those events occurred.
>
> (3) In this section "personal injury" includes disease or any impairment of physical or mental condition.[19]

The UK rule thus clearly provides for the application of the law of the place of the tort and specifies that, for personal injury claims involving a wrongful act in one place and damage in another place, the place of the tort is the place of injury. This rule is also applied in product liability cases, and likewise ordinarily would point to application of the law of the place of injury.

The UK rule is subject to a flexible exception under Section 12 of the 1995 Act, which allows the court to apply another law if it would be "substantially more

---

[19] UK ST 1995 c. 42 Pt. III s. 11.

appropriate."[20] The threshold to apply this exception is high, however, and not easily met. In practice it has been used in cases where the claimant and respondent have a common residence,[21] or in cases where there is an underlying contractual relationship between the parties connecting the tort to a different system of law.[22]

### 3.     Australia

The modern choice of law rule for tort in Australia was established by the High Court of Australia in *Pfeiffer v. Rogerson*.[23] In a case connected to more than one Australian law area (analogous to an inter-state case within the United States), the court held that the structure of Australian federalism implied a *lex loci delicti* rule for choice of law in tort. In *Regie National des Usines Renault SA v. Zhang*,[24] the *lex loci delicti* rule was extended to international torts, based on a general preference for the predictability and territoriality of the *lex loci delicti* rule, and the pragmatic basis that it is better to have a consistent single approach for both internal and international choice of law disputes.[25] The rule does not have a

---

[20] UK ST 1995 c. 42 Pt III s. 12(1)(b).

[21] *Edmunds v. Simmonds*, [2001] 1 WLR 1003 (UK).

[22] *Trafigura Beheer BV v. Kookmin Bank Co.*, [2006] EWHC 1450 (Comm) (UK).

[23] *Pfeiffer v. Rogerson*, [2000] HCA 36, (2000) 203 CLR 503 (Austl.).

[24] *Regie National des Usines Renault SA v. Zhang*, [2002] HCA 10, (2002) 210 CLR 491 (Austl.).

[25] *Id.* ¶¶ 125–32 (Kirby, J.).

flexible exception, in either domestic or international cases, and extends to product liability disputes.

In cross-border torts, where the wrongful act and place of the damage occur in different places, the courts identify the place of the tort by asking "where in substance did this cause of action arise?"[26] The English courts, commenting on this test (which also forms part of English law for certain purposes), have observed, "In personal injury cases this is, in general, the place where the injury is suffered."[27] The test derives from an earlier decision, *Distillers v. Thompson*, a product liability case arising from a drug which caused harmful side effects. The court located the tort at the place of injury, which was also identified as the place where the defendants failed to warn about the potential side effects.[28] The place of injury has also been applied in product liability cases.[29] In *Pfeiffer*, the High Court acknowledged, however, that in complex cases "the place of the tort may be ambiguous or diverse."[30] The court further observed, "difficulty will arise in locating the tort when an action is brought, for example, for product liability and

---

[26] *Distillers Co. (Bio-Chemicals) Ltd v. Thompson*, [1971] 1 AC 464 (Privy Council, acting as an Australian appellate court).

[27] *Sophocleous v. Secretary of State for Foreign and Commonwealth Affairs*, [2018] EWCA Civ 2167 (Eng.).

[28] *Distillers Co.*, 1 AC 464, *supra*.

[29] *Amaca Pty Ltd. v Frost*, [2006] NSWCA 173 (Austl.).

[30] *Pfeiffer*, 203 CLR 503.

the product is made in State A, sold in State B and consumed or used by the plaintiff in State C."[31] It is likely (although not entirely clear) that under Australian law a court would apply Mexican law in equivalent facts to the present case. It is certainly not unusual for the choice of law rule in tort to lead to the application of the law of the place of the damage in Australia, including in product liability cases.

### 4. European Union: The Rome II Regulation

In the European Union (EU), the Private International Law rules for tort claims are found in the Rome II Regulation, which applies in 26 of the current 27 EU Member States.[32]

The issues covered by the Rome II Regulation are to be applied uniformly throughout the EU (except Denmark). Should a court in a Member State have doubts regarding the interpretation of a provision of the regulation, it may submit the question to the Court of Justice of the European Union (CJEU) for a

---

[31] *Id.*

[32] Regulation (EC) No. 864/2007 of the European Parliament and of the Council of 11 July 2007 on the Law Applicable to Non-Contractual Obligations ("Rome II"), 2007 O.J. (L199) 40, https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32007R0864&from=EN. Denmark is the only EU Member State to which the Rome II Regulation does not apply.

preliminary ruling. Courts of last instance are obliged to submit questions of doubt to the CJEU for interpretation.[33]

The relevant provisions of the Rome II Regulation include the general rule in Article 4 of the Rome II Regulation, and the rule on products liability in Article 5. It is generally perceived in Europe that the text of both provisions is rather clear.[34]

### a.    The General Rule for Torts and Complex Torts: Article 4 of the Rome II Regulation

According to the first sentence of Article 4(1) of the Rome II Regulation, litigation of cross-border torts follows the *lex loci delicti* rule and is, in general, governed by the law of the country where the damage occurred.[35] With respect to personal injury or death caused to an individual, this leads to the application of the law at the place where the victim was when he or she suffered the injury. When the event giving rise to the damage occurred in one jurisdiction and the victim suffered

---

[33] *See* Treaty on the Functioning of the European Union at Art. 267 lit. b (Oct. 26, 2012), https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX: 12012E/TXT&from=EN.

[34] This is generally confirmed in many of the country reports published in the study by Guinchard, *Rome I and Rome II in Practice* (2020); *see also* Ex. 5 to Proposed Amici Curiae Brief, Thomas Kadner Graziano & Michel Reymond, *The Application of the Rome I and Rome II Regulations before the Court of Justice of the European Union*, *in* Guinchard, *supra*, Jan. 31, 2022, ECF No. 112-1, at 327–48.

[35] Rome II Art. 4.

14

the injury in another, the law of the latter jurisdiction applies: the law at the place of damage applies "irrespective of the country in which the event giving rise to the damage occurred."[36] This comports with longstanding practice in Europe: even before the Rome II Regulation was adopted, the *lex loci delicti rule* was firmly recognized in the legislation of 19 European jurisdictions, and in the case law of eight others.

Regarding *complex torts*, before the Rome II Regulation was enacted, some jurisdictions in Europe applied the law of the place of injury (the Netherlands, Romania; beyond the EU: Switzerland, Turkey, except where this law was unforeseeable), in others the law more favorable to the victim was applied (Portugal, Hungary), in yet others the victim could opt for the law which was more favorable to him or her (Germany, Estonia). In the EU, these national private international law rules have now all been replaced by the provisions of the Rome II Regulation.[37]

---

[36] Rome II Art. 4(1).

[37] *See* Ex. 6 to Proposed Amicus Curiea Brief, Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht – Harmonisierung des IPR durch Wissenschaft und Lehre (am Beispiel der ausservertraglichen Haftung für Schäden)* 131–149 (2002) (addressing torts in general), Jan. 31, 2022, ECF No. 112-1; *id.* at 194-235 (addressing complex torts).

### b.    A Specific Rule for Products Liability: Article 5 of the Rome II Regulation

In the present case, the injury was allegedly caused by a product manufactured and marketed by the defendant companies. Given the high mobility of many products, and for the purpose of avoiding inadequate and fortuitous results, some jurisdictions have enacted specific Conflict of Laws rules governing the law applicable to products liability. The European Union did just this with Article 5 of the Rome II Regulation. Where Article 5 applies,[38] it is *lex specialis* and prevails over the general rule in Article 4 of the Rome II Regulation.

Article 5 of the Rome II Regulation offers a cascade of connecting factors. At every stage of the analysis, two connecting factors that must be present for determining the applicable tort law. Article 5 provides:

> Article 5 (Product liability) (1) Without prejudice to Article 4(2), the law applicable to a non-contractual obligation arising out of damage caused by a product shall be:
>
> (a) the law of the country in which the person sustaining the damage had his or her habitual

---

[38] The notion of "product liability" and "damage caused by a product" is to be determined autonomously for all Member States of the EU. The "fundamental characteristic is the causing of damage by a product and the placing of liability on an individual who participates in the marketing of the product – generally … the producer." Piotr Machnikovski, *in*: Ulrich Magnus, et al., *Rome II Regulation*, European Commentaries on Private Int'l Law, Vol. III, (2019), Art. 5 n. 9-10. The application of Article 5 of Rome II is thus not limited to damage caused by defective products.

residence when the damage occurred, if the product
was marketed in that country; or, failing that,

(b) the law of the country in which the product was
acquired, if the product was marketed in that country;
or, failing that,

(c) the law of the country in which the damage
occurred, if the product was marketed in that country.

However, the law applicable shall be the law of the
country in which the person claimed to be liable is
habitually resident if he or she could not reasonably
foresee the marketing of the product, or a product of the
same type, in the country the law of which is applicable
under (a), (b) or (c). 2.

(2) Where it is clear from all the circumstances of the
case that the tort/delict is manifestly more closely
connected with a country other than that indicated in
paragraph 1, the law of that other country shall apply. A
manifestly closer connection with another country might
be based in particular on a pre-existing relationship
between the parties, such as a contract, that is closely
connected with the tort/delict in question.[39]

According to the Rome II Regulation, the relevant criteria for determining the law

applicable to a products liability claim (in the absence of agreement between the

parties) thus include:

a) applying the law governing a *pre-existing relationship*
between the parties (so-called *rattachement accessoire*),
Rome II art. 5(2). This is not relevant in the present case;

---

[39] Rome II Art. 5.

b) applying the law of the *parties' common habitual residence*, Rome II arts. 4(2) and 5(1). Again, this is not relevant in the present case;

c) applying the law of the *injured party's habitual residence* provided that the *precise product was, or the manufacturer's products of the same kind were, marketed there*, Rome II art. 5(1)(a). This rule applies both to members of the chain of sales and purchases and to mere third-parties having suffered damage (so-called *innocent bystanders*);

d) applying the law of the *place of marketing and purchase* of the product that caused the damage, Rome II art. 5(1)(b);

e) applying the law of the *country of injury* if the product was *marketed there*, Rome II art. 5(1)(c).

It can be observed that, according to Article 5(1)(a)–(c), the *place of marketing of the product* plays a key role for determining the applicable law under the Rome II Regulation, as under many other modern private international law (PIL) statutes, often in combination with, cumulatively, another connecting factor, such as:

- the injured party's habitual residence, Rome II art. 5(1)(a),

- the *place of purchase* of the product that caused the damage, Rome II art. 5(1)(b), or

- the *country of injury*, Rome II art. 5(1)(c).

In the present case, the *injured party's (or parties') habitual residence* was Mexico, and the *injuries caused by the weapons* occurred in Mexico. The question

then is whether the availability of the weapons in Mexico was *attributable to the defendant manufacturer* at the conflict of laws level. According to the Rome II Regulation, this is the case if the product was *marketed* in Mexico.

Article 5(1) *in fine* reiterates the requirement that the applicable law be foreseeable for the manufacturer, which already underlies the marketing requirement: manufacturers who target a foreign market and who have their products marketed in a foreign country (be it legally or illegally) must take into account the potential for their products to cause damage there, and that an injured person would expect the law of this country to apply.

In the present case, according to the statement of claim, Appellees designed their weapons to attract customers specially in Mexico, thereby *targeting the Mexican market*.[40] For example, one gun carried the brand name "El Jefe" ("The Boss"), another the name "El Grito" ("The Cry"), and yet another the name of "Emiliano Zapata 1911."[41] The weapons were made available near the Mexican border and also online.[42] According to the claim, they reached the Mexican market

---

[40] JA000099-100 (Complaint).

[41] *Id*.

[42] *See, e.g.*, JA000077; JA000083; JA000095; JA000143-144 (Compl.).

in large numbers—*i.e.*, the market for which they were designed, and which Appellees targeted for their distribution and use.[43]

Consequently, applying Mexican law would be perfectly in line with the rationale of Article 5 of the Rome II Regulation which is to apply, wherever possible, the law of the country where the injured party had its habitual residence (Rome II art. 5(1)(a)) and/or where it suffered the injury (Rome II art. 5(1)(c)) provided that this law was *foreseeable* to the manufacturer, which is generally the case if the product was marketed there, or could not be marketed there legally but was *targeted* at that market, and indeed reached that market through illegal marketing, with the knowledge of the manufacturers who designed it particularly for that market.

### 5. Codified Conflict of Laws Rules in Other Jurisdictions

#### a. General Rules in Torts

The *lex loci delicti* rule has become a general principle of almost worldwide importance in codified private international law/conflict of laws systems.[44]  Most jurisdictions that have codified their private international law in recent years have also followed the example of the EU in submitting claims resulting from complex

---

[43] JA000076-081.

[44] For numerous references, *see* Thomas Kadner Graziano, *Torts*, in Jürgen Basedow et al., 2 *Encyclopedia of Private International Law* at 1415 (2017), at 1710–11.

20

torts to the law of the place of injury, rather than the law of the place where the tortfeasor has acted.[45]

Applying the foreign law in force at the place where the victim suffered injury (rather than the law of the place where the tortfeasor has acted), *i.e.*, Mexican law rather than the tort law of a state in the US, would thus be fully in line with European standards or the standards of any other codified system of private international law.

### b.     Specific Rules for Products Liability Cases

A certain number of jurisdictions have enacted modern, *specific codified rules on the law applicable to products liability* over the recent decades. This is the case for *Switzerland*, which has the most comprehensive Private International Law Act worldwide, with more than 200 articles (1987, in force since 1989); *Quebec*, which has codified its conflicts of laws rules in its Civil Code, largely taking inspiration from the Swiss model (1991); *Tunisia*, which is the most advanced

---

[45] *See*, *e.g.*, Japanese Act on General Rules for Application of Laws (Hōno Tekiyō ni Kansuru Tsūsokuhō, Law No 10 of 1898, as newly titled and amended by Act No 78 of 21 June 2006) art. 17, English translation: http://www.pilaj.jp/text/tsusokuho_e.html (" Japanese PILA"); Swiss Private International Law Act (*Bundesgesetz über das Internationale Privatrecht* of 18 December 1987, 1988 BBL I 5, as amended) Art. 133(2), https://www.fedlex.admin.ch/eli/cc/1988/1776_1776_1776/en ("Swiss PILA") (the unforeseeability clause has never been applied); Civil Code of the Russian Federation (as amended by Federal Law No 260-FZ on 30 September 2013) Art. 1219(1), in English: https://new.fips.ru/en/documents/documents.php (book 3) ("Russian Civil Code").

African country with a codified system of private international law (1998); *Russia*

(which integrated modern conflict of laws rules into Part 3 of its Civil Code in

2013); *Belarus* (with a codification of 1998); *Japan* (with a recodification of its

conflict of laws rules in 2006), and *China* (with a new act of 2010).[46]

Analysis of these private international law acts shows that they combine

several criteria for designating the applicable law allowing under most acts to

apply the law of the country where the product was made available and/or where

the victim was habitually resident if he or she suffered the injury there through a

defective product.[47] Moreover, the comparative analysis of the EU Rome II

Regulation, and specific rules on products liability in national private international

---

[46] For precise references, *see* Switzerland: Swiss PILA; Tunisia: Code of Private International Law (Law No 98-97 of 27 November 1998), Official Journal of the Republic of Tunisia, 1 December, p. 2332, available in French in: http://www.droit-afrique.com/upload/doc/tunisie/Tunisie-Code-2010-droit-international-prive.pdf; Québec: the Civil Codes of Québec (L.Q. 1991, ch 64), in French: http://www.legisquebec.gouv.qc.ca/fr/document/lc/ccq-1991, in English: http://www.legisquebec.gouv.qc.ca/en/document/cs/ccq-1991; Russia: Russian Civil Code; Belarus: Law No 218-Z of 7 December 1998, available in English in: https://wipolex.wipo.int/en/legislation/details/16850; Japan: Japanese PILA; China: the Chinese Statute of Application of Law to Foreign Civil Relations (adopted at the 17th session of the Standing Committee of the 11th National People's Congress on 28 October 2010, effective 1 April 2011), in English: https://www.wipo.int/edocs/lexdocs/laws/en/cn/cn173en.pdf.

[47] For precise information and case studies illustrating the functioning of these rules, *see* Thomas Kadner Graziano, *Products Liability*, *in* Jürgen Basedow et al., 2 *Encyclopedia of Private International Law* at 1415 ff (2017).

law statutes from around the world shows that the application of Mexican law in

the present case would be fully in line with most private international law systems.

**B.      The applicable law governs substantive questions arising in the proceedings, which generally include questions of liability and exemption from liability.**

Should the Court determine that Mexican law is applicable, consistent with

the analysis above, it would generally be Mexican law which governs substantive

questions arising in the proceedings, while forum (U.S.) law would govern

procedural questions. While the distinction between questions of substance and

questions of procedure may be difficult to draw in some circumstances,

international practice supports the view that issues concerning questions of liability

and exemption from liability are questions which should be governed by the

substantive applicable law.

Under the Rome II Regulation (applicable in almost all states of the

European Union and in the United Kingdom, as noted above), for example, Article

15 defines the 'Scope of the law applicable,' and specifies that this includes

(among other things):

> (a) the basis and extent of liability, including the determination of persons who may be held liable for acts performed by them;
>
> (b) the grounds for exemption from liability, any limitation of liability and any division of liability;
>
> (c) the existence, the nature and the assessment of damage or the remedy claimed;

…

(g) liability for the acts of another person;

(h) the manner in which an obligation may be extinguished and rules of prescription and limitation, including rules relating to the commencement, interruption and suspension of a period of prescription or limitation.[48]

The High Court of Australia has similarly taken an expansive view of what issues fall under the substantive applicable law, determining that "rules which are directed to governing or regulating the mode or conduct of court proceedings are procedural and all other provisions or rules are to be classified as substantive."[49]

The clear effect of this authority is that, in cases governed by foreign law, the question of whether an action may be brought and if so under what circumstances is generally a matter for the substantive applicable law, selected through the application of choice of law rules, and not for the law of the forum.

## II.    CONCLUSION

For the reasons outlined above, the application of Mexican law in the circumstances of this case would be fully in line with accepted principles of public international law, most conflict of laws rules worldwide, and the practice of other

---

[48] Rome II Art. 15.

[49] *Pfeiffer v. Rogerson*, [2000] HCA 36, (2000) 203 CLR 503 (Austl.), at 99 (internal quotation marks omitted).

24

states. This Court should reverse the District Court's dismissal of Appellant's

complaint.


 Dated:  March 21, 2023

<div style="margin-left:40%">

Respectfully submitted,
*/s/ Thomas M. Sobol*
Thomas M. Sobol
tom@hbsslaw.com
HAGENS BERMAN SOBOL
SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, Massachusetts 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

*Counsel for Amici Curiae Scholars of
International Law*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because this brief contains 5,695 words, excluding part of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 Version 2302 in 14 point Times New Roman font/monospaced typeface.

Dated:   March 21, 2023

<div align="right">

*/s/ Thomas M. Sobol*

Thomas M. Sobol

*Counsel for Amici Curiae Scholars of International Law*

</div>

**CERTIFICATE OF SERVICE**

Appeal No. 22-1823

     I, Thomas M. Sobol, hereby certify that on March 21, 2023, I electronically filed this Brief of Thomas Kadner Graziano and Alex Mills, Scholars of International Law, as *Amici Curiae* in Support of Appellant with the Court using the CM/ECF system. I certify that the attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

 Dated:   March 21, 2023

                     */s/ Thomas M. Sobol*

                     Thomas M. Sobol